## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **M.J.,** *et al.,* <br><br>        **Plaintiffs,** <br><br> **v.** <br><br> **DISTRICT OF COLUMBIA,** *et al.*, <br><br>        **Defendants.** | **Civil Action No. 18-1901 (EGS)** |

## DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT

Defendants the District of Columbia (the District), Mayor Muriel Bowser, in her official capacity, Tanya A. Royster, in her official capacity as Director of the Department of Behavioral Health, and Wayne Turnage, in his official capacity as Director of the Department of Health Care Finance, move to dismiss plaintiffs' Complaint. Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

As set forth in the accompanying memorandum of points and authorities, plaintiffs' Complaint should be dismissed because plaintiffs lack standing to pursue their claims. In addition, plaintiffs fail to state a claim for a violation of the integration mandate of the Americans with Disabilities Act and Rehabilitation Act. Plaintiffs also fail to allege sufficient facts to support a conclusion that a District custom or policy deprived plaintiffs of the federal Medicaid Early and Periodic Screening, Diagnostic, and Treatment services benefit. And even if plaintiffs' claims survive, the individual defendants sued in their official capacities should be dismissed from this lawsuit because the claims against them are duplicative of the claims brought against the District. The Court should grant defendants' motion and dismiss plaintiffs' Complaint with prejudice. A proposed order is attached.

Dated:  October 3, 2018.

Respectfully submitted,

KARL A. RACINE
Attorney General for the District of Columbia

TONI MICHELLE JACKSON
Deputy Attorney General
Public Interest Division

*/s/ Fernando Amarillas*
FERNANDO AMARILLAS [974858]
Chief, Equity Section

*/s/ Amanda J. Montee*
AMANDA J. MONTEE [1018326]
GREGORY CUMMING [1018173]
Assistant Attorneys General
441 Fourth Street, N.W., Suite 630 South
Washington, D.C.  20001
(202) 724-5691
(202) 741-8934 (fax)
amanda.montee@dc.gov

*Counsel for Defendants*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **M.J.**, *et al.*, | |
| **Plaintiffs,** | |
| **v.** | **Civil Action No. 18-1901 (EGS)** |
| **DISTRICT OF COLUMBIA**, *et al.*, | |
| **Defendants.** | |

<u>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**</u>
<u>**DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT**</u>

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................... 1

BACKGROUND ....................................................................................................... 2

I.  The Department of Behavioral Health Serves District Residents with Serious Emotional Disturbances ....................................................................................................... 2

II.  The District's System of ICBS for Children with Serious Emotional Disturbances Includes Intensive Case Management, Crisis Response and Stabilization Services, and Direct Community-Based Services .................................................................... 3

   A. Intensive Care Coordination ........................................................................... 3

   B. Crisis Response and Stabilization Services ..................................................... 4

   C. Direct In-Home and Community-Based Services ............................................ 5

III.  The District's Medicaid Program Covers Mental Health Services for Children ............... 6

STANDARD OF REVIEW ...................................................................................... 6

I.  Federal Rule of Civil Procedure 12(b)(1) ......................................................... 6

II.  Federal Rule of Civil Procedure 12(b)(6) ......................................................... 7

ARGUMENT ............................................................................................................ 8

I.  Plaintiffs Lack Standing to Pursue Their Claims That the District Fails to Provide Adequate ICBS ......................................................................................... 8

   A. Plaintiff M.J. Has Not Suffered an Injury-in-Fact Because She Has Been Offered ICBS But Declined Services .............................................................................9

   B. Because L.R. is in DYRS Custody and Ineligible to Receive Services, She is Not Suffering an Injury From a Lack of ICBS ............................................................10

   C. University Legal Services Cannot Maintain Standing In the Absence of the Two Named Plaintiffs ..............................................................................................11

II.  Plaintiffs Fail to State a Claim for a Violation of the Integration Mandate of the Americans with Disabilities Act and Rehabilitation Act .................................................. 13

   A. Plaintiffs Fail to Allege the District is Not Providing Services in the Most Integrated Setting Appropriate ...................................................................... 13

B. M.J. Fails to State a Claim for a Violation of the Integration Mandate ...................... 15

C. L.R. is Institutionalized Because She is Committed to the Custody of DYRS, Not Because the District is Violating the Integration Mandate ........................................ 16

III.   Plaintiffs Fail to Allege that a District Custom or Policy Violates the Federal EPSDT Requirements ........................................................................................................................ 17

A. Plaintiffs Do Not Allege a Violation of Statutory EPSDT Requirements and Instead Complain About the Lack of Certain Consolidated Providers ................................... 17

B. Plaintiffs Fail to Allege Sufficient Non-Conclusory Facts to Support Their Claim that a District Custom or Policy Caused the Alleged EPSDT Violation .......................... 19

IV.   Defendants Mayor Bowser and Directors Royster and Turnage Should Be Dismissed From This Lawsuit Because the Claims Against Them, In Their Official Capacities, Are Duplicative of the Claims Against the District…………………………………………..21

**CONCLUSION** ...................................................................................................................... 22

## TABLE OF AUTHORITIES

**Statutes**

22-A D.C.M.R. § 1201.1 ........................................................................... 2, 10

28 C.F.R. § 35.130(d) ............................................................................. 13, 14

28 C.F.R. § 41.51(d) ..................................................................................... 14

42 C.F.R. § 435.1009 .................................................................................... 10

42 U.S.C. § 1396, *et seq.* ..................................................................... 2, 18, 19

42 U.S.C. § 1983 ............................................................................................. 2

42 U.S.C. § 10807 ......................................................................................... 11

42 C.F.R. § 12132 ......................................................................................... 13

29 U.S.C. § 794 ............................................................................................. 13

42 U.S.C. § 15044(b) .................................................................................... 11

**Cases**

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) .......................................................................... 7, 17

*Atchison v. District of Columbia,*
    73 F.3d 418 (D.C. Cir. 1996) .......................................................... 21, 22

*Baker v. District of Columbia,*
    326 F.3d 1302 (D.C. Cir. 2000) ............................................................ 17

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ............................................................................... 7

*Brown v. District of Columbia,*
    322 F.R.D. 51 (D.D.C. 2017) ..................................................... 13, 14, 15

*Campbell v. National Union Fire Insurance, Co.,*
    130 F. Supp. 3d 236 (D.D.C. 2015) ........................................................ 8

*Carter v. District of Columbia,*
    795 F.2d 116 (D.C. Cir. 1986) .............................................................. 20

*City of Canton v. Harris,*
    489 U.S. 378 (1989)........................................................................................ 17

*City of Los Angeles v. Lyons,*
    461 U.S. 95 (1983) ......................................................................................... 8

*Clapper v. Amnesty International, USA,*
    568 U.S. 398 (2013) ....................................................................................... 9

*DCIPA, LLC v. Lucile Slater Packer Children's Hospital at Stanford,*
    868 F, Supp. 2d 1042 (D. Oregon 2011) ....................................................... 6

*Dearth v. Holder,*
    641 F.3d 499 (D.C. Cir. 2011) ..................................................................... 11

*Delta Air Lines, Inc. v. Export-Import Bank,*
    85 F. Supp. 3d 250 (D.D.C. 2015)................................................................. 8

*Doe v. District of Columbia,*
    Civil Action No. 08-0656, 2008 U.S. Dist. LEXIS 110348 (D.D.C. Nov. 12, 2008) ...... 12

*Doe v. Stincer,*
    175 F.3d 879 (11th Cir. 1999) ..................................................................... 12

*Dominguez v. UAL Corp.,*
    666 F.3d 1359 (D.C. Cir. 2012) ................................................................... 8

*EEOC v. St. Francis Xavier Parochial School,*
    117 F.3d 621 (D.C. Cir. 1997) ..................................................................... 8

*Edmonson v. Lincoln National Life Ins. Co.,*
    725 F.3d 406 (3d Cir. 2013) ........................................................................ 11

*Enslin v. The Coca-Cola Co.,*
    136 F. Supp. 3d 654 ..................................................................................... 11

*Fisher v. Oklahoma Health Care Authority,*
    335 F.3d 1175 (10th Cir. 2003) ................................................................... 14

*Florida Audubon Society v. Bentsen,*
    94 F.3d 658 (D.C. Cir. 1996) ................................................................... 8, 9

*Hamilton v. District of Columbia,*
    720 F. Supp. 2d 102, 113 (D.C. Cir. 2010) ................................................. 20

*Harvey v. District of Columbia,*
    798 F.3d 1042 (D.C. Cir. 2015) ............................................................... 21

*J.E. v. Wong,*
    125 F. Supp. 3d 1099 (D. Haw. 2015) ...................................................... 18

*John B. v. Menke,*
    176 F. Supp. 2d 786 (M.D. Tenn. 2001) ................................................... 17

*Jones & Assocs., Inc. v. District of Columbia,*
    797 F. Supp. 2d 129 (D.D.C. 2011) ......................................................... 10

*Katie A., ex rel. Lundin v. Los Angeles,*
    481 F.3d 1150 (9th Cir. 2007) .................................................................. 19

*Keepseagle v. Vilsack,*
    815 F.3d 28 (D.C. Cir. 2016) ...................................................................... 7

*Kokkonen v. Guardian Life Insurance Company of America,*
    511 U.S. 375 (1994) ................................................................................... 6

*Laughlin v. Holder,*
    923 F. Supp. 2d 204 (D.D.C. 2013) ........................................................... 8

*Lopez v. District of Columbia,*
    268 F. Supp. 3d 256 (D.D.C. 2017) ......................................................... 21

*Lujan v. Defenders of Wildlife*
    504 U.S. 555 (1992) ............................................................................... 7, 8

*M.K. v. Sergi,*
    554 F. Supp. 2d 201 (D. Conn. 2008) ..................................................... 14

*Monell v. Department of Social Services,*
    436 U.S. 658 (1978) ................................................................................. 17

*Mykonos v. United States,*
    59 F. Supp. 3d 100 (D.D.C. 2014) .......................................................... 6, 7

*National Association of Homebuilders v. EPA,*
    667 F.3d 6 (D.C. Cir. 2011) ................................................................ 11, 12

*Oklahoma Chapter of American Academy of Pediatrics v. Fogarty,*
    366 F, Supp. 2d 1050 (N.D. Okla. 2005) ................................................ 18

*Olmstead v. L.C. ex rel. Zimring,*
    527 U.S. 581 (1999) ..................................................................................... 13, 14, 15, 16

*Penn. Protection and Advocacy, Inc. v. Houston,*
    136 F. Supp. 2d 353 (E.D. Pa. 2001) ............................................................. 12

*Powell v. McCormack,*
    395 U.S. 486 (1969) ........................................................................................ 10

*Proctor v. District of Columbia,*
    74 F. Supp. 3d 436 (D.D.C. 2014) .................................................................. 22

*Public Citizen, Inc. v. Trump,*
    297 F. Supp. 3d 6 (D.D.C. 2018) .................................................................... 9

*Randolph v. ING Life Insurance and Annuity Company*
    489 F. Supp. 2d 1 (D.D.C. 2007) ................................................................... 6

*Reynolds v. Giuliani,*
    506 F.3d 183 (2d Cir. 2007) ........................................................................... 21

*R.I.L-R. v. Johnson,*
    80 F. Supp. 3d 164 (D.D.C. 2015) .................................................................. 9

*Rodriguez v. City of New York,*
    197 F.3d 611 (2d Cir. 1999) ..................................................................... 14, 15

*Rosie D. v. Romney,*
    410 F. Supp. 2d 18 (D. Mass. 2006) ............................................................... 19

*Salazar v. District of Columbia,*
    954 F. Supp. 278 (D.D.C. 1996) ..................................................................... 20

*Scheuer v. Rhodes,*
    416 U.S. 232 (1974) ........................................................................................ 7

*Shakhnes ex rel. Shakhnes v. Eggleston,*
    740 F. Supp. 2d 620 (S.D.N.Y. 2010) ............................................................. 21

*Spokeo v. Robbins,*
    136 S. Ct. 1540 (2012) ............................................................................... 10, 11

*Toth v. Well Fargo Bank, N.A.,*
    82 F. Supp. 3d 373 (D.D.C. 2015) .................................................................. 7

*Trimble v. District of Columbia,*
    779 F. Supp. 2d 54 (D.D.C. 2011) ................................................................................. 20

*Trudeau v. FTC,*
    456 F.3d 178 (D.C. Cir. 2006) ....................................................................................... 7

*Townsend v. Quasim,*
    328 F.3d 511 (9th Cir. 2002) ........................................................................................ 14

*University Legal Services, Inc. v. St. Elizabeth's Hospital,*
    Civil Action No. 05-585, 2005 WL 3275915 (D.D.C. July 22, 2005) ........................... 12

*V.L. v. Wagner,*
    669 F. Supp. 2d 1106 (N.D. Cal. 2009) ......................................................................... 14

*Williams v. Lew,*
    819 F.3d 466 (D.C. Cir. 2016) ..................................................................................... 17

*Wilson v. Comm'r of Internal Revenue Services,*
    805 F.3d 316 (D.C. Cir. 2015) ................................................................................. 9, 10

**Other**

Centers for Medicare and Medicaid Services, *Joint CMCS and SAMHSA Informational Bulletin: Coverage of Behavioral Health Services for Children, Youth, and Young Adults with Significant Mental Health Conditions* (May 7, 2013) ...................................................... 4

DBH, *FY17 Performance Oversight Responses* .................................................................. 4, 5, 6

DBH, *Mental Health and Substance Use Report on Expenditures and Services*
    (Jan. 2018) ......................................................................................................... 3, 5, 6, 19

*DSM Changes: Implications for Child Serious Emotional Disturbance*, Substance Abuse and Mental Health Service Administration Center for Behavioral Health Statistics and Quality (June 2016) ............................................................................................................... 2

U.S. Dep't of Justice, West Virginia's Children's Mental Health System (June 1, 015) ....... 3, 4, 5

## INTRODUCTION

Plaintiffs M.J. and L.R. are both minors who reside in the District of Columbia (District) and have been diagnosed with Serious Emotional Disturbances (SED). Over the past several years, M.J. has been intermittently institutionalized and L.R. has been, and remains, committed to the custody of the Department of Youth Rehabilitation Services (DYRS), the District agency charged with managing and operating a juvenile justice system of care and delivering rehabilitative services. Plaintiffs allege that their institutionalizations are caused by the District's failure to provide them adequate intensive community-based services (ICBS), in violation of the integration mandate of the Americans with Disabilities Act (ADA) and Rehabilitation Act, as well as a state's obligation under Medicaid to provide the Early and Periodic Screening, Diagnostic, and Treatment (EPSDT) services benefit. Plaintiff University Legal Services (ULS) brings the same claims on behalf of the named plaintiffs and other unspecified individuals with disabilities in the District.

Plaintiffs' claims should be dismissed because, first, plaintiffs lack standing. M.J., through her guardian, declined ICBS in June 2018 and again recently, after initiating this lawsuit. L.R., on the other hand, is ineligible to receive community-based services because she is in the custody of DYRS. And ULS cannot proceed as the sole plaintiff given the insufficient allegations in plaintiffs' lawsuit. Second, even if this Court finds that plaintiffs have standing to pursue their claims, the Complaint should be dismissed because plaintiffs fail to properly state claims under the ADA and Rehabilitation Act. Plaintiffs' claims alleging that the District's array of services is inadequate do not properly fall within the scope of the ADA's integration mandate, which concerns only where the District's services are offered. Third and similarly, plaintiffs also fail to state a claim against the District for a violation of Medicaid EPSDT requirements because

they fail to adequately allege a statutory violation or a basis for municipal liability under 42 U.S.C. § 1983 (Section 1983).[1] Fourth and finally, the claims brought against the individual defendants, in their official capacities, are duplicative of the claims brought against the District, and those defendants should be dismissed from this lawsuit. For these reasons, plaintiffs' Complaint should be dismissed with prejudice.

## BACKGROUND

I.   **The Department of Behavioral Health Serves District Residents with Serious Emotional Disturbances.**

Plaintiffs M.J. and L.R. are District residents who have been diagnosed with SED. Compl. ¶¶ 11–12 [1]. SED is defined by District law as children and youth under the age of 22 who have, or have had during the prior year, a diagnosable mental, behavioral, or emotional disorder that:  (1) is sufficient to meet diagnostic criteria of the DSM-IV or the ICD9-CM equivalent, except for DSM-IV "V" codes; (2) results in (or will result in) a functional impairment that either substantially interferes with or limits the child's role or function in family, school, or community activities, or that limits the child from achieving or maintaining one or more developmentally-appropriate social, behavioral, cognitive, communicative, or adaptive skills; and (3) includes functional impairments of episodic, recurrent, and continuous duration. 22-A D.C.M.R. §1201.1.[2] Substance abuse disorders and developmental disorders are explicitly excluded from the SED diagnosis, unless co-occurring with another diagnosable SED. *Id.*

---

[1]     Although plaintiffs' Complaint refers to violations of the federal "Medicaid Act," Medicaid statutory provisions are actually found in Title XIX of the Social Security Act, codified at 42 U.S.C. § 1396, *et seq.* The EPSDT benefit is a mandatory Medicaid service.

[2]     The Diagnostic and Statistical Manual of Mental Disorders (DSM)—the manual used by clinicians and researchers to diagnose and classify mental disorders—does not offer a definition of serious emotional disturbance. *DSM Changes: Implications for Child Serious Emotional Disturbance,* Substance Abuse and Mental Health Services Administration (SAMHSA) Center

Children and youth with SED are served by the District's Department of Behavioral Health (DBH). DBH, *Mental Health and Substance Use Report on Expenditures and Services (MHEASURES)* at 1 (Jan. 2018) (cited in Compl. at 13 n.8). DBH's mission is to support prevention, treatment, resilience, and recovery for District residents with mental health disorders—including SED—through the delivery of high quality, integrated services. *Id.*

In-home and community-based services to support children with mental health conditions, including SED, generally fall into four categories:  (1) Intensive Care Coordination, (2) Crisis Response and Stabilization Services, (3) direct services available in the child's home or community, and (4) Therapeutic Foster Care.[3] U.S. Dep't of Justice, *West Virginia's Children's Mental Health System* at 9 (June 1, 2015) (cited in Compl. at 3 n.2). Together, services and supports from these four categories comprise a system of intensive community-based services (ICBS). *Id.* at 22. The District does not offer a stand-alone service referred to as ICBS, nor does it have a single provider that offers every component of ICBS. Comp. ¶ 41.

**II.**     **The District's System of ICBS for Children with Serious Emotional Disturbances Includes Intensive Case Management, Crisis Response and Stabilization Services, and Direct Community-Based Services.**

**A.**     **Intensive Care Coordination**

Intensive Care Coordination is case management that "includes assessment and service planning, accessing and arranging for services, and coordinating multiple services, including access to crisis services." *West Virginia's Children's Mental Health System* at 9. "Many children with significant mental health needs are involved in multiple systems, such as child welfare,

---

for Behavioral Health Statistics and Quality at 1 (June 2016). However, the term has been defined historically by SAMHSA and released as a Federal Register notice. *Id.*

[3]     Plaintiffs do not make any allegations regarding the District's provision of Therapeutic Foster Care. *See generally* Compl.

mental health, juvenile justice, and special education." *Id*. For these children, Intensive Care Coordination brings together services that address children's mental health conditions across systems, through a single, consistent care coordinator. *Id*.

The District, through a contractor, provides "High Fidelity Wraparound" to children with mental health disabilities. Compl. ¶ 41. "The wraparound approach is a form of intensive care coordination for children with significant mental health conditions." Centers for Medicare and Medicaid Services (CMS), *Joint CMCS and SAMHSA Informational Bulletin: Coverage of Behavioral Health Services for Children, Youth, and Young Adults with Significant Mental Health Conditions* (May 7, 2013) (cited in Compl. at 12 n.6). Assertive Community Treatment is another type of intensive care coordination offered by the District; it is typically provided to older youth, ages 18 to 21. *Id*.

### B. Crisis Response and Stabilization Services

Crisis Response and Stabilization Services, "such as mobile crisis, are accessible every day, all day, to provide an effective non-law enforcement alternative that responds when a child experiences a mental health crisis." *West Virginia's Children's Mental Health System* at 10. The District provides emergency mobile crisis response services for children and youth, called Children and Adolescent Mobile Psychiatric Services (ChAMPS), under a contract with Anchor Mental Health of Catholic Charities Archdiocese of Washington. DBH, *FY17 Performance Oversight Response* at Q18 (cited in Compl. at 13 n.7). ChAMPS administers onsite crises assessment to determine mental health stability of youth, with the goal of stabilizing youth in the community and averting inpatient hospitalization and placement disruptions. *Id*. In FY16, only 11% of ChAMPS deployments resulted in hospitalizations, including voluntary and involuntary emergency room evaluations. *Id*.

All ChAMPS calls are triaged and assessed by a licensed clinical manager. Calls are triaged according to imminent risk and prioritized by:  (1) danger to self or others, (2) availability of mental health clinician at the deployment site, and (3) linguistic need. *Id.* In FY16, response time for deployments averaged 33 minutes and in the first quarter of FY17 the response time for deployments averaged 30 minutes. *Id.*

### C.    **Direct In-Home and Community-Based Services**

Direct services are in-home and community-based services to help children live successfully in the community; such services include "educating and training the child's family about the child's condition, in-home assessments, behavioral support, individual and family therapy, and therapeutic mentoring." *West Virginia's Children's Mental Health System* at 10.

The District recently expanded its early childhood mental health consultation programs and expects those programs to continue to grow. *See FY17 Performance Oversight Response* at Q24, Q25, A26. DBH was recently awarded a SAMHSA System of Care Demonstration Grant to bolster the capacity of early childhood mental health services through the DC Social, Emotional and Early Development Program. *Id.* at Q24. One of the major grant activities is to ensure that by 2020 all Child Development Centers in the District have access to individualized early childhood mental health phone consultations. *Id.* DBH also operates a School Mental Health Program, which provided prevention, early intervention and treatment services in 64 schools in FY16 and the first quarter of FY17. *Id.* at Q25.

The most intensive direct community-based service for children is Community Based Intervention (CBI). *Id.* at Q19. CBIs are delivered in four different ways—in response to the child's needs—referred to as "levels" of CBI. *See* DBH *MHEASURES* at 12. CBI, including multi-systemic therapy and functional family therapy, is part of the District's array of services.

*See id.* at 19. To ensure timely access to care, DBH monitors system-wide data from referral to the date of the first service. *FY17 Performance Oversight Response* at Q18. In FY16, 93% of children who received CBI had their first visit within 72 hours. *Id*. at Q19.

### III.   The District's Medicaid Program Covers Mental Health Services for Children.

The Department of Health Care Finance (DHCF) implements the District's mandatory Medicaid EPSDT benefit. The District's State Medicaid Plan provides that EPSDT services are offered in accordance with statutory requirements. Ex. A, State Plan § 3.1(a)(6).[4] The State Plan explains that EPSDT services are provided "without limitation." Ex. A, Attachment 3.1-A, 4(b). In 2014, DHCF received approval from CMS for a State Plan Amendment (SPA) that "expand[s] community-based service opportunities for Medicaid-eligible children in the District." Ex. B, SPA 14-005 (Nov. 19, 2014). That SPA provides, in particular, for payment of a variety of mental health services, including many of those described above, at specified fee schedule rates. *Id*. at 5.

### STANDARD OF REVIEW

### I.   Federal Rule of Civil Procedure 12(b)(1)

Under Rule 12(b)(1), "[a] court must dismiss a case when it lacks subject matter jurisdiction." *Mykonos v. United States*, 59 F. Supp. 3d 100, 103 (D.D.C. 2014) (quoting *Randolph v. ING Life Ins. & Annuity Co*., 486 F. Supp. 2d 1, 4 (D.D.C. 2007)). In deciding a Rule 12(b)(1) motion, a court is to begin with the presumption that it lacks subject matter jurisdiction over a case. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). As the parties invoking the Court's jurisdiction, plaintiffs must establish that the Court has

---

[4]      The Court may take judicial notice of documents in the public record, including state statutes and administrative rules. *See, e.g.*, *DCIPA, LLC v. Lucile Slater Packer Children's Hosp. at Stanford*, 868 F. Supp. 2d 1042, 1048 (D. Oregon 2011) (taking judicial notice of Medicaid State Plan).

subject matter jurisdiction. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61 (1992); *see also Keepseagle v. Vilsack*, 815 F.3d 28, 32 (D.C. Cir. 2016).

In resolving a motion to dismiss for lack of subject matter jurisdiction, "the factual allegations must be presumed true, and plaintiffs must be given every favorable inference that can be drawn from them." *Mykonos*, 59 F. Supp. 3d at 103 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). "The court need not, however, accept as true 'a legal conclusion couched as a factual allegation' or make inferences that are unsupported by the facts set out in the complaint." *Id.* (quoting *Trudeau v. FTC*, 456 F.3d 178, 193 (D.C. Cir. 2006)) (other citation omitted). In addition, "a court need not limit itself to the complaint; rather, it 'may consider such materials outside the pleadings as it deems appropriate to resolve the question [of] whether it has jurisdiction in the case.'" *Toth v. Wells Fargo Bank, N.A.*, 82 F. Supp. 3d 373, 376 (D.D.C. 2015) (citations omitted).

## II.      Federal Rule of Civil Procedure 12(b)(6)

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw [a] reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. "[A] complaint [does not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 557). The Court "may consider … the facts alleged in the complaint, any documents either attached to or incorporated in the complaint

and matters of which [the Court] may take judicial notice," including administrative proceedings and court filings that are a matter of public record. *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997); *Laughlin v. Holder*, 923 F. Supp. 2d 204, 209 (D.D.C. 2013).

## ARGUMENT

### I.    Plaintiffs Lack Standing to Pursue Their Claims That the District Fails to Provide Adequate ICBS.

As an initial matter, plaintiffs lack standing to pursue their claims. "Because 'standing is an essential and unchanging part of the case-or-controversy requirement of Article III,' the finding that a plaintiff has standing is a necessary 'predicate to any exercise of [a court's] jurisdiction.'" *Delta Air Lines, Inc. v. Export-Import Bank*, 85 F. Supp. 3d 250, 260 (D.D.C. 2015) (quoting *Lujan*, 504 U.S. at 750; *Fla. Audubon Soc'y v. Bentsen*, 94 F.3d 658, 663 (D.C. Cir. 1996)). Standing requires that a plaintiff establish three requirements, "'injury-in-fact, causation, and redressability,'" and "is assessed by considering the facts at the time the complaint was filed." *Id.* (quoting *Dominguez v. UAL Corp.*, 666 F.3d 1359, 1362 (D.C. Cir. 2012)) (other citations omitted).

An injury-in-fact must be "'(a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical.'" *Campbell v. Nat'l Union Fire Ins. Co.*, 130 F. Supp. 3d 236, 249 (D.D.C. 2015). "[S]o to survive a motion to dismiss, a plaintiff must have produced at least 'general factual allegations of injury resulting from the defendant's conduct.'" *Id.* (quoting *Lujan*, 504 U.S. at 560–61). When a plaintiff seeks declaratory or injunctive relief, he "must show he is suffering an ongoing injury or faces an immediate threat of [future] injury." *City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983). Causation, in turn, "examines whether it is substantially probable … that the challenged acts of the defendant, not of some absent third

party, will cause the particularized injury of the plaintiff." *Fla. Audubon Soc.*, 94 F.3d at 663. And "[r]edressability examines whether the relief sought, assuming that the court chooses to grant it, will likely alleviate the particularized injury alleged by the plaintiff." *Id.* at 663-64.

### A.     Plaintiff M.J. Has Not Suffered an Injury-in-Fact Because She Has Been Offered ICBS But Declined Services.

Plaintiff M.J. alleges she "has never received ICBS," Compl. ¶ 51, and that she has "been hospitalized nine times," *id.* ¶ 52, as well as spent time at a psychiatric residential treatment facility in Georgia. *Id.* ¶ 49. Plaintiffs allege M.J. is "interested in receiving ICBS," but that the District has not "helped [her] family develop a plan for [her] to receive the ICBS she needs …." *Id.* ¶ 56.

M.J. lacks standing because DBH records demonstrate that in June 2018 she was offered wraparound services, but her mother declined those services. Ex. C., Patrina Anderson Decl. ¶¶ 4, 9; *see Clapper v. Amnesty Int'l, USA*, 568 U.S. 398, 416 (2013) (plaintiffs "cannot manufacture standing merely by inflicting harm on themselves …."); *Pub. Citizen, Inc. v. Trump*, 297 F. Supp. 3d 6, 38 (D.D.C. 2018). In other words, M.J. did not suffer an injury-in-fact from the District's alleged actions; in fact, M.J. has been receiving other ICBS, including CBI, during the past year. Ex. C ¶ 3.

In addition, in September 2018, M.J.'s private insurance carrier conveyed to the District that M.J.'s mother had requested wraparound services. M.J.'s referral for wraparound services was in the process of approval by DBH, pending additional information from her private insurance carrier, and services were forthcoming, when M.J.'s mother again declined the services. *Id.* ¶¶ 5–9.

Alternatively, M.J.'s claims are moot given she has refused wraparound services and therefore lacks a "legally cognizable interest in the outcome." *R.I.L-R v. Johnson*, 80 F. Supp. 3d

164, 178 (D.D.C. 2015) (citing *Powell v. McCormack*, 395 U.S. 486, 496 (1969)). And because M.J.'s claim under the ADA and Rehabilitation Act is predicated on her inability to receive *desired* ICBS, her allegations under those statutes are moot as well, given that the ostensible harm has been removed. *See, e.g.*, *Wilson v. Comm'r of Internal Revenue Serv.*, 805 F.3d 316, 321 (D.C. Cir. 2015) (case deemed moot where taxpayer was refunded "the very relief [he] ostensibly sought").

### B.      <u>Because L.R. is in DYRS Custody and Ineligible to Receive Services, She is Not Suffering an Injury From a Lack of ICBS.</u>

Plaintiff L.R. alleges she "has been hospitalized several times," and has been committed to DYRS custody since April 2015. Compl. ¶¶ 60-61. In other words, L.R. has been removed from "her home as a result of an order of adjudication or an order of disposition and place[d] in the care and custody of [DYRS]." D.C. Code § 2-1515.01(2). Plaintiffs claim L.R. "has never received ICBS," *id*. ¶ 59, but later admit she received "[community-based intervention] as well as medication management." *Id.* ¶ 63.

Because L.R. is in DYRS custody, *id*. ¶ 57, she is not currently eligible to receive services under Medicaid. *See* 42 C.F.R. § 435.1009 (federal financial participation under Medicaid is not available for individuals "who are inmates of public institutions"); *see also* Ex. D, DHCF Transmittal No. 11-30 (Oct. 30, 2011). As such, L.R. does not even fit within plaintiffs' alleged class of "Medicaid-eligible District of Columbia children," *see* Compl. ¶ 22, and cannot be suffering a concrete and ongoing injury from services the District is legally unable to provide her at DYRS. *See Spokeo v. Robbins*, 136 S. Ct. 1540, 1548 (2012) ("For an injury to be particularized, it must affect the plaintiff in a personal and individual way."). And L.R.'s potential Medicaid eligibility based upon when she leaves DYRS custody is too speculative to support standing at this juncture. *See Jones & Assocs., Inc. v. District of Columbia*, 797 F. Supp.

2d 129, 134 (D.D.C. 2011) ("Potential harms and possible placement in jeopardy are precisely the type of conjectural [and] hypothetical injuries that fail to satisfy Article III standing requirements."). So too, because plaintiffs admit her current institutionalization resulted from being ordered into DYRS custody, any alleged lack of ICBS was not the cause of her injury, if any. *See Enslin v. The Coca-Cola Co.*, 136 F. Supp. 3d 654, 666 (E.D. Pa. 2015) ("The 'fairly traceable' requirement of Article III causation has been described as 'akin to 'but for' causation.'") (quoting *Edmonson v. Lincoln Nat'l Life Ins. Co.*, 725 F.3d 406, 418 (3d Cir. 2013)).[5] Plaintiffs fail to connect any ongoing injury at DYRS to her statutory claims.

In addition, and for the reasons discussed above with respect to M.J., L.R. lacks standing to the extent plaintiffs admit she has received certain services. Compl. ¶ 63. And even construed liberally, plaintiff's allegations about the insufficiency of past services cannot support her request for prospective injunctive relief. *See Dearth v. Holder*, 641 F.3d 499, 501 (D.C. Cir. 2011) ("where the plaintiffs seek declaratory and injunctive relief, past injuries alone are insufficient to establish standing.").

### C.   University Legal Services Cannot Maintain Standing In the Absence of the Two Named Plaintiffs.

Plaintiff ULS also lacks standing if the named plaintiffs are dismissed. Plaintiffs allege that ULS has associational standing under its status as a Protection and Advocacy for Individuals with Mental Illnesses (Protection and Advocacy) organization. Compl. ¶ 15; *see* 42 U.S.C. § 10807; 42 U.S.C. § 15044(b). "To establish representational standing, an association must demonstrate that (a) its members would otherwise have standing to sue in their own right, (b) the interests it seeks to protect are germane to the organization's purpose, and (c) neither the claim

---

[5]     That plaintiffs' claim is brought as a putative class action does not change this calculus, as each named plaintiff must satisfy the requirements of Article III standing. *Spokeo*, 136 S. Ct. at 1547 n.6.

asserted nor the relief requested requires the participation of individual members in the lawsuit." *Nat'l Ass'n of Home Builders v. EPA*, 667 F.3d 6, 12 (D.C. Cir. 2011) (internal quotations omitted).

Here, and as shown above, M.J. and L.R. lack standing. As such, ULS lacks standing as well. Plaintiffs provide no additional specific, non-conclusory allegations regarding other individuals suffering injury in the District. Even assuming Protection and Advocacy organizations like ULS may sue on their own without other named individual plaintiffs, they are not absolved of Article III standing requirements or the pleading requirements of Rule 8 more generally. *See Doe v. Stincer*, 175 F.3d 879, 885 (11th Cir. 1999) (organization must "allege that one of its members or constituents has suffered an injury that would allow it to bring suit in its own right."); *see also Univ. Legal Servs., Inc. v. St. Elizabeth's Hosp.*, Civil Action No. 05-585, 2005 WL 3275915, at *4 (D.D.C. July 22, 2005). Plaintiffs speculate only that the District's provision of ICBS is insufficient because children were placed in psychiatric residential treatment facilities, Compl. ¶¶ 2-3, 10, 23, 48, but fail to provide any specific, particularized allegations regarding the harm to other children or the types of ICBS lacking in the District. *See Penn. Protection and Advocacy, Inc. v. Houston*, 136 F. Supp. 2d 353, 366 (E.D. Pa. 2001) (finding Protection and Advocacy organization must "identify a specific constituent who is being harmed by the Defendant's actions."). Moreover, to the extent plaintiffs' allegations are based on past reporting by the District or outside advocacy organizations, those allegations are insufficient to support the prospective injunctive relief they now seek. *See Nat'l Ass'n of Home Builders*, 667 F.3d at 12 ("To obtain injunctive relief in particular" association must show that at least one of its members is likely to suffer imminent, concrete injury).

## II. Plaintiffs Fail to State a Claim for a Violation of the Integration Mandate of the Americans with Disabilities Act or Rehabilitation Act.

### A. Plaintiffs Fail to Allege the District is Not Providing its Services in the Most Integrated Setting Appropriate.

Plaintiffs' allegations regarding the District's community-based services for children with SED can be placed into two groups:  (1) claims that the District is failing to provide a service plaintiffs believe is required, *see, e.g.*, Compl. ¶ 41 ("there is no services provider in the District that offers ICBS"), and (2) claims that the services the District provides are inadequate, *see, e.g.*, Compl. ¶ 42 (alleging that the District's community-based intervention programs do not "provide sufficiently intensive behavior support services"). Both sets of allegations, however, concern whether the District provides certain services, and not *where* the District provides the services. As such, plaintiffs fail to state a claim for a violation of the integration mandate of the ADA or Rehabilitation Act. *See Brown v. District of Columbia*, 322 F.R.D. 51, 55 (D.D.C. 2017) (citing *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581, 603 n.14 (1999)).

"Title II of the ADA and Section 504 of the Rehabilitation Act, along with their implementing regulations, require that public entities and programs receiving federal funds take reasonable steps to avoid administering their programs in a manner that results in the segregation of individuals with disabilities." *Id*. at 53.[6] Specifically, the ADA's implementing regulations require that "[a] public entity shall administer services, programs, and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities." 28 C.F.R. §

---

[6]     In relevant part, Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subject to discrimination by such entity." 42 U.S.C. § 12132. Section 504 of the Rehabilitation Act directs that "[n]o otherwise qualified individual with a disability … shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794.

35.130(d). The regulations define the "most integrated setting" as "a setting that enables individuals with disabilities to interact with nondisabled persons to the fullest extent possible." *Id.* The Rehabilitation Act's implementing regulations mirror those of Title II of the ADA. *See* 28 C.F.R. § 41.51(d).

In *Olmstead*—the seminal decision interpreting the integration mandate provisions—the Supreme Court "cautioned that it was not holding 'that the ADA imposes on the States a 'standard of care' for whatever medical services they render, or that the ADA requires States to provide a certain level of benefits to individuals with disabilities,' but rather, 'that States must adhere to the ADA's nondiscrimination requirement with regard to the services they in fact provide.'" *Brown*, 322 F.R.D. at 55 (quoting *Olmstead*, 527 U.S. at 603 n.14); *see also M.K. v. Sergi*, 554 F. Supp. 2d 201, 230 (D. Conn. 2008) ("the ADA does not impose on the states a standard of care for whatever services they provide to the disabled nor does it require the State to provide a certain level of benefits to individuals with disabilities"). Thus, as several circuit courts have reasoned, "where the issue is the *location* of services, not *whether* services will be provided, *Olmstead* controls." *Townsend v. Quasim*, 328 F.3d 511, 517 (9th Cir. 2002) (emphasis in original); *Rodriguez v. City of New York*, 197 F.3d 611, 618 (2d Cir. 1999); *accord Fisher v. Oklahoma Health Care Auth.*, 335 F.3d 1175 (10th Cir. 2003) (considering an integration mandate challenge to a policy that places a cap on Medicaid coverage for prescription drugs for individuals living in community based settings but not in nursing homes); *V.L. v. Wagner*, 669 F. Supp. 2d 1106 (N.D. Cal. 2009) (granting preliminary injunction for plaintiffs who brought integration mandate challenge to state's change in eligibility criteria for in-home supportive services). Otherwise, *Olmstead* provides no basis for liability.

14

Plaintiffs allege that if the District provided additional and improved services, plaintiffs would not experience recurring hospital admissions, in essence challenging both the standard of care and the level of benefits provided. *See* Compl. ¶¶ 7, 32, 48. But *Olmstead* does not stand for the proposition that states must provide disabled individuals with an opportunity to remain out of institutions, but instead that "[s]tates must adhere to the ADA's nondiscrimination requirement with regard to the services *they in fact provide.*" *Rodriguez*, 197 F.3d at 618 (quoting *Olmstead*, 527 U.S. at 603 n.14). Aside from plaintiffs' legal conclusions, *see* Compl. ¶¶ 53, 69, plaintiffs do not allege that the District is failing to administer the services it provides in the most integrated setting possible, *see* Compl. ¶¶ 41–42. Thus, plaintiffs' allegations fail to support a claim for a violation of the integration mandate, and their ADA and Rehabilitation Act claim should be dismissed.

**B.**    **M.J. Fails to State a Claim for a Violation of the Integration Mandate.**

For services a state does provide, *Olmstead* sets forth a "three-part test to determine whether a state has unjustly segregated an individual with a disability. Community placement for individuals with disabilities 'is in order' when (1) 'the State's treatment professionals have determined that community placement is appropriate,' (2) 'the transfer from institutional care to a less restrictive setting is not opposed by the affected individual,' and (3) 'the placement can be reasonably accommodated, taking into account the resources available to the State and the needs of others with mental disabilities.'" *Brown*, 322 F.D.R. at 54 (quoting *Olmstead*, 527 U.S. at 587).

In addition to the deficiencies identified above, M.J. fails to plead allegations sufficient to support that test. M.J. alleges only that she has been institutionalized and is "interested in receiving ICBS." *See* Compl. ¶¶ 49–56. She does not allege that during the times she was

hospitalized or resided at a psychiatric residential treatment facility, a community-based placement would have been an appropriate alternative—an allegation that is necessary to satisfy the first element. *See generally* Compl.; *Olmstead*, 527 U.S. at 587.

Additionally, M.J. fails to allege that her institutionalization was a result of the District refusing to provide its services in a more integrated setting. *See* Compl. ¶ 49. The generalized conclusions in the Complaint—such as plaintiffs' allegation that "virtually all children with mental health disabilities can live in their own homes, or with a foster or other family, and succeed in school," Compl. ¶ 32—are insufficient to cure the pleading deficiencies. M.J. has not alleged facts sufficient to support a finding that she, personally, has been institutionalized or is at risk of institutionalization *because* the District is failing to provide her with care in a more integrated, appropriate setting. *See Olmstead*, 527 U.S. at 587. As a result, M.J. has not stated a claim for a violation of the integration mandate.

### C.  L.R. is Institutionalized Because She is Committed to the Custody of DYRS, Not Because the District is Violating the Integration Mandate.

L.R.'s claim should be also dismissed because she cannot satisfy the first or third elements of the *Olmstead* test. First, the question of whether community placement is appropriate contemplates the most integrated settings in which the particular individual may receive his or her needed disability services. *Olmstead*, 527 U.S. at 587. But L.R.'s institutionalization is irrespective of the appropriate setting for her disability services. She has been committed to DYRS custody since April 2015. *See* Compl. ¶ 61. As a result, more integrated setting is not appropriate.

Further, because L.R. is currently committed to DYRS custody, community placement cannot reasonably be accommodated—it would be in violation of the commitment order. As a

result, L.R. also cannot satisfy the third part of the *Olmstead* test. *See Olmstead*, 527 U.S. at 587. Her integration mandate claim should be dismissed.

### III.   Plaintiffs Fail to Allege that a District Custom or Policy Violates the Federal EPSDT Requirements.

In Count II of their Complaint, plaintiffs allege that the District violates federal Medicaid provisions governing the provision of EPSDT services. But plaintiffs' claim fails to allege that the District is liable under the standard set forth in *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). To state a claim for municipal liability under Section 1983, plaintiffs must allege (1) a predicate constitutional or statutory violation, (2) a custom or policy of the District, and (3) that the District's custom or policy was the "moving force" behind the alleged constitutional violation. *Baker v. District of Columbia*, 326 F.3d 1302, 1306 (D.C. Cir. 2000) (citing *Monell*, 436 U.S. at 694 (no *respondeat superior* liability under Section 1983); *City of Canton v. Harris*, 489 U.S. 378, 389 (1989)). On each component, plaintiffs must allege specific facts sufficient to meet the facial plausibility standard under *Iqbal*, 556 U.S. at 663. The Court may not assume the truth of legal conclusions or accept "threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Williams v. Lew*, 819 F.3d 466, 472 (D.C. Cir. 2016) (citations omitted). Here, plaintiffs fail to establish a predicate statutory violation and do not allege facts sufficient to find that a District custom or policy caused the alleged violation.

### A.   Plaintiffs Do Not Allege a Violation of Statutory EPSDT Requirements and Instead Complain About the Lack of Certain Consolidated Providers.

EPSDT services are intended to "ensure that all [M]edicaid-eligible children receive regular screening, vision, hearing, dental and treatment services consistent with established pediatric standards." *John B. v. Menke*, 176 F. Supp. 2d 786, 790 (M.D. Tenn. 2001). "EPSDT is premised on the idea that early detection of problems will lead to treatment of minor problems

before they become major healthcare issues." *Id.*; *see also J.E. v. Wong*, 125 F. Supp. 3d 1099, 1104 (D. Haw. 2015); *Oklahoma Chapter of Am. Academy of Pediatrics v. Fogarty*, 366 F. Supp. 2d 1050, 1111 (N.D. Okla. 2005) (summarizing EPSDT requirements).

Federal EPSDT requirements are as follows. First, 42 U.S.C. § 1396d(a)(4)(B) requires that a state provide "early and periodic screening, diagnostic, and treatment services (as defined in subsection (r)) for individuals who are eligible under the plan and are under the age of 21." *See also* 42 U.S.C. § 1396a(a)(43)(C). Those services are defined as screening services (including a physical exam, immunizations, health and developmental health history review, and laboratory tests), vision services, dental services, hearing services, and "[s]uch other necessary health care, diagnostic services, treatment, and other measures … to correct or ameliorate defects and physical and mental illness and conditions discovered by screening services, whether or not such services are covered under the State plan." 42 U.S.C. § 1396d(r)(5); *see also* 42 C.F.R. § 440.40(b). In turn, § 1396d(a) describes a list of services which, if medically necessary, must be provided to EPSDT beneficiaries.

Plaintiffs conflate their alleged predicate statutory violation with service delivery choices not mandated by federal law. Plaintiffs' Medicaid claim hinges on their construction of the term "ICBS," Compl. ¶ 39, and their belief that a single service provider must "offer[] ICBS." *Id.* ¶ 41; *see also id.* ¶ 40 (there is no service provider in the District that offers ICBS). In other words, plaintiffs seemingly allege that the District fails to meet its Medicaid EPSDT obligations because of the lack of a single provider for the variety of services they claim must be provided.

But the requirement to provide "ICBS" through a single provider or system is found nowhere in the relevant federal statutes. Instead, one court has made clear that "[t]here is nothing in the EPSDT statutory provisions or regulations that indicates that [a] state must generally

design its Medicaid system to fund 'packages' of EPSDT services." *Katie A., ex rel. Lundin v. Los Angeles Cnty.*, 481 F.3d 1150, 1159 (9th Cir. 2007). Indeed, that court, in examining another case posing similar issues, found that what federal law governs is instead the "actual clinical interventions," not a plaintiff's desired delivery method. *Id*. at 1160 (citing *Rosie D. v. Romney*, 410 F. Supp. 2d 18, 30 (D. Mass. 2006)). Federal law mandates that a state provide to EPSDT-eligible Medicaid beneficiaries medically necessary services when required, but not in the particular manner a plaintiff desires. *See* 42 U.S.C. § 1396d(a)(1)–(29).

Based on that standard, plaintiffs do not provide factual allegations that the District is failing to provide certain required EPSDT services, and indeed contradict their allegations by stating that ICBS are offered. *See* Compl. ¶¶ 41-43. To that end, CMS approved a District SPA that "expand[s] community based service opportunities for Medicaid eligible children in the District." Ex. B. And plaintiffs themselves cite to a District report detailing the variety of mental health services provided during the past fiscal year. *See* Compl. ¶¶ 25 n.5, 43 n.8 (citing to DBH *MHEASURES* Reports).

> **B.      Plaintiffs Fail to Allege Sufficient Non-Conclusory Facts to Support Their Claim that a District Custom or Policy Caused The Alleged EPSDT Violation.**

In addition, plaintiffs' allegations are insufficient to plead a violation of a District custom or policy as required under Section 1983. As the basis of their alleged federal statutory violations, plaintiffs broadly claim that the District has failed "to provide Plaintiff children with [ICBS] … when such services are medically necessary to treat or ameliorate their mental conditions" or has caused ICBS to "be unavailable." Comp. ¶¶ 72-73. Specifically, plaintiffs allege that:  (1) M.J. has "never received ICBS, despite the District's obligation to provide her these services," and "M.J. and her mother are interested in receiving ICBS," *id*. ¶ 51, 56; and (2)

"L.R. has never received ICBS," and she "and her father are interested in her receiving ICBS, but that the District has not worked with them to arrange for her to receive these services while she has lived at home." *Id*. ¶¶ 59, 64.

"The plaintiff bears the burden of pleading the existence of a municipal custom or practice that abridges her federal constitutional or statutory rights." *Trimble v. District of Columbia*, 779 F. Supp. 2d 54, 57 (D.D.C. 2011). Here, plaintiffs allege that two children have been unable to receive the services they are "interested" in receiving. As explained above in the context of plaintiffs' standing, there is reason to doubt the accuracy of those statements. Nonetheless, even reading plaintiffs' allegations generously, they state simply that services have not been as aggressively offered as they would like; such isolated incidents do not support a custom or policy under *Monell*. *See Hamilton v. District of Columbia*, 720 F. Supp. 2d 102, 113 (D.C. Cir. 2010) ("a single instance of unconstitutional activity, without more, is insufficient to establish that a requisite custom or policy exists."). Indeed, plaintiffs describe various services that the District does offer. Compl. ¶¶ 41-43.

Moreover, it is unclear precisely what custom or policy plaintiffs are challenging, and their isolated factual allegations are insufficient to "show a 'persistent, pervasive practice, attributable to a course deliberately pursued by official policymakers,' which caused a deprivation of Plaintiffs' legal rights." *Salazar v. District of Columbia*, 954 F. Supp. 278, 324 (D.D.C. 1996) (citing *Carter v. District of Columbia*, 795 F.2d 116, 125-26 (D.C. Cir. 1986)). Plaintiffs attempt to draw conclusions from reporting by ULS, Children's Law Center, and the District. *Id*. ¶ 45-46. But plaintiffs fail to allege specific facts regarding the policy they claim the District has enacted as it relates to the named plaintiffs in this lawsuit. *See Trimble*, 779 F. Supp. 2d at 59 ("merely speculating that an unidentified policy and uncorroborated practice or custom

exists without providing any factual heft to support the allegation is insufficient to state a claim under § 1983.").

And even if plaintiffs' Complaint is read to bring a claim alleging indifference to, or failure to supervise, the provision of Medicaid services, *see* Compl. ¶ 73, it also is deficient as to facts on that count. *See, e.g.*, *Shakhnes ex rel. Shakhnes v. Eggleston*, 740 F. Supp. 2d 602, 622 (S.D.N.Y. 2010) (complaint insufficient because it "does not identify particular deficiencies in the State defendants' supervision that reflect a purposeful rather than negligent course of action.") (*affirmed in part, vacated in part in Shakhnes v. Berlin*, 689 F.3d 244 (2d Cir. 2012)). Plaintiffs rely on their own conclusions and beliefs about the inadequacy of the District's Medicaid program, rather than factual allegations supporting their claim; those allegations, however, are insufficient to meet the demanding standard to show a policy of deliberate indifference, even at this juncture. *See Harvey v. District of Columbia*, 798 F.3d 1042, 1053 (D.C. Cir. 2015) ("Only if a municipal policy was so likely to result in the violation of constitutional rights, and the need to change the policy so obvious, could policymakers of the city … have been deliberately indifferent to the need.") (citations and internal quotations omitted); *see also Reynolds v. Giuliani*, 506 F.3d 183, 196 (2d Cir. 2007) ("the extent of state defendants' ultimate success in averting injury cannot be the legal measure of its efforts to do so.").

## IV.   Defendants Mayor Bowser and Directors Royster and Turnage Should Be Dismissed From This Lawsuit Because the Claims Against Them, In Their Official Capacities, Are Duplicative of the Claims Against the District.

If any of plaintiffs' claims survive the District's motion to dismiss, the Court should dismiss Mayor Bowser and Directors Royster and Turnage from this lawsuit because the District is the real party in interest. *Lopez v. District of Columbia*, 268 F. Supp. 3d 256, 259 (D.D.C.

2017) (quoting *Atchinson v. District of Columbia*, 73 F.3d 418, 424 (D.C. Cir. 1996)) ("A section 1983 suit … against municipal officials in their official capacities is equivalent to a suit against the municipality itself.") (alteration omitted); *Proctor v. District of Columbia*, 74 F. Supp. 3d 436, 445 n.3 (D.D.C. 2014) (substituting the District for the Chancellor of the District of Columbia Public Schools (DCPS), former Chancellor, and DCPS); *Doe v. District of Columbia*, Civil Action No. 08-0656, 2008 U.S. Dist. LEXIS 110348, *1 (D.D.C. Nov. 12, 2008) (denying attempt to name mayor "in his official capacity" as "both futile" and "redundant … [as] the District is already a defendant").

## CONCLUSION

For the foregoing reasons, the Court should dismiss plaintiffs' Complaint with prejudice.

Dated:  October 3, 2018.                    Respectfully submitted,

KARL A. RACINE
Attorney General for the District of Columbia

TONI MICHELLE JACKSON
Deputy Attorney General
Public Interest Division

*/s/ Fernando Amarillas*
FERNANDO AMARILLAS [974858]
Chief, Equity Section

*/s/ Amanda J. Montee*
AMANDA J. MONTEE [1018326]
GREGORY CUMMING [1018173]
Assistant Attorneys General
441 Fourth Street, N.W., Suite 630 South
Washington, D.C.  20001
(202) 724-5691
(202) 741-8934 (fax)
amanda.montee@dc.gov

*Counsel for Defendants*