**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| M.J., et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:18-cv-1901 (EGS) |
| | ) | |
| THE DISTRICT OF COLUMBIA, et al., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS'**
**MOTION TO DISMISS THE COMPLAINT**

JUDGE DAVID L. BAZELON CENTER FOR
MENTAL HEALTH LAW
1101 15th Street NW, Suite 1212
Washington, D.C.  20005
Tel:  (202) 467-5730

DISABILITY RIGHTS DC AT UNIVERSITY
LEGAL SERVICES
220 I Street NE, Suite 130
Washington, D.C.  20002
Tel:  (202) 547-0198

NATIONAL CENTER FOR YOUTH LAW
1313 L Street NW, Suite 130
Washington, D.C. 20005
Tel.:  (202) 868-4786

SCHULTE ROTH & ZABEL LLP
901 15th Street, NW, Suite 800
Washington, D.C.  20005
Tel.:  (202) 729-7470

*Counsel for Plaintiffs*

## <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT ....................................................................................................1

FACTUAL BACKGROUND........................................................................................................3

STANDARD OF REVIEW ..........................................................................................................7

ARGUMENT .................................................................................................................................8

      I.      Plaintiffs Have Standing and the Court Has Subject Matter Jurisdiction...............8

            A.      M.J. Has Suffered an Injury in Fact and Has Standing to Pursue Her Claims. ....................................................................................................10

            B.      L.R. Has Suffered an Injury in Fact and Has Standing Despite Being under DYRS Custody. ............................................................................12

            C.      Disability Rights DC Has Standing Separate and Apart from M.J. and L.R. as D.C.'s Protection and Advocacy Organization for Individuals with Mental Illnesses and Developmental Disabilities.............................16

      II.     Plaintiffs Have Stated a Claim for a Violation of the Integration Mandate of the Americans with Disabilities Act and the Rehabilitation Act. ..........................19

      III.    Plaintiffs Have Stated a Section 1983 Claim for Failure to Provide ICBS. ..........24

            A.      Plaintiffs Allege a Violation of Statutory EPSDT Requirements..............25

            B.      Plaintiffs Have Alleged a "Custom or Policy" Sufficient to State a Claim under Section 1983.........................................................................27

      IV.    The Court Should Exercise Its Discretion to Allow the Claims Against the Individual Defendants to Go Forward. ...................................................................33

CONCLUSION............................................................................................................................34

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Nat. Ins. Co. v. FDIC*,
  642 F.3d 1137 (D.C. Cir. 2011) .............................................................................................7

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ...............................................................................................................8

*Baker v. Dist. of Columbia*,
  326 F.3d 1302 (D.C. Cir. 2000) ...........................................................................................31

*Barnhardt v. Dist. of Columbia*,
  560 F. Supp. 2d 15 (D.D.C. 2008) ........................................................................................31

*Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*,
  520 U.S. 397 (1997) ..............................................................................................................28

*Brown v. Dist. of Columbia*,
  514 F.3d 1279 (D.C. Cir. 2008) ...........................................................................................29

*Byrd v. Dist. of Columbia*,
  297 F. Supp. 2d 136 (D.D.C. 2003) ......................................................................................29

*Caesar v. U.S.*,
  258 F. Supp. 2d 1 (D.D.C. 2003) ...........................................................................................8

*Chaplaincy of Full Gospel Churches v. U.S. Navy*,
  697 F.3d 1171 (D.C. Cir. 2012) ...........................................................................................15

*Citizens for Responsibility & Ethics in Wash. v. Pruitt*,
  319 F. Supp. 3d 252 (D.D.C. 2018) ........................................................................................7

*City of Canton, Ohio v. Harris*,
  489 U.S. 378 (1989) ..............................................................................................................29

*City of St. Louis v. Praprotnik*,
  485 U.S. 112 (1988) ..............................................................................................................28

*Comm. Legal Aid Society, Inc. v. Coupe*,
  No. 15-688-GMS, 2016 WL 1055741 (D. Del. Mar. 16, 2016) ...........................................19

*Covad Comm'ns. Co. v. Bell Atl. Corp.*,
  398 F.3d 666 (D.C. Cir. 2005) ...............................................................................................8

*Cox v. Dist. of Columbia*,
  821 F. Supp. 1 (D.D.C. 1993) ............................................................................33

*Daskalea v. District of Columbia*,
  227 F.3d 433 (D.C. Cir. 2000) ...........................................................................33

*Davis v. Shah*,
  821 F.3d 231 (2d Cir. 2016) ...............................................................................21

*\*Day v. District of Columbia*,
  894 F. Supp. 2d 1 (D.D.C. 2012) ...........................................................4, 20, 22, 23

*Dearth v. Holder*,
  641 F.3d 499 (D.C. Cir. 2011) ...........................................................................15

*Disability Advocates, Inc. v. Paterson*,
  598 F. Supp. 2d 289 (E.D.N.Y. 2009) ...............................................................23

*Disability Rights New Jersey, Inc. v. Velez*,
  862 F. Supp. 2d 366 (D.N.J. 2012) ...................................................................23

*\*Doe v. Stincer*,
  175 F.3d 879 (11th Cir. 1999) ......................................................................16, 17

*Doe v. Sylvester*,
  No. CIV. A. 99-891, 2001 WL 1064810 (D. Del. Sep. 11, 2001) ......................24

*Doe v. Trump*,
  275 F. Supp. 3d 167 (D.D.C. 2017) ....................................................................7

*Dominion Cogen, Inc. v. District of Columbia*,
  878 F. Supp. 258 (D.D.C. 1995) ........................................................................34

*Dunakin v. Quigley*,
  99 F. Supp. 3d 1297 (W.D. Wash. 2015) ...........................................................22

*Dunn v. Dunn*,
  219 F.Supp. 3d 1163 (M.D. Ala. 2016) .............................................................19

*Gregorio v. Hoover*,
  238 F.Supp. 3d 37 (D.D.C. 2017) .........................................................................8

*Guggenberger v. Minnesota*,
  198 F. Supp. 3d 973 (D. Minn. 2016) ................................................................21

*Harvey v. Dist. of Columbia*,
  798 F.3d. 1042 (D.C. Cir. 2015) ........................................................................29

*Humane Soc. of the U.S. v. Hodel*,
    840 F.2d 45 (D.C. Cir. 1988) ...................................................................................17

*Hunt v. Washington State Apple Advertising Commission*,
    432 U.S. 333 (1977) ...............................................................................................17

*Indiana Protection & Advocacy Servs. Comm'n v. Commissioner,*
    *Indiana Dep't of Corr.*, 642 F. Supp. 2d 872 (N.D. Ind. 2009) ...........................18

*Jones v. Ritter*,
    587 F. Supp. 2d 152 (D.D.C. 2008) ......................................................................30

*Joseph S. v. Hogan*,
    561 F. Supp. 2d 280 (E.D.N.Y. 2008) ...................................................................23

*\*Katie A v. Los Angeles County*,
    481 F.3d 1150 (9th Cir. 2007) ..........................................................................26, 27

*Kean for Congress Committee v. FEC*,
    398 F. Supp. 2d 26 (D.D.C. 2005) ........................................................................14

*Kinvac v. Ramsey*,
    407 F.Supp. 2d 270 (D.D.C. 2006) .......................................................................33

*Lane v. Kitzhaber*,
    841 F. Supp. 2d 1199 (D. Or. 2012) ......................................................................21

*Lujan v. Nat'l Wildlife Fed.*,
    497 U.S. 871 (1990) .................................................................................................8

*Martin v. Taft*,
    222 F. Supp. 2d 940 (S.D. Ohio 2002) ..................................................................24

*Mendoza v. Perez*,
    754 F.3d 1002 (D.C. Cir. 2014) ...............................................................................8

*Monell v. Dep't of Soc. Servs.*,
    436 U.S. 658 (1978) ...............................................................................................31

*Murphy v. Minnesota Dept. of Hum. Servs.*,
    260 F. Supp. 3d 1084 (D. Minn. 2017) ..................................................................22

*Nat'l Ass'n of Home Builders v. EPA*,
    667 F.3d 6 (D.C. Cir. 2011) ...................................................................................17

*\*Olmstead v. L.C.*,
    527 U.S. 581 (1999) ...........................................................................................4, 20

*Oregon Advocacy Center v. Mink,
 322 F.3d 1101 (9th Cir. 2003) ....................................................................17, 18

Page v. Mancuso,
 999 F. Supp. 2d 269 (D.D.C. 2013) ...............................................................28

Pembaur v. City of Cincinnati,
 475 U.S. 469 (1986).........................................................................................28

Robinson v. Dist. of Columbia,
 736 F. Supp. 2d 254 (2010) ............................................................................30

Rosie D. v. Patrick,
 497 F. Supp. 2d 76 (D. Mass. 2007) ...............................................................4

*Rosie D. v. Romney,
 410 F. Supp. 2d 18 (D. Mass. 2006) ...........................................................25, 26

Ryan. v. Dist. of Columbia,
 306 F. Supp. 3d 334 (D.D.C. 2018) ............................................................27, 28

Schintzler v. U.S.,
 761 F.3d 33 (D.C. Cir. 2014)..........................................................................7

Shakhnes ex rel. Shakhnes v. Eggleston,
 740 F. Supp. 2d 602 (2d Cir. 2010) ...............................................................32

Singh v. Dist. of Columbia,
 55 F. Supp. 3d 55 (D.D.C. 2014) ................................................................28, 31

Smith v. Dist. of Columbia,
 413 F.3d 86 (D.C. Cir. 2005).......................................................................30, 31

Smith v. Fenty,
 684 F. Supp. 2d 64 (D.D.C. 2010) ..............................................................24, 25

Sorlucco v. New York City Police Dept.,
 971 F.2d 864 (2d Cir. 1992)............................................................................28

Spokeo, Inc. v. Robins,
 136 S. Ct. 1540 (2016)....................................................................................9

Townsend v. Quasim,
 328 F.3d 511 (9th Cir. 2003) ..........................................................................21

Trimble v. Dist. of Columbia,
 779 F. Supp. 2d 54 (D.C. Cir. 2011)...............................................................32

*Triplett v. Dist. of Columbia*,
108 F.3d 1450 (D.C. Cir. 1997) ...................................................................31

*United States v. Virginia*,
Civil Action No. 3:12cv59-JAG, 2012 WL 13034148 (E.D. Va. 2012) ................................22

*Univ. Legal Servs. v. St. Elizabeth's Hosp.*,
No. 1:05-cv-00585-TFH, 2005 WL 3275915 (D.D.C. July 22, 2005) ...................................18

*Warth v. Seldin*,
422 U.S. 490 (1975)...........................................................................................7, 14

*Wellington v. D.C.*,
851 F. Supp. 1 (D.D.C. 1994)...........................................................................25

*Winder v. Erste*,
No. 03-2623, 2005 WL 736639 (D.D.C. Mar. 31, 2005) ........................................34

**Other Authorities**

28 C.F.R. 35.130(d) ......................................................................................20

45 C.F.R. 84.4(b)(2)......................................................................................20

District of Columbia Department of Behavioral Health, FY17 Performance
Oversight Responses .................................................................................6

*District of Columbia Department of Health Care Finance, Policy No. HCPRA-
001-17, "Incarcerated Individuals" (June 9, 2017)..........................................13, 14

Substance Abuse and Mental Health Servs. Admin. and Center for Medicaid and
CHIP Services, "*Joint CMCS and SAMHSA Informational Bulletin: Coverage
of Behavioral Health Services for Children, Youth, and Young Adults with
Significant Mental Health Conditions*," (May 7, 2013),
https://www.medicaid.gov/federal-policy-guidance/downloads/cib-05-07-
2013.pdf ..........................................................................................................5

U.S. Dep't of Health & Human Services, *"Clarification of Medicaid Coverage
Policy for Inmates of a Public Institution,"* (Apr. 28, 2016),
https://www.medicaid.gov/federal-policy-guidance/downloads/sho16007.pdf ...................14

U.S. Dep't of Health & Human Services, *SHO # 16-007 Letter to State Health
Official* (Dec. 12, 1997), https://csgjusticecenter.org/wp-
content/uploads/2014/06/PolicyforInmatesofPublicInst1997.pdf ...........................14

U.S. Dep't of Justice, *Statement of the Department of Justice on Enforcement of
the Integration Mandate of Title II of the Americans with Disabilities Act*
(June 22, 2011), https://www.ada.gov/olmstead/q&a_olmstead.pdf ..........................20, 21, 23

*U.S. Dep't of Justice, *West Virginia Children's Mental Health System –
   Findings Letter* (June 1, 2015),
   https://www.ada.gov/olmstead/documents/west_va_findings_ltr.pdf ....................3, 4, 5, 6, 15

## PRELIMINARY STATEMENT

Plaintiffs brought this class action to remedy Defendants' ongoing failure to provide medically necessary and legally required intensive community-based services—ICBS—to children with mental health disabilities in the District of Columbia (the "District"). Plaintiffs include two individual children, M.J. and L.R.; University Legal Services (doing business as and referred to herein as "Disability Rights DC"), the Protection and Advocacy system appointed by the District to advocate for the rights of individuals with mental illnesses, which brings this action on behalf of its constituents; and the plaintiff class consisting of all Medicaid-eligible children with mental health disabilities who have been denied medically necessary ICBS and who are unnecessarily institutionalized or at serious risk of institutionalization (together with M.J. and L.R., the "Plaintiff children"). The Plaintiff children need ICBS to avoid institutionalization and improve their mental health conditions, and with such services they can live in their own homes and communities. Plaintiffs seek prospective declaratory and injunctive relief after years of inaction by Defendants, despite the efforts of Disability Rights DC and other advocates and families to convince the District to meet its obligations to the Plaintiff children.

Defendants have moved to dismiss the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), arguing that the Plaintiffs lack standing and have failed to state both an *Olmstead* integration claim under the Americans with Disabilities Act and Rehabilitation Act and a claim under 42 U.S.C. § 1983 ("Section 1983") for violations of the Medicaid Act. Defendants' arguments are meritless, and the Motion should be denied so that Plaintiffs may prove their case and Defendants' violations may be remedied as expeditiously as possible.

Defendants' standing arguments under Rule 12(b)(1) are based on misinterpretations of the Complaint and also rely on extrinsic evidence that is inaccurate and cannot support Defendants' strained interpretations. Defendants erroneously assert that named Plaintiff M.J.

declined a specific service but, even if Defendants' claims were true (and they are not),
Defendants ignore that the services offered to M.J. fall well short of what Defendants are legally
obligated to provide.  Defendants further argue that the District's custody over named Plaintiff
L.R. while she was institutionalized in a facility operated by the District after years of cycling in
and out of psychiatric facilities—itself a consequence of the absence of ICBS—deprives her of
Medicaid eligibility and thus standing to challenge Defendants' failures to ICBS.  However, in
making this argument, Defendants ignore what Plaintiffs have alleged regarding L.R.'s injuries,
which are sufficient themselves to support L.R.'s standing.  Defendants also misstate the
District's own policies, which do not provide that children lose their eligibility for Medicaid
while in custody, and which, in any event, no longer apply to L.R. because her
institutionalization at that facility has ended.  Finally, as to Disability Rights DC, Defendants
ignore Plaintiffs' allegations that Disability Rights DC has brought this action on behalf of *each*
of its constituents who are members of the plaintiff class and mistakenly argue that Disability
Rights DC does not have associational standing if named plaintiffs M.J. and L.R. lack standing.

Defendants' Rule 12(b)(6) arguments are equally meritless.  First, Defendants fatally
conflate Plaintiffs' *Olmstead* integration claim—which concerns Defendants' failure to provide
mental health treatments and care in the Plaintiff children's homes and communities rather than
in institutional settings—with Plaintiffs' independent Section 1983 claim concerning
Defendants' failure to provide ICBS when medically necessary to treat the Plaintiff children's
conditions.  Defendants also argue that their failure to provide ICBS cannot constitute a "custom
or policy," despite Plaintiffs' allegations that Defendants have knowingly and consistently failed
to provide ICBS, that Defendants have been deliberately indifferent to the Plaintiff children's
need for ICBS, and that Defendants' actions have prevented the Plaintiff children from receiving

ICBS—all of which are independently established methods of pleading Section 1983 violations. Finally, Defendants argue that the individually named District officials should be dismissed as defendants but fail to articulate any reason why their being named in this action is prejudicial or burdensome such that it warrants dismissal. Accordingly, Plaintiffs respectfully request that the Court deny Defendants' Motion in its entirety.

## FACTUAL BACKGROUND

The Plaintiff children are Medicaid-eligible children with mental health disabilities who are needlessly institutionalized, or at serious risk of institutionalization, because Defendants fail to provide the Plaintiff children with medically necessary intensive community-based services ("ICBS"). Compl. ¶ 1. Without ICBS, the Plaintiff children unnecessarily cycle in and out of institutions that do not effectively meet their needs or are placed at serious risk of such institutional placement. *Id.* ¶¶ 3, 48. Defendants have never created a functioning system for providing ICBS to District children who need and are entitled to it, thereby harming the Plaintiff children in violation of federal law. *Id.* ¶¶ 7, 23.

As Plaintiffs have alleged, ICBS requires at least three key, necessary components: intensive care coordination, intensive behavior support services, and mobile crisis services. *Id.* ¶ 39 at 3.[1] Each of these components is fundamental to the provision of ICBS, and their composite total is widely accepted as necessary to "effectively address the needs of children with mental illness while maintaining their connection to their families and communities" and "greatly reduc[ing] the rate of institutionalization" for such children. *See* Compl. ¶ 4 (quoting U.S. Dep't of Justice, *West Virginia Children's Mental Health System – Findings Letter* (June 1,

---

[1] Some children may also need therapeutic foster care to benefit from ICBS. Compl. ¶ 40.

2015) ("DOJ Letter"),[2] at 9); *see also* Compl. ¶ 39 n.6.  Without each of these components, the services provided are not ICBS, which is what the Plaintiff children need and seek; simply naming or characterizing a service or set of services as "ICBS" does not make it so.  While the District provides some services that resemble components of ICBS, it does not offer all of the services that constitute ICBS—whether through a single provider or a combination of providers—to children in the District.  *See id.* ¶¶ 7, 41-43.

The first component, intensive care coordination, is "an intensive form of case management in which a provider convenes a 'child and family team,' including the child, the child's family, service providers, and other individuals identified by the family, to design and supervise a plan that provides and coordinates services for children with mental health disabilities."  *Id.* ¶ 39.  Intensive care coordination does not alone constitute ICBS, but it is one "crucial element" of ICBS, and "[t]he absence of this service for most [children with serious emotional disturbances]"[3] is a "deficiency . . . at the root" of a state's system of care for Medicaid-eligible children.  *See Rosie D. v. Patrick*, 497 F. Supp. 2d 76, 78 (D. Mass. 2007) (cited in Compl. ¶ 39 n.6).  The District purports to provide intensive care coordination by offering a service it calls "High Fidelity Wraparound."  Compl. ¶ 41; *see also* Defendants' Memorandum of Points and Authorities in Support of Defendants' Motion to Dismiss Plaintiff's Complaint (ECF No. 21) ("Motion") at 9.  However, even if that service provides intensive care coordination consistent with the nationally-recognized model for this component of ICBS, it is

---

[2] As the Supreme Court has stated, "[b]ecause the Department [of Justice] is the agency directed by Congress to issue regulations implementing Title II [of the ADA] . . . its views warrant respect."  *Olmstead v. L.C.,* 527 U.S. 581, 597-98 (1999); *see also Day v. District of Columbia*, 894 F. Supp. 2d 1 (D.D.C. 2012) (citing the Department's guidance on the *Olmstead* decision).

[3] Like the members of the plaintiff class in *Rosie D.*, each of the Plaintiff children "have a mental health disability by virtue of having a 'serious emotional disturbance.'"  *See* Compl. ¶ 13; *Rosie D. v. Patrick*, 497 F. Supp. 2d at 76.

available to the Plaintiff children only on a very limited basis.  The District only allowed for a maximum of 94 children to receive this service in fiscal year 2018 (which runs from October 1 to September 30) and, as of June 15, 2018, only 42 District children had received it.  *See* Comp. ¶ 41.  Yet, as Plaintiffs have alleged, the need for ICBS is much greater.  *See id.* ¶ 44.  For example, over 300 children were admitted to a psychiatric hospital or residential treatment facility in the prior fiscal year, more than 100 of whom had multiple admissions.  *Id*. ¶¶ 23, 41.

The second component, intensive behavior support services, are "individualized therapeutic interventions provided on a frequent and consistent basis that are designed to improve behavior and delivered to children and families in any setting where the child is naturally located." *Id.* ¶ 39.  The components of intensive behavior support services include skills training, behavioral interventions, and (when needed) therapy, and the staff providing the services have small caseloads that permit them to work with the child and family intensively. *See Joint CMCS and SAMHSA Informational Bulletin* at 4 (cited in Compl. ¶ 39 n.6).  These services must be "of sufficient frequency, intensity, comprehensiveness and duration to address the youth and family's needs."  DOJ Letter at 22.  The most intensive behavior support service that the District offers is "Community-Based Intervention" ("CBI"), available in four different levels of intensity.  Motion at 5.  Although the District refers to two levels of this service as "Intensive Home and Community-Based Services," "CBI is not designed or supervised by a child and family team, is time-limited, and does not include sufficiently intensive behavior support services."  Compl. ¶ 42.  Accordingly, the service satisfies neither the intensive care coordination nor intensive behavior support services components of ICBS.  Similarly, while the District's "assertive community treatment" service includes some intensive behavior supports,

the District limits provision of this service to very few children, providing it to just three children in fiscal year 2017.  *See id.* ¶ 43.

The third component, mobile crisis services, involves a "mobile, onsite, in-person response, available at any time or place to a child experiencing a crisis, for the purpose of identifying, assessing, and stabilizing the situation and reducing any immediate risk of harm." *Id.* ¶ 39.  Mobile crisis services may be provided in the child's home, school, or community, *id.*, and they must include sufficient services to stabilize a youth during a crisis such that the "youth can spend the majority of his/her time living in a more integrated community setting," DOJ Letter at 22.  The District asserts that it provides mobile crisis services through its Children and Adolescent Mobile Psychiatric Services ("ChAMPS") program (*see* Motion at 4), but these services only respond to limited types of crises.  Moreover, as Plaintiffs allege, these services do not include sufficient support services to stabilize children during a crisis.[4]  Hence, they do not satisfy the mobile crisis services component of ICBS.  *See* Compl. ¶¶ 3, 39.

The District does not offer the Plaintiff children all of the required components of ICBS, which are collectively necessary to meet the Plaintiff children's mental health needs.  As a result, the Plaintiff children are deprived of the ICBS that they need in order to improve their conditions and avoid unnecessary institutionalization or the serious risk of institutionalization.

---

[4] The District's most recent data from fiscal year 2017, cited in the Complaint, reflects that ChAMPS deployments resulted in hospitalization 22 percent of the time, and 72 percent of those hospitalizations were due to involuntary emergency room evaluations.  *See* District of Columbia Department of Behavioral Health ("DBH"), FY17 Performance Oversight Response No. 18 (cited in Compl. ¶ 41 n.7).  Defendants' attempt to suggest ChAMPS deployments were more effective in avoiding hospitalization by citing to older statistics regarding fiscal year 2016 that were not cited in or incorporated by the Complaint (*see* Motion at 4) is misleading and improper at the motion to dismiss stage.

## **STANDARD OF REVIEW**

Defendants move to dismiss the Complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  *See* Motion at 6-8.  For a motion to dismiss under either rule, "the court must treat the complaint's factual allegations as true . . . and must grant the plaintiff the benefit of all inferences that can be derived from the facts alleged."  *Citizens for Responsibility & Ethics in Wash. v. Pruitt*, 319 F. Supp. 3d 252, 256 (D.D.C. 2018) (internal citation omitted).  "The pleading rules are not meant to impose a great burden upon a plaintiff . . . and [the plaintiff] must thus be given every favorable inference that may be drawn from the allegations of fact."  *Id.* (quotations omitted).

To survive a motion to dismiss pursuant to Rule 12(b)(1), Plaintiffs must "state a plausible claim that they have suffered an injury in fact fairly traceable to the actions of the defendant that is likely to be redressed by a favorable decision on the merits."  *Doe v. Trump*, 275 F. Supp. 3d 167, 192 (D.D.C. 2017) (quoting *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 913 (D.C. Cir. 2015)).  In considering whether a plaintiff has alleged Article III standing, the Court "must . . . assume that on the merits the plaintiffs would be successful in their claims," and must accept the factual allegations in the complaint as true.  *Schintzler v. U.S.*, 761 F.3d 33, 40 (D.C. Cir. 2014) (quoting *Parker v. District of Columbia*, 478 F.3d 370, 377 (D.C. Cir. 2007)); *Warth v. Seldin*, 422 U.S. 490, 501 (1975).  A plaintiff bears the burden of proof to satisfy Rule 12(b)(1), but the Court must still "assume the truth of all material factual allegations in the complaint and construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged."  *Am. Nat. Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (internal quotation marks omitted).  The Court may consider material outside of the pleadings in ruling on a motion to dismiss for lack of subject matter jurisdiction, but so long as those materials are considered only for purposes of evaluating subject

matter jurisdiction under Rule 12(b)(1), the motion to dismiss is not converted to a motion for summary judgment.  *See, e.g., Caesar v. U.S.*, 258 F. Supp. 2d 1, 2-3 (D.D.C. 2003) (Sullivan, J.).

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint, which "must contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'"  *Gregorio v. Hoover*, 238 F. Supp. 3d 37, 44-45 (D.D.C. 2017) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  The complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).  Furthermore, the court presumes that the general factual allegations in the complaint embrace those specific facts necessary to support the claim.  *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 889 (1990).  A plaintiff is "not required to plead facts sufficient to prove its allegations; rather, the complaint need only contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'"  *Covad Commc'ns. Co. v. Bell Atl. Corp.*, 398 F.3d 666, 671 (D.C. Cir. 2005) (quoting Fed. R. Civ. P. 8(a)).  The standard is such because the "issue presented by a motion to dismiss is not whether a plaintiff will ultimately prevail but whether a claimant is entitled to offer evidence to support the claims." *Covad*, 398 F.3d at 671.

As demonstrated below, Plaintiffs have pled more than enough facts for the Court to find Plaintiffs have standing and have stated claims for which relief can be granted.  Accordingly, the Court should deny Defendants' Motion in its entirety.

## ARGUMENT

### I.  Plaintiffs Have Standing and the Court Has Subject Matter Jurisdiction.

To establish subject matter jurisdiction, the Court need find that only one of the Plaintiffs has standing under Article III of the U.S. Constitution.  *Mendoza v. Perez*, 754 F.3d 1002, 1010

(D.C. Cir. 2014).  In order to have standing, a plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).  The District's Motion under Rule 12(b)(1) appears to concede the satisfaction of the second and third factors, focusing instead on a perceived lack of injury in fact.  *See* Motion at 10-11.[5]  "To establish injury in fact, a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical."  *Spokeo*, 136 S. Ct. at 1548 (internal quotation marks omitted).  The Complaint alleges that "[t]he Plaintiff children suffer dramatically curtailed life opportunities due to Defendants' continuing, longstanding failure to satisfy federal laws requiring the District of Columbia to provide medically necessary services that prevent unnecessary institutionalization."  Compl. ¶ 2.  Despite Defendants' efforts to dismiss these harms as insufficient to confer standing, Plaintiffs have alleged that the District's failure to provide them ICBS has harmed, and will continue to harm, the Plaintiff children.  *See* Compl. ¶¶ 2-5, 44-64.

In support of their Motion, Defendants have offered materials extrinsic to the Complaint to attack Plaintiffs' standing, including a declaration from a DBH employee, Patrina Anderson, that misstates facts concerning named Plaintiff M.J.  *See, e.g.,* Motion at 9, Ex. C (ECF No. 21-4) ("Anderson Decl.").  Because Defendants have offered such materials, Plaintiffs submit herewith, solely for purposes of the Court's Rule 12(b)(1) analysis, Declarations of J.J. (M.J.'s mother and next friend), and Jane Brown, Executive Director of Plaintiff Disability Rights DC,

---

[5] To the extent those factors were not explicitly conceded, there can be little dispute that the District's denial of ICBS to the Plaintiffs children is "fairly traceable" to the conduct of the District itself and that injunctive relief from this Court is likely to redress that denial.

to correct Defendants' factual misstatements and provide additional detail confirming Plaintiffs' standing.[6]

### A.    M.J. Has Suffered an Injury in Fact and Has Standing to Pursue Her Claims.

Defendants argue that M.J. has not suffered an injury in fact and therefore lacks standing because she "was offered wraparound services, but her mother declined those services" and that M.J. has been receiving "other ICBS, including CBI, during the past year."  Motion at 9. Alternatively, Defendants argue that M.J.'s claims are moot because, after allegedly declining wraparound services, she "lacks a legally cognizable interest in the outcome."  *Id.* (internal quotation marks omitted).  Defendants' attempt to contradict Plaintiffs' allegations relies on a declaration containing inaccurate information that, even if true, would not warrant dismissal.

First, even if Defendants' claims regarding the services that M.J. declined or received were true—and they are not—they do not negate M.J.'s injury in fact.  As alleged in the Complaint, "M.J. has never received ICBS" and has suffered repeated institutionalizations.  *See* Compl. ¶¶ 51-54.  Even though M.J. has received CBI services, they have been "short term," and CBI is not equivalent to the "intensive behavior support services" that are a core component of ICBS.  *See id.* ¶¶ 42, 55; *see also* Background, *supra*.  Thus, it is not surprising that while enrolled in the District's mental health system, M.J. has experienced the outcomes that Plaintiffs allege flow from denying ICBS to children who need it, including repeated institutionalizations and disruptions to her educational career.  *See* Compl. ¶¶ 51-55.

Second, Defendants' assertion that M.J.'s mother recently declined "wraparound services" is incorrect.  Defendants' argument is built entirely on second-hand information contained in Ms. Anderson's Declaration, which asserts that M.J.'s mother repeatedly declined

---

[6] Because those Declarations contain information that would reveal the identities of M.J., L.R. and/or their next friends, Plaintiffs have requested leave to file them under seal.

"High Fidelity Wraparound services," including as recently as October 2, 2018, the day before Defendants' Motion to Dismiss was filed.  *See* Anderson Decl. ¶¶ 4-10.  Ms. Anderson and/or her source are mistaken and, notably, none of her statements indicate that she spoke to M.J.'s mother directly about those purported declinations.  *See id.* ¶¶ 4, 9.

In response to the inaccurate extrinsic evidence provided by Defendants, Plaintiffs submit herewith a Declaration from M.J.'s mother, J.J.  As J.J. states, because the District did not adequately explain High Fidelity Wraparound services to her in June 2018, she initially believed they were duplicative of services M.J. had already received.  *See* Declaration of J.J. ("J.J. Decl."), ¶¶ 4-5.  As a result, J.J. stated that she did not believe they made sense for M.J.  *See id.* However, after the care manager for M.J.'s private insurer[7] explained High Fidelity Wraparound to J.J., she has consistently sought to obtain those services for M.J., including in direct conversations with Ms. Anderson.  *See id.* ¶¶ 7-15.  Notwithstanding these efforts, M.J. has not received High Fidelity Wraparound and, as recently as October 11, 2018, DBH determined that it would not provide these services to M.J. unless she fails to improve with the services that she currently receives.  *See id.* ¶¶ 14-15.  Thus, Defendants still have not provided High Fidelity Wraparound services to M.J., despite several requests for referrals by M.J.'s mother and M.J.'s service providers.  *See id.* ¶¶ 7-16.  In any event, as Ms. Anderson's declaration demonstrates, Defendants did not fulfill, and have never fulfilled, their obligations to provide ICBS to M.J.

Third, Defendants' mootness argument fails to accept as true Plaintiffs' allegation that M.J. currently wants to receive ICBS and disregards that Plaintiffs seek declaratory, prospective relief.  Defendants appear to argue that M.J. no longer has an interest in receiving ICBS because her mother allegedly turned down the High Fidelity Wraparound service *after* the Complaint was

---

[7] M.J. is eligible to receive services under Medicaid even though she also has private insurance coverage.  *See* J.J. Decl., ¶ 8.

filed.  *See* Motion at 9-10.  As explained above, however, M.J.'s mother has been and is currently seeking these services, even though the District's High Fidelity Wraparound service, alone, does not constitute ICBS.  *See* J.J. Decl. ¶¶ 7-15; *see also* Background, *supra*.  As Plaintiffs have alleged, M.J. wants, but has never received, ICBS from the District—itself a legally cognizable injury—and Defendants' ongoing failure to provide her ICBS has caused M.J. to experience unnecessary institutionalization.  *See* Compl. ¶¶ 51, 56.

      **B.**     **L.R. Has Suffered an Injury in Fact and Has Standing Despite Being under DYRS Custody.**

Defendants argue that L.R. "cannot be suffering a concrete and ongoing injury" due to a lack of ICBS because "L.R. is in [Department of Youth Rehabilitation Services ("DYRS")] custody," and therefore "she is not currently eligible to receive services under Medicaid."  *See* Motion at 10.  Defendants misstate their own policies, and, in any event, the fact that L.R. has been in DYRS custody does not negate her concrete and ongoing injury in fact.

Like many children in the District with mental health disabilities, L.R. has cycled among her home, juvenile detention facilities, hospitals, and psychiatric residential treatment facilities. *See* Compl. ¶¶ 60-61. While the District's policies concerning whether *reimbursement* from Medicaid can be sought for services it provides varies depending on whether the recipients are living in certain settings, the children's fundamental *eligibility* for Medicaid does not, and L.R. has maintained her eligibility for Medicaid throughout her placements.  She had that eligibility for Medicaid at the time the Complaint was filed and she continues to have it today.

In support of their argument that L.R. lacks standing and is not a class member, Defendants submit an October 2011 Department of Health Care Finance ("DHCF") transmittal stating that Medicaid-reimbursable services cannot be provided to children "who are under DYRS supervision *and* who are confined to" two specific DYRS-operated facilities.  *See* Motion

Ex. D (ECF No. 21-5) at 1 (emphasis added).  But this transmittal indicates only that the District does not use Medicaid funds to reimburse the costs of the care it provides to children while they are confined to those two specific facilities, not that detained children or the larger group of children under DYRS supervision lose their Medicaid eligibility.  To the contrary, Defendants' own policies state that an individual's *eligibility* for Medicaid is unaffected by that individual's confinement.  *See* Exhibit A (DHCF Policy No. HCPRA-001-17, "Incarcerated Individuals" (June 9, 2017)[8] (hereafter, "2017 DHCF Policy")) at 5 (stating that when an individual is detained, Medicaid is suspended, but "Medicaid suspension does not terminate an individual's Medicaid eligibility"); *id.* at 8 ("Medicaid beneficiaries who are inmates in a local correctional facility will maintain their Medicaid eligibility as long as they continue to meet financial and non-financial eligibility factors."); *id.* at 15 (stating that upon release from "a local detention or correctional facility, full Medicaid enrollment . . . will be reinstated provided that the beneficiary continues to meet all financial and nonfinancial eligibility requirements").[9]

Furthermore, according to Defendants' own cited policy, any limitations to the provision of Medicaid-reimbursable services apply only to periods of confinement at those two specific facilities, not to time in DYRS custody or under DYRS supervision generally.  *See* Motion Ex. D.  For most of the time L.R. has been in DYRS custody, she has been in placements, including

---

[8] As Defendants note, the Court may take judicial notice of documents in the public record, including the administrative rules and policies of DHCF.  *See, e.g.,* Motion at 6 n.4, Ex. D.

[9] *See also* U.S. Dep't of Health & Human Services ("HHS"), SHO # 16-007 Letter to State Health Official at 6 (Apr. 28, 2016), https://www.medicaid.gov/federal-policy-guidance/downloads/sho16007.pdf (hereafter, "2016 HHS Letter") ("The inmate exclusion is a general coverage exclusion; it is not an eligibility exclusion.  Incarceration does not preclude an inmate from being determined Medicaid-eligible."); HHS, "Clarification of Medicaid Coverage Policy for Inmates of a Public Institution," at 1 (Dec. 12, 1997), https://csgjusticecenter.org/wp-content/uploads/2014/06/PolicyforInmatesofPublicInst1997.pdf (hereafter, "1997 HHS Letter") (providing that the Medicaid Act "does not specify, nor imply, that Medicaid eligibility is precluded for those individuals who are inmates of a public institution.  Accordingly, inmates of a public institution may be eligible for Medicaid if the appropriate eligibility criteria are met.").

group home placements, during which there was no bar to her receiving Medicaid-reimbursable services. *See* Compl. ¶¶ 57, 60-61. Thus, throughout her time under DYRS custody, L.R. has remained eligible for Medicaid and failed to receive ICBS, making her an appropriate member of the Plaintiff class. *See* 2017 DHCF Policy at 5, 8; 2016 HHS Letter at 6; 1997 HHS Letter at 1. While L.R. has at times been confined to one of the facilities identified in the October 2011 transmittal cited by Defendants, she has since been released to a group home placement and thus is no longer institutionalized in a residential facility operated by DYRS. *See* Brown Decl. ¶ 23, Attachment A. She is therefore both Medicaid eligible and eligible to receive Medicaid-reimbursable services. Absent intervention from this Court, those services will not include the ICBS that L.R. needs, desires, and Defendants are obligated to provide, continuing L.R.'s injury.

Defendants' argument that "any alleged lack of ICBS was not the cause of [L.R.'s] injury, *if any*" (Motion at 11 (emphasis added)) reveals their misunderstanding of the Complaint and their obligations under the law. Defendants' failure to provide ICBS is *itself* an injury conferring standing, and L.R. and the other Plaintiff children need not allege additional injuries. *See Warth*, 422 U.S. at 514 ("Congress may create a statutory right or entitlement the alleged deprivation of which can confer standing to sue even where the plaintiff would have suffered no judicially cognizable injury in the absence of statute."); *see also Kean for Congress Committee v. FEC*, 398 F. Supp. 2d 26, 36 (D.D.C. 2005) (holding that "the Supreme Court's standing jurisprudence leav[es] it to Congress to create statutory rights or entitlements whose deprivation constitutes an injury for purposes of standing analysis").

In addition, Plaintiffs have alleged that L.R., like the other Plaintiff children, has suffered an injury from the violation of her rights under the Americans with Disabilities Act ("ADA") and Rehabilitation Act. As a result of being denied ICBS, the Plaintiff Children have been deprived

of services in the most integrated setting appropriate—their homes and communities.  As

Plaintiffs have alleged, Defendants could and should have provided L.R. with ICBS to prevent

her repeated institutionalizations (*see* Compl. ¶¶ 61, 69), and L.R. is at serious risk of being

institutionalized again given the unavailability of ICBS.  As the Department of Justice has

explained, "[t]he systemic failure to develop critical in-home and community-based mental

health services also places children with mental health conditions who currently live in the

community at risk of unnecessary institutionalization."  DOJ Letter at 2.  The standing of

individuals facing the threat of discriminatory conduct is settled law in this Circuit.  *See*

*Chaplaincy of Full Gospel Churches v. U.S. Navy*, 697 F.3d 1171, 1176-77 (D.C. Cir. 2012) ("In

this case, however, plaintiffs' asserted future injury does not depend solely on speculation about

[discriminatory conduct].  Instead, plaintiffs challenge specific policies and procedures . . . that

they claim have resulted in [past discrimination] and, if not ended, will continue to do so in the

future . . . .").[10]  Thus, L.R.'s allegation that she is at risk of further institutionalization unless she

receives ICBS and that she has no adequate remedy at law is sufficient, regardless of whether she

is presently living at any particular DYRS facility.

L.R. typifies the experience of the Plaintiff class *because* of her DYRS supervision,

which is a predictable, unnecessary, and unfortunate result of Defendants' failure to provide

---

[10] The D.C. Circuit's 2011 decision in *Dearth v. Holder*, which Defendants cite in arguing that "the insufficiency of past services cannot support [L.R.'s] request for prospective injunctive relief" (Motion at 11), supports a finding of standing based on an injury likely to recur in the future, informed in part based on how that policy was applied to the plaintiff in the past.  *See* 641 F.3d 499, 503 (D.C. Cir. 2011) (holding that an American citizen residing in Canada who had been denied the ability to purchase a firearm in the United States was suffering a "present and continuing" injury because of a statute barring people who lived outside the United States from purchasing a firearm, given his "stated intent to return regularly to the United States, only to face a set of laws that undoubtedly prohibit him from purchasing a firearm," and concluding that "his injury is sufficiently real and immediate to support his standing").

ICBS.  Thus, L.R. has been harmed and will be harmed again in the future due to Defendants'

ongoing failure to provide ICBS in violation of her statutory rights.

      **C.**    **Disability Rights DC Has Standing Separate and Apart from M.J. and L.R. as D.C.'s Protection and Advocacy Organization for Individuals with Mental Illnesses and Developmental Disabilities.**

Finally, Defendants argue that Disability Rights DC lacks standing if the Court finds that

M.J. and L.R. do not individually have standing to allege their claims.  *See* Motion at 11.

Although the Court need not reach Defendants' argument because M.J. and L.R. do have

standing, even if the Court were to find that they do not, Disability Rights DC would still have

standing to maintain this suit on behalf of its constituents.  Defendants' argument to the contrary

misstates the law and ignores the injuries suffered by Disability Rights DC's constituents alleged

in the Complaint.  Moreover, Plaintiffs submit herewith additional detail to remove any doubt

that other constituents of Disability Rights DC have suffered and will continue to suffer harm as

a result of Defendants' failure to provide legally mandated and medically necessary ICBS.

It is well settled that a protection and advocacy ("P&A") organization such as Disability

Rights DC has "associational standing" to advance claims on behalf of its constituents.

Disability Rights DC is a federally funded organization specifically authorized to protect the

rights of people with disabilities in the District of Columbia.  Brown Decl., ¶¶ 3-13.  Disability

Rights DC was appointed by the District to serve as its P&A system for individuals with

disabilities under the Protection and Advocacy for Individuals with Mental Illnesses Act

("PAIMI") and the Protection and Advocacy for Individuals with Developmental Disabilities Act

("PADD").  *See, e.g.,* Compl. ¶ 15; Motion at 11; *see also, e.g., Doe v. Stincer*, 175 F.3d 879,

884 (11th Cir. 1999) ("The very purpose of PAIMI was to confer standing on protection and

advocacy systems, . . . as representative bodies charged with the authority to protect and litigate

the rights of individuals with mental illness.")  Numerous courts—including the Ninth and

Eleventh Circuits—have recognized that a P&A organization like Disability Rights DC has

associational standing to bring claims on behalf of the constituents it is statutorily authorized to

represent.  *See, e.g., Oregon Advocacy Center v. Mink*, 322 F.3d 1101, 1116 (9th Cir. 2003);

*Stincer*, 175 F.3d at 884-86.  In so holding, the Ninth Circuit observed:

> . . . Congress recognized that "individuals with mental illness are
> vulnerable to abuse and serious injury," and enacted [PAIMI] to "ensure
> that the rights of individuals with mental illness are protected" and to
> assist states in establishing advocacy systems to "protect and advocate the
> rights of such individuals through activities to ensure the enforcement of
> the Constitution and Federal and State statutes." . . . We accept [the] . . .
> argument that Congress intended to confer standing to pursue suits like
> this one on organizations like [the P&A system at issue] . . . .

*Mink*, 322 F.3d at 1109–10 (citation omitted).

In finding associational standing for P&A organizations, courts apply the three factors

required by the Supreme Court in *Hunt v. Washington State Apple Advertising Commission*,

commonly known as the "*Hunt* factors."  *See* 432 U.S. 333 (1977).  Those factors evaluate: (1)

"whether at least one of [the P&A's] . . . constituents" would have personal standing to bring the

kind of claim asserted by the P&A; (2) whether the interests the organization seeks to protect are

germane to its purpose; and (3) whether adjudication of the claims requires participation of

individual constituents.  *See Mink*, 322 F.3d at 1109-14; *Stincer*, 175 F.3d at 882-87; *see also*

*Nat'l Ass'n of Home Builders v. EPA*, 667 F.3d 6, 12 (D.C. Cir. 2011) (discussing *Hunt* factors

for associational standing in non-P&A context).

Defendants appear to challenge only the first *Hunt* factor[11]—concerning whether at least

one of Disability Rights DC's constituents would have personal standing to bring the kind of

---

[11] Any challenge to Disability Rights DC's standing under the second or third *Hunt* factors
would be unavailing.  The second factor—whether the suit is "germane" to Disability Rights
DC's purpose—is an "undemanding" standard and requires "mere pertinence between litigation
subject and organizational purpose," according to the D.C. Circuit.  *See Humane Soc. of the U.S.
v. Hodel*, 840 F.2d 45, 58 (D.C. Cir. 1988).  Here, seeking to protect the rights of children with

claims asserted herein—and argue that because M.J. and L.R. lack standing, so does Disability Rights DC.  *See* Motion at 12.  Defendants' arguments are meritless.  All that Disability Rights DC must do to satisfy the first *Hunt* factor at this stage is allege that its constituents have suffered injuries and would have standing to seek redress for them.  *See, e.g., Mink*, 322 F.3d at 1112.  Courts in this District have previously found that Disability Rights DC has associational standing to bring claims on behalf of its constituents so long as it identifies its constituents and alleges they have suffered injuries.  *See Univ. Legal Servs. v. St. Elizabeth's Hosp.*, No. 1:05-cv-00585-TFH, 2005 WL 3275915, at *4-5 (D.D.C. July 22, 2005).

Plaintiffs have met those requirements.  Disability Rights DC's constituents consist of individuals with mental illness in the District, including all Plaintiff children—not just M.J. and L.R.  *See* Compl. ¶¶ 6, 15.  Defendants have disregarded the allegation in the Complaint that "[t]he named individual Plaintiffs *and members of the Plaintiff class* are constituents of Disability Rights DC."  Compl. ¶ 6 (emphasis added).  Each of those class members, like the named Plaintiffs, "[has] a mental health disability by virtue of having a 'serious emotional disturbance,'" and "has been and is being harmed because s/he has not received medically necessary intensive community-based services and is needlessly institutionalized or at serious risk of needless institutionalization."  *See, e.g.,* Compl. ¶¶ 6, 10, 13.  Thus, each has standing.

Courts have found similar allegations sufficient to satisfy the first *Hunt* factor, even in cases with no individual named plaintiffs and where no individual constituents were personally identified in the complaint.  *See, e.g., Indiana Protection & Advocacy Servs. Comm'n v.*

---

mental health disabilities is plainly pertinent to Disability Rights DC's mission as D.C.'s P&A.
*See* Brown Decl. ¶ 4.  As for the third *Hunt* factor, courts in this District and elsewhere have agreed that the participation of individual constituents as plaintiffs is not required when P&A organizations like Disability Rights DC seek system-wide reform.  *See, e.g., Univ. Legal Servs.*, 2005 WL 3275915, at *4; *Mink*, 322 F.3d at 1113.

*Commissioner, Indiana Dep't of Corr.*, 642 F. Supp. 2d 872, 879-80 (N.D. Ind. 2009) (holding

that general allegations concerning treatment of mentally ill prisoners were sufficient for P&A to

allege associational standing, and noting that the defendant "has not pointed to any provision in

the PAIMI or the Indiana statutes creating [the P&A] that could reasonably be read to require

that [the P&A] name a specific individual in bringing suit to redress violations of the rights of

individuals with mental illness"); *Comm. Legal Aid Society, Inc. v. Coupe*, No. 15-688-GMS,

2016 WL 1055741, at *3 (D. Del. Mar. 16, 2016) (rejecting argument that the complaint "fails to

establish standing" even though it did not refer to constituents by name, and stating that "the

facts alleged are sufficient to plausibly conclude that these are actual persons who could be

adversely affected by the outcome of this litigation").  Indeed, P&As such as Disability Rights

DC "need only show the high likelihood of the existence of a member who will be harmed by the

challenged policy or practice, [and] need not identify any particular member with such standing."

*See Dunn v. Dunn*, 219 F. Supp. 3d 1163, 1170 (M.D. Ala. 2016) (citing *Stincer*, 175 F.3d at

884, and *Fla. State Conf. of NAACP v. Browning*, 522 F.3d 1153, 1160 (11th Cir. 2008)).

While the law does not require that Plaintiffs allege any more than what is already in the

Complaint, to avoid any doubt raised by Defendants' attacks to the well-settled standing of

Disability Rights DC to act on behalf of its constituents, Plaintiffs submit a declaration from

Disability Rights DC's Executive Director providing further detail confirming that Disability

Rights DC has constituents in addition to M.J. and L.R. who would have standing to bring the

claims it asserts.  *See* Brown Decl. ¶¶ 18-22.

## II.    Plaintiffs Have Stated a Claim for a Violation of the Integration Mandate of the Americans with Disabilities Act and the Rehabilitation Act.

Defendants contend that Plaintiffs fail to state a claim under Rule 12(b)(6) because the

Complaint does not sufficiently allege violations of the "integration mandate" of the ADA and

the Rehabilitation Act.  Motion at 13-17.  However, Plaintiffs adequately allege claims under the integration mandate, commonly known as "*Olmstead* claims."

Plaintiffs allege that Defendants have violated the ADA and the Rehabilitation Act "by failing to provide them services in the most integrated setting appropriate to their needs." Compl. ¶¶ 32, 69.  Both laws prohibit unjustified segregation in institutions of individuals with disabilities.  *See* 28 C.F.R. 35.130(d) (ADA Title II regulation); 45 C.F.R. 84.4(b)(2) (Rehabilitation Act).  Following the Supreme Court's decision in *Olmstead v. L.C.,* 527 U.S. 581 (1999), the requirement that covered entities provide services in the most integrated setting appropriate has been referred to as the "integration mandate."  *See*, *e.g.*, *Day v. District of Columbia*, 894 F. Supp. 2d 1, 2, 5-7 & n.11 (D.D.C. 2012).  In *Olmstead*, the Supreme Court held that governmental entities are required to provide community-based services to individuals with disabilities when: (1) such services are appropriate; (2) the individuals do not oppose community-based services; and (3) the individuals' placement in a community-based setting can be reasonably accommodated, taking into account the resources available to the entity and the needs of others who are receiving services from the entity.  *See Olmstead*, 527 U.S. at 607.[12] Plaintiffs have alleged all three elements of an *Olmstead* claim.

Defendants raise a number of challenges to the allegations concerning Plaintiffs' *Olmstead* claims.  First, Defendants contend that Plaintiffs have not challenged the *location* in which services are provided as required by *Olmstead*, but rather *whether* the District provides required services.  *See* Motion at 13-14 (citing *Olmstead*, 527 U.S. at 603 n.14.).  Defendants are wrong:  Plaintiffs allege that they are unnecessarily institutionalized, or must cycle in and out of

---

[12] *See also* Statement of the Department of Justice on Enforcement of the Integration Mandate of Title II of the Americans with Disabilities Act and *Olmstead v. L.C.*, 2 (June 22, 2011) ("DOJ *Olmstead* Guidance"), https://www.ada.gov/olmstead/q&a_olmstead.pdf.

institutions, to receive services because Defendants do not provide ICBS to them at home or in their communities. *See* Compl. ¶¶ 1, 3, 10, 25, 32-33, 38, 44, 48, 49-52, 59-61, 69. Such allegations are well established as sufficient to state claims under *Olmstead*. *See Guggenberger v. Minnesota*, 198 F. Supp. 3d 973, 1029 (D. Minn. 2016) (denying motion to dismiss where plaintiffs allege "they lack specific services . . . which would increase their ability to live, work, and access the community in the most integrated setting appropriate"); *Lane v. Kitzhaber*, 841 F. Supp. 2d 1199, 1208 (D. Or. 2012) (holding allegations that plaintiffs were denied community-based services, "with the result of unnecessarily segregating them," were sufficient).

While Plaintiffs have alleged a violation of the Medicaid Act for failure to provide ICBS (*see* Section III, *infra*), "[a] state's duties under the ADA are wholly distinct from its obligations under the Medicaid Act." *Davis v. Shah*, 821 F.3d 231, 264 (2d Cir. 2016).[13] That Plaintiffs have asserted a distinct Section 1983 claim for failure to provide services as required by the Medicaid Act does not mean, as Defendants seem to argue, that Plaintiffs have not also alleged an *Olmstead* violation: the most integrated settings appropriate for Plaintiffs are *not* the institutions where they must go to receive mental health treatments and care in Defendants' system because they are denied ICBS, but in their own homes and communities with ICBS. Compl. ¶ 48 ("[T]he Plaintiff children . . . could and should have been served in their own homes, or in another family or foster home, with ICBS."); *see also id.* ¶¶ 5, 32. Defendants argue those allegations are "generalized conclusions" and "insufficient," but courts have repeatedly found similar allegations sufficient to state an *Olmstead* claim. *See, e.g., United*

---

[13] *See also Townsend v. Quasim*, 328 F.3d 511, 518 n.1 (9th Cir. 2003) (integration claim does not require "reconcil[ing] the ADA with the Medicaid Act"); DOJ *Olmstead* Guidance at 5 ("A state's obligations under the ADA are independent from the requirements of the Medicaid program. . . . The Medicaid Act does not exempt the state from serving additional people in the community to comply with the ADA or other laws.").

*States v. Virginia*, Civil Action No. 3:12cv59-JAG, 2012 WL 13034148, at \*4-5 (E.D. Va. 2012) (holding that a "[w]ell-pleaded" complaint for *Olmstead* violations contended that "the vast majority, and likely all," of the individuals in the state's facilities for persons with developmental disabilities "can benefit from . . . appropriate community-based services").

Second, Defendants contend that the named Plaintiffs do not adequately allege that "a community-based placement [is] an appropriate alternative" to their institutionalization.  Motion at 15-16.  However, Plaintiffs allege that the receipt of ICBS in homes and communities is not only an appropriate alternative to institutionalization, it is *necessary* to avoid institutionalization. *See, e.g.,* Compl. ¶¶1, 3, 10, 25, 37-38, 48.  Plaintiffs specifically allege that they could live in their own homes and communities with ICBS, but instead have been institutionalized in order to receive mental health treatments and care.  *See, e.g.,* Compl. ¶ 5.  Such allegations state an *Olmstead* claim.  Furthermore, as this Court and others have repeatedly held, Plaintiffs need not allege that the District's own (or any other) treatment professionals have determined that ICBS is appropriate for the Plaintiffs.  *See*, *e.g.*, *Day*, 894 F. Supp. 2d at 23-24 (denying District's dismissal motion because "whether community-based treatment is appropriate for a particular individual is a factual question").[14]

Third, Defendants also fault Plaintiffs for not specifically alleging that M.J.'s institutionalization "was a result of the District refusing to provide its services in a more integrated setting."  Motion at 16.  Yet, that is precisely what Plaintiffs have alleged—that the

[14] *See also Murphy v. Minnesota Dept. of Hum. Servs.*, 260 F. Supp. 3d 1084, 1116 (D. Minn. 2017) (failure to plead that state's treatment professionals determined eligibility was not a "material pleading deficiency"); *Dunakin v. Quigley,* 99 F. Supp. 3d 1297, 1318, n.8 (W.D. Wash. 2015) (failure to allege eligibility determinations by state's professionals "does not render [Plaintiff's] complaint insufficient"); *Joseph S. v. Hogan*, 561 F. Supp. 2d 280, 290-91 (E.D.N.Y. 2008) (same, citing *Fisher v. Oklahoma Health Care Auth.*, 335 F.3d 1175, 1181 (10th Cir. 2003)).

Plaintiff children are institutionalized or at serious risk of institutionalization because they have been denied ICBS, which by definition is delivered in the most integrated setting for the Plaintiff children:  their own homes and communities.  This Court also has made clear that Plaintiffs' allegations that the District provides, administers, and/or funds the existing service system in which Plaintiffs are unnecessarily institutionalized (*see* Compl. ¶¶ 7, 38-48) are sufficient to state an *Olmstead* claim.  *See Day*, 894 F. Supp. 2d at 22 (holding that to state an *Olmstead* claim, "plaintiffs do not need to allege that the District 'caused' plaintiffs' placement in a nursing facility," as allegations that "the District provides, administers and/or funds the existing service system" in which the plaintiffs are unnecessarily institutionalized are sufficient).[15]

Finally, Defendants contend that Plaintiffs do not sufficiently allege that L.R.'s community placement can be reasonably accommodated, because she is "currently committed to DYRS custody."  Motion at 16.  But, as discussed above, L.R. already has been released into a community-based placement.  *See* Brown Decl., Attachment A.  Even if she had not been, commitment to DYRS custody does not mean that L.R.'s receipt of ICBS cannot be reasonably accommodated.  To the contrary, discharge planning while confined in a DYRS-operated facility requires identification of and connection to ICBS to enable a successful transition back to the

---

[15] *See also, e.g., Disability Rights New Jersey, Inc. v. Velez*, 862 F. Supp. 2d 366, 373 (D.N.J. 2012) (state's contention that plaintiff must show "that the State 'caused the harm'" mischaracterizes ADA' prohibition on disability discrimination; ADA does not isolate specific illegal conduct from "overall enabling state construct"); *Disability Advocates, Inc. v. Paterson*, 598 F. Supp. 2d 289, 319 (E.D.N.Y. 2009) (plaintiffs adequately allege ADA integration claim because state officials "plan, fund and administer the State's existing service system such that more than 12,000 adults are receiving the State's services" in institutions); DOJ *Olmstead* Guidance at 3 ("[A] public entity may violate the ADA's integration mandate when it:  (1) directly or indirectly operates facilities and/or programs that segregate individuals with disabilities; (2) finances the segregation of individuals with disabilities in private facilities; and/or (3) through its planning, service system design, funding choices, or service implementation practices, promotes or relies upon the segregation of individuals with disabilities in private facilities or programs").

community.  Furthermore, Plaintiffs have adequately alleged that compliance with the integration mandate, including providing ICBS to L.R., would not work a fundamental alteration to the District's behavioral health service system.  Compl. ¶ 70.  Plaintiffs need not allege more to move forward with their *Olmstead* claims.  *See*, *e.g.*, *Martin v. Taft*, 222 F. Supp. 2d 940, 972 (S.D. Ohio 2002) ("[W]hether requested relief would entail a fundamental alteration is a question that cannot be answered in the context of a motion to dismiss . . . ."); *Doe v. Sylvester*, No. CIV. A. 99-891, 2001 WL 1064810, \*6 (D. Del. Sep. 11, 2001) ("[u]ltimate factual determinations" regarding reasonableness of requested modification are "not for the court to decide in the context of a motion to dismiss").

## III.    Plaintiffs Have Stated a Section 1983 Claim for Failure to Provide ICBS.

Defendants argue that the Complaint fails to adequately allege a Section 1983 claim for violations of the Medicaid Act.  Motion at 17.  In this Circuit, there is a two-factor test for the sufficiency of a claim for municipal Section 1983 liability,[16] commonly known as the *Baker* test: "First, the court must determine whether the plaintiff establishes a predicate constitutional or statutory violation.  If so, the court then determines whether the complaint alleges that a custom or policy of the municipality caused the violation."  *Smith v. Fenty*, 684 F.Supp. 2d 64, 67 (D.D.C. 2010) (citing *Baker v. Dist. of Columbia*, 326 F.3d 1302, 1306 (D.C. Cir. 2000)). Plaintiffs have sufficiently alleged both elements.

---

[16] Defendants argue that Plaintiffs have failed to state a claim for municipal liability.  *See* Motion at 17.  Plaintiffs respond to Defendants' "municipal liability" argument herein but note that, when it comes to administering its Medicaid program, the District of Columbia is more like a state than a city.  Medicaid is a joint federal/state program that in some jurisdictions, because of a lack of statehood, are administered by "non-states" such as the District.  Thus, it is unclear that Defendants' "municipal liability" argument is the correct standard to evaluate Plaintiffs' Section 1983 claim.

### A.      Plaintiffs Allege a Violation of Statutory EPSDT Requirements.

Plaintiffs have satisfied the first prong of the *Baker* test because the Complaint states a

claim for a "predicate constitutional or statutory violation."  *Smith v. Fenty*, 684 F.Supp. 2d at

67.  Specifically, Plaintiffs state that Defendants have failed to provide Plaintiffs with medically

necessary ICBS in violation of the EPSDT requirements of the Medicaid Act.  *See* Compl. ¶¶ 38-

43.  Such a violation is actionable under Section 1983.  *See Wellington v. D.C.*, 851 F.Supp. 1, 6

(D.D.C. 1994).

Defendants have misconstrued Plaintiffs' Section 1983 claim.  First, Defendants argue

that Plaintiffs have alleged that "a single provider" must provide ICBS.  Motion at 18 (citing

Compl. ¶ 4).  That is not true.  Plaintiffs do not allege that a single provider must offer all the

components of ICBS to each class member, but rather that all components of ICBS must actually

be offered and that the District fails to do so.  *See* Compl. ¶¶ 38-43.  The District has failed to

make all of the essential components of ICBS available—either through a single provider or

multiple providers—in violation of the Medicaid Act.  *See id.*

Second, the Defendants appear to argue that the services the District provides *do*

constitute ICBS, describing its community-based intervention and High Fidelity Wraparound

services interchangeably with the term "ICBS," and arguing—incorrectly—that Plaintiffs have

"stat[ed] that ICBS [is] offered."  Motion at 19; *see id.* at 9 (equating wraparound services and

CBI with ICBS).  "Rather than enter into [a] semantic debate," the Court must "look[] behind the

phrase to the array of actual clinical interventions that constitute, in the terms of the Medicaid

statute, 'medically necessary' services for class members."  *Rosie D. v. Romney*, 410 F. Supp. 2d

18, 30-31 (D. Mass. 2006).  No matter what the District calls its services, Plaintiffs have alleged

that Defendants do not make available all three critical components of ICBS—intensive care

coordination, intensive behavioral support services, and mobile crisis services—to the hundreds

of children in the District for whom the services are medically necessary, and Plaintiffs have further explained that the services the District *does* provide are insufficient.  *See* Compl. ¶¶ 23, 41-44.  Despite Defendants' efforts to equate those limited services with ICBS as described in the Complaint, Plaintiffs' factual assertions, presumed accurate for purposes of a motion to dismiss, are sufficient to state a claim for a violation of the Medicaid Act's EPSDT requirements.

Last, the District argues that the Medicaid statute and regulations impose no structural requirements on how it provides the EPSDT services required by law and that Plaintiffs have improperly challenged the District's failure to "bundle" or "package" the necessary services in a particular manner.  *See* Motion at 18-19.  To the contrary, Plaintiffs allege simply that Defendants have failed to provide effective ICBS to eligible children in the District.  Plaintiffs' Complaint does not take a position as to whether or not any "bundling" of services is necessary, even though the Ninth Circuit in *Katie A.*, cited by the District in its Motion, explicitly recognized the authority of courts to require the "bundling" of services if necessary to ensure that all of the services are offered effectively:

> The court should have first determined whether the State is meeting its legal obligation under the EPSDT provisions to provide all individual health services that fall under the categories listed in § 1396d(a).  *Then,* if it found that the State is failing to provide individual health services effectively, the court should have determined *whether the failure could only be remedied by ordering the State to fund the individual services as a single "bundle."*

*Katie A v. Los Angeles County*, 481 F.3d 1150, 1161 (9th Cir. 2007) (emphases added).[17]

Although the District suggests that it has *carte blanche* to determine the manner in which it provides the services required by the EPSDT provision of the Medicaid Act, a key obligation of

---

[17] *See also Rosie D. v. Romney*, 410 F. Supp. 2d at 53 ("[T]he EPSDT provisions of the Medicaid statute require provision of adequate in-home behavioral support services . . . [t]his *bundle of in-home supports* must also include crisis services, available on short notice and designed to minimize the need to remove the child from the home.") (emphasis added).

states is to "ensure that the EPSDT services provided are reasonably effective."  *Katie A*, 481 F.3d at 1159.  Obviously, Defendants are not "effectively" providing ICBS when they are not providing it at all.

### B.   Plaintiffs Have Alleged a "Custom or Policy" Sufficient to State a Claim under Section 1983.

Defendants also contend that Plaintiffs fail to allege that a "custom or policy" of the District is the cause of Defendants' Medicaid Act violations.  Motion at 19-20.  There are several ways in which a plaintiff may allege the existence of a custom or policy under Section 1983: "'(1) the explicit setting of a policy;' (2) 'the action of a policy maker within the government;' (3) 'the adoption through a knowing failure to act by a policy maker of actions . . . that are so consistent that they have become custom;' or (4) 'the failure of the government to respond to a need . . . in such a manner as to show deliberate indifference to the risk that not addressing the need will result in [statutory] violations.'"  *See Ryan. v. Dist. of Columbia*, 306 F. Supp. 3d 334, 341 (D.D.C. 2018) (quoting *Blue v. Dist. of Columbia*, 811 F.3d 14, 19 (D.C. Cir. 2015)). Plaintiffs allege that Defendants have adopted a custom and policy of failing to provide medically necessary ICBS in three independently sufficient ways: (a) "knowingly and consistently failing to provide" necessary medical services in violation of the Medicaid Act; (b) exhibiting "deliberate indifference to the Plaintiff children's rights under the Medicaid Act;" and (c) "tak[ing] actions" to cause "medically necessary ICBS to be unavailable to Plaintiff children." Compl. ¶ 73.[18]  Each of these allegations satisfies the requirement for a custom or policy and is sufficient to state a Section 1983 claim.

---

[18] Defendants' contention that "it is unclear precisely" which category of custom or policy Plaintiffs allege (Motion at 20) is insufficient for dismissal, particularly where the Complaint alleges that the failure to provide ICBS is a custom or policy of Defendants and identifies three grounds for such finding that are consistent with tests applied by courts in this District.  *See*

First, Plaintiffs have sufficiently alleged that Defendants knowingly failed to provide medically necessary ICBS to the Plaintiff children.  The "knowing failure to provide" standard set forth in *Baker* is also known as "custom or usage."  *See, e.g., Singh v. Dist. of Columbia*, 55 F. Supp. 3d 55, 75 (D.D.C. 2014).  A municipality's practices become "custom or usage" through the consistent conduct of the municipality's policymakers.  *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986) ("If the decision to adopt [a] particular course of action is properly made by [a] government's authorized decisionmakers, it surely represents an act of official government 'policy' as that term is commonly understood.")[19]  Absence of an explicit policy does not prevent a court from finding a municipal's practices to constitute "custom or usage."  *See, e.g., Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 403-404 (1997) (holding that "an act performed pursuant to a 'custom' that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law").

Not only does the Complaint allege Defendants' consistent failure to provide ICBS, it identifies numerous occasions in which Defendants were notified of deficiencies in their service system for the Plaintiff children through the efforts of families and advocacy groups, Defendants' own data, and Defendants' discussions with Plaintiffs' counsel.  *See* Compl. ¶¶ 7-8,

*Ryan*, 306 F. Supp. 3d at 341 (holding that a complaint must be read "liberally" and "assume" the theory of custom or policy that a plaintiff "intends to establish.")

[19] *See also Page v. Mancuso*, 999 F. Supp. 2d 269, 284 (D.D.C. 2013) (holding that "practices so persistent and widespread as to practically have the force of law" may constitute a "custom or practice"); *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) ("a widespread practice" can be "custom or usage" even if  it is "not authorized by written law or express municipal policy"); *Sorlucco v. New York City Police Dept.*, 971 F.2d 864, 870-71(2d Cir. 1992) (holding that "deprivations [of rights are] actionable … even though such custom has not received formal approval through the body's official decisionmaking channels.  So long as the discriminatory practices … are persistent and widespread, they could be so permanent and well settled as to constitute custom or usage with the force of law, and thereby generate municipal liability") (internal citations and quotations omitted).

44-48.  Despite these warnings that Defendants were failing to provide medically necessary services, Defendants did not remedy the problem.  *See id.*  The consistent failure to respond to advocates' admonitions alone establishes that Defendants have adopted a custom or practice that violates the Plaintiff children's Medicaid rights.

Second, Plaintiffs have alleged that Defendants were deliberately indifferent to Plaintiffs' Medicaid rights.  Deliberate indifference is "determined objectively, by analyzing whether the municipality knew or should have known of the risk of . . . violations, and yet failed to respond as necessary."  *Byrd v. Dist. of Columbia*, 297 F. Supp. 2d 136, 139 (D.D.C. 2003) (internal quotation marks omitted); s*ee also City of Canton, Ohio v. Harris*, 489 U.S. 378, 392 (1989) (holding that claims regarding failure to administer a system are "cognizable" under Section 1983 where they "reflect[] deliberate indifference to the constitutional rights" of citizens).

For example, in *Brown v. District of Columbia*, the D.C. Circuit held that the District of Columbia "knew or should have known of the risk of constitutional violations" where the District was on notice of the plaintiff's "serious medical needs" because the plaintiff had filed grievances and "informed [the District] of his medical needs."  514 F.3d 1279, 1284 (D.C. Cir. 2008).  Similarly, in *Harvey v. Dist. of Columbia*, the D.C. Circuit affirmed summary judgment of a Section 1983 claim against the District, concluding "that the District had a custom or policy of deliberate indifference to the needs of the intellectually disabled," and "knew that its 'entire mental retardation and developmental disabilities system was fundamentally unable to deliver even the most basic services.'"  798 F.3d. 1042, 1054 (D.C. Cir. 2015).  In reaching that conclusion, the court noted that the District "has a longstanding practice of deliberate disregard of the medical needs of involuntarily committed mental patients."  *See id.* at 1053.

Here, Defendants are well aware of the serious needs of Plaintiffs M.J. and L.R., in particular given that Defendants have access to Plaintiffs' behavioral health records, including the records of their institutionalization. *See* Compl. ¶¶49-63. Defendants also should have been aware of the serious medical needs of M.J., L.R., and the other Plaintiff children based on their cycling in and out of residential treatment facilities, hospitals, and detention centers, and receipt of insufficient services from District providers. *See* Compl. ¶¶ 3, 41-62. Furthermore, large numbers of these children have been in the custody and/or care of Defendants and their contracted providers, making Defendants directly aware of their specific needs. *See Smith v. Dist. of Columbia*, 413 F.3d 86, 94 (D.C. Cir. 2005) (holding that the District owes a duty of care to youths placed in its custody involuntarily). Plaintiffs also cite to numerous public reports throughout the Complaint—including information published by the District and a 2015 report issued by Plaintiff Disability Rights DC based on a year of speaking with stakeholders and reviewing the District's policies and practices closely—that demonstrate Defendants' awareness of the need for comprehensive community-based care, and the inadequacy of the disjointed services offered by the District, resulting in harm to the Plaintiff children. *See* Compl. ¶¶ 23, 39, 41, 43, 45-56. These reports demonstrate that Defendants either were aware or should have been aware of the critical importance of ICBS and the lack of those necessary services in the District. *See, e.g., Jones v. Ritter*, 587 F. Supp. 2d 152, 157-58 (D.D.C. 2008) (denying motion to dismiss Section 1983 claim where plaintiff alleged the District was deliberately indifferent in failing to train police officers when it was on notice of its training deficiencies and failed to act).

Accordingly, Defendants' failure to appropriately administer the District's Medicaid system is actionable because they have acted with deliberate indifference to the Medicaid rights of the Plaintiff children and, as a result, harmed them. *See Robinson v. Dist. of Columbia*, 736 F.

Supp. 2d 254, 264 (2010) ("The failure to [act or oversee a system] can constitute a policy or custom if it amounts to 'deliberate indifference' towards the constitutional rights of persons in its domain").[20]

Third, Plaintiffs have sufficiently alleged that Defendants have taken actions that have deprived Plaintiff children of their rights under the Medicaid Act.  A municipality is liable when its policymakers take actions to adopt a custom or practice that deprives individuals of statutory rights.  *See Triplett v. Dist. of Columbia*, 108 F.3d 1450, 1453 (D.C. Cir. 1997) (holding that acts by "persons who have 'final policymaking authority' count" as actions taken by a municipality).  Plaintiffs allege that Defendants took steps to limit the Plaintiff children's access to services that resemble components of ICBS by limiting enrollment or their duration.  Compl. ¶¶ 41-43.  Plaintiffs also allege that Defendants have relied on institutional care rather than ICBS in serving children who need intensive services.  *See* Compl. ¶¶ 3, 11-12, 22-23, 25, 48, 49-65, 69.  Both actions by Defendants have deprived the Plaintiff children of their Medicaid rights.

Defendants argue that the standard to demonstrate a custom or practice is "demanding."  *See* Motion at 21.  However, the cases Defendants cite in support are factually inapposite as they principally concern whether a municipality can be held vicariously liable for the actions of its agents, not whether a consistent failure to provide services rises to the level of a "custom or policy."  *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978) (holding that "a municipality cannot be held liable solely because it employs a tortfeasor—or, in other words, a

---

[20] *See also Smith v. Dist. of Columbia*, 413 F.3d 86, 98-104 (D.C. Cir. 2005) (holding that the District acted with deliberate indifference in failing to provide a comprehensive system for selecting and monitoring service providers for "delinquent youths"); *Baker v. Dist. of Columbia*,, 326 F.3d 1302, 1307 (D.C. Cir. 2000); *Singh v. Dist. of Columbia*, 55 F. Supp. 3d at 76; *Barnhardt v. Dist. of Columbia*, 560 F. Supp. 2d 15, 17-19 (D.D.C. 2008) (denying defendants' motion to dismiss Section 1983 claims on grounds that plaintiffs had adequately alleged deliberate indifference where plaintiffs alleged constitutional violations arising from a failure to supervise and administer a system).

municipality cannot be held liable under Section 1983 on a *respondeat superior* theory"); *Shakhnes ex rel. Shakhnes v. Eggleston*, 740 F. Supp. 2d 602, 621-23 (2d Cir. 2010) (holding that state level defendants were not liable for the actions of city agencies and individual employees concerning failure to hold Medicaid appeal hearings where defendants were not aware of the problem).  Here, Plaintiffs do not allege that they have been harmed by the discretionary decisions of a low-level employee, but rather by the District's wholesale failure to provide necessary Medicaid services to hundreds of children.

Other cases cited by Defendants involve plaintiffs who alleged the existence of "policies" without making factual allegations as to how those "policies" are applied.  For example, in *Trimble v. District of Columbia*, the plaintiff alleged that defendants had "one or more policies, practices, and customs which result[ed]" in a constitutional violation, but the plaintiff did "not name or identify the policies, practices, or customs."  *See Trimble v. Dist. of Columbia*, 779 F. Supp. 2d 54, 59 (D.C. Cir. 2011).  Here, the District has adopted a custom or practice of not providing services which it knows or should know are necessary for the care of hundreds of children with mental health disabilities.  Plaintiffs have not alleged that some abstract custom exists, but rather, have clearly stated that no system of providing ICBS exists in the District despite the known need for ICBS.  *See* Compl. ¶¶ 3-5, 41-46, 71-73.  That absence is a custom. Plaintiffs also do not argue that only certain individuals are denied a particular statutory right while others are afforded that right.  Rather, plaintiffs assert that all D.C. children in need of ICBS are being denied ICBS.  *See id.*  Although some children receive "a limited array of services on a limited basis with limited effect" (Compl. ¶ 7), *none* of the Plaintiff children receive each of the essential services that the District concedes constitutes ICBS (*see* Motion at 3).  That no child receives ICBS or has ever received all necessary ICBS services from

Defendants qualifies as a "persistent . . . practice." *See Cox v. Dist. of Columbia*, 821 F. Supp. 1, 17 (D.D.C. 1993).  Plaintiffs thus have sufficiently pled that Defendants' actions, inaction, and indifference have caused the Plaintiff children to be denied their Medicaid right to medically necessary services in violation of Section 1983.

## IV.    The Court Should Exercise Its Discretion to Allow the Claims Against the Individual Defendants to Go Forward.

Finally, Defendants contend that Plaintiffs' claims against Defendants Bowser, Royster, and Turnage should be dismissed because such claims are duplicative of claims against the District of Columbia.  *See* Motion at 21-22.  Defendants Bowser, Royster, and Turnage are sued in their official capacities because they are responsible for the District's children's behavioral health system, its health care finance system, and its compliance with the ADA, the Rehabilitation Act, and the Medicaid Act.  Compl. ¶¶ 17-19.  They also will be responsible for remedying the District's violations upon a finding by this Court that the requested prospective declaratory and injunctive relief is necessary.

"[I]t is not uncommon for civil rights complaints to name both the [District] and an officer charged in his or her official capacity." *Daskalea v. District of Columbia*, 227 F.3d 433, 448 (D.C. Cir. 2000).  Although claims against the District's officers are sometimes merged into claims against the District itself, courts do permit such claims to go forward against individual officers in suits such as these.  *See, e.g., Kinvac v. Ramsey*, 407 F. Supp. 2d 270, 273 (D.D.C. 2006) (denying motion to dismiss District's Police Chief as a duplicative defendant in Section 1983 action), *abrogated on other grounds by Harvey v. Kasco*, 109 F. Supp. 3d 173 (D.D.C. 2015); *Winder v. Erste*, No. 03-2623, 2005 WL 736639, *5 (D.D.C. Mar. 31, 2005) (denying motion to dismiss acting Superintendent of D.C. Public Schools as defendant from Section 1983 action) (citing *Monell*, 436 U.S. at 691 n.55).  Plaintiffs are aware of no controlling precedent

requiring any such dismissal, and Defendants identify no reason why permitting the claims to continue against the individual defendants should be dismissed other than that they are cumulative.  *See Dominion Cogen, Inc. v. District of Columbia*, 878 F. Supp. 258, 264 n.5 (D.D.C. 1995) ("so far as . . . this court's research reveals, there is no reason the plaintiffs may not name particular [District officials] in their official capacities, if they so choose").

Plaintiffs named the individual officials as defendants to ensure that the officials responsible for the systemic violations of federal law described in their Complaint remedy the District's violations, and that these remedies are coordinated.  Plaintiffs respectfully submit that maintaining the claims against the individual defendants is proper for that purpose.

## CONCLUSION

For the reasons stated herein, Defendants' Motion to Dismiss should be denied in its entirety.


Dated: October 31, 2018
       Washington, D.C.

                                        Respectfully Submitted,

                                        /s/ Jason T. Mitchell

                                        Ira A. Burnim (D.C. Bar No. 406154)
                                        Mark Murphy (D.C. Bar No. 1048467)
                                        Lewis L. Bossing (D.C. Bar No. 984609)
                                        JUDGE DAVID L. BAZELON CENTER FOR MENTAL
                                        HEALTH LAW
                                        1101 15th Street NW, Suite 1212
                                        Washington, D.C.  20005
                                        Tel:  (202) 467-5730

Sandra J. Bernstein (D.C. Bar No. 455355)
Mary Nell Clark (D.C. Bar No. 419732)
Jessica V. Den Houter (D.C. Bar No. 241475)
DISABILITY RIGHTS DC AT UNIVERSITY LEGAL
SERVICES
220 I Street NE, Suite 130
Washington, D.C.  20002
Tel:  (202) 547-0198

Seth M. Galanter (D.C. Bar No. 479919)
Alice Y. Abrokwa (D.C. Bar No. 1023510)
NATIONAL CENTER FOR YOUTH LAW
1313 L Street NW, Suite 130
Washington, D.C. 20005
Tel.:  (202) 868-4786

Howard Schiffman (D.C. Bar No. 358814)
Jason T. Mitchell (D.C. Bar No. 1005757)
Jeremy Bachrach Siegfried (D.C. Bar No. 155778)
SCHULTE ROTH & ZABEL LLP
901 Fifteenth Street NW, Suite 800
Washington, D.C. 20005
202-729-7470

*Counsel for Plaintiffs*