## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| M.J., *et al.,* | |
| Plaintiffs, | |
| v. | Civil Action No. 18-1901 (EGS) |
| DISTRICT OF COLUMBIA, *et al.,* | |
| Defendants. | |

## DEFENDANTS' REPLY IN SUPPORT OF
## MOTION TO DISMISS PLAINTIFFS' COMPLAINT

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................ 1

ARGUMENT ............................................................................................................... 1

I.      Plaintiffs' Standing Arguments are Based on Conclusory Allegations that Are Insufficient, Even at this Juncture of the Litigation ................................................................... 1

    A. Plaintiff M.J Lacks Standing Given She Alleges No Actual Ongoing Injury .............. 1

    B. Plaintiff L.R. Similarly Fails to Allege How She is Specifically Harmed By the District's Alleged Statutory Violations …………………………………………………...3

    C. Plaintiff University Legal Services Cannot Rely on Speculative Allegations to Maintain Associational Standing …………………………………………………………………5

II.     Plaintiffs Fail to State a Claim For Violation of the Integration Mandate ……………..6

III.    Plaintiffs' Claim for a Violation of the Medicaid EPSDT Services Benefit Is Based on Conclusory Allegations and Not Supported by Factual Allegations Regarding the District's Liability……………………………………………………………………………………8

CONCLUSION ......................................................................................................... 11

# TABLE OF AUTHORITIES

**Cases**

*Advocates for Individuals With Disabilities LLC v. WSA Properties LLC*,
   210 F. Supp. 3d 1213 (D. Ariz. 2016) ............................................................................... 5

*Allen-Brown v. District of Columbia*,
   54 F. Supp. 3d 35 (D.D.C. 2014) ..................................................................................... 11

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .......................................................................................................... 8

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ........................................................................................................... 8

*Bloomberg L.P. v. Commodity Futures Trading Comm'n*,
   949 F. Supp. 2d 91 (D.D.C. 2013) ..................................................................................... 2

*Coleman v. District of Columbia*,
   828 F. Supp. 2d 87 (D.D.C. 2011) ................................................................................... 10

*D.L. v. District of Columbia*,
   302 F.R.D. 1 (D.D.C. 2013) ............................................................................................... 3

*Dearth v. Holder*,
   641 F.3d 499 (D.C. Cir. 2011) ........................................................................................... 1

*Del Monte Fresh Produce Co. v. United States*,
   570 F.3d 316 (D.C. Cir. 2009) ........................................................................................... 3

*Disability Rights Wisconsin, Inc. v. Walworth Cnty. Bd. Of Supervisors*,
   522 F.3d 796 (7th Cir. 2008) ............................................................................................. 5

*Env't Working Grp. v. U.S. Food and Drug Admin.*,
   301 F. Supp. 3d 165 (D.D.C. 2018) ................................................................................... 1

*Fla. Audubon Soc'y v. Bentsen*,
   94 F.3d 658 (D.C. Cir. 1996) ............................................................................................. 2

*Food & Water Watch, Inc. v. Vilsack*,
   808 F.3d 905 (D.C. Cir. 2015) ........................................................................................... 4

*Guggenberger v. Minnesota*,
   198 F. Supp. 3d 973 (D. Minn. 2016) ................................................................................ 7

*Ind. Prot. and Advocacy Servs. Comm'n v. Comm'r, Ind. Dept' of Corr.*,
    642 F. Supp. 2d 872 (S.D. Ind. 2009) ................................................................. 5

*Katie A., ex rel. Lundin v. Los Angeles Cnty.*,
    481 F.3d 1150 (9th Cir. 2007) ......................................................................... 8

*Lane v. Kitzhaber*,
    841 F. Supp. 2d 1199 (D. Or. 2012) ................................................................ 6

*Mattiaccio v. DHA Group, Inc,*
    908 F. Supp. 2d 136 (D.D.C. 2012…………………………………............................8

*Menoken v. Miles*,
    270 F. Supp. 3d 200 (D.D.C. 2017) ................................................................. 4

*Mykonos v. United States*,
    59 F. Supp. 3d 100 (D.D.C. 2014) ........................................................... 2, 4, 6

*N.B. ex rel. Peacock v. District of Columbia*,
    794 F.3d 31 (D.C. Cir. 2015) ......................................................................... 9

*N.B. v. District of Columbia*,
    34 F. Supp. 3d 146 (D.D.C. 2014) ................................................................. 9

*Olmstead v. L.C. ex rel. Zimring*,
    527 U.S. 581 (1999) ...................................................................................... 6

*Page v. Mancuso*,
    999 F. Supp. 2d 269 (D.D.C. 2013) ........................................................... 9, 10

*Robinson v. Deutsche Bank Nat'l Trust Co.,*
    932 F. Supp. 2d 95 (D.D.C. 2013) …………………………………………......…8

*Trimble v. District of Columbia*,
    779 F. Supp. 2d 54 (D.D.C. 2011) ................................................................ 10

*Trudeau v. FTC*,
    456 F.3d 178 (D.C. Cir. 2006) ....................................................................... 2

*Warth v. Seldin*,
    422 U.S. 490 (1975) ...................................................................................... 5

*Williams v. Lew*,
    819 F.3d 466 (D.C. Cir. 2016) ....................................................................... 4

## INTRODUCTION

Plaintiffs attempt to rely on their prior institutionalizations and generalized conclusory allegations to satisfy their burden to demonstrate standing, and to support their claims against the District of Columbia (the District) for violations of the Americans with Disabilities Act (ADA) and Rehabilitation Act, and the federal Medicaid Early and Periodic Screening, Diagnostic, and Treatment (EPSDT) services benefit. But, plaintiffs' prior institutionalization does not remove their obligation to allege they are suffering an ongoing injury-in-fact caused by the District. It also does not suffice to state a claim against the District for violations of the ADA and Rehabilitation Act or federal Medicaid statutes, which require plaintiffs to allege they are being unjustly segregated to receive services or that they are being denied the services they are lawfully entitled to, respectively. Because plaintiffs have not sufficiently pled facts to support standing or their statutory claims, the Complaint should be dismissed.

## ARGUMENT

I.    **Plaintiffs' Standing Arguments are Based on Conclusory Allegations that Are Insufficient, Even at this Juncture of the Litigation.**

A.    **Plaintiff M.J. Lacks Standing Given She Alleges No Actual Ongoing Injury.**

Plaintiffs' opposition to the District's argument that M.J. lacks standing is misplaced. Pls.' Opp'n at 10-12 (ECF No. 29). First, M.J. cannot pursue this action, seeking prospective declaratory and injunctive relief, based solely on alleged past injuries. *See Dearth v. Holder*, 641 F.3d 499, 501 (D.C. Cir. 2011) ("where the plaintiffs seek declaratory and injunctive relief, past injuries alone are insufficient to establish standing."); *see also Env't Working Grp. v. U.S. Food and Drug Admin.*, 301 F. Supp. 3d 165, 174 (D.D.C. 2018) (citing cases). And M.J. does not allege any non-conclusory ongoing injuries, given plaintiffs do not truly dispute that she is presently being offered services, Compl. ¶ 56, or specifically allege what services she has

1

requested that are not being provided. *Id*. ¶ 51. In other words, M.J. relies solely on allegations that are insufficiently detailed to support her claims. *Id*.; *see Mykonos v. United States*, 59 F. Supp. 3d 100, 103 (D.D.C. 2014) (in evaluating a motion under Rule 12(b)(1), "[t]he court need not [ ] accept as true 'a legal conclusion couched as a factual allegation' or make inferences that are unsupported by the facts set out in the complaint.") (quoting *Trudeau v. FTC*, 456 F.3d 178, 193 (D.C. Cir. 2006)) (other citation omitted).

More specifically, plaintiffs' claims regarding the insufficiency of ongoing services are not particularized enough to support M.J.'s standing. *See Fla. Audubon Soc'y v. Bentsen*, 94 F.3d 658, 669 (D.C. Cir. 1996) ("Not to require that a plaintiff show that its particularized injury resulted from the government action at issue would effectively void the particularized injury requirement."). Plaintiffs do not explain *why* the services she is receiving are insufficient, or what change in services they desire. Compl. ¶¶ 51, 56. They cannot rely on such speculation, especially given, as plaintiffs acknowledge, *id*. ¶ 22, services must be *medically necessary* and they do not allege instances in which M.J. has been prescribed certain intensive community-based services (ICBS) but was unable to obtain them.[1] Plaintiffs' bald allegation that an ongoing risk of institutionalization is a sufficient harm is similarly lacking, given they do not explain why M.J.'s current services lead to an increased risk to her specifically; instead, they simply assume that because she was institutionalized, the District's services must have been lacking. *See, e.g.*, *Bloomberg L.P. v. Commodity Futures Trading Comm'n*, 949 F. Supp. 2d 91, 122 (D.D.C. 2013) (allegations insufficient when they were "perfunctory and devoid of factual support").

---

[1]     Plaintiffs' response as to mootness similarly ignores that to support a claim for prospective injunctive and declaratory relief, a party must show an ongoing injury. And plaintiffs' claim that M.J. wants, but "has never received ICBS" from the District, Compl. ¶ 51, conflates the general requirement that services must be provided under the Medicaid EPSDT benefit with specific allegations that M.J. has requested, but is being denied, those services.

Plaintiffs also challenge the District's assertion that M.J. has declined wraparound services. But, regardless of any communications that occurred after the District's motion to dismiss was filed, a recent meeting with M.J.'s private insurer (CareFirst), representatives from the Department of Behavioral Health (DBH), her mother, her Community Based Intervention (CBI) provider (Better Mornings), and the Parent and Adolescent Support Service (PASS) resolved to keep in place the services she is currently receiving, and not to add wraparound services. J.J. Decl. ¶ 14, ECF No. 30-2. That group also determined that they would revisit M.J.'s need for services at a later date to determine if wraparound would be appropriate based on her progress. *Id.* Given that, M.J. is not suffering an ongoing injury because the services she requests are available and will be provided based on the recommendations of the individuals responsible for managing her care.

### B.   Plaintiff L.R. Similarly Fails to Allege How She is Specifically Harmed By the District's Alleged Statutory Violations.

Regarding L.R., plaintiffs as an initial matter over-read the District's policy guidance. The Department of Health Care Finance (DHCF) policy document attached to plaintiffs' opposition states that Medicaid benefits are "suspended" for individuals who are under the supervision of the Department of Youth Rehabilitation Services (DYRS) and confined to specific facilities. ECF No. 29-1; *see also* DCHF Transmittal 11-30 (ECF No. 21-5). As plaintiff acknowledges, L.R.'s Medicaid was properly "suspended" while she was in a DYRS institution. Pls.' Opp'n at 13. Thus, any past harm stemming from L.R.'s placement at New Beginnings cannot support her standing in this lawsuit given her Medicaid benefits were properly suspended and "[s]tanding … is 'assessed as of the time a suit commences.'" *D.L. v. District of Columbia*, 302 F.R.D. 1, 19 (D.D.C. 2013) (quoting *Del Monte Fresh Produce Co. v. United States*, 570 F.3d 316, 324 (D.C. Cir. 2009)).

And as to specific ongoing harms to L.R., plaintiff again relies on speculation, and fails to make clear what services L.R. actually wants but is unable to receive. *See* Compl. ¶¶ 59, 63-64. Plaintiffs argue that because this Court must treat their allegations as true, it must take their claim that L.R. is generally harmed as sufficient. But the Court is not bound by legal conclusions, *see Mykonos*, 59 F. Supp. 3d at 103, and plaintiffs' argument constitutes an attempt to circumvent the fact that their claims are not supported by specific allegations. *See Williams v. Le*w, 819 F.3d 466, 473 (D.C. Cir. 2016) ("extended chain of contingencies" insufficient to support claims of future injuries).

Plaintiffs also do not argue that L.R. has been unable to obtain medically necessary services, and they do not allege specific facts showing she is at a risk of institutionalization, beyond the fact she has previously been institutionalized as a result of a court order. *See Food & Water Watch, Inc. v. Vilsac*k, 808 F.3d 905, 914 (D.C. Cir. 2015) ("increased-risk-of-harm cases implicate the requirement that an injury be actual or imminent because [w]ere all purely speculative increased risks deemed injurious, the entire requirement of actual or imminent injury would be rendered moot, because all hypothesized, nonimminent injuries could be dressed up as increased risk of future injury.") (citations omitted). And plaintiffs cannot merely rely on conclusory allegations of statutory violations to satisfy Article III standing; more specificity is needed, even at this juncture of the litigation. *See Menoken v. Miles*, 270 F. Supp. 3d 200, 209-10 (D.D.C. 2017).[2]

---

[2]     This is especially so when plaintiffs' own allegations undercut their claim that the District caused any injury (in the form of institutionalization) to L.R., given she was committed to DYRS custody by a court order. Compl. ¶ 61.

**C.**   **Plaintiff University Legal Services Cannot Rely on Speculative Allegations to Maintain Associational Standing.**

Finally, plaintiffs seem to argue that University Legal Services, Inc. (ULS) can maintain associational standing merely because it exists as a protection and advocacy organization and has broadly alleged that its constituents are injured. Pls.' Opp'n at 16-19. Plaintiffs' reading of the requirements for associational standing, however, would substantially and improperly undercut the pleading requirements of Federal Rule 8 and plaintiffs' requirement to demonstrate Article III standing. *See Warth v. Seldin*, 422 U.S. 490, 511 (1975) ("The possibility of such representational standing, however, does not eliminate or attenuate the constitutional requirement of a case or controversy."). While it is true that courts have not required similar organizations to specifically identify their constituents who are allegedly injured by name, pleading or identification of supporting facts cannot simply take the form of baldly alleging that there are such "constituents" who are harmed. *See Disability Rights Wisconsin, Inc. v. Walworth Cnty. Bd. Of Supervisors*, 522 F.3d 796, 802 (7th Cir. 2008) (even taking into account "allowance" that organization does not need to identify harmed members by name, organization must include allegations that members will suffer injury-in-fact sufficient to meet Article III requirements); *Advocates for Individuals With Disabilities LLC v. WSA Properties LLC*, 210 F. Supp. 3d 1213, 1217 (D. Ariz. 2016) ("an undifferentiated interest in ensuring compliance with the law does not suffice" where organization failed to allege "actual examples" of members being harmed); *see also Ind. Prot. and Advocacy Servs. Comm'n v. Comm'r, Ind. Dept' of Corr.*, 642 F. Supp. 2d 872, 879 (S.D. Ind. 2009) (detailing specific allegations of harm to organization's constituents). Aside from the allegations regarding M.J. and L.R. (that are insufficient for the reasons discussed above), plaintiffs provide nothing more than conclusions and vague statements regarding alleged harm to other putative class members. *See* Compl. ¶¶ 7, 10, 22, 48.

5

In addition, plaintiffs' allegations presuppose the correctness of their legal conclusions, rather than presenting facts in support of those conclusions. Pls.' Opp'n at 18. In other words, plaintiffs claim only that the outcome of their legal arguments must be taken as true, and that those outcomes suffice to provide ULS with standing because, if true, their allegations would affect individuals represented by the organization. Such a circular and conclusory argument is insufficient to meet established pleading requirements. *See Mykonos*, 59 F. Supp. 3d at 103.

## II.    **Plaintiffs Fail to State a Claim For Violation of the Integration Mandate.**

Although plaintiffs' integration mandate claim is premised on the suggestion that the District has an obligation to prevent plaintiffs' institutionalization, *see* Pls.' Opp'n at 21, the integration mandate does not require states to provide services to prevent institutionalization; instead, it demands that the services a state does provide be administered in the most integrated settings appropriate. *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581, 603 n.14 (1999). Thus, the fact that plaintiffs are or have been institutionalized is insufficient to support a claim. *See id*. Plaintiffs instead must allege that the District is providing services in unnecessarily segregated settings, rather than the community. *Id*.

Against that standard, plaintiffs do not identify specific services that the District funds or provides M.J. or L.R. through institutions but not in the community. *See generally* Compl. This case is therefore distinguishable from *Lane v. Kitzhaber*, 841 F. Supp. 2d 1199, 1208 (D. Or. 2012), which plaintiffs cite. *See* Pls.' Opp'n at 21. In *Lane*, plaintiffs were individuals with intellectual or developmental disabilities who received employment services from the state. 841 F. Supp. 2d at 1200. They alleged they were unnecessarily segregated in sheltered workshops as a result of the state's administration of its employment program. *Id*. In other words, to receive the benefit of the employment program, plaintiffs alleged they had to work in an unnecessarily segregated

6

environment. *See id*. In contrast here, plaintiffs have not identified how the District is causing plaintiffs to be unnecessarily institutionalized to receive services—or what specific services they allege they must be institutionalized to receive. *See* Defs.' Mem. at 15 (ECF No. 21).

Plaintiffs also cite *Guggenberger v. Minnesota*, 198 F. Supp. 3d 973, 1029 (D. Minn. 2016). Pls.' Opp'n at 21.[3] But in *Guggenberger*, there was no dispute that plaintiffs were alleging they were being denied services in the most integrated settings. 198 F. Supp. 3d at 987. Instead, the state argued for the dismissal of plaintiffs' claims because they were not institutionalized or at risk of institutionalization. *Id*. at 1024–25. But here, the District has contested the sufficiency of plaintiffs' allegations regarding the services they claim to require.

And more generally, plaintiffs' general grievances regarding the District's services—or lack of services—are not claims for a violation of the integration mandate. But even if they were, plaintiffs have not alleged all the elements of a violation of the ADA's integration mandate. *See* Defs.' Mem. at 15–16 (plaintiffs failed to allege that community-based placement was an appropriate alternative or that the District's services caused their institutionalization). In plaintiffs' opposition, plaintiffs concede that M.J. failed to allege that community-based treatment is appropriate, which is a necessary element of an integration mandate claim. *See id*. at 16; Pls.' Opp'n at 23. And at the time plaintiffs filed their Complaint, L.R. was institutionalized in the custody of DYRS as the result of a court order. Defs.' Mem. at 16. L.R.'s claim that she did not receive required discharge planning services, Pls.' Opp'n at 23, is not in the Complaint[4]; nor do

---

[3]     In addition, plaintiffs cite to the Statement of the Department of Justice (DOJ) on Enforcement of the Integration Mandate of Title II of the [ADA] and *Olmstead v. L.C.* (June 22, 2011). *See* Pls.' Opp'n at 20 n.12, 23 n.15. DOJ rescinded that guidance statement in December 2017.

[4]     Plaintiffs cannot amend their Complaint through their opposition, or rely on facts not alleged in that pleading. "It is axiomatic that a complaint may not be amended by the briefs in

plaintiffs allege that the District is administering services in a manner that is resulting in her unnecessary institutionalization. Because neither plaintiff has stated a claim for a violation of the integration mandate, the claim should be dismissed.

**III.     Plaintiffs' Claim for a Violation of the Medicaid EPSDT Services Benefit Is Based on Conclusory Allegations and Not Supported by Factual Allegations Regarding the District's Liability.**

As for plaintiffs' claim under 42 U.S.C. § 1983 (Section 1983) for a violation of federal Medicaid requirements, their opposition, first, confuses what is necessary to plead a violation of an enforceable right. Plaintiffs now allege that "all components of ICBS must be offered." Pls.' Opp'n at 25. But "ICBS" is not a required Medicaid service. 42 U.S.C. § 1396d(r)(5). Plaintiffs instead must specify precisely what treatments they believe the District is not providing, and how a lack of services constitutes a statutory violation. *See Katie A., ex rel. Lundin v. Los Angeles Cnty.*, 481 F.3d 1150, 1160 (9th Cir. 2007). They fail to do so, and instead allege in a conclusory fashion that the District has violated federal statutory Medicaid requirements. Compl. ¶ 72. Such allegations are insufficient to permit their claim to continue, as "a complaint [does not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).

Plaintiffs also contend that the District does not provide medically necessary services, but they provide no facts supporting that allegation, such as instances where requested services have been declined or not provided, and instead seem to debate the intensity or effectiveness of the services the District does provide (a different claim altogether). Compl. ¶¶ 42-44. Neither, based

---

opposition to a motion to dismiss." *Robinson v. Deutsche Bank Nat'l Trust Co.*, 932 F. Supp. 2d 95, 105 (D.D.C. 2013) (citations omitted); *see also Mattiaccio v. DHA Group, Inc.*, 908 F. Supp. 2d 136, 138 (D.D.C. 2012) (A "[p]laintiff cannot amend his Complaint by way of declaration or assertions in his pleadings.").

on the facts alleged in their Complaint, can support a violation of federal Medicaid requirements. Plaintiffs also provide little to no specific information regarding the District's alleged failure to provide ICBS. *See* Compl. And, aside from their blanket contention that their factual allegations are "sufficient," Pls.' Opp'n at 26, they fail to show how the Complaint can survive when it does not grapple with the services the District *does* provide. *See* Compl. ¶¶ 22, 47; *see, e.g.*, *N.B. v. District of Columbia*, 34 F. Supp. 3d 146, 155 (D.D.C. 2014) ("plaintiffs set forth no facts, apart from conclusory statements, indicating that they were denied [Medicaid] coverage by the defendants.") (*aff'd on other grounds* by *N.B. ex rel. Peacock v. District of Columbia*, 794 F.3d 31 (D.C. Cir. 2015)).

As for whether any legal violation was caused by a District custom or policy sufficient for liability under Section 1983, plaintiffs claim that the District has knowingly and consistently failed to provide certain services. But plaintiffs support their "custom and usage" argument not through detailed factual allegations, but by citing to reports that various groups (including plaintiff ULS) and the District published, and drawing numerous legal conclusions from those reports. Compl. ¶¶ 45-46. They do not allege specific facts relevant to the Parties in *this case* regarding the District's actual knowing failure to provide services. *See Page v. Mancuso*, 999 F. Supp. 2d 269, 284 (D.D.C. 2013) ("When a plaintiff seeks to establish "custom and policy" municipal liability under § 1983 in the absence of an express policy, she must allege 'concentrated, fully packed, precisely delineated scenarios' as proof that an unconstitutional policy or custom exists.") (citation omitted). Indeed, the reports cited by plaintiffs concern interpretations of the services the District does offer, not factual allegations of a custom or policy, and a party may not prove a knowing failure by simply assuming the correctness of its own criticisms; again, such a circular process would allow a plaintiff to circumvent the requirement to plead specific facts illustrating its claims. And as to

9

M.J. and L.R., the ongoing provision of services shows that the District was aware of their need for services, and plaintiffs' conclusory allegations to the contrary should be rejected by the Court. *See Coleman v. District of Columbia*, 828 F. Supp. 2d 87, 93 (D.D.C. 2011) ("While no hard and fast rule exists for the number of examples [a plaintiff] would need to plead in order for this Court to find it plausible that [the agency] undertook a consistent policy of due process violations, the Court is confident that one example coupled with a conclusory allegation is insufficient to meet the plausibility standard.").

Plaintiffs also allege deliberate indifference, claiming that because the District is responsible for medical care of the named plaintiffs and various unnamed individuals, it must be aware of the insufficiency of its own services. But again, rather than alleging facts supporting its allegations, plaintiffs take their own conclusions as sufficient. However, a plaintiff must allege something beyond the fact that individuals are in a government's care to proceed on a claim of deliberate indifference. *See Mancuso*, 999 F. Supp. 2d at 283 ("regardless of the particular method of deliberate indifference liability that a plaintiff claims, the complaint must meet the pleading standards of Federal Rule of Civil Procedure 8 as the Supreme Court has interpreted that rule.").

Finally, plaintiffs have not sufficiently alleged that the District has taken actions that constitute a custom or policy. Plaintiffs' allegations involve conclusions based on outcomes, Compl. ¶¶ 41-43 (alleging that the District's services are insufficient), but nowhere do they allege actual facts. What plaintiffs have done is nothing more than allege an abstract policy, based on their self-serving assumption that the District must have a custom or policy because they believe ICBS is not being provided. *See Trimble v. District of Columbia*, 779 F. Supp. 2d 54, 59 (D.D.C. 2011) ("merely speculating that an unidentified policy and uncorroborated practice or custom exists without providing any factual heft to support the allegation is insufficient to state a claim

under § 1983."). More specifically, their allegation that the District has a policy of relying on institutionalization is unsupported, and M.J. and L.R.'s circumstances are insufficient to stand as a proxy for a broader policy. And plaintiffs also fail specify which District policymakers are responsible for their alleged violations, and mere vague references are not enough. *See Allen-Brown v. District of Columbia*, 54 F. Supp. 3d 35, 42 (D.D.C. 2014) (plaintiff must plead that District policymaker enacted policy being challenged).

### CONCLUSION

For the foregoing reasons and those stated in defendants' motion to dismiss, the Court should dismiss plaintiffs' Complaint with prejudice.

Dated:  November 16, 2018.                    Respectfully submitted,

KARL A. RACINE
Attorney General for the District of Columbia

TONI MICHELLE JACKSON
Deputy Attorney General
Public Interest Division

*/s/ Fernando Amarillas*
FERNANDO AMARILLAS [974858]
Chief, Equity Section

*/s/ Gregory M. Cumming*
GREGORY M. CUMMING [1018173]
AMANDA J. MONTEE [1018326]
Assistant Attorneys General
441 Fourth Street, N.W., Suite 630 South
Washington, D.C.  20001
(202) 724-5691
(202) 741-8934 (fax)
amanda.montee@dc.gov

*Counsel for Defendants*

11