# UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | |
|---|---|
| M.J., et al., | ) |
| | ) |
|       Plaintiffs, | ) |
| | ) |
| v. | ) Civil Action No. 1:18-cv-1901 (EGS) |
| | ) |
| THE DISTRICT OF COLUMBIA, et al., | ) |
| | ) |
| | ) |
|       Defendants. | ) |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR EXPEDITED DISCOVERY

JUDGE DAVID L. BAZELON CENTER
FOR MENTAL HEALTH LAW
1101 15th Street NW, Suite 1212
Washington, D.C. 20005
Tel: (202) 467-5730

DISABILITY RIGHTS DC AT
UNIVERSITY LEGAL SERVICES
220 I Street NE, Suite 130
Washington, D.C. 20002
Tel: (202) 547-0198

NATIONAL CENTER FOR YOUTH LAW
1313 L Street NW, Suite 130
Washington, D.C. 20005
Tel.: (202) 868-4786

SCHULTE ROTH & ZABEL LLP
901 15th Street, NW, Suite 800
Washington, D.C. 20005
Tel.: (202) 729-7470

**Table of Contents**

**Page**

BACKGROUND ............................................................................................................................. 1

LEGAL STANDARD ................................................................................................................... 2

DISCUSSION ................................................................................................................................ 3

PLAINTIFFS MEET THE COURT'S STANDARD FOR EXPEDITING DISCOVERY. .......... 3

   A. **Plaintiffs' Narrow Discovery Requests Will Not Burden Defendants.** .......................... 3

   B. **Plaintiffs Need Discovery To File Their Class Certification Motion As Soon As Practicable, Resolve This Litigation, and Avoid Further Harms.** ................................. 9

   C. **Plaintiffs Establish Good Cause for Expedited Discovery Prior to the Resolution of Defendants' Motion to Dismiss.** ...................................................................................... 12

CONCLUSION ............................................................................................................................. 14

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Amgen Inc., v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013) ............................8

*Arista Records LLC v. Does 1-19*,
    551 F. Supp. 2d 1 (D.D.C. 2008) ..............................................................................................3

*Artist M. v. Johnson*,
    726 F. Supp. 690 (N.D. Ill. 1989), *rev'd on other grounds*, *Suter v. Artist M.*,
    503 U.S. 347 (1992)................................................................................................................10

*\*Attkisson v. Holder*,
    113 F. Supp.3d 156 (D.D.C. 2015) ...........................................................................3, 4, 12, 13

*Bosque v. Wells Fargo Bank, N.A.*,
    762 F. Supp. 2d 342 (D. Mass. 2011) .......................................................................................4

*Butera & Andrews v. International Bus. Machines. Corp.*, 456 F. Supp.2d 104,
    114 (D.D.C. 2006) ..................................................................................................................13

*Butler v. City of San Antonio*,
    No. SA-03-CA-170-RF, 2003 WL 22097250 (W.D. Tex. Aug. 21, 2003) ..............................4

*Campbell v. Nat'l R.R. Passenger Corp.*,
    311 F. Supp. 3d 281 (D.D.C. 2018) ....................................................................................8, 13

*Candy H. v. Redemption Ranch, Inc.*,
    563 F. Supp. 505 (M.D. Ala. 1983) ........................................................................................10

*Cartwright v. Viking Indus., Inc.*,
    249 F.R.D. 351 (E.D. Cal. 2008) ..............................................................................................4

*Coleman v. District of Columbia*,
    306 F.R.D. 68 (D.D.C. 2015)....................................................................................................8

*Damus v. Nielson*,
    Civil Action No. 18-578, 2018 WL 5251745 (D.D.C. Oct. 22, 2018) .....................................3

*Doe v. New York City Dep't of Soc. Servs.*,
    670 F. Supp. 1145 (S.D.N.Y. 1987)........................................................................................10

*Dunakin v. Quigley*,
    99 F. Supp. 3d 1297 (W.D. Wash. 2015)..................................................................5

*\*Dunn v. Dunn*,
    318 F.R.D. 652 (N.D. Ala. 2016)..............................................................................5

*Edudata Corp. v. Sci. Computers, Inc.*, 599 F. Supp. 1084, 1088 (D. Minn. 1984) ......10

*Flowers v. MGTI, LLC*,
    Civil Action No. H-11-1235, 2012 WL 1941755 (S.D. Tex. May 29,. 2012)..........8

*Garnett v. Zeilinger*,
    Case No. 17-cv-1757, 2017 WL 8944640 (D.D.C. Dec. 15, 2017)...............3, 10, 13

*Guttenberg v. Emery*, 26 F. Supp. 3d 88, 98 (D.D.C. 2014) .......................................3, 4

*Hernandez v. Helix Energy Sol. Grp., Inc.*,
    Civil Action No. H-18-1588, 2018 WL 6067293 (S.D. Tex. Nov. 20, 2018) ..........7

*\*Kenneth R. v. Hassan*,
    293 F.R.D. 254 (D.N.H. 2013) ..............................................................................5, 6

*Kenny A. v. Perdue*,
    218 F.R.D. 277 (N.D. Ga. 2003)...............................................................................9

*Kottaras v. Whole Foods Mkt, Inc.*, 281 F.R.D. 16, 26 (D.D.C. 2012) .........................13

*Landwehr v. FDIC*, 282 F.R.D. 1, 4 (D.D.C. 2010) .....................................................12

*L.V.M. v. Lloyd*,
    318 F. Supp. 3d 601 (S.D.N.Y. 2018).......................................................................9

*Lemmon v. Harry & David Operations, Inc.*,
    Case No. 2:15-cv-779, 2016 WL 234854 (S.D. Ohio Jan. 20, 2016).......................8

*Lindsay v. Gov't Emp. Ins. Co.*,
    Civil Action No. 04-1213 (PLF), 2004 WL 5488229 (D.D.C. July 29, 2004).........7

*\*Olmstead v. L.C.*,
    527 U.S. 581 (1999)..................................................................................................5

*PSS World Medical, Inc., v. Fairchild*,
    Civil Action No. 1:11CV22, 2011 WL 13217506 (E.D. Tex. Feb. 3, 2011)............3

*Rapid Refill, LLC v. JDDK, Inc.*,
    Case No. C14-0084, 2014 WL 12581758 (N.D. Iowa July 17, 2014) .....................3

*Rosie D. v. Romney*,
   Civil Action No. 01-30199 MAP (D. Mass.), http://www.rosied.org/page-526903 ............................................................................................................................... 6

*Sheridan v. Oak St. Mortg., LLC*,
   244 F.R.D. 520 (E.D. Wis. 2007) .......................................................................................... 4

*\*Steward v. Janek*,
   315 F.R.D. 472 (W.D. Tex. 2016) ........................................................................................ 5

*Swan v. Board of Educ. of City of Chicago*,
   Nos. 13 C 3623, 13 C 3624, 2013 WL 4401439 (N.D. Ill. Aug. 15, 2013) ......................... 10

*\*Wal-Mart Stores, Inc., v. Dukes*,
   564 U.S. 338 (2011) .................................................................................................... 4, 5, 9

*\*Warner Bros. Records, Inc., v. Does 1-6*,
   527 F. Supp. 2d 1 (D.D.C. 2007) ...................................................................................... 2, 7

*Waterbury Hosp. v. U.S. Foodservice, Inc.*,
   Civil Action No. 3:06-CV-1657 (CFD) (TPS), 2007 WL 328899 (D. Conn. Feb. 1, 2007) ................................................................................................................... 12

**Other Authorities**

DBH, *Mental Health and Substance Use Report on Expenditures and Services (MHEASURES)* (2018),
   https://dbh.dc.gov/sites/default/files/dc/sites/dmh/publication/attachments/MHEASURES%20January%202018%20%28002%29.pdf ............................................. 6

Dist. of Columbia Dep't of Youth Rehabilitative Servs., *FY 18 Performance Oversight Responses Placement and Monitoring Nos. 2, 3*, DIST. OF COLUMBIA COUNCIL (2018), http://dccouncil.us/wp-content/uploads/2018/10/dyrs.pdf ................................................... 6

Judge David L. Bazelon Center for Mental Health Law, The Detrimental Effects of Group Placements/Services for Youth with Behavioral Health Problems, (2008), https://www.maine.gov/corrections/jjag/ReportsPubs/Deviant-Peer-Influences-Fact-Sheet.pdf ..................................................................................... 11

Dist. of Columbia Dep't of Behavioral Health (DBH), *FY 16 Performance Oversight Response No. 41*, DIST. OF COLUMBIA COUNCIL (2018), http://dccouncil.us/wp-content/uploads/2018/budget_responses/AllQNA.pdf ................... 6

Sigrid S. James, Ph.D., et al., *Residential Care for Youth in the Child Welfare System: Stop-Gap Option or Not?*, 29 RESID. TREAT. CHILD & YOUTH 1, (2012) https://www.ncbi.nlm.nih.gov/pmc/articles/PMC3835815/ ...................................... 11

Children's Law Center, Improving the Children's Mental Health System in the District of Columbia (2012), http://www.childrenslawcenter.org/sites/default/files/attachments/resources/Improving%20the%20Children's%20Mental%20Health%20System%20in%20the%20District%20of%20Columbia%20-%202012%20Report.pdf ................................11, 12

Dep't of Justice, Office of Juvenile Justice and Delinquency Prevention, Intersection between Mental Health and the Juvenile Justice System, at 5 (2017), https://www.ojjdp.gov/mpg/litreviews/Intersection-Mental-Health-Juvenile-Justice.pdf ........................................................................................................12

U.S. Dep't of Justice, West Virginia Children's Mental Health System Findings Letter, (June 1, 2015), https://www.ada.gov/olmstead/documents/west_va_findings_ltr.pdf .....................................11

## INTRODUCTION

Pursuant to this Court's October 29, 2018 Order, Plaintiffs hereby move for narrowly-tailored expedited discovery needed to support their class certification motion. Given the precedent of the Supreme Court and the Court of Appeals for this Circuit regarding the proof that may be required to obtain class certification, as well as recent decisions of this Court, Plaintiffs intend to submit expert testimony to support their motion.

The fact discovery which is necessary to develop this testimony should be expedited. Because of Defendants' failures to provide the Plaintiff children intensive community-based services ("ICBS"), every day in which they are unnecessarily institutionalized, or at risk of further cycling in and out of institutions, increases the likelihood of serious harms stemming from institutionalization. For these reasons, Plaintiffs have no choice but to move for expedited discovery so that they may obtain class certification and systemic relief as soon as possible. Plaintiffs meet this Court's test for whether good cause exists for such discovery.

## BACKGROUND

Plaintiffs filed their Complaint on August 14, 2018 on behalf of individual Plaintiffs M.J. and L.R.; Disability Rights DC at University Legal Services, Inc.; and a class of Medicaid-eligible children with mental health disabilities who are needlessly institutionalized, or at serious risk of institutionalization, because Defendants fail to provide them with medically necessary ICBS. Compl. ¶ 1. Because of this failure, the Plaintiff children cycle unnecessarily in and out of institutions—including psychiatric hospitals, psychiatric and other residential treatment facilities, the District's detention centers, and group homes—to their detriment. *Id.* ¶ 3. Defendants have never created a functioning system for providing ICBS to District children who need and are entitled to ICBS, thereby harming them in violation of federal law. *Id.* ¶¶ 7, 23.

Defendants moved to dismiss Plaintiffs' Complaint on October 3, 2018.  [Dkt. No. 21.] The next day, Plaintiffs moved for (1) an extension of time to file their motion for class certification, and (2) an order requiring the parties to meet and confer and to submit a proposed scheduling order "so that Plaintiffs may begin discovery concerning class certification as soon as practicable." [Dkt. No. 22.]  Defendants agreed to extend Plaintiffs' time for filing the class certification motion, but opposed Plaintiffs' motion for an order requiring the parties to meet and confer and submit a proposed scheduling order.  [Dkt. No. 25.]

By Order dated October 29, 2018, the Court granted Plaintiffs' motion for extension of time, and ordered the parties to meet and confer regarding "the scope of discovery limited to class certification issues."  The order directed the parties, should they agree on the scope of class discovery, to submit a proposed scheduling order by November 16, 2018.  Otherwise, the order permitted Plaintiffs to file a motion for expedited discovery, which must include:

> an explanation of the precise discovery they seek to take, including an explanation of how that discovery would be limited to ensure that it does not become full discovery on the merits of their claims, along with an explanation of how the good cause they seek to show supports the taking of that specific discovery.

The parties met and conferred on November 9, 2018, but were unable to reach agreement on the scope of class discovery.  [Dkt. No. 32.]  Defendants replied in support of their motion to dismiss on November 16, 2018. [Dkt. No. 33.]

## LEGAL STANDARD

Federal Rule of Civil Procedure 26(d)(1) permits discovery before the parties have proposed a schedule for pretrial proceedings "by court order."  This Court has broad discretion to order such expedited discovery, and has allowed discovery to proceed where good cause is shown.  *See Warner Bros. Records, Inc., v. Does 1-6*, 527 F. Supp. 2d 1, 2 (D.D.C. 2007).

2

This Court has considered five factors when evaluating a motion for expedited discovery to determine whether good cause exists: "(1) whether a preliminary injunction is pending; (2) the breadth of the discovery requests; (3) the purpose for requesting the expedited discovery; (4) the burden on the defendants to comply with the requests; and (5) how far in advance of the typical discovery process the request was made." *Attkisson v. Holder*, 113 F. Supp.3d 156, 162 (D.D.C. 2015) (citing *Guttenberg v. Emery*, 26 F. Supp. 3d 88, 98 (D.D.C. 2014)).  The Court may consider other factors, however.  *Id.*

Courts generally analyze the second and fourth factors together, as the breadth of discovery sought informs the burden on the opposing party.  *See*, *e.g.*, *Garnett v. Zeilinger*, Case No. 17-cv-1757, 2017 WL 8944640, at *2 (D.D.C. Dec. 15, 2017); *Rapid Refill, LLC v. JDDK, Inc.*, Case No. C14-0084, 2014 WL 12581758, at *4 (N.D. Iowa July 17, 2014); *PSS World Medical, Inc., v. Fairchild*, Civil Action No. 1:11CV22, 2011 WL 13217506, at *2 (E.D. Tex. Feb. 3, 2011).

Where, as here, plaintiffs have not moved for a preliminary injunction, the first factor should not weigh against plaintiffs.  *Attkisson*, 113 F. Supp. 3d at 162; *see also Arista Records LLC v. Does 1-19*, 551 F. Supp. 2d 1, 6-8 (D.D.C. 2008) (citing cases where courts allowed expedited discovery without pending preliminary injunction motion).

## DISCUSSION

## PLAINTIFFS MEET THE COURT'S STANDARD FOR EXPEDITING DISCOVERY.

### A. Plaintiffs' Narrow Discovery Requests Will Not Burden Defendants.

This Court has considered both temporal scope and substance in determining whether discovery is sufficiently narrowly tailored or overly burdensome.  *Damus v. Nielson*, Civil

Action No. 18-578, 2018 WL 5251745, at *4 (D.D.C. Oct. 22, 2018).  Generally, as this Court has acknowledged, discovery is narrowly-tailored when requests seek information related to a specific, non-merits related purpose, rather than seeking merits discovery "go[ing] to the heart of" the requestor's case. *Attkisson*, 113 F. Supp. 3d at 163 (citing *Guttenberg*, 26 F. Supp. 3d at 98).  Although "Rule 23, standing alone, does not provide good cause for expedited discovery," *Cartwright v. Viking Indus., Inc.*, 249 F.R.D. 351, 358 (E.D. Cal. 2008), courts have granted requests for expedited discovery related to class certification.  *See*, *e.g.*, *Bosque v. Wells Fargo Bank, N.A.*, 762 F. Supp. 2d 342, 355 (D. Mass. 2011) (granting document and deposition requests limited to Rule 23 issues); *Sheridan v. Oak St. Mortg., LLC*, 244 F.R.D. 520, 522 (E.D. Wis. 2007) (granting motion for limited expedited discovery "reasonably calculated to lead to the discovery of admissible evidence on the issue[] of class certification"); *Butler v. City of San Antonio*, No. SA-03-CA-170-RF, 2003 WL 22097250, at *3 (W.D. Tex. Aug. 21, 2003) (ordering city to produce name and last known address of anyone meeting class definition).

      Here Plaintiffs seek leave to propound (1) an initial set of document requests, attached as Exhibit A, seeking lists of individual children who have received specified services in various locations from Defendants' mental health services system, to be followed as soon as possible by (2) a set of requests seeking additional information about a limited sample of those children.

      Sampling by experts of individuals receiving services through a defendant's service system, to evaluate their service needs and whether those needs are being met, has been a feature of class certification proceedings in a number of post-*Wal-Mart*[1] class actions asserting

---

[1] *Wal-Mart Stores, Inc., v. Dukes*, 564 U.S. 338 (2011).

*Olmstead*[2] claims (as Plaintiffs do here).  *See*, *e.g.*, *Dunn v. Dunn*, 318 F.R.D. 652, 665-66 (N.D. Ala. 2016); *Steward v. Janek*, 315 F.R.D. 472, 477-79, 485-87 (W.D. Tex. 2016); *Dunakin v. Quigley*, 99 F. Supp. 3d 1297 (W.D. Wash. 2015); *Kenneth R. v. Hassan*, 293 F.R.D. 254, 261-62, 265-270 (D.N.H. 2013).  Plaintiffs in these cases submitted reports based on sampling by expert witnesses to support their arguments that the requirements of Rule 23(a)—numerosity, common question of law or fact, typicality, and adequacy of representation—were met, as well as Rule 23(b)(2)'s requirement, following *Wal-Mart*, that the injunctive and declaratory remedies sought be "indivisible."  564 U.S. at 360.

As Exhibit A indicates, Plaintiffs seek a first phase of class discovery through seven document requests seeking lists of uniquely-identified Medicaid-eligible children with mental health disabilities for whom the following criteria apply, over approximately the past two years:

- Admission(s) for psychiatric hospitalization;

- Admission(s) to a psychiatric residential treatment facility;

- Utilization(s) of Defendants' Child & Adolescent Mobile Psychiatric Service ("ChAMPS"), which Defendants have characterized as a "mobile crisis" service;

- Utilization(s) of other services provided by Defendants, including "High Fidelity Wraparound," "Transition to Independence Process," "Community-Based Intervention," and "Assertive Community Treatment";

- Denial(s) of authorizations or reauthorizations for these services; and

- Placement(s) in a facility while under custody of the District of Columbia Department of Youth Rehabilitation Services ("DYRS"), including the Youth Services Center, the New

---

[2] *Olmstead v. L.C.,* 527 U.S. 581 (1999).

> Beginnings Youth Development Center, and other secure or non-secure facilities in which children in DYRS custody are placed and receive services.

*See* Exhibit A, Plaintiffs' Requests for Production of Documents to Defendants (Set One). Defendants can readily produce this information through a review of service utilization records maintained electronically by the District of Columbia Department of Health Care Finance ("DHCF") or DYRS.  In the aggregate, such information has been the source of previously published reports by the District, including in responses to District Council oversight proceedings, although this public information is not available in list form with each individual child identified by a unique identifier, as needed for expert review.[3]  From the requested information, Plaintiffs will draw a sample of children who may be currently unnecessarily institutionalized or at serious risk of institutionalization for further study by Plaintiffs' experts.[4]

---

[3] *See*, *e.g.*, Dist. of Columbia Dep't of Youth Rehabilitative Servs., *FY 18 Performance Oversight Responses Placement and Monitoring Nos. 2, 3, at 16-17 and Attachments*, DIST. OF COLUMBIA COUNCIL (2018), http://dccouncil.us/wp-content/uploads/2018/10/dyrs.pdf (providing numbers of children in DYRS custody in residential placements in secure and non-secure facilities); Dist. of Columbia Dep't of Behavioral Health (DBH), *FY 16 Performance Oversight Response No. 41*, DIST. OF COLUMBIA COUNCIL (2018), http://dccouncil.us/wp-content/uploads/2018/budget_responses/AllQNA.pdf (providing numbers of children under Child and Family Services Agency custody in psychiatric residential treatment facilities during fiscal year); DBH, *Mental Health and Substance Use Report on Expenditures and Services (MHEASURES)*, at 12-13 (2018), https://dbh.dc.gov/sites/default/files/dc/sites/dmh/publication/attachments/MHEASURES%20January%202018%20%28002%29.pdf (chart indicating numbers of children utilizing various services, including "community-based intervention" and "assertive community treatment").

[4] *See*, *e.g.*, *Kenneth R.*, 293 F.R.D. at 264-65 ("at serious risk" class under ADA includes adults who, within a two-year period, had had multiple psychiatric hospitalizations, used crisis or emergency room services "for psychiatric reasons," had criminal justice involvement "as a result of their mental illness," or who were unable to access "needed community services") *cf.* Expert Client Review Report of Marty Beyer at 2-4 (Oct. 2004), *Rosie D. v. Romney*, Civil Action No. 01-30199 MAP (D. Mass.), http://www.rosied.org/page-526903 (describing sample of children reviewed in Medicaid Act class action, in which children in sample were selected from four categories of services utilized by children:  "inpatient," "residential," "crisis," and "home").

In phase two of Plaintiffs' proposed class discovery, after drawing a sample of children using the lists provided in phase one, Plaintiffs would propound written discovery seeking, for each child in the sample:

(1) The child's name;

(2) The child's address and last known phone number;

(3) Whether the child is under DYRS custody or under the supervision of the District's child welfare agency, the Child and Family Services Agency ("CFSA"); and

(4) All services provided during the past 24 months, including date of service, provider of service, and provider's address.

Plaintiffs would then contact families in the sample, including to seek permission to access the child's service records. Plaintiffs expect to jointly file a protective order with Defendants to protect any confidential information.

Directory or contact information of this type has regularly been ordered as expedited discovery, including when needed to identify defendants, *Warner Bros.*, 527 F. Supp. 2d at 2-3 (permitting discovery of personally-identifying information including names, current and permanent addresses and phone numbers, and email addresses), or contact class members in "opt-in" or "opt-out" classes, *see*, *e.g.*, *Lindsay v. Gov't Emp. Ins. Co.*, Civil Action No. 04-1213 (PLF), 2004 WL 5488229, at *2 (D.D.C. July 29, 2004) (ordering production of names and last known addresses of potential class members); *cf. Hernandez v. Helix Energy Sol. Grp., Inc.*, Civil Action No. H-18-1588, 2018 WL 6067293, at *5 (S.D. Tex. Nov. 20, 2018) (ordering production of names, current or last-known mailing addresses, telephone numbers, and dates of

employment of potential class members); *Lemmon v. Harry & David Operations, Inc.*, Case No. 2:15-cv-779, 2016 WL 234854, at *7 (S.D. Ohio Jan. 20, 2016) (ordering production of names, last-known residential and e-mail addresses, and dates of employment of potential class members); *Flowers v. MGTI, LLC*, Civil Action No. H-11-1235, 2012 WL 1941755, at *5 (S.D. Tex. May 29,. 2012) (ordering production of names and last-known addresses and phone numbers for defendants' employees over four-year period).  Information about providers of services for the Plaintiff children is needed so that Plaintiffs may contact those providers, with parent or guardian consent, to obtain service records and interview staff with knowledge of children in the sample.

Plaintiffs will use expert testimony developed through this discovery to demonstrate Rule 23 compliance.  As this Court has acknowledged, "[t]he process of assessing a plaintiff's compliance with Rule 23 is often 'enmeshed in the factual and legal issues comprising the plaintiff's cause of action.'"  *Coleman v. District of Columbia*, 306 F.R.D. 68, 75 (D.D.C. 2015); *see also Campbell v. Nat'l R.R. Passenger Corp.*, 311 F. Supp. 3d 281, 296 (D.D.C. 2018) (quoting *Amgen Inc., v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013), that "[m]erits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites . . . are satisfied").  Plaintiffs seek this limited information at this time because it is needed to begin review of children receiving services from Defendants that will support their class certification motion.  The requested discovery does not include additional requests (including some discussed during the parties' November 9 meet and confer) that could be used more broadly to demonstrate Defendants' liability under federal law; respond to any defenses Defendants may assert, such as whether Plaintiffs' requested relief would require a fundamental alteration to Defendants' programs,

services, or activities; or explain Plaintiffs' proposed remedies.[5]  But, to the extent that the discovery Plaintiffs seek for class certification might "touch" aspects of the merits of their claims, "[t]hat cannot be helped," and the necessity of such overlap is a "familiar feature of litigation" recognized by the Supreme Court in *Wal-Mart*.  564 U.S. at 351.

### B. Plaintiffs Need Discovery To File Their Class Certification Motion As Soon As Practicable, Resolve This Litigation, and Avoid Further Harms.

The Plaintiff children have a compelling purpose for seeking class discovery as soon as possible:  the successful resolution of their class claims means that they will obtain the ICBS they need and avoid further cycling in and out of institutions.

Courts have consistently expedited discovery where necessary to move forward proceedings over alleged harms to vulnerable children.  *See*, *e.g.*, *L.V.M. v. Lloyd*, 318 F. Supp. 3d 601, 608-09 (S.D.N.Y. 2018) (expedited discovery permitted in lawsuit challenging Department of Homeland Security's "newly revised" process for placing unaccompanied minor children in the least restrictive setting that is in the child's best interests; noting that "[p]rompt placement of the child is critical to minimize the deleterious impact (anxiety, depression, and/or cognitive change) of detention.  There is no dispute that the longer the detention, the greater the impact"); *Kenny A. v. Perdue*, 218 F.R.D. 277, 284 (N.D. Ga. 2003) (granting motion for expedited discovery as to "the safety and well-being of foster children" in emergency shelters);

---

[5] *Cf.* Mem. of P. & A. In Support Of Ptfs.' Mot. to Extend Time to File Mot. for Class Cert. and for an Order Requiring the Parties to Meet and Confer and Submit a Proposed Scheduling Order, at 5 (Oct. 4, 2018) [Dkt. No. 22] (stating Plaintiffs' intention to propound discovery requests for "[c]ontracts between Defendants, their managed care organizations, and their community-based service providers" and "[r]ecords for a sample of Plaintiff children that will be the subject of expert reports").  Plaintiffs' motion for expedited discovery seeks neither contracts nor records; plaintiffs will seek service records for the children in the sample directly from their service providers, with parent or guardian permission, which will not burden Defendants.

*Artist M. v. Johnson*, 726 F. Supp. 690, 691 (N.D. Ill. 1989) (expediting discovery in class action where classes were children in child welfare system who did not have caseworkers), *rev'd on other grounds*, *Suter v. Artist M.*, 503 U.S. 347 (1992); *Doe v. New York City Dep't of Soc. Servs.*, 670 F. Supp. 1145, 1147 (S.D.N.Y. 1987) (granting motion for expedited discovery where plaintiff class consisted of foster children who did not have foster homes, but were held in defendants' offices during day, and transported to emergency shelters to sleep at night); *Candy H. v. Redemption Ranch, Inc.*, 563 F. Supp. 505, 508 (M.D. Ala. 1983) (ordering expedited discovery where named plaintiff sought "to be declared a representative of the putative class of 'all other unwed pregnant girls'" who were fraudulently induced to enter group home for girls); *see also Swan v. Board of Educ. of City of Chicago*, Nos. 13 C 3623, 13 C 3624, 2013 WL 4401439, at *2 (N.D. Ill. Aug. 15, 2013) (granting expedited discovery where plaintiff parents of special education students alleged that school closures would disproportionately harm their children, in violation of ADA).[6]

The Plaintiff children similarly seek systemic relief to remedy ongoing and significant harms. They "spend their formative years isolated from their families and communities as they

---

[6] Although many of these cases involved a preliminary injunction motion in addition to the motions for class certification and expedited discovery, these cases are factually analogous because they involve vulnerable children who need their legal claims to be resolved expeditiously in order to address the fact or conditions of their placement while under state supervision, akin to Plaintiffs' claims that the Plaintiff children are unnecessarily institutionalized or at serious risk of institutionalization. Although Plaintiffs will demonstrate that "indivisible" injunctive relief is appropriate here, such that the Plaintiff class comports with Federal Rule 23(b)(2), Plaintiffs believe that additional factual development is needed to develop a record for the Court's decision on the contours of the injunctive remedy, and so do not move for preliminary relief at this time. The discovery sought should "better enable the [C]ourt to judge the parties' interests and respective chances for success" on Plaintiffs' class certification motion. *Garnett*, 2017 WL 8944640, at *2 (citing *Edudata Corp. v. Sci. Computers, Inc.*, 599 F. Supp. 1084, 1088 (D. Minn. 1984)).

cycle through institutions," and experience poorer school attendance and performance, poorer clinical and functional outcomes, increased suicide attempts, and increased contacts with law enforcement, compared with children who receive ICBS in their own homes and communities. Compl. ¶ 48 (citing U.S. Dep't of Justice, *West Virginia Children's Mental Health System Findings Letter*, at 9 (June 1, 2015), https://www.ada.gov/olmstead/documents/west_va_findings_ltr.pdf). This cycling raises the risk of re-institutionalization; as the Department of Justice has found, "[c]hildren previously placed in a segregated residential treatment facility are more at risk of subsequent placement."[7] These residential stays have not been shown to be effective in treating children's mental health needs,[8] including because youth grouped together in institutions "are more likely to influence each other in negative rather than positive ways."[9]

These concerns are also present for children who become involved in the delinquency system, such as children with mental health disabilities under DYRS custody, who, because of

---

[7] U.S. Dep't of Justice, West Virginia Children's Mental Health System Findings Letter, at 16; *see also* Sigrid S. James, Ph.D., et al., *Residential Care for Youth in the Child Welfare System: Stop-Gap Option or Not?*, 29 RESID. TREAT. CHILD & YOUTH 1, at 15 (2012) https://www.ncbi.nlm.nih.gov/pmc/articles/PMC3835815/ (statistically significant relationship determined between prior residential placements and extended subsequent residential placements).

[8] Children's Law Center, Improving the Children's Mental Health System in the District of Columbia, at 35 (2012) (cited in Compl. ¶ 45 n.9), http://www.childrenslawcenter.org/sites/default/files/attachments/resources/Improving%20the%20Children's%20Mental%20Health%20System%20in%20the%20District%20of%20Columbia%20-%202012%20Report.pdf.

[9] Judge David L. Bazelon Center for Mental Health Law, The Detrimental Effects of Group Placements/Services for Youth with Behavioral Health Problems, at 2 (2008), https://www.maine.gov/corrections/jjag/ReportsPubs/Deviant-Peer-Influences-Fact-Sheet.pdf.

the lack of ICBS in the system and its detention facilities, are more likely to recidivate or engage in other problem behavior resulting in their placement in an institutional setting.[10]

The Plaintiff children suffer unique, debilitating harms from Defendants' failures; because there are no residential treatment facilities in the District of Columbia, children are often placed in facilities "which are far away from the District and therefore cut off from their communities and unable to see their families.  Evidence shows that this isolation impedes [their] clinical treatment and their quality of life."[11]

Plaintiffs need the narrowly-tailored discovery they seek so that they may advance their claims of systemic violations and systemic harms—and resolve them—as quickly as possible.[12]

### C. Plaintiffs Establish Good Cause for Expedited Discovery Prior to the Resolution of Defendants' Motion to Dismiss.

Plaintiffs acknowledge this Court's caution that "[e]ven filing a motion for expedited discovery after briefing of motions to dismiss has concluded is 'well in advance of typical discovery,'" *Attkisson*, 113 F. Supp.3d at 165 (citing *Landwehr v. FDIC*, 282 F.R.D. 1, 4 (D.D.C.

---

[10] *See* U.S. Dep't of Justice, Office of Juvenile Justice and Delinquency Prevention, Intersection between Mental Health and the Juvenile Justice System, at 5 (2017), https://www.ojjdp.gov/mpg/litreviews/Intersection-Mental-Health-Juvenile-Justice.pdf (in addition to raising risk of recidivism, "[j]uvenile detention and correctional facilities may impact youths with mental health issues due to overcrowding, lack of available treatment/services, and separation from support systems (such as family members and friends").

[11] Children's Law Center, *Improving the Children's Mental Health System in the District of Columbia*, *supra* note 8, at 35.

[12] Plaintiffs vigorously contest Defendants' motion to dismiss and any assertion that the parties should prolong the beginning of class discovery until after decision on that motion.   Delaying the start of class discovery, and then waiting to begin merits proceedings after that, will amount to a delay in resolving Plaintiffs' claims that is "more likely [to] be measured in years[,] not months."  *Waterbury Hosp. v. U.S. Foodservice, Inc.*, Civil Action No. 3:06-CV-1657 (CFD) (TPS), 2007 WL 328899, at *2 (D. Conn. Feb. 1, 2007) (permitting class discovery to proceed while motion to dismiss was pending).

2010)).  Plaintiffs respectfully submit that, unlike the plaintiffs in *Attkisson*, they have made strong showings on the other applicable factors in the Court's good cause test.[13]  This is not a case in which Plaintiffs are attempting to "file a complaint first and thereafter endeavor to develop a cause of action."  *Attkisson*, 113 F. Supp.3d at 164 n.4 (quoting *Butera & Andrews v. International Bus. Machines. Corp.*, 456 F. Supp.2d 104, 114 (D.D.C. 2006)).  This is a case in which Plaintiffs must satisfy the Court's "careful and searching" Rule 23 inquiry,[14] while at the same time moving as quickly as possible to resolve their systemic claims.  Plaintiffs move for expedited discovery in order to satisfy both concerns.

---

[13] *See*, *e.g.*, *Garnett*, 2017 WL 8944640, at *3 (deciding that, despite timing of Plaintiffs' discovery request, "for the limited discovery the Court intends to allow this factor is outweighed by the others").

[14] *Campbell*, 311 F. Supp.3d at 296 (quoting *Kottaras v. Whole Foods Mkt, Inc.*, 281 F.R.D. 16, 26 (D.D.C. 2012)).

## CONCLUSION

For the reasons above, Plaintiffs respectfully request that their motion for expedited discovery be granted and that they be permitted to serve the document requests described in Exhibit A on Defendants.

Respectfully Submitted,

*/s/ Lewis L. Bossing*
Ira A. Burnim (D.C. Bar No. 406154)
Mark Murphy (D.C. Bar No. 1048467)
Lewis L. Bossing (D.C. Bar No. 984609)
JUDGE DAVID L. BAZELON CENTER FOR MENTAL HEALTH LAW
1101 15th Street NW, Suite 1212
Washington, D.C. 20005
Tel: (202) 467-5730

Sandra J. Bernstein (D.C. Bar No. 455355)
Mary Nell Clark (D.C. Bar No. 419732)
Jessica V. Den Houter (D.C. Bar No. 241475)
DISABILITY RIGHTS DC AT UNIVERSITY LEGAL SERVICES
220 I Street NE, Suite 130
Washington, D.C. 20002
Tel: (202) 547-0198

Seth M. Galanter (D.C. Bar No. 479919)
Alice Y. Abrokwa (D.C. Bar No. 1023510)
NATIONAL CENTER FOR YOUTH LAW
1313 L Street NW, Suite 130
Washington, D.C. 20005
Tel.: (202) 868-4786

Howard Schiffman (D.C. Bar No. 358814)
Jason T. Mitchell (D.C. Bar No. 1005757)
Jeremy Bachrach Siegfried (D.C. Bar No. 155778)
SCHULTE ROTH & ZABEL LLP
901 Fifteenth Street NW, Suite 800
Washington, D.C. 20005
202-729-7470

*Counsel for Plaintiffs*