**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

---

M.J., et al.,

      Plaintiffs,

         v.

THE DISTRICT OF COLUMBIA, et al.,

      Defendants.

Civ. No. 1:18-cv-1901 (EGS)

---

## MEMORANDUM OPINION

Plaintiffs, M.J. and L.R.,[1] two children who suffer from
mental illnesses, and University Legal Services, Inc., the
designated protection and advocacy program for such individuals
in the District of Columbia, bring this action on behalf of
themselves and a putative class of mentally-ill children who
allegedly have been unnecessarily institutionalized or face
unnecessary institutionalization. In their complaint, plaintiffs
allege that the District of Columbia ("District of Columbia" or
"District") and its officials (collectively "Defendants") have
failed to provide intensive community-based services, in favor
of admitting children to residential facilities even though the
children are eligible for community-based treatment. Plaintiffs

---

[1] Pursuant to Federal Rules of Civil Procedure and Local Rule
5.4(f)(2), the minor individual plaintiffs are identified by
their initials.

seek declaratory and injunctive relief based on alleged violations of federal law including the Medicaid Act 42 U.S.C. § 1396d *et seq.* and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131, *et seq.*

Pending before the Court is defendants' motion to dismiss the complaint. Defendants argue that plaintiffs do not have standing to bring this action, and, in the alternative, that plaintiffs have failed to state a cognizable claim. Upon consideration of the parties' memoranda, the applicable law, and for the following reasons, defendants' motion to dismiss is **DENIED**.

## I. Background

Plaintiffs M.J. and L.R. are Medicaid-eligible children with mental health disabilities. Compl., ECF No. 3 ¶ 1. Both plaintiffs as well as all members of the plaintiffs' putative class have a mental health disability by virtue of having a serious emotional disturbance. *Id.* ¶ 13. Under District of Columbia law, a child has a serious emotional disturbance when a child has a mental health condition and that condition causes a functional impairment. *Id.* ¶ 14 (citing D.C. Mun. Regs. Tit. 22-A, § 1201.l). The functional impairment also needs to, on an episodic, recurrent or continuous basis, substantially limit the child's functioning in family, school, or community services; or limit the child from achieving or maintaining one or more

developmentally appropriate social, behavioral, cognitive, communicative, or adaptive skills. *Id.* Because the children are "individuals with a disability" they are also protected by the ADA and the Rehabilitation Act. *Id.* (citing 42 U.S.C. § 12102; 29 U.S.C. § 705(20)(B)).

Plaintiff University Legal Services is an independent, non-profit corporation organized under the laws of the District of Columbia that does business under the name Disability Rights D.C. at University Legal Services ("Disability Rights D.C."). Compl., ECF No. 3 ¶ 15. Disability Rights D.C. is the designated protection and advocacy program for individuals with disabilities for the District of Columbia. *Id.* The organization is authorized under the Protection and Advocacy for Individuals with Mental Illness Act, 42 U.S.C. § 10801 *et seq.*, and the Protection and Advocacy for Individuals with Developmental Disabilities Act, 42 U.S.C. § 15041 *et seq.*, to bring this action on behalf of the named individual plaintiffs and members of the putative class, who are its constituents. *Id.*

Defendant District of Columbia is a public entity covered by Title II of the ADA, and, as a participant in the federal Medicaid program, its agencies receive federal financial assistance through that and other federal programs. *Id.* ¶ 16. Defendant Muriel Bowser is the Mayor of the District of Columbia and supervises the official conduct of the Departments of Health

Care Finance ("DHCF") and Behavioral Health ("DBH"). *Id.* ¶ 17. Defendants Wayne Turnage and Tanya Roster are the Directors of DHCF and DBH respectively. *Id.* ¶¶ 18-19. All four defendants play a role in ensuring the District is in compliance with federal law. *Id.* ¶¶ 16-19.

Under the Medicaid Act, a state must provide "early and periodic screening, diagnostic, and treatment ["EPSDT"] services (as defined in subsection (r)) for individuals who are eligible under the plan and are under the age of 21." 42 U.S.C. § 1396d(a)(4)(A). Those services are defined as screening services (including physical exams, immunizations, health and developmental health history review, and laboratory tests), vision services, dental services, hearing services, and "[s]uch other necessary health care, diagnostic services, treatment, and other measures . . . to correct or ameliorate defects and physical and mental illnesses and conditions discovered by screening services, whether or not such services are covered under the State plan." 42 U.S.C. § 1396d(r)(5). Section 1396d(a) describes a list of services which, if medically necessary, must be provided to EPSDT beneficiaries.

Plaintiffs allege that defendants have never created a functioning system for providing intensive community-based services ("ICBS") to District of Columbia children who are entitled to receive it. *See* Compl., ECF No. 3 ¶ 38. ICBS is

4

comprised of four components: (1) Intensive Care Coordination, (2) Intensive Behavior Support Services, (3) Mobile Crisis Services; and (4) Therapeutic Foster Care.[2] *See Id.* ¶ 39. Plaintiffs allege that these components are unique and are collectively necessary to meet the health care needs of eligible children. *See id.* ¶¶ 38–41.

The first component, intensive care coordination, is "an intensive form of case management in which a provider convenes a 'child and family team,' including the child, the child's family, service providers, and other individuals identified by the family, to design and supervise a plan that provides and coordinates services for children with mental health disabilities." *Id.* ¶ 39. The second component, intensive behavior support services, consists of "individualized therapeutic interventions provided on a frequent and consistent basis that are designed to improve behavior and delivered to children and families in any setting where the child is naturally located." *Id*. The third component, mobile crisis services, involves a "mobile, onsite, in-person response, available at any time or place to a child experiencing a crisis, for the purpose of identifying, assessing, and stabilizing the

---

[2] Therapeutic foster care is not at issue in this case; the plaintiffs have not made any allegations regarding this provision. *See generally*, Pls.' Compl., ECF No. 3.

situation and reducing any immediate risk of harm." *Id.* Mobile crisis services may be "delivered in the child's home, school, or community." *Id.*

Plaintiffs' complaint alleges that the District of Columbia has failed to offer the plaintiff children all of the required components of ICBS, which are collectively necessary to meet their mental health needs. Compl., ECF No. 3 ¶¶ 38–48. As a result, plaintiffs allege that the children are deprived of the ICBS that they need to improve their conditions and avoid unnecessary institutionalization or the serious risk of institutionalization. *Id.* ¶¶ 49–65. Plaintiffs therefore bring this action for violations of the ADA, Section 504 of the Rehabilitation Act, and violations of the Medicaid Act enforced through 42 U.S.C. § 1983. *Id.* ¶¶ 66–73.

Defendants have moved to dismiss plaintiffs' complaint under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction and 12(b)(6) for failure to state a claim. *See generally* Defs.' Mot., ECF No. 21. Plaintiffs have filed their opposition to the motion to dismiss. Pls.' Opp'n, ECF No. 29. And defendants have filed a reply thereto. Defs.' Reply, ECF No. 33. This motion is ripe for adjudication.

## II. Standard of Review

### A. Rule 12(b)(1): Subject Matter Jurisdiction

"A federal district court may only hear a claim over which

6

[it] has subject matter jurisdiction; therefore, a Rule 12(b)(1) motion for dismissal is a threshold challenge to a court's jurisdiction." *Gregorio v. Hoover*, 238 F. Supp. 3d 37 (D.D.C. 2017)(citation and internal quotation marks omitted). To survive a Rule 12(b)(1) motion, the plaintiff bears the burden of establishing that the court has jurisdiction by a preponderance of the evidence. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, (1992). Because Rule 12(b)(1) concerns a court's ability to hear a particular claim, "the court must scrutinize the plaintiff's allegations more closely when considering a motion to dismiss pursuant to Rule 12(b)(1) than it would under a motion to dismiss pursuant to Rule 12(b)(6)." *Schmidt v. U.S. Capitol Police Bd.*, 826 F. Supp. 2d 59, 65 (D.D.C. 2011)(citations omitted). In so doing, the court must accept as true all of the factual allegations in the complaint and draw all reasonable inferences in favor of the plaintiff, but the court need not "accept inferences unsupported by the facts alleged or legal conclusions that are cast as factual allegations." *Rann v. Chao*, 154 F. Supp. 2d 61, 64 (D.D.C. 2001).

In reviewing a motion to dismiss pursuant to Rule 12(b)(1), the court "may consider such materials outside the pleadings as it deems appropriate to resolve the question [of] whether it has jurisdiction to hear the case." *Scolaro v. D.C. Bd. of Elections*

*& Ethics*, 104 F. Supp. 2d 18, 22 (D.D.C. 2000). Faced with motions to dismiss under Rule 12(b)(1) and Rule 12(b)(6), a court should first consider the Rule 12(b)(1) motion because "[o]nce a court determines that it lacks subject matter jurisdiction, it can proceed no further." *Ctr. for Biological Diversity v. Jackson*, 815 F. Supp. 2d 85, 90 (D.D.C. 2011) (citations and internal quotation marks omitted).

### B. Rule 12(b)(6): Failure to State a Claim

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)(internal quotation marks omitted).

Despite this liberal pleading standard, to survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is facially plausible when the facts pled in the complaint allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The standard does not amount to a "probability requirement," but it

does require more than a "sheer possibility that a defendant has acted unlawfully." *Id.*

"[W]hen ruling on a defendant's motion to dismiss [pursuant to Rule 12(b)(6)], a judge must accept as true all of the factual allegations contained in the complaint." *Atherton v. D.C. Office of the Mayor*, 567 F.3d 672, 681 (D.C. Cir. 2009) (internal quotation marks omitted). In addition, the court must give the plaintiff the "benefit of all inferences that can be derived from the facts alleged." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).

## III. Analysis

Defendants argue that the claims in this case should be dismissed under Federal Rule 12(b)(1) because plaintiffs M.J., L.R., and Disability Rights D.C. lack standing, and alternatively that the case should be dismissed under Federal Rule 12(b)(6) because plaintiffs have failed to state a claim. The Court discusses each argument in turn.

### A. Motion to Dismiss for Lack of Jurisdiction

To establish subject matter jurisdiction a court must find that at least one plaintiff has standing to bring this case under Article III of the United States Constitution. *Mendoza v. Perez*, 754 F.3d 1002, 1010 (D.C. Cir. 2014). To have standing, a plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the

defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* (citation omitted). "The party invoking federal jurisdiction bears the burden of establishing these elements." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)(citations omitted). Because the elements of standing are not "mere pleading requirements but rather an indispensable part of the plaintiff's case," they each "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.,* with the manner and degree of evidence required at the successive stages of the litigation." *Id.*

### 1. M.J. has Standing

Defendants argue that M.J. lacks an injury in fact because she has previously declined the type of services she now seeks in this suit. Defs.' Mot., ECF No. 21 at 19–20.[3] Defendants also argue that M.J.'s claims are moot because any legally cognizable interest in the outcome of the litigation was extinguished once

---

[3] When citing to electronic filings throughout this Memorandum Opinion, the Court cites to the ECF header page number, not the page number of the filed document.

M.J. refused services. *Id.* In support of this argument, defendants provide a declaration from Patrina Anderson, Director of the Linkage and Assessment Division at the District of Columbia Department of Behavioral Health. *See* Decl. of Patricia Anderson ("Anderson Decl."), ECF No. 21-4. Ms. Anderson states that M.J. is currently receiving Level II community-based interventions ("CBI"), and that M.J.'s mother declined High Fidelity Wrap Around services[4] after a referral was made to DBH by the Children's National Hospital Center. *Id.* ¶¶ 3-4. She also states that M.J.'s mother inquired about the wrap around services at a later date but then told M.J.'s CBI worker that she did not want the services. *Id.* ¶¶ 6-9.

Plaintiffs deny that the wrap around and CBI services qualify as ICBS because they are short term and not equivalent to the "intensive behavior support services" that are a core component of ICBS. Pls.' Opp'n, ECF No. 29 at 18. Moreover, even if these wrap around services qualified, plaintiffs dispute that M.J.'s mother has refused these services. *Id.* M.J. provides a declaration from her mother, J.J., in which she explains that she has sought to obtain the services offered by the City and that her initial refusal was based on a misunderstanding of the nature of the High Fidelity Wrap Around services that were

---

[4] High Fidelity Wrap Around services is an intensive form of case management. Compl., ECF No. 3 ¶¶ 39-41.

offered to her. *See* Redacted Decl. of J.J. ("J.J. Decl."), ECF
No. 40 ¶ 5. M.J.'s mother stated that, after receiving a more
fulsome explanation of the services, she requested that M.J.
receive those services. *Id.* ¶ 7. Her declaration also details
several efforts that she has made to obtain High Fidelity Wrap
Around services for M.J. *Id.* ¶¶ 8-14. J.J. maintains that she is
still interested in receiving these services for her daughter.
*Id.* ¶ 15.

The Court is persuaded that M.J. has demonstrated that she
has alleged facts sufficient to show that she has suffered an
injury in fact. As an initial matter, because M.J. has alleged
that High Fidelity Wrap Around services and CBI are short-term
backstops which fall outside the category of ICBS, defendants'
argument that M.J.'s refusal of these services precludes an
injury in fact in this case is unpersuasive. M.J. has alleged
that these types of short-term programs are not as intensive as
ICBS requires and therefore have led to repeated disruptions to
her education and periods of institutionalizations in hospitals.
*See* Compl., ECF No. 3 ¶¶ 51, 54-56. In light of those
allegations, it is irrelevant if M.J. refused those services
because they arguably are not categorized as ICBS.

Moreover, even if the services did constitute ICBS, the
issue of whether M.J. has requested High Fidelity Wrap around
services is a factual dispute. In deciding a motion to dismiss,

a court "may consider such materials outside the pleadings as it deems appropriate to resolve the question [of] whether it has jurisdiction to hear the case." *Scolaro*, 104 F. Supp. 2d at 22. M.J.'s mother's declaration explains that initially she did not receive an accurate explanation of what the wrap around services entailed and therefore believed that they were duplicative of the services M.J. was already receiving. J.J. Decl., ECF No. 40 ¶ 5. However, once she was informed that the services were not duplicative, she declared that she has repeatedly tried to obtain those services for M.J. *Id.* ¶¶ 8-14. Drawing all reasonable inferences in favor of M.J., as the Court must do at this stage of the litigation, the Court accepts the allegation that M.J.'s mother has not refused services.[5] *See Rann*, 154 F. Supp. 2d at 64 ("In reviewing a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the court must accept all the complaint's well-pled factual allegations as true and draw all reasonable inferences in the plaintiff's favor.")

The Court finds that M.J.'s allegations--that defendants' ongoing failure to provide requested ICBS has subsequently led to unnecessary institutionalizations--is sufficient to meet the injury in fact requirement. Defendants do not dispute the other

---

[5] Similarly, because the plaintiffs have sufficiently alleged that M.J. has requested, but has not received, these services the government's mootness argument also fails.

two requirements for standing, redressability and causation, and it appears to the Court that these components have been adequately alleged. Accordingly, M.J. has standing to pursue her claims.

### 2. L.R. has Standing

Defendants next argue that plaintiff L.R. lacks standing to pursue her claims because she was in the custody of the Department of Youth Rehabilitation Services ("DYRS") and therefore not eligible to receive services from Medicaid. Defs.' Mot. ECF No. 21 at 20-21. In other words, L.R. cannot suffer an injury because the defendant cannot provide her services to which she claims she is entitled. *Id.* In support of this argument, defendants provide a DHCF transmittal for "incarcerated individuals" which outlines the policy for claims by individuals in certain DYRS facilities. *Id.* (citing DHCF Transmittal, ECF No. 21-5 at 1). Similarly, defendants argue that because L.R. is under DYRS custody by court order, any lack of ICBS is not attributable to the defendants, but rather to legal process. *Id.*

The parties' disagreement stems from dueling interpretations of the DHCF transmittal. The transmittal "clarifies existing Federal law and policy pertaining to the availability of Medicaid Federal Financial Participation ("FFP") for medical services provided to children . . . who are confined

to the Youth Services Center (YSC) and New Beginnings Youth Development Center." DHCF Transmittal, ECF No. 21-5 at 1. The transmittal explains that for children in those two institutions "Medicaid cannot pay and providers should not submit claims for outpatient health care services provided to these children." *Id.* at 2. This is because "Federal Medicaid law and regulations prohibit payment for medical services provided to a child or youth when they are 'inmates of a public institution.'" *Id.* at 1 (citing 42 C.F.R. § 435.1009).

The Court is persuaded that L.R. has demonstrated that she has alleged facts sufficient to show that she has suffered an injury in fact. By its own terms, the transmittal only applies to two facilities--the Youth Services Center and the New Beginnings Development Center. *Id.* at 1. L.R. was not in either facility when this suit was filed and therefore even if there was a prohibition on Medicaid eligibility, that prohibition would not cover L.R. *See* Pls.' Opp'n, ECF 29 at 22; *see also* Redacted Declaration of Jane Brown ("Brown Declaration"), ECF No. 41 at 8–9. Additionally, L.R. was released from DYRS custody in late October, and therefore there is presently no question as to her eligibility for Medicaid. *See id.* at 7. Therefore, since she is not receiving services that she has requested and that she alleges defendants are obligated to provide, she has an injury in fact. Defendants do not dispute the other two

requirements for standing, redressability and causation, and it appears to the Court that these components have been adequately alleged. Accordingly, L.R. has standing to pursue her claims.[6]

**B. Motion to Dismiss for Failure to State a Claim**

Defendants argue that the plaintiffs have failed to state a claim for violations of the ADA, the Rehabilitation Act, and failed to state a claim for a violation of 42 U.S.C. § 1983.

**1. ADA and Rehabilitation Act Claims**

The ADA and Section 504 of the Rehabilitation Act require that "public entities and programs receiving federal funds take reasonable steps to avoid administering their programs in a manner that results in the segregation of individuals with disabilities." *Brown v. District of Columbia*, 322 F.R.D. 51, 53 (D.D.C. 2017)(*overruled on other grounds by Brown v. District of Columbia*, 2019 WL 2895992 (D.C. Cir. July 5, 2019)). Specifically, the ADA mandates that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be

---

[6] Because the Court has found at least one of the plaintiffs has standing in this case the Court has subject matter jurisdiction over the action and need not address defendants' arguments related to Disability Rights D.C.'s standing. *See Mendoza v. Perez*, 754 F.3d 1002, 1010 (D.C. Cir. 2014)("To establish jurisdiction, the court need only find one plaintiff who has standing.").

subjected to discrimination by any such entity." 42 U.S.C.
§ 12132. This requirement is commonly referred to as the
"integration mandate" since it requires the government to ensure
those who suffer from a disability are not unnecessarily
excluded from society. *See Olmstead v. L.C. ex rel. Zimring*, 527
U.S. 581, 583 (1999)(stating "[i]nstitutional placement of
persons who can handle and benefit from community settings
perpetuates unwarranted assumptions that persons so isolated are
incapable or unworthy of participating in community life.")

In *Olmstead*, the Supreme Court elaborated on the
integration mandate. The Court considered the claims of two
women who were institutionalized in a residential mental health
facility even though treatment providers at the facility
concluded that the women could be appropriately treated in the
community. *Id.* at 593. The *Olmstead* plaintiffs claimed that in
light of the recommendation that they could be treated in the
community, their continued institutional placements violated
Title II of the ADA. *Id.* at 594. The Court held that
"[u]njustified isolation . . . is properly regarded as
discrimination based on disability." *Id.* at 597. Although the
Court explained that it did not "hold that the ADA imposes on
the States a 'standard of care' for whatever medical services
they render, or that the ADA requires States to 'provide a
certain level of benefits to individuals with disabilities,'" it

made clear that "States must adhere to the ADA's nondiscrimination requirement with regard to the services they in fact provide." *Id.* at 603 n.14. The Court held that governmental entities are required to provide community-based services to individuals with disabilities when: (1) such services are appropriate; (2) the individuals do not oppose community-based services; and (3) the individuals' placement in a community-based setting can be reasonably accommodated, considering the resources available to the entity and the needs of others who are receiving those services. *Id.* at 607.

Defendants advance two arguments for why plaintiffs have failed to state a claim for an alleged violation of the ADA's integration mandate. Defendants' first argument is that plaintiffs generally failed to allege an *Olmstead* violation because they have not challenged the location of the services, but rather the nature of the services that the District provides. Defs.' Mot. ECF No. 21 at 24–25. In other words, defendants argue, plaintiffs are challenging a standard of care but not whether the care they are receiving is in the most integrated setting. *Id.* Defendants' second argument is that M.J. and L.R. cannot meet all of the three requirements articulated in *Olmstead*. *Id.* at 26

Defendants' first argument fails because it is based on a fundamental misunderstanding of plaintiffs' claims. Plaintiffs

have alleged that because defendants have failed to provide required services in their homes, or in the community, they are unnecessarily institutionalized. Compl., ECF No. 3 ¶ 48. And because defendants have failed to provide those services, plaintiffs argue, plaintiffs are unnecessarily segregated into residential institutions. *Id.* Plaintiffs' allegations are sufficient to state claims under *Olmstead*. *See* 527 U.S. at 599. *Olmstead* itself made clear that "unjustified institutional isolation of persons with disabilities is a form of discrimination." *Id.* at 600. The Court explained that the recognition of this principle reflects the understanding that "institutional placement of persons who can handle and benefit from community settings perpetuates unwarranted assumptions that persons so isolated are incapable or unworthy of participating in community life" and that "confinement in an institution severely diminishes the everyday life activities of individuals, including family relations, social contacts, work options, economic independence, educational advancement, and cultural enrichment." *Id.* at 601–02.

Plaintiffs have alleged these exact harms and others. They allege that they suffer "curtailed life opportunities due to [d]efendants' continuing, longstanding failure to satisfy federal laws requiring the District of Columbia to provide medically necessary services that prevent unnecessary

institutionalization." Compl., ECF No. 3 ¶ 2. *Olmstead* stands

for the proposition that it is a violation of the ADA, the

Rehabilitation Act, and their implementing regulations to

required disabled individuals to obtain treatment in residential

institutions when such individuals have the ability and desire

to receive treatment in more integrated community settings.

This is exactly what the plaintiffs allege--that the failure of

the State to provide required services forces them to reside in

institutions even though they are able and willing to engage in

community-based treatment. 527 U.S. at 599. At this stage of the

litigation, allegations that defendants failed to provide

mandated services, which has the effect of segregating

plaintiffs, are sufficient to state a claim of discrimination

under *Olmstead*.

Defendants' second argument is that the plaintiffs cannot

meet all the requirements set forth in *Olmstead*. Again, to make

out a claim under *Olmstead*, a plaintiff must allege that (1) the

services requested are appropriate; (2) the individuals do not

oppose community-based services; and (3) the individuals'

placement in a community-based setting can be reasonably

accommodated. *Olmstead*, 527 U.S. at 607. Defendants argue that

neither plaintiff can meet all of these requirements.

Defendants argue that M.J. fails at the first prong because

she has failed to allege that during the times she was

institutionalized, community-based treatment would have been an appropriate alternative. Defs.' Mot. ECF No. 21 at 25-26. However, it is not clear whether *Olmstead* requires that a plaintiff allege a specific determination by a medical professional that the plaintiff is suitable for community-based treatment. In *Olmstead*, the Court stated that "the State generally *may* rely on the reasonable assessments of its professionals in determining whether an individual 'meets the essential eligibility requirements' for habilitation in a community-based program." *Olmstead*, 527 U.S. at 602 (citing 28 CFR § 35.130(d))(emphasis added). The Court did not state that a determination by a State's own professionals is the only way that a plaintiff may establish that the first prong is satisfied. Accordingly, courts have held that a plaintiff need not allege that a treatment provider has explicitly recommended that community-based treatment is appropriate. *See Stemiel v. Wernert*, 823 F.3d 902, 915-16 (7th Cir. 2016)(whether community based treatment was appropriate could be demonstrated by allegations that the state had previously allowed plaintiffs more community interaction); *Long v. Benson*, No. 08-0026, 2008 WL 4571904, at *2 (N.D. Fla. 2008)(refusing to limit class to individuals whom state professionals deemed could be treated in the community, because a State "cannot deny the [integration] right simply by refusing to acknowledge that the individual

could receive appropriate care in the community. Otherwise the right would, or at least could, become wholly illusory.").

This is especially the case when a plaintiff alleges that the state failed to provide required community-based treatment programs. This is because a plaintiff would not have an occasion to be assessed for programs that should, but do not, exist. At this stage of the litigation, plaintiffs have alleged that they are able to live in their homes and communities, if the District provided the required treatment; these allegations are enough to meet the pleading standards. At a later stage, plaintiffs will be required to provide evidence to back up their claims that community-based treatment was appropriate, but that requirement will not be imposed on them at this stage of the proceedings. *See Boyd v. Steckel*, 753 F. Supp. 2d 1163 (M.D. Ala. 2010)(stating dispute regarding whether plaintiff was eligible for community based-services should be resolved "at summary judgment or trial")

As for L.R., defendants argue she cannot meet the third prong of the *Olmstead* test, whether an individuals' placement in a community-based setting can be reasonably accommodated, because she is in custody pursuant to court order. However, plaintiffs have alleged that compliance with federal law that requires defendants to provide ICBS services would not require a fundamental alteration to defendants' service system, which is

all that is required at this stage. *See* Compl., ECF No. 3 ¶ 70;
*see, e.g.*, *Martin v. Taft*, 222 F. Supp. 2d 940, 972 (S.D. Ohio
2002)("[W]hether requested relief would entail a fundamental
alteration is a question that cannot be answered in the context
of a motion to dismiss . . . ."); *Doe v. Sylvester*, No. CIV. A.
99-891, 2001 WL 1064810, *6 (D. Del. Sep. 11, 2001)(stating
"[u]ltimate factual determinations" regarding reasonableness of
requested modification are "not for the court to decide in the
context of a motion to dismiss"). Therefore, the Court finds
that plaintiffs have stated a claim under the ADA and the
Rehabilitation Act.

## 2. Section 1983 Medicaid Act Claims

Defendants next argue that plaintiffs fail to state a claim
under Section 1983 for violations of the Medicaid Act.[7] In
precedent of long-standing, the Supreme Court has held that
Section 1983 is an available remedy for violations of federal
statutes. *Maine v. Thiboutot*, 448 U.S. 1, 7-8 (1980). To
determine municipal liability under Section 1983, a court must
conduct a two-step inquiry. *Baker v. Dist. of Columbia*, 326 F.3d

---

[7] Although plaintiffs' complaint refers to violations of the
federal "Medicaid Act," the Medicaid statutory provisions are
found in Title XIX of the Social Security Act, codified at 42
U.S.C. § 1396, *et seq.* Violations of Title XIX of the Social
Security Act are properly enforced through 42 U.S.C. § 1983
which provides a cause of action for violations of federal law.
*See Salazar v. District of Columbia*,954 F. Supp. 278 (D.D.C.
1996).

1302, 1306 (D.C. Cir. 2003). First, a court must determine
whether the plaintiff establishes a predicate constitutional or
statutory violation. *Id.* If so, a court then determines whether
the complaint alleges that a custom or policy of the
municipality caused the violation. *Id.*; *see also Monell v. Dep't
of Soc. Servs.*, 436 U.S. 658, 694 (1978).

### i. Plaintiffs Have Sufficiently Alleged a Statutory Violation

The Medicaid Act mandates that a state provide "early and
periodic screening, diagnostic, and treatment services (as
defined in subsection (r)) for individuals who are eligible
under the plan and are under the age of 21." *See also* 42 U.S.C.
§ 1396a(a)(43)(C). Those services are defined as screening
services (including a physical exam, immunizations, health and
developmental health history review, and laboratory tests),
vision services, dental services, hearing services, and "[s]uch
other necessary health care, diagnostic services, treatment, and
other measures . . . to correct or ameliorate defects and
physical and mental illness and conditions discovered by
screening services, whether or not such services are covered
under the State plan." 42 U.S.C. § 1396d(r)(5); *see also* 42
C.F.R. § 440.40(b). EPSDT requires the State to screen eligible
children "to determine the existence of certain physical or
mental illnesses or conditions," 42 U.S.C. § 1396d(r)(1)(A)(ii);

and the Act requires the State "to correct or ameliorate defects and physical and mental illnesses and conditions discovered by the screening services, whether or not such services are covered under the State plan." 42 U.S.C. § 1396d(r)(5). Section 1396d(a) describes a list of services which, if medically necessary, must be provided to EPSDT beneficiaries.

Plaintiffs allege that the failure to provide ICBS services violates the EPSDT mandate. Compl., ECF No. 3 ¶ 72. They argue that the District failed to make available the three critical components of ICBS: (1) intensive care coordination; (2) intensive behavioral support services; and (3) mobile crisis services. Pls.' Opp'n, ECF No. 29 at 33. Defendants argue that plaintiffs have failed to allege a statutory violation. Although defendants agree that the District is required to provide certain services, they argue that plaintiffs have only challenged how the services are administered and not that the services have not been received. Defs.' Mot., ECF No. 21 at 28–29.

Plaintiffs' allegations are sufficient to survive a motion to dismiss. The defendants' argument that plaintiffs take issue with the delivery method of the services, not whether the services are offered, is belied by plaintiffs' complaint. Plaintiffs allege that ICBS is "medically necessary to improve [plaintiffs'] mental health conditions." Compl., ECF No. 3 ¶ 38.

Plaintiffs allege that "there is no service provider in the District that offers ICBS." *Id.* ¶ 41. Plaintiffs go on to identify the three components of ICBS that they allege defendants have failed to provide: intensive care coordination, intensive behavior support services, and mobile crisis services. *Id.* ¶ 39. Plaintiffs acknowledge that although the District provides "community-based intervention," this intervention does not include sufficiently intensive behavior support services. *Id.* ¶ 43. In light of these allegations, defendants' claim that plaintiffs are merely alleging the delivery methods of the interventions--not whether the interventions exist at all--is factually inaccurate.

Defendants next argue that ICBS is not required by the Medicaid Act because ICBS is not a required Medicaid service. Defs.' Reply, ECF No. 33 at 12. Defendants argue that plaintiffs are instead required to specify exactly what treatments "they believe the District is not providing" to have a cognizable claim under the Medicaid Act. *Id.* However, as other courts have noted, because the only limit placed on the provision of EPSDT services is the requirement that they be "medically necessary," the scope of the EPSDT program is wide-ranging. *Pediatric Specialty Care, Inc. v. Ark. Dep't of Human Servs.*, 293 F.3d 472, 480 (8th Cir. 2002)(holding that Medicaid-eligible children have "a federal right to early intervention day treatment when a

physician recommends such treatment"). Courts construing EPSDT requirements have ruled that so long as a competent medical provider finds specific care to be "medically necessary" to improve or ameliorate a child's condition, the Medicaid statute requires a participating state to cover it. *See, e.g., Collins v. Hamilton*, 349 F.3d 371, 375-76 (7th Cir. 2003)(holding that if a competent medical service provider determines a specific type of care or service is medically necessary, a state may not substitute a different service that it deems comparable).

Plaintiffs have identified three areas of treatment they allege are required and that the defendants have failed to provide. Compl., ECF No. 3 ¶ 38. They have alleged that ICBS is medically necessary to improve their treatment and to ensure they are not unnecessarily institutionalized. *Id.* Plaintiffs also explain why the services provided fall short of that goal. *Id.* ¶¶ 41-43. Defendants' argument that plaintiffs fail to allege that instances of services have been declined or not been provided, but rather debate the effectiveness of the services misses the point. The plaintiffs do not address the effectiveness of the services provided, but rather allege that the District fails to provide appropriate treatment opportunities in the three areas that comprise ICBS services. *Id.* 38-43. These allegations, if true, would form the basis for a statutory violation of the EPSDT mandate because such services

have been alleged to be medically necessary to ameliorate plaintiffs' mental health condition. *See* 42 U.S.C. § 1396d(r)(5). Accordingly, the plaintiffs have sufficiently alleged a statutory violation.

### ii. Plaintiffs' Have Sufficiently Alleged a Custom or Policy

To properly plead a municipal liability claim, a plaintiff must also "allege[] that a custom or policy of the municipality caused the violation." *Baker*, 326 F.3d at 1306 (citing *Monell,* 436 U.S. at 694). There are four ways in which a plaintiff can allege a custom or policy under Section 1983: (1) "the explicit setting of a policy by the government that violates the Constitution"; (2) "the action of a policy maker within the government"; (3) "the adoption through a knowing failure to act by a policy maker of actions by his subordinates that are so consistent that they have become custom"; or (4) "the failure of the government to respond to a need (for example, training of employees) in such a manner as to show deliberate indifference to the risk that not addressing the need will result in constitutional violations." *Ryan v. District of Columbia*, 306 F. Supp. 3d 334, 341 (D.D.C. 2018)(citation omitted).

Plaintiffs have alleged several theories supporting the claim that defendants have engaged in a custom or policy or violating the EPSDT requirements, including that defendants

knowingly and consistently failed to provide services under the
Medicaid Act and that defendants were deliberately indifferent
to plaintiffs' rights under the Medicaid Act. *See* Pls.' Opp'n
ECF No. 29 at 35; *see also* Compl., ECF No. 3 ¶ 73.

Applying the *Baker* analysis, the Court concludes that
plaintiffs' allegations state a claim that the District
knowingly and consistently failed to provide services under the
Medicaid Act. The complaint alleges consistent failure to
provide ICBS, and it identifies numerous occasions on which
defendants were notified of deficiencies in their service system
for the plaintiff children through the efforts of families and
advocacy groups, defendants' own data, and defendants'
discussions with plaintiffs' counsel. *See* Compl., ECF No. 3, ¶¶
7-8, 44-48.

Furthermore, plaintiffs have sufficiently alleged that the
District demonstrated "deliberate indifference" to their rights
under the Medicaid Act. In support of this allegation,
plaintiffs cite to numerous public reports throughout the
complaint demonstrating that defendants were aware of the need
for comprehensive community-based care, and the inadequacy of
the services the District currently offers. *See id.* ¶¶ 23, 39,
41, 43, 45-56. These reports support the allegations that
defendants either were aware of or should have been aware of the
lack of the necessary mental health services in the District.

*See, e.g.*, *Jones v. Ritter*, 587 F. Supp. 2d 152, 157-58 (D.D.C. 2008)(denying motion to dismiss Section 1983 claim where plaintiff alleged the District was deliberately indifferent in failing to train police officers when it was on notice of its training deficiencies and failed to act); s*ee also Byrd v. Dist. of Columbia*, 297 F. Supp. 2d 136, 139 (D.D.C. 2003)(stating deliberate indifference is "determined objectively, by analyzing whether the municipality knew or should have known of the risk of . . . violations, and yet failed to respond as necessary.") (citations omitted)  Accordingly, plaintiffs have sufficiently alleged a Section 1983 claim that survives defendants' motion to dismiss.

### C. Motion to Dismiss Individual Defendants

The individual defendants, the Mayor of the District, the Director of DBH, and the Director of DHCF, argue that the claims against them should be dismissed because they are sued in their official capacities and it is the District that is the real party in interest. Defs.' Mot., ECF No. 21 at 31–32. Defendants are correct, and plaintiffs do not disagree, that plaintiffs' claims against the individual defendants are duplicative of the claims against the District. *See Holmes–Ramsey v. District of Columbia*, 747 F. Supp. 2d 32, 42 (D.D.C. 2010)("claims against [District] officials in their official capacities are effectively claims against the District of Columbia"); *see also*

*Monell*, 436 U.S. at 690 n. 55 (a suit against a municipal official in his or her official capacity "generally represent[s] only another way of pleading an action against an entity of which an officer is an agent").

However, plaintiffs argue that the individual defendants will be responsible for the effective implementation of any prospective declaratory or injunctive relief. Pls.' Opp'n, ECF No. 29 at 41. Precedent in this district recognizes that although retaining a defendant in his or her official capacity may be "redundant, there is no requirement that, because of the equivalence, the public official defendant must be dismissed." *See e.g.*, *Owens v. District of Columbia*, 631 F. Supp. 2d 48 (D.D.C. 2009). On balance, the Court is persuaded that because of the lack of prejudice, there is no reason to dismiss the redundant claims against the District's officials. Accordingly, the Court **DENIES** the motion to dismiss the individual defendants at this time.

## IV. Conclusion

For the foregoing reasons, defendants' motion to dismiss is **DENIED.** An appropriate order accompanies this Memorandum Opinion.

**SO ORDERED.**

Signed:    **Emmet G. Sullivan**
           **United States District Judge**
           **July 25, 2019**