UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| M.J., et al., | ) |
|             Plaintiffs, | ) ) ) |
| - against - | ) ) Civ. No. 1:18-cv-1901 (EGS) |
| The District of Columbia, et al., | ) ) |
|             Defendants. | ) ) ) |

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION TO COMPEL DISCOVERY**

The Court should reject Defendants' efforts to avoid producing contact information that is highly relevant to Plaintiffs' efforts to certify a plaintiff class pursuant to Federal Rule of Civil Procedure 23. In their various responses to Plaintiffs' interrogatories and in their Opposition,[1] Defendants make shifting arguments that boil down to the unsupportable claim that information about members of a putative class is not relevant or discoverable in connection with class certification discovery until after a class is already certified. Defendants further rely on District statutes concerning confidentiality that should be found legally inapplicable in this federal litigation to enforce the civil rights of children with mental health disabilities. Many courts have rejected similar efforts to withhold contact information for putative class members prior to class certification, including similar arguments based on state confidentiality statutes and claims that putative class members' privacy interests prohibit discovery. The Court should do the same here because the contact information at issue plainly is relevant, Plaintiffs' requests are proportional

---

[1] As used herein, "Opposition" or "Opp." refers to Defendants' Opposition to Plaintiffs' Motion to Compel Discovery (ECF No. 59). Capitalized terms not otherwise defined herein shall have the same meaning as provided in Plaintiffs' Memorandum of Law in Support of Their Motion to Compel Discovery (ECF No. 55-1) ("Motion" or "Mot.").

to the needs of the case, and Defendants have conceded that the controlling federal law governing disclosure of health records, HIPAA, authorizes disclosure of the information due to the Protective Order entered by the Court.

To be clear, Plaintiffs do not disagree that the Court should be mindful of the privacy interests of the children in the putative class. But those interests are adequately protected under these circumstances due to (1) the Protective Order; (2) the minimally burdensome nature of the contact information requested; (3) Plaintiffs' plan to use that information solely to seek authorization from members of the putative class to speak with them and review their records; and (4) the fact that Plaintiffs include Disability Rights D.C., which is empowered by federal law expressly to protect the rights of children like the members of the putative class. Those circumstances ensure that any balancing of Plaintiffs' need for the information and the privacy interests of putative class members weighs in favor of disclosure, unlike the authorities relied upon by Defendants concerning efforts to obtain sensitive medical records without consent.

## ARGUMENT

### A.   The Requested Contact Information Is Relevant.

As a threshold matter, the contact information sought through this Motion plainly is relevant, notwithstanding Defendants' objections that it is not "probative of, or relevant to" the matters in dispute or "issues related to class certification." (*See* Motion at 6 (quoting Defendants' Responses to Interrogatory Nos. 1-2); Opp. at 7.)

"'Relevance' for discovery purposes is broadly construed, and includes information "reasonably calculated to lead to the discovery of admissible evidence." *See*, *e.g.*, *Food Lion, Inc. v. United Food and Comm. Workers*, 103 F.3d 1007, 1012 (D.C. Cir. 1997). Plaintiffs seek contact information concerning a random sample of 198 out of 1,900 children that Defendants identified on an anonymous basis as (1) Medicaid-eligible District residents, (2) with a mental

health disability, who (3) in an approximately three-year period prior to Plaintiffs' initial discovery requests, had either been institutionalized or received certain mental health services from the District that Plaintiffs have alleged are inadequate in violation of federal disability rights law. (*See* Motion at 3.) Notably, Defendants did not object to Plaintiffs' request for such anonymous identification of these children on relevance grounds. Plaintiffs intend to use the requested contact information solely to notify the children (and/or their guardians, as appropriate) about this lawsuit and to request authorization to speak to them about their experiences and to obtain medical records as part of a "client review" by experts in support of Plaintiffs' class certification efforts. (*See id.* at 2.)

In order to certify a class, among other things, Plaintiffs must satisfy the Court that (1) there are questions of law and fact common to the class; (2) the claims of the representative parties are typical of the claims or defenses of the class; and (3) the class members have been harmed in similar ways such that class-wide relief is appropriate. Fed. R. Civ. P. 23(a)(2)-(a)(3), 23(b)(2). Notwithstanding Defendants' argument that Plaintiffs should not be allowed to discover who members of the putative class are prior to class certification (*see, e.g.*, Opp. at 1), defendants in civil rights class actions are often ordered to produce contact information for putative class members at this stage. "The Supreme Court has recognized the importance of permitting class counsel in Rule 23 actions to communicate with potential class members for the purpose of gathering information, *even prior to class certification*." *Wellens v. Daiichi Sankyo, Inc.*, No. C-13-00581-WHO (DMR), 2014 WL 969692, at *2 (N.D. Cal. Mar. 5, 2014) (granting motion to compel production of contact information for putative class members where plaintiffs "intend[ed] to contact these putative class members for investigatory purposes to gather evidence in support of class certification.") (citing *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102-03 (1981))

3

(emphasis added).² Defendants have not identified any contrary authority. Indeed, the case they claim "cast[s] doubt on the propriety of obtaining this kind of information in class discovery" (Opp. at 7) did nothing of the sort. *See Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 628 n.2 (7th Cir. 2014) (observing only that defendants did not voluntarily produce "identities and rental histories of yet-to-be-named class members" prior to grant of summary judgment as a matter of law based on statutory interpretation).

Moreover, the intended expert "client review" will aid the Court in determining that Plaintiffs and other Disability Rights D.C. constituents known to Plaintiffs have claims typical of the putative class and raise common issues of law or fact. Such a technique has been accepted in other similar class actions to enforce the federal civil rights of individuals with disabilities. *See, e.g.*, *Kenneth R. v. Hassan*, 293 F.R.D. 254, 261-62, 265-72 (D.N.H. 2013) (granting class certification, based in part on plaintiffs' experts' "client review" of a random sample of patients

---

² *See also, e.g.*, *Artis v. Deere & Co.*, 276 F.R.D. 348, 352 (N.D. Cal. 2011) (ordering disclosure of contact information of members of putative class sought to "substantiate class allegations and to meet the certification requirements under Rule 23" in order to "determine whether Plaintiff's claims are typical of the class . . . ."); *Wiginton v. CB Richard Ellis*, No. 02 C 6832, 2003 WL 22232907, at *4 (N.D. Ill. Sept. 16, 2003) (holding identities of putative class members "clearly relevant" in order for plaintiffs to contact potential witnesses and develop anecdotal evidence of the alleged gender discrimination as part of expert survey). Courts have reached similar conclusions in other federal question litigation outside the civil rights context. *See*, *e.g.*, *Moser v. Health Ins. Innovations, Inc.*, No. 17cv1127-WQH(KSC), 2018 WL 6735710, at *16-17 (S.D. Cal. Dec. 21, 2018) (ordering production of contact information and finding "[i]dentities of putative class members are relevant to the class certification issues of numerosity, commonality, and typicality"); *Aldapa v. Fowler Packing Co. Inc.*, 310 F.R.D. 583, 588-89 (E.D. Cal. 2015) (permitting discovery of contact information for sample of putative class and noting "[d]isclosure of contact information for putative class members is a common practice in the class action context"); *Taylor v. Universal Auto Group I, Inc.*, No. 14-mc-50, 2015 WL 1810316, at *5-6 (S.D. Ohio 2015) (granting motion to compel information identifying members of putative class over objections based on privacy interests and holding that "any outstanding privacy concerns can be addressed by a protective order"); *Kane v. Nat'l Action Fin. Servs., Inc.*, No. CIV. A. 11-11505, 2012 WL 1658643, at *7 (E.D. Mich. May 11, 2012) (holding contact information of putative class members was relevant and that "such disclosure is a common practice in the class action context") (internal quotation omitted).

in the putative class based on mental health records, in-person meetings and interviews, where plaintiffs demonstrated that the named plaintiffs' claims were common to, and their experiences were typical of, those of the defined class members).³  Defendants' arguments that the *Kenneth R.* court also reviewed evidence in the form of third-party reports (*see* Opp. at 7-8), and that classes have been certified based on such reports and other statistical data (*see id.* at 7-8), do not render the requested information irrelevant or Plaintiffs' requests disproportionate to their burden to satisfy the Court that class certification is warranted.  Nor should it nullify Plaintiffs' legitimate goal of gathering "anecdotal evidence of [the putative class members'] personal experiences . . . to bring 'the cold [statistical proof] convincingly to life.'"  *Wellens*, 2014 WL 969692, at *2.

The Court should reject Defendants' efforts to avoid producing relevant information by arguing that Plaintiffs have "more than enough" to seek class certification without undertaking this client review.  (*See* Opp. at 8.)  Putting aside that Defendants will inevitably oppose Plaintiffs' motion for class certification and contradict themselves, courts have denied such tactics where, as here, they would ensure that a defendant with exclusive access to the requested information maintains an advantage in order to defeat class claims.  *See Wiginton*, 2003 WL 22232907, at *4 (ordering production of "clearly relevant" identities of putative class members

---

³ Defendants attempt to distinguish *Kenneth R.* and other authorities demonstrating the value of expert reports to aid Rule 23 determinations by arguing those reports were not based on confidential information or that the decisions do not specifically discuss the confidentiality of records that were reviewed.  (*See* Opp. at 7-8 n.4.)  While the client review in *Kenneth R.* unquestionably was based on confidential mental health information, including mental health records and interviews with individuals concerning their mental health treatment (*see* 293 F.R.D. at 260-61), Defendants miss the point—these authorities establish that Plaintiffs seek relevant evidence proportional to the needs of this type of civil rights litigation at the class certification stage.  And, as discussed below, any confidentiality concerns are addressed by the protections in place in this action and the nature of Plaintiffs' requests, among other factors.

and noting that "Defendant might prefer to remain in the superior litigation position of being able to investigate what evidence any of these [class members] might be able to offer, while denying Plaintiffs the same access . . . ."). Nor should Plaintiffs' awareness of other Disability Rights D.C. constituents who are members of the putative class prevent Plaintiffs from discovering information concerning a random sample of putative class members that Defendants have identified. (*See* Opp. at 8.) "[S]imply because Plaintiffs have already located some putative class members is not reason alone to prevent Plaintiffs from getting the contact information for additional members; otherwise, the court would effectively penalize Plaintiffs' counsel for having engaged in efforts to locate putative class members." *Wellens*, 2014 WL 969692, at *3.

### B. Any Asserted Burden on the Putative Class Members' Privacy Interests Is Adequately Protected.

In addition to their relevance objection discussed above, Defendants initially objected that the contact information cannot be produced because District statutes require this information to be kept confidential. (*See* Motion at 6-7.) In their Opposition, Defendants maintain their objection that those statutes prohibit disclosure, but have added a new argument: that the privacy interests those statutes reflect should outweigh Plaintiffs' right to the information "regardless of whether the District of Columbia statutory privileges apply" to discovery in this litigation. (*See* Opp. at 8-12.) The Court should reject both arguments, and none of Defendants' authorities deny motions to compel the production of similar information under these circumstances.

As set forth in Plaintiffs' Motion, existing case law in this judicial district has analyzed the applicability of the primary District statute Defendants have identified, the DCMHIA, in federal question litigation. (*See* Motion at 11-12.) In *Kalinoski v. Evans*, the court determined that the DCMHIA's privileges do not apply to block the disclosure of relevant information in federal question cases, where privilege from disclosure of protected personal health is governed

exclusively by HIPAA. *See* 377 F. Supp. 2d 136, 139-40 (D.D.C. 2005).[4] The authorities cited in Defendants' Opposition urge the same conclusion: that the District statutes[5] cannot privilege relevant information from disclosure in federal civil rights litigation. *See Northwestern Memorial Hosp. v. Ashcroft*, 362 F.3d 923, 926 (7th Cir. 2004) (rejecting application of Illinois law to protect medical records from disclosure in federal question case); *Pearson v. Miller*, 211 F.3d 57, 72 (3d Cir. 2000) (holding Pennsylvania statute prohibiting disclosure of confidential medical information inapplicable to bar disclosure in Section 1983 civil rights action); *see also In re Sealed Case (Medical Records)*, 381 F.3d 1205, 1212-13 (D.C. Cir. 2004) (agreeing that federal privilege law, and not the DCMHIA, should govern over federal claims and noting that the application of state privilege law "could undermine the federal evidentiary interest" by "barring disclosure of a document that federal law permits a party to see . . . .").[6]

---

[4] Here, notwithstanding their initial objection that HIPAA also prevented disclosure of the contact information at issue, Defendants ultimately dropped their objection on HIPAA grounds upon recognition that the Protective Order entered by the Court satisfies HIPAA's requirements for disclosure of non-parties' personal health information in litigation. (*See* Motion at 7.)

[5] In addition to the DCMHIA, Defendants have objected to the disclosure of the requested contact information based on similar District statutes that would apply similar protections for the children in Plaintiffs' requested random sample who also have a history of foster care placements or custody under the Department of Youth Rehabilitation Services. (*See* Opp. at 5.) Like the DCMHIA, any privileges under those additional statutes should be held inapplicable in this federal civil rights action, and Defendants have not identified any special considerations raised by them. In any event, as indicated below, Defendants need not specify which children in Plaintiffs' requested random sample have histories which arguably would cause those statutes to apply in non-federal question litigation.

[6] *See also Northwestern*, 362 F.3d at 925 ("The enforcement of federal law might be hamstrung if state-law privileges more stringent than any federal privilege regarding medical records were applicable to all federal cases."); *Pearson*, 211 F.3d at 68 ("The appropriateness of deference to a state's law of privilege is diminished, however, in cases in which a defendant state actor alleged to have violated citizens' federal rights is asserting the privilege"); *King v. Conde*, 121 F.R.D. 180, 187 (E.D.N.Y. 1988) (discussing how application of state privacy statutes in federal civil rights action would "frustrate the important federal interests in broad discovery and truth-seeking and the interest in vindicating important federal substantive policy such as that embodied in Section 1983").

Defendants' new fallback argument fares no better.  Recognizing the weakness of their original objection, Defendants now contend that the District statutes nevertheless establish that the contact information sought by Plaintiffs cannot be disclosed because doing so would unfairly burden the privacy rights of the putative class members.  (*See* Opp. at 8-10.)  Plaintiffs agree that the Court can and should ensure there is adequate protection for the putative class members' privacy interests, but submit that the Court has already done so and that the circumstances here provide sufficient privacy protection.

As noted in Plaintiffs' Motion, the Court has entered a stringent Protective Order in this action that ensures confidential information will be used solely for the purposes of this action and expressly provides for the production of information protected under HIPAA and the DCMHIA.  The Protective Order thus is exactly the kind of device deemed sufficient by HIPAA regulations to provide appropriate protection for the use of personal health information in litigation.  (*See* Motion at 7, n.2; 45 C.F.R. § 164.512(e)(1)(ii).)  While that alone could provide sufficient comfort to the Court, several other considerations provide significant additional protections and ensure the balance of interests under Rule 26 weighs in favor of disclosure.

First, Plaintiffs are not seeking the putative class members' medical records without authorization from those children and/or their guardians.  Rather, they are seeking only contact information, which will be used for the limited and express purpose of requesting authorization from those children and/or their guardians to review their records and speak with them regarding their experiences in the District's mental health system.  Second, Plaintiffs have limited their request to only a sample of the putative class members to reduce any applicable burdens on the class members and Defendants as much as possible.  Third, the identities of Plaintiffs and their counsel should further reassure the Court that the contact information will not be misused.

Plaintiff Disability Rights D.C. is no ordinary litigant; for decades, it has served as the District's designated Protection and Advocacy Organization ("P&A") empowered under federal statutes to ensure the rights of individuals with mental illnesses are protected. (*See* Complaint ¶ 6; Declaration of Jane Brown (ECF No. 41) ¶¶ 4-13; *see also*, *e.g.*, 42 U.S.C. § 10805(a) (specifying authority of P&A under Protection and Advocacy for Individuals with Mental Illness Act).)[7] Finally, while Plaintiffs do not believe such a restriction is necessary under Rule 26, Defendants could produce the requested contact information without tying it to the specific unique identifiers Defendants used to indicate which services that child received; for Plaintiffs' purposes, contact information for those 198 children (and their guardians and providers, as appropriate), whether or not Defendants tie it to the unique identifiers, will suffice.

None of Defendants' authorities finding that privacy interests prevented the production of sensitive information are remotely similar to these circumstances. For example, in *In re Sealed Case*, the D.C. Circuit vacated a District Court order to produce *all* information held by a District agency concerning a ward of the state with mental disabilities without *any* consideration of whether the information was relevant or if any privacy interests would be impacted. 381 F.3d at 1216-17; *see also Northwestern*, 362 F.3d at 928-29 (affirming quashing of subpoena to hospital to produce redacted medical records concerning "partial birth" abortions, where party propounding subpoena could offer no explanation of the probative value of those records or why they would lead to discoverable evidence, and where disclosure could subject the hospital and

---

[7] Disability Rights D.C. also serves as counsel for the Plaintiffs, alongside established national organizations that advocate nationwide for rights of individuals with mental health disabilities (The Bazelon Center for Mental Health Law) and the rights of children (The National Center for Youth Law), as well as the global law firm Schulte Roth & Zabel LLP as pro bono counsel.

9

patients to violence, among other harms).  All of Defendants' other identified authorities for this argument are mischaracterized in the Opposition and do not support Defendants' conclusion.[8]

Finally, while Defendants argue that Plaintiffs' citation to *Rosie D. v. Romney* is inapposite (*see* Opp. at 11-12) because the court observed that its prior certification of class counsel supported its decision to order the production of "personal data" concerning members of the class by state medical agencies, the court also found the presence of a protective order meeting HIPAA's requirements was a significant factor in holding that the "balance of interests clearly tips in favor of Plaintiffs' access" to the requested information.  *See* 256 F. Supp. 2d 115, 117-18 (D. Mass. 2003).  Here, while the class has not yet been certified, the presence of a similar protective order and the other circumstances discussed above justify the same result, which would be fully consistent with the decisions of other federal courts that have found protective orders sufficient to justify production of contact information for putative class members over privacy objections.  *See*, *e.g.*, *Artis*, 276 F.R.D. at 353 (finding the "potential privacy interests of putative class members adequately balanced" where "the parties can craft a protective order that limits the use of any contact information to the parties in this litigation and protects it from disclosure"); *Wellens*, 2014 WL 969692, at *3-4 (similar); *Taylor*, 2015 WL 1810316, at *6 (similar).

---

[8] Defendants cite *Doe v. A.J. Boggs & Co.* as "granting defendant's request for protective order preventing disclosure of nonparties' confidential public health information" (Opp. at 10), but that case involved a straightforward application of California's state statute privileging medical information from disclosure in a class action under *California state law, not federal law*.  No. 18-cv-01464-AWI-BAM, 2019 WL 1517567, at *1 (E.D. Cal. Apr. 8, 2019).  Similarly, Defendants state that *Ball v. Kasich* denied a "request to identify certain non-class members residing in public developmental centers" (Opp. at 10), but that decision concerned individuals that the court had already excluded from the plaintiff class; the court even noted that the defendant had represented that it *would* identify members of the class as the court had defined it.  *See* No. 2:16-cv-282, 2018 WL 6242230, at *6 (S.D. Ohio Nov. 29, 2018).

      **C.     Defendants' Burden Objection Should Not Inhibit Discovery of Relevant Information Concerning the Plaintiff Children's Health Providers.**

The Court should likewise overrule Defendants' objection to producing information identifying medical providers for the 198 children in the sample dating back to their birth on the grounds of undue burden.

Plaintiffs seek identification of the providers for the children in the random sample so that, once Plaintiffs receive authorization from those children and/or their guardians to request medical records, Plaintiffs will know where to direct such records requests. Defendants are correct that this request goes back further than the approximately three-year time period for Plaintiffs' other requests and that this action seeks only prospective injunctive relief. However, Plaintiffs seek this information because the children's entire medical histories are relevant in evaluating both their current need for services and the risk of institutionalization imposed by Defendants' ongoing failure to provide necessary ICBS. It is unlikely that the putative class members and their guardians will be able to precisely recall all of their various providers throughout the course of their treatment history, particularly since Medicaid providers in the District routinely close or change names. Accordingly, this information in Defendants' possession is needed to ensure that all relevant records are obtained for the client review.

Contrasted against Plaintiffs' need for this information, the burden on Defendants appears minimal. Defendants assert that identifying this information would "require the District to search records, many manually . . . ." (Opp. at 12.) While Plaintiffs believe that such a search is not unduly burdensome under the circumstances (*see* Motion at 13-14), Plaintiffs also believe that the requested information should be easily obtainable through a search of Defendants' Medicaid authorization or reimbursement data, and seek only the provider contact information that can be located through such means. Last, Plaintiffs note that Defendants' assertion that

11

producing this information dating back to birth would be unduly burdensome does not justify Defendants' categorical refusal to produce this provider contact information for any time period, including the same time period as Plaintiffs' other requests.

## CONCLUSION

For the reasons stated herein and in Plaintiffs' Motion, Defendants should be ordered to promptly produce the requested information for purposes of class certification discovery.

Dated: February 11, 2020

Respectfully Submitted,

*/s/ Jason T. Mitchell*
Ira A. Burnim (D.C. Bar No. 406154)
Lewis L. Bossing (D.C. Bar No. 984609)
JUDGE DAVID L. BAZELON CENTER FOR MENTAL HEALTH LAW
1090 Vermont Avenue, NW, Suite 220
Washington, DC 20005
Tel: (202) 467-5730

Sandra J. Bernstein (D.C. Bar No. 455355)
Mary Nell Clark (D.C. Bar No. 419732)
Jessica V. Den Houter (D.C. Bar No. 241475)
DISABILITY RIGHTS DC AT UNIVERSITY LEGAL SERVICES
220 I Street NE, Suite 130
Washington, D.C. 20002
Tel: (202) 547-0198

Seth M. Galanter (D.C. Bar No. 479919)
Alice Y. Abrokwa (D.C. Bar No. 1023510)
NATIONAL CENTER FOR YOUTH LAW
1313 L Street NW, Suite 130
Washington, D.C. 20005
Tel: (202) 868-4786

Howard Schiffman (D.C. Bar No. 358814)
Jason T. Mitchell (D.C. Bar No. 1005757)
SCHULTE ROTH & ZABEL LLP
901 Fifteenth Street NW, Suite 800
Washington, D.C. 20005
Tel: (202) 729-7470

*Counsel for Plaintiffs*