**UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| M.J., et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:18-cv-1901 (EGS) |
| | ) | |
| THE DISTRICT OF COLUMBIA, et al., | ) | **ORAL HEARING REQUESTED** |
| | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFFS' REPLY MEMORANDUM AND POINTS OF AUTHORITIES
IN FURTHER SUPPORT OF THEIR MOTION FOR
CLASS CERTIFICATION AND APPOINTMENT OF CLASS COUNSEL**

JUDGE DAVID L. BAZELON CENTER FOR
MENTAL HEALTH LAW
1090 Vermont Avenue, NW, Suite 220
Washington, D.C. 20005
Tel.:  (202) 467-5730

NATIONAL CENTER FOR YOUTH LAW
1212 Broadway, Suite 600
Oakland, CA 94612
Tel.:  (510) 835-8098

DISABILITY RIGHTS DC AT
UNIVERSITY LEGAL SERVICES
220 I Street NE, Suite 130
Washington, D.C.  20002
Tel:  (202) 547-0198

SCHULTE ROTH & ZABEL LLP
901 15th Street, NW, Suite 800
Washington, D.C.  20005
Tel.:  (202) 729-7470

*Counsel for Plaintiffs*

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ...................................................................................................1

II.     PLAINTIFFS' RESPONSE TO DEFENDANTS' "BACKGROUND" ............................2

III.    ARGUMENT .......................................................................................................3

        A.      The So-Called "Implied Requirement" of Ascertainability Does Not Bar
                Certification Here...................................................................................3

                1.      "Ascertainability" is not required in the D.C. Circuit and should not
                        be applied to this Rule 23(b)(2) proposed class...........................3

                2.      Even if this Court applies the ascertainability requirement, it has been
                        met.......................................................................................4

                3.      The prohibition against "fail-safe" classes is not triggered here and
                        any concerns can be addressed by modifying the class definition..............5

        B.      Plaintiffs Have Met Their Burden to Show Numerosity. ........................................7

        C.      Plaintiffs Have Identified Sufficient "Common Questions." ..................................9

        D.      The Named Plaintiff Children's Claims Are Typical of the Class Members'
                Claims. .................................................................................................14

                1.      Defendants' attempt to litigate the case on the merits at the class
                        certification stage is inappropriate. ............................................14

                2.      The class representatives' unique circumstances do not destroy
                        typicality. ..........................................................................15

        E.      Plaintiffs Will Adequately Represent the Class....................................................20

        F.      Certification is Proper Under Rule 23(b)(2) Because Injunctive Relief is
                Appropriate Concerning the Class as a Whole. .....................................................21

IV.     CONCLUSION....................................................................................................25

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                               **Page(s)**

*Afghan & Iraqi Allies v. Pompeo*,
    334 F.R.D. 449 (D.D.C. 2020).................................................................................15

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,
    568 U.S. 455 (2013)................................................................................14, 15

*B.K. ex rel. Tinsley v. Snyder*,
    922 F.3d 957 (9th Cir. 2019)..............................................................................22

*Boyd v. Steckel*,
    753 F. Supp. 2d 1163 (M.D. Ala. 2010)..............................................................12

*Braggs v. Dunn*,
    317 F.R.D. 634 (M.D. Ala. 2016).........................................................................24

*Brown v. District of Columbia*,
    928 F.3d 1070 (D.C. Cir. 2019)................................................................. *passim*

*Bynum v. District of Columbia*,
    214 F.R.D. 27 (D.D.C. 2003)...............................................................................15

*Coleman through Bunn v. District of Columbia*,
    306 F.R.D. 68 (D.D.C. 2015)..........................................................11, 14, 15, 16

*DG ex rel. Stricklin v. Devaughn*,
    594 F.3d 1188 (10th Cir. 2010)...........................................................................23

*DL v. District of Columbia*,
    302 F.R.D. 1 (D.D.C. 2013).............................................................................4, 6

*DL v. District of Columbia*,
    713 F.3d 120 (D.C. Cir. 2013).......................................................................11, 14

*DL v. District of Columbia ("DL II")*,
    860 F.3d 713 (D.C. Cir. 2017)...................................................................11, 21, 24

*Garnett v. Zeilinger*,
    301 F. Supp. 3d 199 (D.D.C. 2018)....................................................................20

*Hoyte v. District of Columbia*,
    325 F.R.D. 485 (D.D.C. 2017)........................................................................4, 16

*Huisha-Huisha v. Mayorkas*,
   No. 21-100 (EGS),
   2021 U.S. Dist. LEXIS 175980 (D.D.C. Sept. 16, 2021) ..................................3, 4, 9

*Ill. League of Advocs. for the Developmentally Disabled v. Ill. Dep't of Hum. Servs.*,
   803 F.3d 872 (7th Cir. 2015) ..................................................................................18

*J.D. v. Azar*,
   925 F.3d 1291 (D.C. Cir. 2019)....................................................................3, 16, 21

*J.T. ex rel. A.F. v. Hamos*,
   No. 12-CV-03203,
   2012 WL 4760645 (C.D. Ill. Oct. 5, 2012)............................................................19

*Jamie S. v. Milwaukee Pub. Schs.*,
   668 F.3d 481 (7th Cir. 2012) .............................................................................23, 24

*Kenneth R. ex rel. Tri-County CAP, Inc./GS v. Hassan*,
   293 F.R.D. 254 (D.N.H. 2013) ...................................................................... *passim*

*Koss v. Norwood*,
   305 F. Supp. 3d 897 (N.D. Ill. 2018) ......................................................................12

*Messner v. Northshore Univ. HealthSystem*,
   669 F.3d 802 (7th Cir. 2012) ....................................................................................7

*Murphy v. Piper*,
   No. 16-2623,
   2017 U.S. Dist. LEXIS 1604555 (D. Minn. Sep. 29, 2017) ...................................12

*N.B. v. Hamos*,
   26 F. Supp. 3d 756 (N.D. Ill. 2014) ............................................................... *passim*

*O.B. v. Norwood*,
   170 F. Supp. 3d 1186 (N.D. Ill. 2016) ....................................................................24

*Olmstead v. L.C.*,
   527 U.S. 581 (1999)................................................................................................12

*Parent/Pro. Advoc. League v. City of Springfield*,
   934 F.3d 13 (1st Cir. 2019)......................................................................................23

*Parsons v. Ryan*,
   754 F.3d 657 (9th Cir. 2014) ...................................................................................22

*Ramirez v. ICE*,
   338 F. Supp. 3d 1 (D.D.C. 2018)..........................................................................4, 6

*Rosie D. ex rel. John D. v. Romney*,
   474 F. Supp. 2d 238 (D. Mass. 2007) .................................................................25

*S.R. ex rel. Rosenbauer v. Pa. Dep't of Hum. Servs.*,
   325 F.R.D. 103 (E.D. Pa. 2018) .............................................................9, 15, 18

*Shelton v. Bledsoe*,
   775 F.3d 554 (3d Cir. 2015) ................................................................................4

*Shook v. Bd. of Cnty. Comm'rs of Cnty. of El Paso*,
   543 F.3d 597 (10th Cir. 2008) ................................................................21, 22, 23

*Steward v. Janek*,
   315 F.R.D. 472 (W.D. Tex. 2016) ......................................................................15

*Thorpe v. District of Columbia*,
   303 F.R.D. 120 (D.D.C. 2014) ....................................................................*passim*

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) .................................................................................10, 14, 24

*Yates v. Collier*,
   868 F.3d 354 (5th Cir. 2017) .............................................................................22

**Regulations & Rules**

Fed. R. Civ. P. 23 ...........................................................................................12, 14, 15

Fed. R. Civ. P. 23(a)(2) .................................................................................10, 13, 24

Fed. R. Civ. P. 23(a)(4) ............................................................................................20

Fed. R. Civ. P. 23(b)(2) .....................................................................................*passim*

Fed. R. Civ. P. 23(g) ................................................................................................25

Fed. R. Civ. P. 65(d)(1) .................................................................................21, 22, 23

**Other Authorities**

1 Newberg on Class Actions § 3:7 (5th ed. 2021) ..................................................4, 6

*Council of the District of Columbia Performance Oversight Hearing Pre-Hearing
   Questions and Answers*, DYRS, https://tinyurl.com/4n2pauta (last Visited
   Nov. 12, 2021) .................................................................................................19

*New Beginnings Youth Development Center: Fact Sheet*, DYRS,
   https://tinyurl.com/e2tjhvvc (last visited Nov. 12, 2021) ...............................19

U.S. Dep't of Just., Statement of the Department of Justice on Enforcement of the
Integration Mandate of Title II of the Americans with Disabilities Act and
Olmstead v. L.C., question 6 (last updated Feb. 25, 2020),
https://tinyurl.com/y3d5pejj ................................................................................................. 13

## <u>INDEX OF SUPPORTING MATERIALS</u>

   Although there are no exhibits to this Memorandum, for the convenience of the Court, set forth below is an index of the new Declarations filed herewith offered in further support of the instant Motion, as well as other litigation documents cited in this Memorandum.

**Reply Declarations (Filed Herewith)**

| <u>Title</u> | <u>Abbreviation</u> |
|---|---|
| Reply Declaration of Betsy A. Biben in Support of Plaintiffs' Motion for Class Certification | Biben Reply Decl. |
| Reply Declaration of Sara Boyd, Ph.D. in Support of Plaintiffs' Motion for Class Certification | Boyd Reply Decl. |
| Reply Declaration of Kimberly Campbell in Support of Plaintiffs' Motion for Class Certification | Campbell Reply Decl. |
| Reply Declaration of Abby Goldstein in Support of Plaintiffs' Motion for Class Certification | Goldstein Reply Decl. |
| Reply Declaration of Poonam Juneja in Support of Plaintiffs' Motion for Class Certification | Juneja Reply Decl. |
| Reply Declaration of Bruce Kamradt in Support of Plaintiffs' Motion for Class Certification | Kamradt Reply Decl. |
| Reply Declaration of Kimberly Perry in Support of Plaintiffs' Motion for Class Certification | Perry Reply Decl. |
| Reply Declaration of E. Sally Rogers in Support of Plaintiffs' Motion for Class Certification | Rogers Reply Decl. |

**Other Cited Court Documents (Previously Filed)**

| <u>Title</u> | <u>Abbreviation</u> |
|---|---|
| Declaration of B.T. in Support of Plaintiffs' Motion for Class Certification, ECF No. 77 (July 23, 2021) (Redacted; Full document filed under seal; ECF No. 79 (July 29, 2021)) | B.T. Decl. |
| Declaration of Sara Boyd, Ph.D. in Support of Plaintiffs' Motion for Class Certification, ECF No. 74-22 (July 19, 2021) | Boyd Decl. |

| | |
|---|---|
| Declaration of Kimberly Campbell in Support of Plaintiffs' Motion for Class Certification, ECF No. 74-12 (July 19, 2021) | Campbell Decl. |
| Plaintiffs' Amended Complaint, ECF No. 78 (July 23, 2021). | FAC |
| Declaration of Robert Friedman, Ph.D. in Support of Plaintiffs' Motion for Class Certification, ECF No. 74-20 (July 19, 2021) | Friedman Decl. |
| Declaration of Bruce J. Kamradt in Support of Plaintiffs' Motion for Class Certification, ECF No. 74-4 (July 19, 2021) | Kamradt Decl. |
| Declaration of L.R. in Support of Plaintiffs' Motion for Class Certification, ECF No. 77-3 (July 23, 2021) (Redacted; Full document filed under seal; ECF No. 79 (July 29, 2021)) | L.R. Decl. |
| Declaration of M.W. in Support of Plaintiffs' Motion for Class Certification, ECF No. 77-5 (July 23, 2021) (Redacted; Full document filed under seal; ECF No. 79 (July 29, 2021)) | M.W. Decl. |
| Memorandum Opinion denying Defendants' Motion to Dismiss, ECF No. 45 (July 25, 2019) | MTD Op. |
| Defendants' Opposition to Plaintiffs' Motion for Class Certification, ECF No. 83 (Oct. 27, 2021) | Opp. |
| Declaration of Barbara Paulson, ECF No. 83-1 (Oct. 27, 2021) | Paulson Decl. |
| Plaintiffs' Memorandum and Points of Authorities in Support of Their Motion for Class Certification and Appointment of Class Counsel, ECF No. 74-1 (July 19, 2021) | Pls.' Br. |
| Plaintiffs' Opposition to Defendants' Motion to Dismiss, ECF No. 29 (Oct. 31, 2018) | Pls.' Opp to MTD |
| Declaration of E. Sally Rogers in Support of Plaintiffs' Motion for Class Certification, ECF No. 74-7 (July 19, 2021) | Rogers Decl. |

I.      **INTRODUCTION**

Defendants' opposition to class certification principally argues that Plaintiffs and the proposed class have individualized needs and that Plaintiffs have not adequately defined the proposed class.  Defendants recycle these arguments to oppose Plaintiffs' satisfaction of the requirements of Federal Rule of Civil Procedure 23(a) and Rule 23(b)(2)'s injunctive relief standards.  Defendants' arguments are unfounded.

Under the law of this Circuit, there is no "implied requirement" of ascertainability. The prevailing view even among the few Circuits that have required ascertainability is that it does not apply to Rule 23(b)(2) class actions like this where only prospective injunctive relief is sought. Plaintiffs seek systemic relief for the benefit of the proposed class. Accordingly, contrary to Defendants' contentions, the Court need not conduct individualized assessments or provide individualized remedies.  In any event, the proposed class is ascertainable.

Defendants' other arguments are equally meritless.  The class is sufficiently numerous. Plaintiffs have plainly provided a reasonable basis for their estimates that the proposed class consists of hundreds of children.  Common questions are present and stem from Defendants' systemic failure to provide necessary intensive community-based services ("ICBS") at all, not just defects in the less intensive services that Defendants may sometimes provide to particular members of the proposed class.  Typicality and adequacy are met.  Plaintiffs are not yet required to prove the merits of the named individual Plaintiffs' claims at this stage, nor defend against Defendants' assertions regarding services that the Plaintiffs' purportedly received and that Defendants claim that they provide, all of which are contradicted by the comprehensive evidence that Plaintiffs submitted in connection with their initial motion and further supplement here.  Under similar circumstances, numerous courts have certified similarly defined classes.  The Court should do the same here.

1

II.     **PLAINTIFFS' RESPONSE TO DEFENDANTS' "BACKGROUND"**

Plaintiffs submit that there is a class of District children with mental health disabilities who have not received the ICBS they need to avoid institutionalization.  Defendants contend, based on self-serving declarations by two officials within the District's Department of Behavioral Health, that they provide "a robust array of intensive at-home and community-based services . . . to reduce unnecessary placements in more restrictive settings."  Opp. at 2.  Plaintiffs disagree that the District's services "serve the same function" (Paulson Decl., ¶¶ 8, 26) as the components of ICBS: intensive care coordination, intensive behavior support services, and mobile crisis services.  The Court has noted that Plaintiffs allege that Defendants' services "are not as intensive as ICBS requires . . . ." MTD Op. at 12.  Plaintiffs have already submitted significant evidence on this point (*see*, *e.g.*, Pls.' Br. at 19-20 & n.23) and that numerous District youth have been or are currently institutionalized, or remain at serious risk of institutionalization (*id.* at 5-6 & n.13; *see also id.* at 14-15 & n.19; Rogers Reply Decl., ¶ 15).  Whether Defendants in fact have provided ICBS to the Plaintiff class is a question that will be answered at the appropriate stage, during which Plaintiffs will submit additional evidence demonstrating Defendants' systemic violations of the federal Medicaid and *Olmstead* mandates.

Plaintiffs' evidence also indicates that the services that Defendants contend meet the class's needs—community-based intervention ("CBI"), high-fidelity wraparound ("HFW"), Assertive Community Treatment ("ACT"), and the Child and Adolescent Mobile Psychiatric Service ("ChAMPS")—are not provided with fidelity to the models Defendants describe.  *See*, *e.g.*, Goldstein Reply Decl., Ex. A (summarizing rebuttal evidence).  Among other things, the District's CBI providers "do not typically coordinate care" to meet the needs of children and youth, and engage with the children's parents or other family members "briefly and infrequently," if at all.  Biben Reply Decl., ¶¶ 11-12.  It seems to be "a matter of luck" whether the service is delivered

with fidelity.  *Id.* at ¶ 8; *see also, e.g.*, Perry Reply Decl., ¶¶ 11 ("homeless youth do not receive CBI consistently while in [our providers' care] or while experiencing placement changes"). Accordingly, even if those services did constitute ICBS—and they do not—they effectively are not offered by Defendants to members of the Plaintiff Class.

## III.    ARGUMENT

### A.    The So-Called "Implied Requirement" of Ascertainability Does Not Bar Certification Here.

Defendants contend that the proposed class should not be certified because it fails to satisfy a "widely recognized 'implied requirement'" of "ascertainability."  Opp. at 10.  Defendants are wrong.  First, the law concerning the ascertainability "requirement" is far from widely adopted or settled, and this Court is not required to apply it.  Second, Defendants are flatly incorrect in arguing that the proposed class is not ascertainable.  Third, the proposed class definition should not be barred as "fail-safe" and, in any event, may be modified to avoid any such concerns.

#### 1.    "Ascertainability" is not required in the D.C. Circuit and should not be applied to this Rule 23(b)(2) proposed class.

As a threshold matter, this Court should decline to apply the ascertainability requirement. As Defendants concede, the D.C. Circuit has expressly declined to impose the implied requirement of ascertainability adopted by some other federal circuit courts.  Opp. at 10 n.8 (citing *J.D. v. Azar*, 925 F.3d 1291, 1320 (D.C. Cir. 2019)).[1]  Indeed, this Court has recently remarked that "it is far from clear that there exists in this District a requirement that a class . . . must demonstrate ascertainability to merit certification."  *Huisha-Huisha v. Mayorkas*, No. 21-100 (EGS), 2021 U.S. Dist. LEXIS 175980, at *22 (D.D.C. Sept. 16, 2021) (alteration in original; modifications omitted).

---

[1] Plaintiffs addressed ascertainability in their opening brief out of an abundance of caution because the law in the D.C. Circuit is unsettled and because the proposed class is ascertainable (*see* Pls.' Br. at 39-40), but do not concede that ascertainability must be found to certify the proposed class.

Even in Circuits where the ascertainability requirement had been applied, the recent trend favors limiting its use, and not applying the requirement at all to Rule 23(b)(2) cases. *See Hoyte v. District of Columbia*, 325 F.R.D. 485, 489 n.3 (D.D.C. 2017) (discussing "disavow[al]" of requirement by the Sixth, Seventh, Eighth, and Ninth Circuits); 1 Newberg on Class Actions § 3:7 (5th ed. 2021) (discussing the incongruence of an ascertainability requirement in the context of a Rule 23(b)(2) class action).  Notably, the Third Circuit—the originator of the requirement—has held that it does not apply to Rule 23(b)(2) cases seeking only injunctive and declaratory relief. *Shelton v. Bledsoe*, 775 F.3d 554, 562-63 (3d Cir. 2015).  This is precisely such a case.

This Court has recently stated that "the rationale for precise ascertainability is inapposite in the 23(b)(2) context" and, as a result, "is not required in cases . . .  where only injunctive relief is sought." *Huisha-Huisha*, 2021 U.S. Dist. LEXIS 175980, at *23-24 (quoting *DL v. District of Columbia*, 302 F.R.D. 1, 17 (D.D.C. 2013)); *see also Ramirez v. ICE*, 338 F. Supp. 3d 1, 48 (D.D.C. 2018).  Where only injunctive relief is sought, the ascertainability inquiry wastes judicial resources "because such cases will not require individualized notice, opt-out rights, or individual damage assessments, and the defendant will be required to comply with the relief ordered no matter who is in the class." *Thorpe v. District of Columbia*, 303 F.R.D. 120, 139 (D.D.C. 2014); *see also, e.g.*, *Huisha-Huisha*, 2021 U.S. Dist. LEXIS 175980, at *22-24.  This Court should apply the rationale espoused in *Huisha-Huisha*, under which a proposed Rule 23(b)(2) class is sufficiently "definite[]" so long as plaintiffs can establish the "existence of a class" and propose a class definition that "accurately articulates 'the general demarcations' of the class of individuals who are being harmed by the alleged deficiencies" as Plaintiffs have here. *Id.* at *23.

2.   <u>Even if this Court applies the ascertainability requirement, it has been met.</u>

The proposed class is ascertainable.  Despite Defendants' arguments to the contrary, courts have routinely certified similar classes in similar circumstances, even when considering

ascertainability.  *See, e.g.*, *Thorpe*, 303 F.R.D. at 124, 140-41 (finding sufficiently ascertainable a class of nursing facility residents who allegedly could not move into a community-based care setting due to the District's lack of an "effective system of transition assistance," noting that "absolute precision is not required"); *Kenneth R. ex rel. Tri-County CAP, Inc./GS v. Hassan*, 293 F.R.D. 254, 264-65 (D.N.H. 2013) (class of "[a]ll persons with serious mental illness who are unnecessarily institutionalized in [two New Hampshire hospitals] or are at serious risk of unnecessary institutionalization in these facilities" is "sufficiently definite," because "actual membership of the class need not . . . be precisely delimited" because "notice to the members . . . is not required").

Like the classes in *Thorpe* and *Kenneth R.*, Plaintiffs' proposed class articulates the "general demarcations" of the class of individuals who need ICBS using precise and objective conditions such as age, statutory Medicaid eligibility, and mental health diagnosis.  Further, the class definition does not hinge on vague terms.  As in *Thorpe*, the Plaintiffs have provided "a fairly specific description of what they intend [ICBS] to mean" in their Complaint and class certification motion.  303 F.R.D. at 140; FAC ¶ 40; Pls.' Br. at 4.  This description includes ICBS's three key components, which Plaintiffs further define individually.  *See* Pls.' Br. at 4.  Likewise, the terms "unnecessarily institutionalized" and "at serious risk of institutionalization" are not vague; indeed, the court in *Kenneth R.* found a class definition with similar terms to be "sufficiently definite." *Kenneth R.*, 293 F.R.D. at 264-65.  For these reasons, the proposed class is ascertainable.

> 3.   The prohibition against "fail-safe" classes is not triggered here and any concerns can be addressed by modifying the class definition.

Defendants also argue that the proposed class cannot be certified because it is impermissibly "fail-safe."  Opp. at 11-13.  A fail-safe class is one which "require[s] a court to decide the merits of prospective individual class members' claims to determine class membership."

1 Newberg on Class Actions § 3:6 (5th ed. 2021).  A fail-safe class may be prohibited by courts where it results in "liability-begging definitions" that are "administratively infeasible, as the inquiry into class membership would require holding countless hearings resembling 'mini-trials.'" *Id*.  However, as with ascertainability generally, it is illogical to apply the prohibition of fail-safe classes to a Rule 23(b)(2) class where no individual determinations will be necessary to remedy the District's systemic failures.  *See Ramirez*, 338 F. Supp. 3d at 49 ("it is not clear why Defendants might be harmed or at all disadvantaged by Plaintiffs' reliance on a fail-safe class definition in the context of" a Rule 23(b)(2) class).

Indeed, in *Ramirez*, the court certified a class under Rule 23(b)(2) despite assuming that its definition was fail-safe, stating that "the class proposed is none the less ascertainable and meets any such requirement for certification"; because it was not necessary to do the sort of individualized analysis that the fail-safe class bar seeks to avoid.  *Id*. at 49.  As with the class in *Ramirez*, Plaintiffs seek systemic injunctive relief pursuant to Rule 23(b)(2), so there is no need to conduct individualized inquiries into whether specific individuals are class members.  *See id.*; *see also Kenneth R.*, 293 F.R.D. at 264 (certifying Rule 23(b)(2) class over "fail-safe" objection, because "[i]n the absence of any need to notify each class member, or distribute monetary relief, the proposed class here is appropriately defined . . . .").  Because the remedy sought is the same for each member of the Plaintiff class, there is no fear of subjecting the Court and defendants here to the types of individualized inquiries the prohibition against fail-safe classes seeks to prevent.[2]

---

[2] In any event, the proposed class definition is not "fail-safe."  The merits of individual members' claims do not have to be decided and the definition is not automatically "fail-safe" because it contains terms like "medically necessary" and "serious risk of institutionalization" given Plaintiffs' identification of "clear and objective criteria on which to show membership in the proposed class." *Ramirez v. ICE*, 338 F. Supp. 3d 1, 49 (D.D.C. 2018); *see also, e.g., DL v. District of Columbia*, 302 F.R.D. 1, 17-18 (D.D.C. 2013) (finding subclasses sufficiently definite,

Even if the Court has ascertainability concerns with the proposed class definition—and it need not—the proper remedy is not, as Defendants suggest, denying certification. Instead, when confronted with ascertainability issues, courts regularly grant plaintiffs an opportunity to cure any definitional defects with the benefit of the court's guidance. *See, e.g.*, *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 825 (7th Cir. 2012) (problems of a class definition being over-inclusive or fail-safe "can and often should be solved by refining the class definition rather than by flatly denying class certification"). Plaintiffs are capable of doing so if needed.[3]

### B.     Plaintiffs Have Met Their Burden to Show Numerosity.

In contending that Plaintiffs have not established numerosity (Opp. at 29-30), Defendants ignore their own data demonstrating that the putative class contains hundreds of District children who need ICBS and are at serious risk of institutionalization.[4] Plaintiffs' experts relied on this data and other information in concluding that significant numbers of District children need ICBS and are at risk of institutionalization. *See, e.g.,* Pls.' Br. at 5-6, 13-15, 19-20, 24-28. For instance,

---

including one for children with disabilities who did not have a "smooth and effective" transition from early intervention programs to preschool programs); *Kenneth R. ex rel. Tri-County CAP, Inc./GS v. Hassan*, 293 F.R.D. 254, 272 (D.N.H. 2013) (defining "at risk of institutionalization" to refer to "persons who, within a two year period: (1) had multiple hospitalizations; (2) used crisis or emergency room services for psychiatric reasons; (3) had criminal justice involvement as a result of their mental illness; or (4) were unable to access needed community services.").

[3] Should the Court find the proposed class definition is insufficiently definite, Plaintiffs initially suggest the following alternative definition to eliminate Defendants' "ascertainability" concerns: all Medicaid-eligible District of Columbia children who now or in the future are under the age of 21, have a mental health disability, are not receiving intensive community-based services, and are institutionalized or at serious risk of institutionalization. Similar to the original definition, this alternative is not fail-safe and does not require any of the purported individualized determinations regarding "necessity" that form the basis of Defendants' opposition. *See* Opp. at 13-18.

[4] *See* Pls.' Br. at 13 (between September 2016 and September 2019, at least 98 unique children were admitted to psychiatric residential treatment facilities (PRTFs), over 200 unique children were admitted for psychiatric hospitalization, and hundreds of additional children were institutionalized by the Department of Youth Rehabilitation Services (DYRS)); *cf. Kenneth R.*, 293 F.R.D. at 265 (multiple hospitalizations and "criminal justice involvement" were "objective and relevant" factors indicating whether individual is at serious risk of institutionalization).

based on his 20 years of experience directing the provision of ICBS in Milwaukee, "a city of similar size and socioeconomic strata," Plaintiffs' expert, Bruce Kamradt, concluded that "at least hundreds of District children" need and have not received ICBS.  *See* Kamradt Reply Decl., ¶¶3, 6; Pls.' Br. at 14.

Further, hundreds of District children are unnecessarily institutionalized or at risk of institutionalization.  Defendants' evidence admits that, since 2019, dozens of children have been sent to out-of-District psychiatric residential treatment facilities ("PRTFs").  *See* Paulson Decl., ¶ 7.  Defendants' public reports indicate that the number of District children institutionalized or at serious risk of institutionalization in recent years is higher.  *See* Goldstein Decl., Ex. B, 26 (95 unique children sent to PRTFs in FY 2020), Friedman Decl., ¶¶ 56 (in FY 2020, over 260 youth in DYRS custody placed in Youth Services Center, New Beginnings, and elsewhere), 60 (505 unique children hospitalized for inpatient behavioral health treatment in FY 2020).

Defendants urge that Plaintiffs' evidence of numerosity is insufficient because Plaintiffs' experts' clinical review of a sample of 29 Medicaid-eligible children with mental health disabilities in the District—which found that most of the children needed ICBS and were at risk of institutionalization—concerned fewer than the 66 children that Plaintiffs initially sought.  *See* Opp. at 29-30.  But Dr. Rogers, who designed the study, has opined that these conclusions were based on comprehensive information gathered for a randomly-selected group of children under a standardized process, and that the results of the study may be generalized to the population of 1,900 children and youth identified by Defendants.  *See* Rogers Decl., ¶¶ 18-41.  Even if the study's results were modified to account for constraints related to the COVID-19 pandemic and the high percentage of unusable contact information provided by Defendants, the results indicate that nearly 1,000 District children need ICBS and are at risk of institutionalization.  *See* Rogers

Reply Decl., ¶ 15 (even modifying study results, "we can be reasonably confident" that over 950 children need ICBS and are at risk of institutionalization).  Numerosity is satisfied where plaintiffs supply "estimates of putative class members, '[s]o long as there is a reasonable basis for the estimate provided.'"  *See Huisha-Huisha*, 2021 U.S. Dist. LEXIS 175980, at *29 (citations omitted).  The experts' "painstaking analyses" (Opp. at 19), their conclusions, and the study's sample size are more than a reasonable basis for the estimated class size.

### C.    Plaintiffs Have Identified Sufficient "Common Questions."

Defendants contend that Plaintiffs have "failed to identify any common questions as to either" of their claims.  Opp. at 18.  Not so.  As Defendants concede (*id.* at 20-21 n.11), Plaintiffs identified a question common to all of their claims, *i.e.*, "whether Defendants systematically fail to provide medically necessary ICBS to the Plaintiff Children in violation of the ADA, Section 504, and the EPSDT provision of the Medicaid Act."  Pls.' Br. at 20.[5]  This question distills elements of similar questions approved by other courts.  *See id.* at 20-21 & n.24.

Defendants also contend that Plaintiffs' proposed question is not "keyed to the existence or non-existence of government policies and practices . . ." (Opp. at 20), but that is a semantic, non-substantive distinction.  Plaintiffs' question may easily be rephrased to ask "whether Defendants' policies and practices discriminate against the Plaintiff Children by failing to provide medically necessary ICBS in the most integrated setting appropriate to meet their needs,"[6] or

---

[5] Defendants also reference another version of this question, "whether all class members who need ICBS—which under the Medicaid Act must be provided to all child enrollees for whom it is 'medically necessary'—have received it." Opp. at 18 (citing Pls.' Br. at 19).  Plaintiffs do not mean to signal a distinction between class members "who need ICBS" and those who do not; all class members need ICBS.  To the extent that this common question suggests otherwise, any deficiency can be remedied by adding commas to the quoted sentence, after the word "members" and after the second hyphen.

[6] *Cf. S.R. v. Pa. Dep't of Hum. Servs.*, 325 F.R.D. 103, 108 (E.D. Pa. 2018) (commonality satisfied by questions including "whether [state agency's] policies and/or practices discriminate against

"whether Defendants' policies and practices that fail to provide medically necessary ICBS to the Plaintiff Children violate the EPSDT mandate."[7]

Thus, Plaintiffs have identified a common question that expressly references their Medicaid claim. "[E]ven a single common question will do" to satisfy Rule 23(a)(2). *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011) (alterations and citations omitted). That said, the Court may also consider whether other questions identified by Plaintiffs (*see* FAC ¶ 25), and similar to those endorsed by other courts (*see*, *e.g.*, *N.B. v. Hamos*, 26 F. Supp. 3d 756, 771-72 (N.D. Ill. 2014)), meet the commonality requirement, including:

- Whether Defendants' failure to provide services to the Plaintiff Children in the most integrated setting violates the ADA and the Rehabilitation Act;

- Whether Defendants' failure to provide ICBS to the Plaintiff Children violates the EPSDT provision of the Medicaid Act;

- Whether the existing services available in Defendants' children's mental health system are inadequate to meet the needs of the Plaintiff Children;

- Whether deficiencies in Defendants' existing services for the Plaintiff Children— including, but not limited to, the alleged deficiencies regarding HFW, CBI, ACT, and ChAMPS programs[8]—cause the Plaintiff Children to be placed in institutional settings;

- Whether, due to the lack of ICBS to meet the Plaintiff Children's needs, the children cycle in and out of institutions, including psychiatric hospitals, psychiatric and other residential treatment facilities, detention centers, and group homes;

- Whether Defendants' system for providing services to the Plaintiff Children fails to effectively connect them to ICBS following their discharge from institutions; and

---

dependent youth with mental health disabilities by failing to provide them with mental health services through the Child Welfare and/or Medicaid systems in the most integrated settings appropriate to meet their needs"). A similar question appears in Paragraph 25 of the FAC.

[7] *Cf. N.B. v. Hamos*, 26 F. Supp. 3d 756, 772 (N.D. Ill. 2014) (certifying class where common questions included "[w]hether the Defendants' failure to provide medically necessary home and community-based services to children with behavioral and emotional disorders violates the EPSDT mandate" of the Medicaid Act). A similar version of this question also appears in Paragraph 25 of the FAC.

[8] *See* FAC ¶¶ 41-44; Pls.' Opp. to MTD at 2-6.

- Whether Defendants' failure to provide ICBS to the Plaintiff Children places those children who are not currently institutionalized at serious risk of institutionalization.[9]

Each of these questions can be resolved on a class-wide basis because each turns on a "uniform policy or practice that affects all class members," rather than on any individual's circumstances. *DL v. District of Columbia,* 713 F.3d 120, 128 (D.C. Cir. 2013). "True or false, resolution of these common contentions will generate common answers for the entire class" resolving issues central to "each plaintiff's claim and the claims of the class as a whole." *Thorpe*, 303 F.R.D. at 146-47.[10]

With respect to Plaintiffs' ADA and Section 504 *Olmstead* claims, the common questions identified by the D.C. Circuit in *Brown v. District of Columbia* regarding the reasonableness of modifications sought by nursing home residents with disabilities may also be applied here. In *Brown*, the D.C. Circuit analyzed common questions raised by the District's "fundamental alteration" defense regarding whether the modifications that plaintiffs sought were unreasonable. 928 F.3d 1070, 1081-82 (D.C. Cir. 2019). Here, Defendants argue that Plaintiffs "will not even get to" these questions unless they "can first meet their burden to show" other elements of their *Olmstead* claims. Opp. at 22. But this misstates Plaintiffs' burden on class certification, which is to identify common questions capable of generating "common answers apt to drive the resolution of the litigation." *Coleman through Bunn v. District of Columbia*, 306 F.R.D. 68, 82 (D.D.C. 2015). Plaintiffs understand the Court's direction that they "will be required to provide evidence to back up their claims that community-based treatment was appropriate" in the next phase of this

---

[9] *See N.B.*, 26 F. Supp. 3d at 772 (certifying class after considering and approving six questions identified by plaintiffs, reasoning that, read in tandem, "they ask whether home and community-based treatment found to be 'medically necessary,' and therefore mandatory for the state to provide, is nevertheless unavailable").

[10] *See also DL v. District of Columbia* ("*DL II*"), 860 F.3d 713, 725 (D.C. Cir. 2017) (certifying subclasses and stating that plaintiffs alleging Individuals with Disabilities Education Act (IDEA) violations "need only show that the District in fact failed to identify them, failed to provide them with timely eligibility determinations, or failed to ensure a smooth transition to preschool").

litigation, where Plaintiffs will be required (and will be ready) to demonstrate class-wide liability. *See* MTD Op. at 22 (citing *Boyd v. Steckel*, 753 F. Supp. 2d 1163, 1174 (M.D. Ala. 2010) (dispute regarding plaintiff's eligibility for community-based services should be resolved "at summary judgment or trial")). However, Plaintiffs' burden at the class certification stage is to satisfy Rule 23, including by identifying questions common to the class. The *Brown* questions, as applied here and in addition to those identified elsewhere in Plaintiffs' memoranda, are common to the class.

Defendants also repeat arguments that Plaintiffs "have offered no evidence that any Medicaid-eligible child in the District has received a provider recommendation for ICBS as they define it," and that "both need and services received vary from child to child." Opp. at 19. Regarding the former, this Court has already opined that Plaintiffs "need not allege that a treatment provider has explicitly recommended that community-based treatment is appropriate," especially where, as here, Plaintiffs allege "that the state failed to provide required community-based treatment programs. This is because a plaintiff would not have an occasion to be assessed for programs that should, but do not, exist." MTD Op. at 21-22. Regarding the latter, Defendants' argument—that variables among the Plaintiff Children's need for services defeat commonality because "[d]etermining need or receipt of services . . . would []require weighing the evidence for each individual child" (Opp. at 20)—has been rejected by numerous courts certifying *Olmstead* and Medicaid class actions.[11] For the reasons stated in those decisions, and because Plaintiffs seek

---

[11] *See* Pls.' Br. at 17-18, 22-23 & n.25 (collecting cases); *see also, e.g.*, *Koss v. Norwood*, 305 F. Supp. 3d 897, 918 (N.D. Ill. 2018) (finding commonality despite defendants' "concerns about member-specific inquiries . . . [that] will dwarf, or predominate over, the common questions"); *Murphy v. Piper*, No. 16-2623 (DWF/BRT), 2017 U.S. Dist. LEXIS 1604555, at **19-33 (D. Minn. Sep. 29, 2017) (finding commonality despite "numerous differences among the proposed Class Members"); *Kenneth R.*, 293 F.R.D. at 268 (finding commonality over defendants' objection that "dissimilarities in class member needs and preferences for community-based services, and dissimilarities in their current preferences and future needs" made class certification improper).

a system in which stakeholders in the system itself—and not this court—make accurate and timely determinations about the need for ICBS,[12] Rule 23(a)(2) is satisfied.

Finally, Defendants argue that Plaintiffs cannot identify questions common to the class because "Plaintiffs attempt to combine into one class those children who are (or are at risk of being) institutionalized" in different types of institutions.  Opp. at 23.  The proposed class definition does not identify these institutions, but Plaintiffs have alleged that "the Plaintiff children cycle unnecessarily in and out of institutions—including psychiatric hospitals, psychiatric and other residential treatment facilities, the District's detention centers, and group homes—to their detriment."  FAC ¶ 3.  As discussed below, courts deciding *Olmstead* claims involving children and youth with disabilities have included juvenile detention facilities among other institutions in which such youth are inappropriately segregated.  *See, e.g.*, Section III.D.2.ii., *infra*.  Recent placement in such settings has been identified as a factor indicating a risk of institutionalization.[13] In addition, courts hearing *Olmstead* claims have regularly included both individuals currently institutionalized and those at serious risk of institutionalization in the same certified class.[14]

---

[12] *See* Pls.' Mem. at 40; *cf.* Kamradt Reply Decl., ¶¶ 27-36 (describing systems for screening and referral in Milwaukee and Massachusetts).

[13] *See, e.g., Kenneth R.,* 293 F.R.D. at 272 ("At risk of institutionalization means persons who, within a two year period: (1) had multiple hospitalizations; (2) used crisis or emergency room services for psychiatric reasons; (3) had criminal justice involvement as a result of their mental illness; or (4) were unable to access needed community services.").

[14] *See, e.g., Thorpe v. District of Columbia*, 303 F.R.D. 120, 125-26 (D.D.C. 2014); *Kenneth R.*, 293 F.R.D. 254, 271-72 (D.N.H. 2013); *cf.* U.S. Dep't of Just., *Statement of the Department of Justice on Enforcement of the Integration Mandate of Title II of the Americans with Disabilities Act and* Olmstead v. L.C., question 6 (last updated Feb. 25, 2020), https://tinyurl.com/y3d5pejj ("[T]he ADA and the *Olmstead* decision extend to persons at serious risk of institutionalization or segregation and are not limited to individuals currently in institutional . . .settings;" "[S]ufficient risk of institutionalization" can "make out an *Olmstead* violation.").

**D.** **The Named Plaintiff Children's Claims Are Typical of the Class Members' Claims.**

1. <u>Defendants' attempt to litigate the case on the merits at the class certification stage is inappropriate.</u>

Defendants argue that Plaintiffs cannot establish typicality because they have received the mental health services that they allege Defendants fail to provide, and therefore have not been deprived of needed ICBS. Opp. at 24-26, 28.[15] This argument impermissibly goes to the merits of the case. "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage" of class action proceedings. *DL*, 713 F.3d at 125-26 (quoting *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 466 (2013)). Although Plaintiffs must "affirmatively demonstrate [their] compliance with [Rule 23 by] demonstrating compliance in fact," and "the Court may inquire into the merits of the plaintiffs' claims," *Coleman*, 306 F.R.D. at 75 (quoting *Wal-Mart Stores, Inc.* 564 U.S. at 350), the Court should do so only "to the extent . . . relevant 'to determin[e] whether the Rule 23 prerequisites for class certification are satisfied.'" *DL*, 713 F.3d at 126 (quoting *Amgen*, 568 U.S. at 466).

In their opening brief, Plaintiffs explained why the named Plaintiffs' claims are typical of the Plaintiff class members' claims. *See* Pls.' Br. at 23-30. Plaintiffs allege that, as a result of Defendants' system that provides services to Plaintiffs in institutional settings, instead of providing them with ICBS, the named Plaintiffs and absent class members have all been harmed in the same manner—unnecessary institutionalization and serious risk of the same—in violation of the ADA, Section 504, and the Medicaid Act. *Id.* Defendants ask the Court at this time to adjudicate the

---

[15] Specifically, Defendants state that (1) L.R.'s receipt of CBI Levels IV and II, HFW services, ACT services, and ChAMPS mobile crisis services means that she is "not among" plaintiffs' putative class that "consists of those deprived of needed ICBS" (*id.* at 25); (2) B.T.'s enrollment in CBI Levels I and II, and ACT "set him apart from the rest of the class"(*id.* at 26); and (3) because M.W. has received CBI Levels I, II, and III, HFW services, ACT services, and multi-systemic therapy, he "has no basis to raise such a claim" of "non-receipt of needed services" (*id.* at 28).

ultimate issue of the case—whether the named Plaintiffs have received ICBS in satisfaction of Defendants' legal obligations to provide ICBS—in order to assess whether Plaintiffs have satisfied the typicality requirement.  This puts "the cart before the horse," as "the point of Rule 23 'is not to adjudicate the case; rather, it is to select the method best suited to adjudication of the controversy fairly and efficiently.'"  *Coleman*, 306 F.R.D. at 77-78 (quoting *Amgen*, 568 U.S. at 460).  In assessing typicality, it is not necessary to determine whether L.R., M.W., and B.T. have received ICBS, although they have not.  Campbell Decl., ¶¶ 50, 141; Campbell Reply Decl., ¶¶ 5, 18; Boyd Decl., Ex. A, ¶¶ 136, 138; Boyd Reply Decl., ¶ 4.  Rather, it is sufficient that all named and putative class members' claims are "based on the same legal theory" and their injuries "arise from the same course of conduct . . . ," which occurs when their "claims all arise from a common statutory background and raise identical legal questions." *Coleman*, 306 F.R.D at 83 (quoting *Bynum v. District of Columbia*, 214 F.R.D. 27, 35 (D.D.C. 2003)).

2.    The class representatives' unique circumstances do not destroy typicality.

Moreover, the unique circumstances surrounding the three named Plaintiff Children do not disrupt the typicality of their claims, as Defendants assert.  *See* Opp. at 24-29.  Typicality is established if "[a] plaintiff's claim . . .  arises from the same event or practice or course of conduct that gives rise to a claim of another class member's where his or her claims are based on the same legal theory . . .  [C]ourts regularly certify classes where individual members have different factual circumstances."  *Afghan & Iraqi Allies v. Pompeo*, 334 F.R.D. 449, 459, 461 (D.D.C. 2020).[16]

_____

[16] *See also, e.g., Thorpe*, 303 F.R.D. at 124, 148-49 (typicality requirement met even though plaintiffs had differing transition needs; "concept of transition assistance is sufficiently concrete to constitute a discriminatory practice that injures class members in the same manner"); *S.R.*, 325 F.R.D. at 110 (finding typicality satisfied because both "Plaintiffs and the purported class allege that the violations are due to systemic, rather than individual, failures of the DHS"); *Steward v. Janek,* 315 F.R.D. 472, 490 (W.D. Tex. 2016) ("It is true that each Plaintiff's and class member's entitlement to services must depend upon a host of individualized medical determinations that,

"[T]o destroy typicality, a distinction must differentiate the 'claims or defenses' of the representatives from those of the class." *J.D.*, 925 F.3d at 1322.

L.R., B.T., and M.W.'s individual circumstances do not destroy typicality.  *See Hoyte v. District of Columbia*, 325 F.R.D. 485, 490 (D.D.C. 2017) (each class member's claims "do not have to be identical to support a finding of typicality; rather, typicality refers to the nature of the claims of the representative, not the individual characteristics of the plaintiff").  The Plaintiff Children's claims each turn on the same series of questions.  *See Brown*, 928 F.3d at 1081-82.  First, do Defendants provide ICBS?  Plaintiffs contend they do not.  Second, do the named Plaintiffs need ICBS to avoid unnecessary institutionalization?  Plaintiffs contend that they do.  Each of the three named Plaintiffs' claims raises "identical legal questions," *Coleman*, 306 F.R.D. at 83—that the Defendants violated the ADA, Section 504, and the Medicaid Act by failing to provide medically necessary ICBS, resulting in the children's unnecessary institutionalization and serious risk of same.  This failure is the same for each named Plaintiff:  because Defendants do not provide ICBS, it is unavailable to all of them.  It has impacted the named Plaintiffs and the putative class in the same way:  because all the Plaintiff Children need ICBS to avoid institutionalization, but have not received it, they are all either institutionalized or at serious risk of institutionalization.

The individual characteristics of each named Plaintiff do not preclude them from meeting typicality.   Defendants' contentions regarding the named Plaintiffs illustrate their misunderstanding of the typicality standard.

---

because they are inevitably unique, cannot be typical . . . [but] the atypical characteristics of individual Plaintiffs are not relevant [to typicality] . . . because they do not shed light on meaningful differences between Plaintiffs and prospective class members.  Plaintiffs have shown that they share the interests of the proposed class members in ensuring that Defendants use a system that complies with federal law . . . .")

i.      L.R.

Defendants contend that "[t]he record contains no evidence that any provider determined L.R. has a need for any other services that she did not receive . . . ."  Opp. at 25.  As discussed above, the Court has already acknowledged that it would be illogical to lend significance to the absence of a provider's recommendation for non-existent services.  MTD Op. at 21-22.[17]

Defendants next argue that L.R.'s claims are atypical, citing her "complicated treatment history," including her father's alleged disruption of her services and her own dissatisfaction with them.  Opp. at 25-26.  But the unique facets of L.R.'s experience with the District's poorly functioning mental health system do not preclude her role as a class representative.  Plaintiffs contend that the services made available to L.R. do not constitute ICBS,[18] so any disruption of those services is irrelevant.[19]  L.R. maintains that she needs but has not received ICBS.  *See* L.R. Decl., ¶¶ 52-73; *see also* Campbell Decl., ¶ 50; Campbell Reply Decl., ¶ 5.  Due to Defendants' failure to provide her with ICBS, L.R. remains at high risk of future institutionalization.  *See* Campbell Decl., ¶ 57; L.R. Decl., ¶¶ 20, 25, 27, 32-35, 39-40.  L.R. wants ICBS to "feel stable and healthy, finish school, get permanent housing, and have a career."  L.R. Decl., ¶ 73.

---

[17] Defendants recycle this argument for B.T. and M.W. (*see* Opp. at 26, 28), and it fails as to each of them for the same reason.

[18] Defendants state that Plaintiffs' "proffered expert describes [ACT services] as 'a form of ICBS.'"  Opp. at 25 (citing Campbell Decl., ¶¶ 49-54).  Defendants misrepresent Ms. Campbell's expert testimony.  While ACT services are a functional equivalent to TACT services, and Ms. Campbell agrees that "TACT is a form of ICBS," she asserts that what L.R. received did not constitute TACT as the services were not delivered with fidelity.  Campbell Decl., ¶ 54; Campbell Reply Decl., ¶¶ 5, 12.

[19] In their motion to dismiss, Defendants attempted a similar argument against the previous named plaintiff, M.J.  This Court rejected that argument, holding, "because M.J. has alleged that High Fidelity Wrap Around services and CBI are short-term backstops which fall outside the category of ICBS, defendants' argument that M.J.'s refusal of these services precludes an injury in fact in this case is unpersuasive."  MTD Op. at 12.

17

ii.      B.T.

Defendants argue that B.T. is atypical because Plaintiffs' expert has opined that the
District's inadequate evaluations and inappropriate placements would prevent him from receiving
ICBS even if ICBS were available.  Opp. at 26-27 (citing Boyd Decl., Ex. A, ¶ 139).  Based on
this testimony, Defendants assert that B.T. has suffered a different purported injury—inadequate
psychological evaluations—than the rest of the class.  Defendants are wrong for two reasons.  First,
B.T.'s inadequate evaluations do not undermine his claim that Defendants do not provide ICBS.
Boyd Reply Decl., ¶ 25.  Second, Defendants fail to acknowledge that proper evaluations and
diagnostic assessments to identify strengths and address varying needs are requisite first steps in a
functioning system for providing ICBS.  *Id.*  Defendants' argument that "[t]he record contains no
evidence that any provider determined B.T. has a need for [HFW or] any other services that he did
not receive" (Opp. at 26) actually bolsters Plaintiffs' argument that Defendants do not provide
ICBS to children that need it.  *See* Boyd Reply Decl., ¶¶ 14 (detailing B.T.'s eligibility for HFW
services), 25 ("Without proper evaluations and diagnostics, ICBS cannot be provided.").
Therefore, B.T.'s legal claim and purported injury is typical of the class:  B.T. claims that he needs
ICBS, did not receive it, and continues to be at serious risk of institutionalization without it.  The
myriad ways that Defendants have failed B.T. do not destroy his typicality.

Defendants also unsuccessfully attempt to distinguish B.T. by his juvenile justice
placements.  Opp. at 27.  Several federal courts have recognized the applicability of *Olmstead* to
carceral settings as institutions.[20]  Moreover, Defendants' own public-facing documents assert that

---

[20] *See Ill. League of Advocs. for the Developmentally Disabled v. Ill. Dep't of Hum. Servs.*, 803
F.3d 872, 875 (7th Cir. 2015) ("To be 'institutionalized,' whether in a prison, a madhouse, or a
'state-operated developmental center,' is to be frozen out of society—a situation that even a
severely developmentally disabled person can experience as deprivation.") (citing *Olmstead v.
L.C.*, 527 U.S. 581, 600-01 (1999); *see also, e.g., S.R.*, 325 F.R.D. at 105-06 (describing children

the District's juvenile detention facilities and placements are intended to serve as "treatment" centers.[21]  Plaintiffs' Amended Complaint defines institutionalization to include juvenile detention facilities and juvenile justice placements.  FAC ¶¶ 54, 61, 69, 71.  Furthermore, "most juvenile justice placements are intended to serve therapeutic and rehabilitative purposes . . . ," Boyd Reply Decl., ¶ 17, and B.T.'s placement in juvenile custody "was the result of a lack of access to appropriate mental health treatment in the community," *id*., ¶ 15.  B.T.'s placements in these facilities do not distinguish him from the other class members who have been removed from the community to receive "treatment" in DYRS placements.  Like L.R., B.T. needs but has not received ICBS.  *See* Boyd Decl., Ex. A, ¶ 136; Boyd Reply Decl., ¶ 4.  B.T. continues to be at a serious risk of institutionalization.  *See* Boyd Decl., Ex. A, ¶ 141; B.T. Decl. ¶¶ 15-28, 30-31.

        iii.        M.W.

In addition to repeating the same arguments they make for L.R. and B.T., Defendants contend that M.W. is atypical based on his need "to live in a supervised independent living setting" because "[n]owhere do plaintiffs suggest that a supervised independent living setting would fall

---

in need of mental health care "waiting for months or years in inappropriate settings, such as psychiatric hospitals, juvenile detention facilities, and residential treatment facilities"); *J.T. ex rel. A.F. v. Hamos*, No. 12-CV-03203, 2012 WL 4760645, at *1 (C.D. Ill. Oct. 5, 2012) (describing child with disability being alternatively institutionalized in psychiatric facilities and juvenile detention facilities).

[21] *See, e.g., Council of the District of Columbia Performance Oversight Hearing Pre-Hearing Questions and Answers*, DYRS, https://tinyurl.com/4n2pauta (last visited Nov. 12, 2021) (describing treatment offerings in DYRS placements: "[i]t is the policy of [DYRS] to ensure that all contracted vendors with which court-involved youth are placed for treatment and supervision provide an integrated system of care, custody, and treatment services in the least restrictive, most home-like environment, consistent with public safety."); *New Beginnings Youth Development Center: Fact Sheet*, DYRS, https://tinyurl.com/e2tjhvvc (last visited Nov. 12, 2021) (describing the behavioral health care model: "New Beginnings applies a comprehensive, trauma-based approach to its mental and behavioral health services.  Staff are trained in trauma-informed care, and clinicians or behavioral health staff travel with youth throughout the day to provide monitoring and support.  New Beginnings also provides individual psychological counseling, group counseling, and substance abuse programs.").

within the services they call ICBS." Opp. at 28 (citing Campbell Decl., ¶ 143). Whether M.W. requires a supervised independent living setting is irrelevant to his typicality, though it is nevertheless true that "[s]table housing is essential to avoid the risk of institutionalization, and taking steps to help the child and family obtain stable housing should be part of a child's Wraparound service plan." Campbell Reply Decl., ¶ 24. The Plaintiff Children can have varying specific needs, such as a place to live, that go beyond ICBS while still needing ICBS. Moreover, an expert can recommend services outside of ICBS while still opining that the youth they evaluated needs ICBS. As with L.R. and B.T., M.W. needs but has not received ICBS. *See id.*, ¶ 18; Campbell Decl., ¶¶ 141-43. He maintains a serious risk of institutionalization. *See* Campbell Decl., ¶ 148; M.W. Decl., ¶¶ 25, 30-31.

The named Plaintiffs' claims contain "sufficient factual and legal similarity" such that "the representative's interests are in fact aligned with those of the absent class members." *Garnett v. Zeilinger*, 301 F. Supp. 3d 199, 209 (D.D.C. 2018). Accordingly, they are sufficiently "typical."

### E. Plaintiffs Will Adequately Represent the Class.

Defendants assert that Plaintiffs cannot satisfy the adequacy requirement of Rule 23(a)(4), claiming Plaintiffs have already received mental health services, so they lack any incentive to seek an injunction requiring Defendants to provide ICBS. Opp. at 29. Again, Defendants incorrectly presume that Plaintiffs have already received ICBS, which goes directly to the merits of the case. For the reasons stated in Section III.D.1., *supra*, a merits determination is inappropriate in assessing whether Plaintiffs can adequately represent the class.

In addition, Defendants' presumption is contrary to the facts supporting L.R., M.W., and B.T.'s claims. These three individuals have not received ICBS. *See* Pls.' Br. at 24-25. They continue to face significant hardships, including unstable housing, barriers to employment, and the potential for re-institutionalization. *See* L.R. Decl., ¶¶ 73-74; M.W. Decl., ¶¶ 38-40; B.T. Decl.,

¶¶ 31-32.  All three have clearly expressed their desire to receive ICBS.  *Id.*  L.R., M.W., and B.T. do not have antagonistic or conflicting interests with the unnamed members of the class because they all share the same interest in receiving medically necessary ICBS in the most integrated setting appropriate, and the remedies sought would benefit all putative class members.  Pls.' Br. at 30-31.[22]  Therefore, L.R., M.W., and B.T. are all adequate class representatives.

### F.   Certification is Proper Under Rule 23(b)(2) Because Injunctive Relief is Appropriate Concerning the Class as a Whole.

This civil rights class action fits squarely within Rule 23(b)(2).  A single injunction will provide relief to each class member, such that later piecemeal Medicaid and *Olmstead* litigation may be avoided.  *See DL v. District of Columbia*, 860 F.3d 713, 726 (D.C. Cir. 2017) ("*DL II*") ("The Rule 23(b)(2) class action . . . [is] designed for exactly this sort of suit.").

Defendants contend that, *prior to* class certification, Rule 23(b)(2) requires Plaintiffs to provide the Court with an ironclad injunction that meets the specificity requirement for injunctive orders set forth in Rule 65(d).[23]  Opp. at 30-31.  Such an injunction is not required at this stage in the litigation.  Defendants cite *Shook v. Board of County Commissioners of County of El Paso*, 543 F.3d 597 (10th Cir. 2008), for their contention.  Opp. at 30-31.  The D.C. Circuit has not adopted such reasoning with respect to class certification.  *See Brown*, 928 F.3d at 1079, 1082 (affirming certification of Rule 23(b)(2) class without reference to Rule 65(d)); *DL II*, 860 F.3d at

---

[22] Defendants' argument that the named Plaintiffs are not "able to vigorously prosecute the interests of the class" (Opp. at 29) incorrectly conflates the requirements of the class representative with that of their counsel.  Class representatives "must appear able to vigorously prosecute the interests of the class *through qualified counsel* . . . ." *J.D. v. Azar*, 925 F.3d 1291, 1312 (D.C. Cir. 2019) (emphasis added).  Defendants have not disputed the qualifications of Plaintiffs' counsel, who will vigorously prosecute the interests of the class.  *See* Pls.' Br. at 31-33; *see also* Juneja Reply Decl., ¶¶ 2-8 (stating qualifications for new counsel for National Center for Youth Law).

[23] Rule 65(d) requires that "every *order* granting an injunction . . . must: (A) state the reasons why it issued; (B) state its terms specifically; and (C) describe in reasonable detail ... the act or acts restrained or required" Fed. R. Civ. P. 65(d)(1) (emphasis added).

726 (same); *Thorpe*, 303 F.R.D. at 151-52 (same).   Nor have other courts in certifying Rule 23(b)(2) classes over "*Shook*" objections.  *See B.K. ex rel. Tinsley. v. Snyder*, 922 F.3d 957, 972 (9th Cir. 2019) (rejecting *Shook* as having "no basis in existing law, whether in the text of the Federal Rules or in our precedent . . . . Plaintiffs do not need to specify the precise injunctive relief they will ultimately seek at the class certification stage"); *Parsons v. Ryan*, 754 F.3d 657, 689 n.35 (9th Cir. 2014) ("[W]e seriously doubt that the degree of specificity suggested in [*Shook's*] wide-ranging dicta is properly required at the class certification stage for a Rule 23(b)(2) class.").

Further, even if *Shook* were applicable, it does not require that "every jot and tittle of injunctive relief be spelled out at the class certification stage . . . ." *Yates v. Collier*, 868 F.3d 354, 368 (5th Cir. 2017).  *Shook* itself rejected Defendants' position: "[P]laintiffs are [not] required to come forward with an injunction that satisfies Rule 65(d) with exacting precision at the class certification stage."   543 F.3d at 605 n.4.   Instead, "the class certification motion must be . . . sufficient to allow the district court to see how *it might* satisfy Rule 65(d)'s constraints . . . and the motion for relief or proposed injunction must of course itself be specific enough to comport with Rule 65(d)." *Id.* (emphasis added).

In any event, the injunctions requested by the plaintiffs in *Shook* and other cases cited by Defendants differ from the remedial request that Plaintiffs make here.  Plaintiffs have requested a single injunction "requiring that Defendants provide medically necessary ICBS to the Plaintiff Children" as required by the Medicaid EPSDT mandate, and as required to comply with the ADA and *Olmstead*. *See, e.g.,* Pls.' Br. at 31.  Through their filings, Plaintiffs have provided the Court and Defendants with substantial information about ICBS—including evidence-based research, agency recommendations, model implementations, and expert analyses—that explain how

Defendants can implement ICBS and monitor those services for fidelity.[24]  This is not a request to the Court to mandate an "adequate policy modification," or "a mere order to follow the law."  *See* Opp at 32-33.  Plaintiffs have not "eschewed any effort to give content to what it would mean to provide adequate mental health staff, adequate screening, or an adequate system . . . ." *See Shook*, 543 F.3d at 606.  Rather, Plaintiffs have clearly described their requested injunction, and explained how the Court may craft final injunctive relief that is sufficiently specific and detailed such that any eventual remedial order can no doubt comport with Rule 65(d).[25]

Defendants also wrongly claim that Plaintiffs have "superficially structured their case around a claim for class-wide injunctive and declaratory relief" that "would merely initiate a process through which individualized determinations of liability and remedy are made."  *See* Opp. at 35 (citing *Jamie S v. Milwaukee Pub. Schs.,* 668 F.3d 481, 498-99 (7th Cir. 2012)).  As discussed above, Plaintiffs' injunction addresses a systemic deficiency and would not require the Court to make any determinations of individual liability or remedy.  *See* Section III.A.1., *supra.*  Just as courts hearing similar Medicaid and *Olmstead* claims have rejected this contention with respect to

---

[24] Moreover, this action differs sharply from *Parent/Professional Advocacy League v. City of Springfield*, 934 F.3d 13, 31 (1st Cir. 2019), cited by Defendants, Opp. at 34.  *Parent/Professional Advocacy League* involved "school-based behavior services (SBBS)," which was a term that the First Circuit panel believed to be created for the litigation that did not refer to a single program that had been formally studied.  934 F.3d at 31.  ICBS, by contrast, refers to a single comprehensive group of services that has been extensively studied and found to reduce the risk of unnecessary institutionalization.  *See N.B.,* 26 F. Supp. 3d at 774 (certifying class where "[t]he named plaintiffs . . . are alleged to have been denied access to intensive community-based services"); FAC ¶ 4, n.2 (noting  the U.S. Department of Justice's findings that ICBS "effectively address[es] the needs of children with mental illness while maintaining their connection to their families and communities" thereby "greatly reduc[ing] the rate of institutionalization and related costs while producing positive outcomes for children"); Friedman Decl. ,¶¶ 19, 21-32; Kamradt Decl., ¶ 32.
[25] *See* Pls.' Br. at 3; *see also DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, n. 5 (10th Cir. 2010) ("Plaintiffs [gave] specific content" so "the court could at least conceive of an injunction that would satisfy . . . both Rule 23(b)(2) and Rule 65(d).").

Rule 23(a)(2) commonality, it has been rejected in finding Rule 23(b)(2) compliance.[26]  Similar to *DL II*, Plaintiffs challenge a *systemic deficiency* in the District's Medicaid service array—its failure to provide ICBS—that harms all children and youth with mental health disabilities for whom ICBS is deemed medically necessary, and places them at serious risk of institutionalization.  *See* 860 F.3d at 731 (finding that "systemic defects in the District's identification and eligibility determination policies . . . harm all [class members] and can only be remedied by a comprehensive injunction designed to bring the District into compliance with the IDEA").  Defendants' failure may be remedied by an injunction that requires Defendants to offer ICBS to the Plaintiff Class.

Finally, Defendants repeat that because the need for services like ICBS requires individual *clinical* determinations for class members, "[n]o injunction, therefore, could remedy [Plaintiffs' class members'] injuries without accounting for each child's individual needs."  Opp at 34.  Defendants ignore the common harm that all class members experience here:  Defendants do not provide ICBS to anyone, let alone to those for whom ICBS is deemed medically necessary.  *See* Section III.C., *supra*.  Moreover, in the system Plaintiffs seek, the District's providers, not the Court, will make these individualized determinations—as the District is already required to do

---

[26] *Brown v. District of Columbia*, 928 F.3d 1070, 1083 (D.C. Cir. 2019) (explaining that in *DL II*, for purposes of Rule 23(b)(2) "a 'single injunction' requiring 'District to meet its statutory deadline 95 percent of the time and to improve its performance by 10 percent . . . is sufficiently specific request for remedy . . ."); *O.B. v. Norwood*, 170 F. Supp. 3d 1186, 1200 (N.D. Ill. 2016) ("the class includes only plaintiffs who … seek to enforce their rights under the Medicaid Act to the services not provided . . . these are issues of 'systemic failure,' not 'individual violations of the same law' prohibited under *Wal-Mart* . . . and *Jamie S.*"); *N.B.*, 26 F. Supp. 3d at 774 ("success on the plaintiffs' claims will require policy modifications to properly implement EPSDT and the integration mandate; by their very nature such policy changes are generally applicable, and therefore would benefit all class members"); *Braggs v. Dunn*, 317 F.R.D. 634, 668 (M.D. Ala. 2016) (unlike *Jamie S.*, "[p]laintiffs are not seeking adjudication of demands for particular individualized treatment, and the challenges they are actually bringing—to systemic deficiencies that create a substantial risk of serious harm—are well recognized").

under the EPSDT framework.[27]  Plaintiffs and their experts have provided workable criteria for determining which Plaintiff Children need ICBS.  *See, e.g.*, Pls.' Br. at 19; Kamradt Reply Decl., ¶¶ 27-36; *cf. Rosie D. ex rel. John D. v. Romney,* 474 F. Supp. 2d 238, 240-241 (D. Mass. 2007) (adopting remedial order requiring a "service delivery network" and clarifying "[a]ny child satisfying the SED criteria . . . in the IDEA or by SAHMSA . . .  will be eligible for services" and "Defendants will be free to make clinical decisions based on the needs of the individual children").

Plaintiffs have described an injunctive remedy that is both "legally mandated" and "provides each member of the class an increased opportunity to achieve" a positive outcome. *Brown,* 928 F.3d at 1082–83.  Thus, "Rule 23(b)(2) is satisfied."  *Id.* at 1082.

## IV.   CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court, pursuant to Fed. R. Civ. P. 23(a) and 23(b)(2), certify a class defined as follows, or with such modifications as the Court deems necessary:

> All Medicaid-eligible District of Columbia children who now or in the future are under the age of 21, have a mental health disability, are not receiving medically necessary intensive community-based services, and are unnecessarily institutionalized or at serious risk of institutionalization.

In addition, Plaintiffs respectfully request that the Court appoint the Judge David L. Bazelon Center for Mental Health Law, Disability Rights DC, the National Center for Youth Law, and Schulte Roth & Zabel LLP as class counsel in this action pursuant to Rule 23(g).

---

[27] *See N.B.*, 26 F. Supp. 3d at 764 ("Once a child has been diagnosed as requiring such services (*i.e.*, the services have been found to be 'medically necessary'), he or she is entitled under the law to whatever services their doctors have recommended for maximum improvement . . . .  Therefore, unlike in *Jamie S.*, where membership in the class could not be determined without individualized, court-approved assessments, here, once the class members have been identified—through the workable criteria set forth in the statute and adopted by Illinois regulation, not through a determination of the Court—the required treatment is not subject to further inquiry.").

Respectfully submitted this 24th day of December, 2021.

*/s/ Jason T. Mitchell*

Sandra J. Bernstein (D.C. Bar No. 455355)
Mary Nell Clark (D.C. Bar No. 419732)
Kelsey Woodford (D.C. Bar No. 1739619)
Eva Richardson (D.C. Bar No. 1724670)
DISABILITY RIGHTS DC AT UNIVERSITY LEGAL SERVICES
220 I Street NE, Suite 130
Washington, D.C. 20002
202-547-0198

Ira A. Burnim (D.C. Bar No. 406154)
Lewis L. Bossing (D.C. Bar No. 984609)
Brittany Vanneman (D.C. Bar No. 1736194)
JUDGE DAVID L. BAZELON CENTER FOR MENTAL HEALTH LAW
1090 Vermont Avenue, NW, Suite 220
Washington, D.C. 20005
202-467-5730

Poonam Juneja (appearing *pro hac vice*)
NATIONAL CENTER FOR YOUTH LAW
1212 Broadway, Suite 600
Oakland, CA 94612
510-835-8098

Howard Schiffman (D.C. Bar No. 358814)
Jason T. Mitchell (D.C. Bar No. 1005757)
SCHULTE ROTH & ZABEL LLP
901 Fifteenth Street NW, Suite 800
Washington, D.C. 20005
202-729-7470

*Attorneys for Plaintiffs*