UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| L.R., B.T., M.W. and I.C.<br>on behalf of themselves and all others<br>similarly situated; and<br><br>UNIVERSITY LEGAL SERVICES, INC.,<br>220 I Street NE<br>Suite 130<br>Washington, D.C.  20002,<br><br>Plaintiffs,<br>v.<br><br>THE DISTRICT OF COLUMBIA,<br>c/o Karl A. Racine<br>Attorney General<br>441 4th Street NW<br>Suite 630 South<br>Washington, D.C. 20001;<br><br>MURIEL BOWSER, Mayor,<br>in her official capacity,<br>John A. Wilson Building<br>1350 Pennsylvania Avenue NW<br>Washington, D.C. 20004;<br><br>BARBARA J. BAZRON, Ph. D., Director, District<br>of Columbia Department of Behavioral Health,<br>in her official capacity,<br>64 New York Avenue NE, 3rd Floor<br>Washington, D.C. 20002; and<br><br>WAYNE TURNAGE, Director, District of<br>Columbia Department of Health Care Finance,<br>in his official capacity (via the Office of<br>the Attorney General),<br>Civil Litigation Division<br>441 4th Street NW<br>Washington, D.C. 20001,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. 18-CV-1901 (EGS) |

## SECOND AMENDED CLASS ACTION COMPLAINT
## FOR INJUNCTIVE AND DECLARATORY RELIEF

1.      Plaintiffs L.R., B.T., M.W., and I.C.[1] and the members of the Plaintiff class they

represent (collectively, "Plaintiff children"), are Medicaid-eligible children with mental

health disabilities who are needlessly institutionalized, or at serious risk of

institutionalization, because the District of Columbia and its officials (collectively,

"Defendants") fail to provide them medically necessary intensive community-based

services ("ICBS"), as required by federal law.

2.      The Plaintiff children suffer dramatically curtailed life opportunities due to Defendants'

continuing, longstanding failure to satisfy federal laws requiring the District of Columbia

to provide medically necessary services that prevent unnecessary institutionalization.

These services are not only essential and effective, but it is well within the District's

capacity to provide the services.

3.      Because of Defendants' failure to provide medically necessary intensive community-

based services, the Plaintiff children cycle unnecessarily in and out of institutions—

including psychiatric hospitals, psychiatric and other residential treatment facilities, the

District's detention centers, and group homes—to their detriment. When they return to

their families, homes, and communities, the Plaintiff children receive little or ineffective

follow-up community behavioral health services. It can take weeks or even months to get

an appointment from a community provider, and when services are finally delivered, they

are inadequate.  Not surprisingly, the Plaintiff children and their families find themselves

---

[1] Plaintiffs have filed a motion and accompanying memorandum requesting leave of the Court to proceed anonymously using their initials pursuant to Rule 5.1(h) of the Local Rules of the U.S. District Court for the District of Columbia, and consistent with Section 7-1204.05 of the District of Columbia Mental Health Information Act, given the sensitive mental health information disclosed herein.

in another crisis, and are institutionalized again or placed at serious risk of institutionalization.

4.   The Plaintiff children need intensive community-based services to avoid institutionalization and improve their mental health conditions. As the U.S. Department of Justice has recognized, studies and programs across the country have shown that ICBS "effectively address the needs of children with mental illness while maintaining their connection to their families and communities," thereby "greatly reduc[ing] the rate of institutionalization and related costs while producing positive outcomes for children."[2]

5.   Intensive community-based services, or ICBS, would make a critical difference in the lives of these children. With ICBS, the Plaintiff children could live in their own homes or in another family or foster home, make progress in school, and participate fully in community life. When denied ICBS, they are at high risk of doing poorly in school, becoming involved in the delinquency and criminal systems and, as they transition to adulthood, being unable to obtain a job or live independently.

6.   This action is brought not only by the Plaintiff children but also by University Legal Services, Inc., the designated protection and advocacy program for individuals with disabilities in the District of Columbia that does business under the name Disability Rights DC at University Legal Services ("Disability Rights DC"). Disability Rights DC, among other activities, advocates for the rights of individuals with mental health disabilities. The named individual Plaintiffs and members of the Plaintiff class are constituents of Disability Rights DC. Disability Rights DC is authorized under federal law to file lawsuits in its own right on behalf of its constituents. 42 U.S.C. § 10805(a)(1)

---

[2] U.S. Dep't of Justice, West Virginia Children's Mental Health System Findings Letter, at 9 (Jun. 1, 2015), *available at* https://www.ada.gov/olmstead/documents/west_va_findings_ltr.pdf.

(Protection and Advocacy for Individuals with Mental Illnesses ("PAIMI") Act); *id.*
§ 15043(a)(2)(A)(i) (Protection and Advocacy for Individuals with Developmental
Disabilities ("PADD") Act).

7.     For years, District families and advocates for the Plaintiff children, including Plaintiff
Disability Rights DC, have urged the District to provide needed ICBS to children with
mental health disabilities. In response to such advocacy, the District has sometimes
provided limited and temporary services to individual youths. However, the District has
never created a functioning system for delivering ICBS. Instead of providing legally
required ICBS to the children who need them—which would result in better outcomes
and less cost than unnecessary institutionalization—the District continues to operate a
system designed to provide, at most, a limited array of services on a limited basis with
limited effect.  The children in the class require and are entitled to much more.

8.     Over the course of several months this year Plaintiffs' counsel repeatedly raised concerns
with the District regarding its failure to provide ICBS. The District has not acted to
remedy the urgent and systemic failures that Plaintiffs' counsel have identified, and that
are reflected in the experiences of the named individual Plaintiffs discussed below. The
Plaintiff children simply cannot abide the status quo and have no recourse left but to sue.

9.     Denying the Plaintiff children medically necessary ICBS violates Title II of the
Americans with Disabilities Act (the "ADA"), 42 U.S.C. § 12132 *et seq.*; Section 504 of
the Rehabilitation Act, 29 U.S.C. § 794; and the Early and Periodic Screening,
Diagnostic, and Treatment ("EPSDT") provisions of the Medicaid Act, 42 U.S.C.
§§ 1396a(a)(43), 1396d(a)(4)(B), 1396d(r).

10.    Each named individual Plaintiff and Plaintiff class member has been and is being harmed
       because s/he has not received medically necessary intensive community-based services
       and is needlessly institutionalized or at serious risk of needless institutionalization.
       Defendants' reliance on unnecessary institutionalization and their denial of ICBS have
       caused and will continue to cause the Plaintiff children serious and irreparable harm.

                                          **PARTIES**

    A. **Plaintiffs**

11.    Plaintiff L.R. is a 21-year-old young woman with a mental health disability who spent
       years is in the custody of the District of Columbia Department of Youth Rehabilitation
       Services ("DYRS"). She is enrolled in the District's Medicaid program. She has been
       hospitalized multiple times and also frequently placed in residential treatment facilities,
       group homes, and detention facilities due to her mental health disability.

12.    Plaintiff B.T. is a 20-year-old young man who resides in the District of Columbia and
       who has been frequently placed in residential treatment facilities, group homes, and
       detention facilities due to his mental health disability. He is enrolled in the District's
       Medicaid program.

13.    Plaintiff M.W. is a 21-year-old young man who resides in the District of Columbia and
       who has been frequently placed in residential treatment facilities, group homes, and
       detention facilities due to his mental health disability. He is enrolled in the District's
       Medicaid program.

14.    Plaintiff I.C. is an 18-year-old young man who resides in the District of Columbia. He
       has been hospitalized and has been frequently placed in residential treatment facilities,
       group homes, and detention facilities due to his mental health disabilities. He is
       enrolled in the District's Medicaid program.

                                              5

15.   Each of the named individual Plaintiffs and all members of the Plaintiff class have a mental health disability by virtue of having a "serious emotional disturbance."

16.   Under District law, a child has a "serious emotional disturbance" when (a) the child has a mental health condition and (b) that condition causes the child to have a functional impairment that—on an episodic, recurrent, or continuous basis—either substantially limits the child's functioning in family, school, or community activities; or limits the child from achieving or maintaining one or more developmentally appropriate social, behavioral, cognitive, communicative, or adaptive skills.[3] All such children are "individuals with a disability" and hence protected under the ADA and the Rehabilitation Act.  42 U.S.C. § 12102; 29 U.S.C. § 705(20)(B).

17.   Plaintiff University Legal Services is an independent, non-profit corporation organized under the laws of the District of Columbia. It is the designated protection and advocacy program for individuals with disabilities for the District of Columbia that does business under the name Disability Rights DC at University Legal Services. Disability Rights DC is authorized under the PAIMI Act, 42 U.S.C. § 10801 *et seq.*, and the PADD Act, 42 U.S.C. § 15041 *et seq.*, to bring this action on behalf of the named individual Plaintiffs and members of the Plaintiff class, who are its constituents.

**B. Defendants**

18.   Defendant District of Columbia is a public entity covered by Title II of the ADA, 42 U.S.C. § 12131 *et seq.*, and, as a participant in the federal Medicaid program, its agencies receive federal financial assistance through that and other federal programs.

---

[3] D.C. Mun. Regs. Tit. 22-A, § 1201.1 (2002); *cf.* Substance Abuse & Mental Health Servs. Admin., *Mental and Substance Use Disorders* (Sept. 20, 2017) (similar federal definition), *available at* https://www.samhsa.gov/disorders.

19.    Defendant Muriel Bowser, as Mayor of the District of Columbia, is the chief executive

officer of the District, D.C. Code § 1-204.22, and is responsible for the District's

compliance with federal law. *Id.* § 1-204.22(11). Defendant Bowser supervises the

official conduct of all District administrative boards, offices, and agencies, including the

Department of Health Care Finance and the Department of Behavioral Health.  *Id.*

§ 1-204.22(4).  She appoints the directors of the Departments of Health Care Finance and

Behavioral Health. *Id.* §§ 7-771.04, 7-1141.03(1). Defendant Bowser is sued in her

official capacity.

20.    Defendant Barbara J. Bazron, Ph. D. is the Director of the District of Columbia

Department of Behavioral Health ("DBH"), the District's mental health authority,

responsible for the provision of publicly funded behavioral health services to District

residents. D.C. Code §§ 7-1141.04(1), 1141.06(3). Defendant Bazron supervises and

directs DBH, which plans, develops, coordinates, and monitors the District's behavioral

health system for children, *id.* § 7-1141.06, and is charged with maximizing federal

funding to support behavioral health prevention and treatment services. *Id.* § 7-

1141.06(5).  Defendant Bazron is sued in her official capacity.

21.    Defendant Wayne Turnage is the Director of the District of Columbia Department of

Health Care Finance ("DHCF"), the District agency responsible for the administration of

the District's Medicaid program. D.C. Code § 7-771.07. Defendant Turnage supervises

and directs DHCF's operations, including receiving, managing, and disbursing Medicaid

funds for services to eligible District children, including the Plaintiff children.  *Id.*

§ 7-771.05. Defendant Turnage is responsible for ensuring that the District's Medicaid

program operates in compliance with federal law. *Id.* §§ 7-771.07(1), (3). Defendant

Turnage is sued in his official capacity.

**JURISDICTION AND VENUE**

22.   This action is brought under the ADA, the Rehabilitation Act, and the Medicaid Act

(through 42 U.S.C. § 1983) to redress the ongoing deprivation of rights guaranteed by

federal statutes. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

Declaratory and injunctive relief are available pursuant to 28 U.S.C. §§ 2201-02.

23.   Venue is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events

or omissions giving rise to the claims herein occurred in this district, and because all

Defendants named herein maintain offices in this district and are responsible for

enforcing in this district the laws relevant to this litigation.

**CLASS ACTION ALLEGATIONS**

24.   Plaintiffs L.R., B.T., M.W., and I.C. bring this action pursuant to Rule 23(a) and (b)(2) of

the Federal Rules of Civil Procedure on behalf of themselves and the following class: All

Medicaid-eligible District of Columbia children who now or in the future are under the

age of 21, have a mental health disability, are not receiving medically necessary intensive

community-based services, and are unnecessarily institutionalized or at serious risk of

institutionalization.[4]

25.   The Plaintiff class is so numerous that joinder of all members is impracticable. There are

thousands of Medicaid-eligible children in the District with a "serious emotional

disturbance."[5]  In fiscal year 2017, over 300 of these children were admitted to a

---

[4] For sake of convenience, this Complaint refers to all class members, Medicaid-eligible persons
under the age of 21, as "children."

[5] District of Columbia Dep't of Behav. Health, *Mental Health and Substance Use Report on
Expenditures and Services (MHEASURES)*, at 3, 21 (Jan. 2017), *available at*
https://dbh.dc.gov/sites/default/files/dc/sites/dmh/publication/attachments/MHEASURES%20Jan
uary%202017_0.pdf.

psychiatric hospital or placed in a psychiatric residential treatment facility.  Over 100 of them had multiple admissions. Most of these admissions could have been avoided had the children timely received intensive community-based services.

26.     There are questions of law and fact common to the claims of all class members, including (a) whether Defendants' failure to provide services to the Plaintiff children in the most integrated setting violates the ADA and the Rehabilitation Act; and (b) whether Defendants' failure to provide medically necessary ICBS to the Plaintiff children violates the EPSDT provisions of the Medicaid Act.

27.     The claims of Plaintiffs L.R., B.T., M.W., and I.C. are typical of the claims of the class. As a result of Defendants' policies, practices, procedures, acts, and omissions, both the namedindividual Plaintiffs and the Plaintiff class members they represent are denied medically necessary ICBS to treat their mental health disabilities and are currently unnecessarily institutionalized or at serious risk of institutionalization.

28.     The named Plaintiffs will fairly and adequately represent the interests of the class. They possess a strong personal interest in the subject matter of the lawsuit and are represented by experienced counsel with expertise in disability rights laws, Medicaid, and federal class action litigation. Counsel have the legal knowledge and the resources to fairly and adequately represent the interests of all class members in this action.

29.     Defendants' policies, practices, procedures, acts, and omissions harm all class members. Accordingly, final injunctive and declaratory relief is appropriate for the class as a whole.

## STATUTORY BACKGROUND

**A. The Americans with Disabilities Act and Section 504 of the Rehabilitation Act**

30.     Under Title II of the ADA, "no qualified individual with a disability shall, by reason of

such disability, be excluded from participating in or be denied the benefits of services,

programs, or activities of a public entity, or be subjected to discrimination by any such

entity."  42 U.S.C. § 12132; 28 C.F.R. § 35.130.

31.     Title II of the ADA prohibits unnecessary institutionalization, and requires public entities

to administer services, programs, and activities in the most integrated setting appropriate

to the needs of qualified individuals with disabilities. *Olmstead v. L.C.*, 527 U.S. 581

(1999) (interpreting Title II); *see also* 28 C.F.R. § 35.130(d) ("most integrated setting"

regulation).

32.     Public entities also must make reasonable modifications in policies, practices, or

procedures when necessary to avoid discrimination on the basis of disability, unless the

public entity can demonstrate that the modifications would fundamentally alter the nature

of the service, program, or activity.  28 C.F.R. § 35.130(b)(7).

33.     Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, imposes identical requirements

on programs and activities that receive federal financial assistance.  *See*, *e.g.*, 45 C.F.R.

§ 84.4(b)(2) ("most integrated setting" regulation).

34.     Defendants discriminate against the named individual Plaintiffs and the Plaintiff class on

the basis of disability by failing to provide them services in the most integrated setting

appropriate to their needs, as required by federal law. If they receive intensive

community-based services and other appropriate services, virtually all children with

mental health disabilities can live in their own homes, or with a foster or other family, and succeed in school and participate in community life with their non-disabled peers.

35.   By failing to provide ICBS to the named individual Plaintiffs and the Plaintiff class, and instead serving them in segregated facilities, or placing them at serious risk of segregation, Defendants are discriminating against them in violation of the ADA and Section 504.

## B. The Federal Medicaid Program

36.   Medicaid is a voluntary federal-state program under Title XIX of the Social Security Act, 42 U.S.C. § 1396 *et seq.* ("Medicaid Act"), designed to provide medically necessary health and mental health care to low-income children and families, among others.

37.   Participation by states in the Medicaid program is voluntary, and those that do (including the District of Columbia) receive federal matching funds. To receive federal matching funds, states must adhere to the requirements set forth in Title XIX and its implementing regulation.  42 C.F.R. § 430.0 *et seq*.  In addition, participants must have a Medicaid state plan that describes their administration of the program and identifies the services they will provide to eligible beneficiaries.  42 U.S.C. § 1396a.

38.   The District of Columbia participates in the Medicaid program, and it therefore must comply with the Medicaid Act's requirements, including the EPSDT provisions of the Act.  42 U.S.C. §§ 1396a(a)(43), 1396d(a)(4)(B), 1396d(r).  The EPSDT provisions of the Act require the District to ensure that children receive medically necessary diagnostic and treatment services "to correct or ameliorate" their physical and mental illnesses and conditions. *Id*. §§ 1396a(a)(43)(C), 1396d(r)(5). The District must identify children who have physical and mental illnesses and conditions, *id*. § 1396d(r)(1), and provide

medically necessary services to the children regardless of whether such services are included in its state plan.  *Id*. § 1396d(r)(5); 42 C.F.R. § 441.56(c).

39.     Defendants must provide intensive community-based services to all Medicaid-eligible District children who need them. For the named individual Plaintiffs and the children in the Plaintiff class, intensive community-based services are medically necessary to correct or ameliorate the child's mental health disability.

## FACTUAL ALLEGATIONS

### A.  The District's Inadequate Service System

40.     Defendants do not provide ICBS to the Plaintiff children, although ICBS are medically necessary to improve their mental health conditions and prevent their institutionalization.

41.     ICBS includes the following components:

- *Intensive care coordination* (**"ICC"**)—an intensive form of case management in which a provider convenes a "child and family team," including the child, the child's family, service providers, and other individuals identified by the family, to design and supervise a plan that provides and coordinates services for children with mental health disabilities;

- *Intensive behavior support services*—individualized therapeutic interventions provided on a frequent and consistent basis that are designed to improve behavior and delivered to children and families in any setting where the child is naturally located; and

- *Mobile crisis services*—a mobile, onsite, in-person response, available at any time or place to a child experiencing a crisis, for the purpose of identifying, assessing,

and stabilizing the situation and reducing any immediate risk of harm. These services may be delivered in the child's home, school, or community.[6]

42.  To benefit from ICBS, children may also need therapeutic foster care, a short-term, intensive, therapeutic placement. When this service is needed to correct or ameliorate a Medicaid-eligible child's condition, the District must provide it.

43.  There is no service provider in the District that offers ICBS.  Some providers offer some of the elements of ICBS. One provider offers ICC, which Defendants call "high fidelity wraparound." The District has budgeted for 94 children to receive this service in fiscal year 2018.[7] As of June 15, 2018, only about 42 District children had received this service during fiscal year 2018.

44.  Several providers in the District offer what is called "community-based intervention" ("CBI"). Although the District has sometimes referred to CBI as "Intensive Home and Community-Based Services," CBI is not designed or supervised by a child and family team, is time-limited, and does not include sufficiently intensive behavior support services.

---

[6] *See, e.g.*, Judgment, *Rosie D. v. Patrick*, No. 01-30199-MAP, 497 F. Supp.2d 76 (D. Mass. 2007); Cindy Mann & Pamela S. Hyde, *Joint CMCS and SAMHSA Informational Bulletin: Coverage of Behavioral Health Services for Children, Youth, and Young Adults with Significant Mental Health Conditions*, Substance Abuse and Mental Health Servs. Admin. (SAMHSA) and Center for Medicaid and CHIP Services (CMCS), at 3-6 (2013), *available at* https://www.medicaid.gov/federal-policy-guidance/downloads/cib-05-07-2013.pdf;  U.S. Dep't of Justice, *West Virginia Children's Mental Health System Findings Letter*, at 9; California Dep't of Healthcare Servs. & California Dep't of Soc. Servs., *Medi-Cal Manual: For Intensive Care Coordination (ICC), Intensive Home-Based Services (IHBS), and Therapeutic Foster Care (TFC) Services for Medi-Cal Beneficiaries* 15 (3rd. ed. 2018) *available at* http://www.dhcs.ca.gov/services/MH/Documents/PPQA%20Pages/Katie%20A/Medi-Cal_Manual_Third_Edition.pdf.

[7] *See* District of Columbia Dep't of Behav. Health, FY 17 Performance Oversight Response No. 76 (on file).

45.     Several providers offer Assertive Community Treatment ("ACT"), which includes a team

        approach and some intensive behavior support services. Very few children have received

        this service, however:  in fiscal year 2017, only *three* children under age 18 received

        ACT, down from 66 children under 18 in fiscal year 2016.[8] The District does not report

        how many youths ages 18-21 receive ACT.

46.     Defendants have had ample notice that their behavioral health system fails to provide

        medically necessary ICBS to hundreds of children, instead subjecting these children to

        harmful and unnecessary institutionalization. Years of reports from researchers,

        advocates, and the District itself, as well as testimony before the District Council,

        indicate that District children do not get the ICBS they need.

47.     In 2012 and 2016, the Children's Law Center reported shortages of effective community-

        based services for children.[9] A 2015 report by Plaintiff Disability Rights DC described

        the same problem.[10]

---

[8] District of Columbia Dep't of Behav. Health, *Mental Health and Substance Use Report on Expenditures and Services (MHEASURES)*, at 12 (Jan. 2018), https://dbh.dc.gov/sites/default/files/dc/sites/dmh/publication/attachments/MHEASURES%20January%202018%20%28002%29.pdf; District of Columbia Dep't of Behav. Health, *Mental Health and Substance Use Report on Expenditures and Services (MHEASURES)*, at 12 (Jan. 2017), *available at* https://dbh.dc.gov/sites/default/files/dc/sites/dmh/publication/attachments/MHEASURES%20January%202017_0.pdf.

[9] Children's Law Center, *Improving the Children's Mental Health System in the District of Columbia*, at 11, 26, 29, 35 (2012), *available at* http://www.childrenslawcenter.org/sites/default/files/attachments/resources/Improving%20the%20Children's%20Mental%20Health%20System%20in%20the%20District%20of%20Columbia%20-%202012%20Report.pdf; Children's Law Center, *Evaluating DC's Progress in Meeting Children's Mental Health Needs*, at 1 (May 2016), *available at* https://www.childrenslawcenter.org/sites/default/files/Childrens_Law_Center_MH_Update_2016.pdf.

48.  The District's own reports have disclosed deficiencies in services as well as reduced capacity in the District's children's behavioral health services.[11]

49.  Before bringing this action, Plaintiffs' counsel raised with the District, and engaged with the District over the course of several months regarding, its failure to provide necessary ICBS and the attendant harm caused by the unavailability of ICBS. Although the District has claimed that it has made significant investments in its children's behavioral health system over the past ten years, the harms experienced by the Plaintiff children and reports from other advocates reveal that systemic inadequacies persist. Though it has knowledge of the harm, the District has not taken corrective action.

50.  As a result of the District's failures, the Plaintiff children spend their formative years isolated from their families and communities as they cycle through institutions that cannot provide them the ICBS they need. They could and should have been served in their own homes, or in another family or foster home, with ICBS. Children with comparable needs who receive ICBS in natural settings have "improved school

---

[10] University Legal Services, *The Way Home: Child and Youth Access to Community-Based Services Post-Psychiatric Hospitalization in the District of Columbia*, at 6 (Mar. 1, 2015), *available at* http://www.uls-dc.org/thewayhome.pdf.

[11] *See, e.g.*, District of Columbia Dep't of Behav. Health, *Mental Health and Substance Use Report on Expenditures and Services (MHEASURES)*, at 3, 9 (Jan. 15, 2018), *available at* https://dbh.dc.gov/sites/default/files/dc/sites/dmh/publication/attachments/MHEASURES%20Jan uary%202018%20%28002%29.pdf (following provider closures, between FY 2016 and FY 2017 approximately 950 fewer children ages 0-17, and an unspecified number ages 18-21, received mental health services); District of Columbia Dep't of Behav. Health, FY 15 Performance Oversight Response No. 98 Attachment (on file) (submitting FY15 Child and Youth Community Service Reviews, which reported declines in provider scores for Overall Practice, Team Functioning, and Team Coordination, among other measures); District of Columbia Dep't of Health Care Fin., *District of Columbia's Managed Care End-of-Year Report* 15 (Apr. 2017), *available at* https://dhcf.dc.gov/sites/default/files/dc/sites/dhcf/publication/attachments/Managed%20Care%2 0End%20of%20Year%20Report%20FY2016.pdf (noting that "care coordination challenges . . . remain stubborn").

attendance and performance, increased behavioral and emotional strengths, improved

clinical and functional outcomes, reduced suicide attempts, and decreased contacts with

law enforcement when compared to children who received such care in segregated

residential treatment facilities."[12]

**B. The District's Failures Harm the Individual Plaintiffs**

51.    Plaintiff L.R. is a 21-year-old young woman with a mental health disability. She has

been diagnosed with bipolar disorder, post-traumatic stress disorder ("PTSD"), attention-

deficit/hyperactivity disorder ("ADHD"), and conduct disorder.

52.    L.R. is outgoing and makes friends easily. She enjoys drawing, coloring, listening to

music, and dancing. She is interested in pursuing a career in cosmetology because she

enjoys working with hair and designing hairstyles. She is also considering a career in

medicine, specifically as an obstetrician-gynecologist or a midwife.

53.    L.R. has never received ICBS, despite the District's obligation to provide these services.

54.    L.R. has been hospitalized several times for mental health treatment, starting in March

2011 with a hospitalization at the Psychiatric Institute of Washington ("PIW"). Since

then, she has been hospitalized at least once at the District's Children's National Medical

Center ("CNMC") in July 2014, and three times at PIW, in September 2014, January

2015, and March-April 2017.

55.    L.R. has spent much of her adolescence institutionalized in juvenile facilities, psychiatric

residential treatment facilities, and other residential treatment centers. L.R. has been

arrested numerous times for fighting and was committed to DYRS custody for over four

years, from April 2015 to October 2019.  The District has ordered her to spend time at

---

[12] U.S. Dep't of Justice, *West Virginia Children's Mental Health System Findings Letter*, at 9.

both the Youth Services Center and New Beginnings. She has also spent time at the Fairfax Juvenile Detention Center. In addition, DYRS has placed her for months in a psychiatric residential treatment facility, other residential treatment facilities, and group homes, all outside the District, including facilities in Florida, Virginia, and Maryland.

56.     L.R.'s periods of institutionalization have disrupted her education. During middle school, she was involuntarily transferred to a different school because of her behavior. Subsequently, L.R. has had to transfer to different educational programs each time she transferred from home to hospitals, residential facilities, and District detention centers, and then back home again.

57.     During those periods when she has lived at home, L.R. has generally received services from a District provider. These services have included CBI as well as medication management.  However, L.R. never received ICBS.

58.     L.R. is interested in receiving ICBS, but the District has not worked with her to arrange for her to receive these services while she has lived in the community.

59.     Plaintiff B.T. is a 20-year-old young man with a mental health disability. He has been diagnosed with several mental health disorders, including bipolar disorder, ADHD, oppositional defiant disorder ("ODD"), disruptive mood dysregulation disorder ("DMDD"), and an unspecified trauma disorder, in addition to developmental disorders. He was recently released from DYRS commitment at the Youth Services Center, and he is now living with his mother in the District.

60.     B.T. is creative and outgoing. He enjoys making music and fishing. He is interested in making music for a career.  He is a new father to an infant daughter born in January 2021.

61.     B.T. has never received ICBS, despite the District's obligation to provide these services.

62.   B.T. has experienced significant traumatic incidents throughout his life, including being the victim of several stabbings, witnessing domestic violence and a shooting in his community, and experiencing the death of a family member. He has spent much of his adolescence institutionalized in juvenile facilities, psychiatric residential treatment facilities, and other residential treatment centers. B.T. has been arrested numerous times for charges related to fighting and was committed to DYRS custody from July 2019 until July 2020. The District has placed him in detention at the Youth Services Center more than 20 times. In addition, DYRS has placed him—for months—at a series of residential treatment facilities and group homes in the District, Maryland, and Pennsylvania.

63.   B.T.'s periods of institutionalization have disrupted his education and mental health treatments. This has separated him from his family for years and caused him to miss the birth of his daughter and the first several months of her life while at residential placements, including in Pennsylvania. These placements have caused B.T. to cycle through different educational programs and have prevented B.T. from establishing stable relationships with mental health service providers.

64.   During those periods when B.T. has lived at home, he has at times received mental health services from a District provider.  These services have included CBI as well as medication management and counseling.  However, B.T. never received ICBS.

65.   B.T. is interested in receiving ICBS, but neither Defendants nor its providers have helped B.T. receive the ICBS he needs to avoid institutionalization.

66.   Plaintiff M.W. is a 21-year-old young man with a mental health disability.  He currently resides in a group home in the District.  He has been diagnosed with bipolar disorder,

DMDD, ODD, ADHD, generalized anxiety, an unspecified mood disorder, and
schizoaffective disorder.

67.  M.W. likes helping people, math, and sports (particularly basketball). He has strong
communications skills and has maintained close family relationships with some family
members despite his very difficult childhood. He plans to become an emergency medical
technician when he finishes high school.

68.  M.W. has never received ICBS, despite the District's obligation to provide these services.

69.  M.W. experienced developmental delays as a child and has experienced significant
traumatic events throughout his life, including long-term physical abuse from family
members, witnessing domestic violence—including by his father, who has been
incarcerated multiple times for domestic violence—and experiencing the shooting deaths
of two close friends. He has had challenging behaviors from an early age, including
attempts to run away from home, physical aggression and fighting, and destroying
property.

70.  M.W. has been institutionalized several times for mental health treatment, including a
four-month hospitalization at PIW and a hospitalization at CNMC. He has spent much of
his adolescence institutionalized in juvenile detention facilities, psychiatric residential
treatment facilities, and other residential treatment centers.

71.  M.W. has been arrested multiple times, including for robbery and assault on an abusive
family member.

72.  During those periods when M.W. has lived outside of a residential placement or juvenile
facility, he has cycled through various District community-based service providers,
including MBI, Community Connections and Youth Villages.  At different times, he has

received "High Fidelity Wraparound" and CBI, as well as medication management and outpatient counseling. However, M.W. never received ICBS.

73. M.W. is interested in receiving ICBS, but neither Defendants nor its providers have helped M.W. receive the ICBS he needs to avoid institutionalization.

74. Plaintiff I.C. is an 18-year-old young man with a mental health disability. He has been diagnosed with several mental health disorders, including bipolar disorder, ADHD, emotional disturbance, depression, and anxiety. He was recently released from New Beginnings, and DYRS has placed him in a foster home in a suburb of Baltimore, Maryland, though his home and supportive family is in the District.

75. I.C. likes reading, boxing, and shopping for clothes. He has strong reading skills and an interest in psychology. He developed strong relationships with his family and is particularly close to his mother and younger brother. He was also close with his maternal grandparents, who passed away during his adolescence. He hopes to graduate high school and build a career that will provide him financial stability and allow him to remain close to his family.

76. I.C. has never received ICBS, despite the District's obligation to provide these services.

77. I.C. experienced developmental delays as a child and has experienced significant trauma through the deaths of his maternal grandparents, with whom he spent a substantial amount of time and was quite close. He has faced frequent school suspensions and exhibited challenging behaviors from an early age, including verbal and physical aggression, roaming hallways, walking out of classrooms during class, and self-harm, all related to his multiple mental health disorders.

78. I.C. has been institutionalized several times for mental health treatment, including a week-long hospitalization at PIW. In 2020, IC was committed to DYRS custody and

has remained in its custody ever since.    In September 2020, DYRS placed him in Youth

Service Center, where he had previously been detained, and in September 2021, he was

placed in New Beginnings.  He has most recently been placed in foster care in Elkridge,

Maryland, where he remains isolated from his family despite his desire to return home to

the District.  DYRS has refused to allow I.C. to return to the District, even for therapy,

doctor's appointments, and school.

79.    I.C.'s lengthy periods of institutionalization have disrupted his education and mental

health treatment.  I.C. has been separated from his family for years and in Maryland

has been able to see only his mother.  He sees her only occasionally due to the

difficulty of her traveling from the District to see him.  Cycling through these various

placements has prevented I.C. from maintaining stable relationships with mental health

service providers and from establishing new ones.  For example, I.C. had some

success working with a particular counselor prior to his institutionalizations, but has

been unable to continue that work through these placements.  With each placement,

I.C. has had to transfer to different educational programs, interrupting his education

and presenting other barriers to continue his education, including being unable to log

into his online classes, not having any live teachers (virtual or otherwise), and being

unable to attend school in person because of DYRS's refusal to let him return to the

District.

80.    During those periods when I.C. has lived at home in the District, he has received

outpatient counseling from a District provider.    However, I.C. never received ICBS.

81.    I.C. is interested in receiving ICBS, but neither Defendants nor its providers have helped

I.C. receive the ICBS he needs to avoid institutionalization.

82.    The Plaintiff children have no adequate remedy at law.

21

**CAUSES OF ACTION**

**Count 1 – Americans with Disabilities Act, 42 U.S.C. §12131 *et seq.*, and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794.**

83.    Plaintiffs incorporate by reference the foregoing paragraphs of this Complaint as though fully set forth herein.

84.    The named individual Plaintiffs and the class members they seek to represent are qualified individuals with disabilities under the ADA and are "otherwise qualified individuals with a disability" under the Rehabilitation Act. The named individual Plaintiffs and members of the Plaintiff class are constituents of Disability Rights DC.

85.    Defendant District of Columbia is a public entity subject to the requirements of Title II of the ADA. The District and its agencies also receive federal financial assistance and are thus subject to the requirements of the Rehabilitation Act. Defendants Bowser, Bazron, and Turnage are District officials responsible for administering and/or supervising District programs and activities related to behavioral health services and/or the Medicaid program.

86.    Defendants have discriminated against Plaintiff children in violation of the ADA and the Rehabilitation Act by failing to administer services, programs, and activities in the most integrated setting appropriate and by needlessly placing them in institutional settings to receive behavioral health services, or by putting them at serious risk of placement in such settings.

87.    The relief sought by Plaintiffs would not require a fundamental alteration to the District's programs, services, or activities. Defendants are already required by federal law to provide intensive community-based services to the Plaintiff children, and compliance with the ADA and the Rehabilitation Act would not impose any unreasonable costs on

Defendants' service system.

**Count II – Medicaid Act, 42 U.S.C. § 1396d *et seq.* and 42 U.S.C. § 1983.**

88.    Plaintiffs incorporate by reference the foregoing paragraphs of this Complaint as though
       fully set forth herein.

89.    Defendants, while acting under the color of law, have violated the Medicaid Act,
       including the Act's EPSDT mandate, by failing to provide Plaintiff children with
       intensive community-based services ICBS when such services are medically necessary to
       treat or ameliorate their mental conditions.  42 U.S.C. §§ 1396a(a)(43), 1396d(r).

90.    Defendants, including the Mayor of the District of Columbia and the Directors of the
       Departments of Behavioral Health and Health Care Finance, have final policymaking
       authority over the District's behavioral health and Medicaid systems.  *See* D.C. Code
       §§ 1-307.02; 7-771.05; 7-1141.02; 7-1141.04; 7-1141.06; 7-1141.07.  Defendants, while
       acting under the color of law, have:

       (a)  taken actions that have caused medically necessary ICBS to be unavailable to the
       Plaintiff children; and

       (b)  knowingly and consistently failed to provide medically necessary ICBS to the
       Plaintiff children, setting a custom for failing to provide behavioral health services that
       meet their needs.

       Defendants' failures constitute deliberate indifference to the Plaintiff children's rights
       under the Medicaid Act (as enforced through 42 U.S.C. § 1983).

**REQUEST FOR RELIEF**

       WHEREFORE, Plaintiffs respectfully request that this Court:

A.     Certify this case as a class action pursuant to Federal Rule of Civil Procedure 23;

B.     Declare that Defendants' failures to comply with the mandates of the Americans with

23

Disabilities Act, Section 504 of the Rehabilitation Act, and the Medicaid Act are unlawful;

C.      Enter a permanent injunction enjoining Defendants from subjecting the named individual Plaintiffs and members of the Plaintiff class to policies and practices that violate their rights under the Americans with Disabilities Act, Section 504 of the Rehabilitation Act, and the Medicaid Act;

D.      Award Plaintiffs their reasonable costs and attorney's fees incurred in the prosecution of this action; and

E.      Award such other equitable and further relief as the Court deems just and proper.

Respectfully submitted this 24th day of June, 2022.

*/s/ Jason T. Mitchell*

Ira A. Burnim (D.C. Bar No. 406154)
Lewis L. Bossing (D.C. Bar No. 984609)
Brittany Vanneman (D.C. Bar No. 1736194)
JUDGE DAVID L. BAZELON CENTER FOR MENTAL HEALTH LAW
1090 Vermont Avenue, NW, Suite 220
Washington, D.C. 20005
Tel. (202) 467-5730

Sandra J. Bernstein (D.C. Bar No. 455355)
Mary Nell Clark (D.C. Bar No. 419732)
Eva Richardson (D.C. Bar No. 1724670)
Kelsey A. Woodford (D.C. Bar No. 1739619)
DISABILITY RIGHTS DC AT UNIVERSITY LEGAL SERVICES
220 I Street NE, Suite 130
Washington, D.C. 20002
Tel. (202) 547-0198

Poonam Juneja (appearing *pro hac vice*)
Brenda Star Adams (*pro hac vice* application pending)
NATIONAL CENTER FOR YOUTH LAW
1212 Broadway, Suite 600
Oakland, CA 94612
Tel. (518) 835-8098

Howard Schiffman (D.C. Bar No. 358814)
Jason T. Mitchell (D.C. Bar No. 1005757)
SCHULTE ROTH & ZABEL LLP
901 Fifteenth Street NW, Suite 800
Washington, D.C. 20005
Tel. (202) 729-7470

*Attorneys for Plaintiffs*