**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| M.J., et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:18-cv-1901 (ACR) |
| | ) | |
| THE DISTRICT OF COLUMBIA, et al., | ) | **ORAL HEARING REQUESTED** |
| | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFFS' REPLY MEMORANDUM AND POINTS OF AUTHORITIES**
**IN FURTHER SUPPORT OF THEIR MOTION FOR**
**CLASS CERTIFICATION AND APPOINTMENT OF CLASS COUNSEL**

JUDGE DAVID L. BAZELON CENTER FOR
MENTAL HEALTH LAW
1090 Vermont Avenue, NW, Suite 220
Washington, D.C. 20005
Tel.:  (202) 467-5730

DISABILITY RIGHTS DC AT
UNIVERSITY LEGAL SERVICES
220 I Street NE, Suite 130
Washington, D.C.  20002
Tel:  (202) 547-0198

NATIONAL CENTER FOR YOUTH LAW
1212 Broadway, Suite 600
Oakland, CA 94612
Tel.:  (510) 835-8098

SCHULTE ROTH & ZABEL LLP
555 13th Street, NW, Suite 6W
Washington, D.C. 20004
Tel.:  (202) 729-7470

*Counsel for Plaintiffs*

## <u>TABLE OF CONTENTS</u>

**Page**

I.      INTRODUCTION ..........................................................................................1

II.     PLAINTIFFS' RESPONSE TO DEFENDANTS' "BACKGROUND" ............................1

III.    ARGUMENT ...............................................................................................2

    A.      Plaintiffs Have Met Their Burden to Show Numerosity. ........................................2

    B.      Plaintiffs Have Identified Sufficient "Common Questions."..................................6

    C.      The Named Plaintiff Children's Claims Are Typical of the Class. ......................13

        1.      Defendants' attempt to litigate the merits is inappropriate.......................13

        2.      The class representatives' circumstances do not destroy typicality...........14

    D.      Plaintiffs Will Adequately Represent the Class....................................................20

    E.      Certification is Proper Under Rule 23(b)(2) Because Injunctive Relief is
        Appropriate Concerning the Class as a Whole. ....................................................22

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                                                                                                        **Page(s)**

*A.A. v. Phillips*,
339 F.R.D. 232 (M.D. La. 2021),
*rev'd on other grounds*, 2023 U.S. App. LEXIS 1518 (Jan. 20, 2023) ................................7, 8

*Afghan & Iraqi Allies v. Pompeo*,
334 F.R.D. 449 (D.D.C. 2020) ..................................................................................................14

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
568 U.S. 455 (2013) ...........................................................................................................13, 14

*B.K. ex rel. Tinsley v. Snyder*,
922 F.3d 957 (9th Cir. 2019) ....................................................................................................22

*Boyd v. Steckel*,
753 F. Supp. 2d 1163 (M.D. Ala. 2010) ...................................................................................11

*Braggs v. Dunn*,
317 F.R.D. 634 (M.D. Ala. 2016) .............................................................................................24

*Brown v. District of Columbia*
928 F.3d 1070 (D.C. Cir. 2019) ...................................................................................... *passim*

*Bynum v. District of Columbia*,
214 F.R.D. 27 (D.D.C. 2003) ....................................................................................................14

*Coleman through Bunn v. District of Columbia*,
306 F.R.D. 68 (D.D.C. 2015) ...............................................................................11, 13, 14, 15

*DL v. District of Columbia.*,
302 F.R.D. 1 (D.D.C. 2013),
*aff'd*, 860 F.3d 713 (D.C. Cir. 2017) ................................................................................3, 21

*DL v. District of Columbia*,
713 F.3d 120 (D.C. Cir. 2013) ...........................................................................................10, 13

*DL v. District of Columbia*,
860 F.3d 713 (D.C. Cir. 2017) ...................................................................................10, 22, 25

*DG ex rel. Stricklin v. Devaughn*,
594 F.3d 1188 (10th Cir. 2010) ................................................................................................24

*Garnett v. Zeilinger*,
301 F. Supp. 3d 199 (D.D.C. 2018) ..........................................................................................20

*Gerstein v. Pugh*,
    420 U.S. 103 (1975) ................................................................................................21

*Hinton v. District of Columbia*,
    567 F. Supp. 3d 30 (D.D.C. 2021) ........................................................................21

*Hoyte v. District of Columbia*,
    325 F.R.D. 485 (D.D.C. 2017) ..............................................................................15

*Huisha-Huisha v. Mayorkas*,
    560 F. Supp. 3d 146 (D.D.C. 2021) .....................................................................3, 6

*Ill. League of Advocs. for the Developmentally Disabled v. Ill. Dep't of Hum.*
    *Servs.*,
    803 F.3d 872 (7th Cir. 2015) ................................................................................12

*J.D. v. Azar*,
    925 F.3d 1291 (D.C. Cir. 2019) .......................................................................14, 22

*J.T. ex rel. A.F. v. Hamos*,
    No. 12-cv-03203,
    2012 WL 4760645 (C.D. Ill. Oct. 5, 2012) ..........................................................12

*Jamie S. v. Milwaukee Pub. Schs.*,
    668 F.3d 481 (7th Cir. 2012) ................................................................................24

*Kenneth R. ex rel. Tri-Cnty. CAP, Inc./GS v. Hassan*,
    293 F.R.D. 254 (D.N.H. 2013) ................................................................4, 5, 8, 13

*Koss v. Norwood*,
    305 F. Supp. 3d 897 (N.D. Ill. 2018),
    *appeal dismissed sub nom., Koss v. Eagleson,*
    No. 19-1254, 2021 WL 9473244 (7th Cir. Dec. 16, 2021) .....................................8

*M. H. v. Berry*,
    No. 1:15-CV-1427-TWT,
    2017 U.S. Dist. LEXIS 90999, 2017 WL 2570262 (N.D. Ga. June 14, 2017) .........7

*Murphy v. Piper*,
    No. 16-2623 (DWF/BRT),
    2017 U.S. Dist. LEXIS 1604555 (D. Minn. Sep. 29, 2017) .....................................8

*N.B. v. Hamos*,
    26 F. Supp. 3d 756 (N.D. Ill. 2014) ............................................................ *passim*

*O.B. v. Norwood*,
    170 F. Supp. 3d 1186 (N.D. Ill. 2016),
    *aff'd,* 838 F.3d 837 (7th Cir. 2016) .....................................................................24

*Olmstead v. L.C. ex rel. Zimring*,
    527 U.S. 581 (1999) ................................................................................... *passim*

*Parent/Pro. Advoc. League v. City of Springfield*,
    934 F.3d 13 (1st Cir. 2019) ......................................................................... 23

*Parsons v. Ryan*,
    754 F.3d 657 (9th Cir. 2014) ....................................................................... 23

*Ramirez v. ICE*,
    338 F. Supp. 3d 1 (D.D.C. 2018) ................................................................... 3

*Rosie D. ex rel. John D. v. Romney*,
    474 F. Supp. 2d 238 (D. Mass. 2007) ........................................................... 25

*S.R. by & through Rosenbauer v. Pa. Dep't of Hum. Servs.*,
    325 F.R.D. 103 (M.D. Pa. 2018) .................................................... 7, 9, 12, 14

*Shook v. Bd. of Cnty. Comm'rs of Cnty. of El Paso*,
    543 F.3d 597 (10th Cir. 2008) ...................................................... 22, 23, 24

*Steward v. Janek*,
    315 F.R.D. 472 (W.D. Tex. 2016) ................................................................ 14

*Swisher v. Brady*,
    438 U.S. 204 (1978) .................................................................................... 21

*Thorpe v. District of Columbia*,
    303 F.R.D. 120 (D.D.C. 2014) ................................................................ *passim*

*U.S. Parole Comm'n v. Geraghty*,
    445 U.S. 388 (1980) .................................................................................... 21

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ........................................................................ 9, 13, 24

*In re White*,
    64 F.4th 302 (D.C. Cir. 2023) .................................................................. 4, 5

*Yates v. Collier*,
    868 F.3d 354 (5th Cir. 2017) ....................................................................... 23

## Statutes

AMERICANS WITH DISABILITIES ACT ("ADA") ...................................... *passim*

   TITLE II, 42 U.S.C. §§ 12132 *et. seq.* ............................................... 12

INDIVIDUALS WITH DISABILITIES EDUCATION ACT ("IDEA") ............ 11, 22, 26

MEDICAID ACT ................................................................................................ *passim*

 EPSDT, 42 U.S.C. § 1396a ...................................................................... *passim*

REHABILITATION ACT OF 1973 ........................................................................ *passim*

 SECTION 504, 29 U.S.C. § 794 ........................................................6, 11, 13, 15

**Rules**

FED. R. CIV. P. 23 ............................................................................................ *passim*

 FED. R. CIV. P. 23(a) ........................................................................................1, 3

 FED. R. CIV. P. 23(a)(2)....................................................................................9, 24

 FED. R. CIV. P. 23(b)(2) ............................................................................. *passim*

FED. R. CIV. P. 65(d) ..................................................................................22, 23, 24

FED. R. EVID. 602 ................................................................................................16

FED. R. EVID. 701 ................................................................................................16

FED. R. EVID. 801(c) ...........................................................................................16

FED. R. EVID. 802 ................................................................................................16

**Other Authorities**

CAL. DEP'T OF HEALTHCARE SERVS. & CAL. DEP'T OF SOC. SERVS., MEDI-CAL
 MANUAL: FOR INTENSIVE CARE COORDINATION (ICC), INTENSIVE HOME-
 BASED SERVS. (IHBS), AND THERAPEUTIC FOSTER CARE (TFC) SERVICES FOR
 MEDI-CAL BENEFICIARIES (3RD. ED. 2018), https://tinyurl.com/2p8wbd4x .............................8

*Council of the District of Columbia Performance Oversight Hearing Pre-Hearing*
 *Questions and Answers*, DYRS, https://tinyurl.com/4n2pauta (last visited June
 14, 2023) .................................................................................................12

*New Beginnings Youth Development Center: Fact Sheet*, DYRS,
 https://tinyurl.com/e2tjhvvc (last visited June 14, 2023).........................................12

U.S. Dep't of Just., *Statement of the Department of Justice on Enforcement of the*
 *Integration Mandate of Title II of the Americans with Disabilities Act and*
 Olmstead v. L.C. (last updated Feb. 25, 2020), https://tinyurl.com/y3d5pejj ........................13

U.S. DEP'T OF JUSTICE, INVESTIGATION OF NEVADA'S USE OF INSTS. TO SERVE
 CHILDREN WITH BEHAVIORAL HEALTH DISABILITIES ("DOJ Nevada Letter")
 (2022), https://tinyurl.com/2s3by9m8.................................................................12, 17

U.S. Dep't of Justice, United States' Investigation of Maine's Behavioral
   Health System for Children under Title II of the Americans with
   Disabilities Act ("DOJ Maine Letter") (2022), https://tinyurl.com/mr39drrz ............... 12, 17

## <u>INDEX OF SUPPORTING MATERIALS</u>

Although there are no exhibits to this Memorandum, for the convenience of the Court, set forth below is an index of the new Declarations filed herewith in further support of the instant Motion, as well as other litigation documents cited in this Memorandum.

**Reply Declarations (Filed Herewith)**

| <u>Title</u> | <u>Abbreviation</u> |
| --- | --- |
| Reply Declaration of Betsy A. Biben in Support of Plaintiffs' Motion for Class Certification | Biben Reply Decl. |
| Reply Declaration of Sara Boyd, Ph.D. in Support of Plaintiffs' Motion for Class Certification (December 24, 2021) | Boyd Reply Decl. |
| Reply Declaration of Sara Boyd, Ph.D in Support of Plaintiffs' Supplement to Their Motion for Class Certification (October 21, 2022) | Boyd Supp. Rep. Decl. |
| Reply Declaration of Kimberly Campbell in Support of Plaintiffs' Motion for Class Certification | Campbell Reply Decl. |
| Reply Declaration of Sara Cohen in Support of Plaintiffs' Motion for Class Certification | Cohen Reply Decl. |
| Reply Declaration of Bruce Kamradt in Support of Plaintiffs' Motion for Class Certification | Kamradt Reply Decl. |
| Reply Declaration of Kimberly Perry in Support of Plaintiffs' Motion for Class Certification | Perry Reply Decl. |
| Reply Declaration of E. Sally Rogers in Support of Plaintiffs' Motion for Class Certification | Rogers Reply Decl. |

**Other Cited Court Documents (Previously Filed)**

| <u>Title</u> | <u>Abbreviation</u> |
| --- | --- |
| Declaration of Patrina Anderson, ECF No. 113-3 (August 3, 2022) | Anderson Supp. Decl. |
| Declaration of B.T. in Support of Plaintiffs' Motion for Class Certification, ECF No. 112-3 (July 23, 2021) (Redacted; Full document filed under seal; ECF No. 79 (July 29, 2021)) | B.T. Decl. |

i

| | |
|---|---|
| Declaration of Sara Boyd, Ph.D. in Support of Plaintiffs' Motion for Class Certification, ECF No. 112-33 (July 19, 2021) | Boyd Decl. |
| Declaration of Sara Boyd, Ph.D. in Support of Plaintiffs' Supplement to Their Motion for Class Certification, ECF No. 112-34 (June 24, 2022) | Boyd Supp. Decl. |
| Declaration of Kimberly Campbell in Support of Plaintiffs' Motion for Class Certification, ECF No. 112-19 (July 19, 2021) | Campbell Decl. |
| Declaration of Robert Friedman, Ph.D. in Support of Plaintiffs' Motion for Class Certification, ECF No. 112-31 (July 19, 2021) | Friedman Decl. |
| Declaration of Bruce J. Kamradt in Support of Plaintiffs' Motion for Class Certification, ECF No. 112-5 (July 19, 2021) | Kamradt Decl. |
| Declaration of L.R. in Support of Plaintiffs' Motion for Class Certification, ECF No. 112-21 (July 23, 2021) (Redacted; Full document filed under seal; ECF No. 79 (July 29, 2021)) | L.R. Decl. |
| Declaration of M.W. in Support of Plaintiffs' Motion for Class Certification, ECF No. 112-24 (July 23, 2021) (Redacted; Full document filed under seal; ECF No. 79 (July 29, 2021)) | M.W. Decl. |
| Memorandum Opinion denying Defendants' Motion to Dismiss, ECF No. 45 (July 25, 2019) | MTD Op. |
| Defendants' Opposition to Plaintiffs' Motion for Class Certification, ECF No. 113 (June 7, 2023) | Opp. |
| Plaintiffs' Memorandum and Points of Authorities in Support of Their Motion for Class Certification and Appointment of Class Counsel, ECF No. 112-1 (May 17, 2023) | Pls.' Br. |
| Plaintiffs' Opposition to Defendants' Motion to Dismiss, ECF No. 29 (Oct. 31, 2018) | Pls.' Opp to MTD |
| Declaration of E. Sally Rogers in Support of Plaintiffs' Motion for Class Certification, ECF No. 112-7 (July 19, 2021) | Rogers Decl. |
| Plaintiffs' Second Amended Complaint, ECF No. 99 (June 28, 2022) | SAC |
| Declaration of Meghan Sullivan, ECF No. 113-1 (June 7, 2023) | Sullivan Decl. |

## I.     INTRODUCTION

Plaintiffs allege that the District has subjected Medicaid eligible children to unnecessary institutionalization or put them at risk of such institutionalization by failing to provide them with medically necessary ICBS.  In support of their motion for class certification, Plaintiffs have established that the proposed class satisfies each of the elements of Rule 23(a): numerosity, commonality, typicality, and adequacy of the proposed class representatives.

Defendants principally argue in opposition that Plaintiffs have not adequately defined the proposed class, that commonality cannot exist because the Plaintiff Children have individualized needs, and that the named Plaintiff children are not typical class members because they have received certain services.  These arguments fail.  The class is sufficiently numerous, does not rely on liability-begging definitions, and Plaintiffs have provided a reasonable basis for their estimates that the proposed class consists of hundreds of children.  Common questions are present and stem from Defendants' systemic failure to provide ICBS.  Defendants' attempts to argue the merits by suggesting they do in fact provide ICBS (even changing the names of some of their services to make them sound more like ICBS) are inappropriate at this class certification stage.  Regardless, any services purportedly provided lack the hallmarks of ICBS and no child in the putative class has received ICBS with fidelity to recognized models.  Accordingly, no individualized assessments or remedies are needed to determine membership in the class.  Typicality and adequacy also are met, and Defendants' assertions regarding services that they purportedly provided are contradicted by Plaintiffs' comprehensive evidence.  Under similar circumstances, numerous courts have certified similarly defined classes.  The Court should do the same here.

## II.    PLAINTIFFS' RESPONSE TO DEFENDANTS' "BACKGROUND"

Defendants' "Background" seeks to impermissibly argue the merits at the class certification stage.  Defendants contend, based on declarations by two officials within the District's

Department of Behavioral Health, that they provide "a robust array of intensive at-home and community-based services . . . to reduce unnecessary placements in more restrictive settings." Opp. at 2.  Plaintiffs disagree that the District's services "serve the same function" (Sullivan Decl., ¶¶ 8, 26) as the components of ICBS:  intensive care coordination, intensive behavior support services, and mobile crisis services.  Plaintiffs have already submitted significant evidence on this point (*see*, *e.g.*, Pls.' Br. at 20-21 & n.20) and have demonstrated that many District youth have been or are currently institutionalized, or remain at serious risk of institutionalization (*id.* at 5-6 & n.10; *see also id.* at 14-16 & n.16; Rogers Reply Decl., ¶ 15).  Whether Defendants in fact have provided ICBS to the Plaintiff class is a question that will be answered at the liability phase following discovery on the merits, during which Plaintiffs will submit additional evidence demonstrating Defendants' systemic violations.

Plaintiffs' evidence also indicates that the services that Defendants contend meet the class's needs—community-based intervention ("CBI"), high-fidelity wraparound ("HFW"), Assertive Community Treatment ("ACT"), and the Child and Adolescent Mobile Psychiatric Service ("ChAMPS")—are not provided with fidelity to the models Defendants describe and lack the hallmarks of ICBS.  *See*, *e.g.*, Cohen Reply Decl., Ex. A (summarizing rebuttal evidence); Biben Reply Decl., ¶¶ 11-12 (District's CBI providers "do not typically coordinate care" to meet the needs of children and youth, and engage with parents or other family members "briefly and infrequently," if at all).  Accordingly, Defendants do not offer ICBS to any class members.

## III.   ARGUMENT

### A.   Plaintiffs Have Met Their Burden to Show Numerosity.

Defendants assert two numerosity arguments:  (1) that the proposed class is not sufficiently definite because membership in the class depends on Plaintiffs' success on the merits (Opp. at 11-

12), and (2) that Plaintiffs' "methodology for sampling putative class members did not meet the reliability standards they proposed" (*id.* at 13-14).  Defendants are wrong on both counts.

*First*, the proposed class is sufficiently identified under Rule 23(a).  A proposed Rule 23(b)(2) class is sufficiently "definite[]" so long as plaintiffs can establish the "existence of a class" and propose a class definition that "accurately articulates 'the general demarcations' of the class of individuals who are being harmed by the alleged deficiencies," as Plaintiffs have here.  *Huisha-Huisha v. Mayorkas*, 560 F. Supp. 3d 146, 162 (D.D.C. Sept. 16, 2021) (citation omitted).  Plaintiffs' proposed class definition provides "clear and objective criteria on which to show membership in the proposed class."  *Ramirez v. ICE*, 338 F. Supp. 3d 1, 49 (D.D.C. 2018); *see also, e.g., DL v. District of Columbia*, 302 F.R.D. 1, 17-18 (D.D.C. 2013) (finding subclass of children with disabilities who lacked a "smooth and effective" transition to preschool programs sufficiently definite).  First, the proposed definition limits eligibility on the basis of the individuals' age, statutory Medicaid eligibility, and mental health disabilities, as defined by District law.  Second, it asks whether the children have received ICBS, and Plaintiffs have provided "a fairly specific description of what they intend [ICBS] to mean . . . ."  *See Thorpe v. District of Columbia*, 303 F.R.D. 120, 140 (D.D.C. 2014) (certifying a class of nursing facility residents who allegedly could not move into community-based care due to the District's lack of an "effective system of transition assistance," noting that "absolute precision is not required").  This description includes ICBS's three key components, which Plaintiffs define individually.  *See* SAC, ¶ 41; Pls.' Br. at 4; *see also* Section III.B., *infra*.  Third, it asks whether the children are institutionalized or at serious risk of institutionalization.  These are not impermissibly vague or liability-begging terms; indeed,

the court in *Kenneth R.* found a class definition with similar terms to be "sufficiently definite." *See Kenneth R. ex rel. Tri-Cnty. CAP, Inc./GS v. Hassan*, 293 F.R.D. 254, 264-65 (D.N.H. 2013).[1]

Defendants rely on the D.C. Circuit's recent decision in *In re White*, 64 F.4th 302, 314 (D.C. Cir. 2023), to argue that "if a class could be defined to have zero members if the plaintiffs lose[, it] is not numerous at all." Opp. at 11. Defendants argue that the terms "medically necessary" and "unnecessarily institutionalized" in the class definition render the definition impermissibly fail-safe because these are ultimate issues that Plaintiffs must prove. But Defendants' contention that "courts have repeatedly rejected fail-safe class definitions in actions brought under the Medicaid Act's EPSDT requirements," Opp. at 12, n. 9, ignores the many classes with similar definitions that have been certified. *See* Pls.' Br. at n. 21, n. 22 (collecting cases).

Moreover, Defendants misapply *White*'s holdings in the context of this case. To the extent the Court is troubled by Plaintiffs' class definition due to the use of the terms "medically necessary" and "unnecessary institutionalization," any issue is remedied by adjusting the class definition to omit those terms, a technique *White* endorsed. *See White*, 64 F.4th at 314. Furthermore, *White* observed that a seemingly fail-safe class definition that otherwise satisfies Rule 23 might be remedied of any issues "at the certification stage . . . by simply rephrasing as a counterfactual," *id.*, which could be done here.[2] As *White* directed, "[t]he solution for cases like

---

[1] Specifically, the *Kenneth R.* court found sufficiently definite a class of "[a]ll persons with serious mental illness who are unnecessarily institutionalized in [two New Hampshire hospitals] or are at serious risk of unnecessary institutionalization in these facilities" and defined, by "objective and relevant" factors, "at risk of institutionalization" to refer to "persons who, within a two year period: (1) had multiple hospitalizations; (2) used crisis or emergency room services for psychiatric reasons; (3) had criminal justice involvement as a result of their mental illness; or (4) were unable to access needed community services.") 293 F.R.D. at 264-65.

[2] Such a revision might read as follows: All Medicaid-eligible children in the District of Columbia with a mental health disability who would not be institutionalized or at serious risk of institutionalization if they had been provided with intensive community-based services.

these is for the district court either to work with counsel to eliminate the problem or for the district court to simply define the class itself," not to deny certification.  *Id.* at 315.

**Second**, Defendants argue that Plaintiffs' evidence of numerosity based on their sampling of putative class members must be rejected because "Plaintiffs' methodology . . . did not meet the reliability standards they proposed."  Opp. at 13.  As an initial matter, Defendants' argument ignores their own data demonstrating that the putative class contains hundreds of District children.[3] Defendants' disclosures admit that, since 2019, over 100 children have been sent to out-of-District psychiatric residential treatment facilities ("PRTFs"), just one type of institutional placement.  *See* Sullivan Decl., ¶ 7.  Moreover, Defendants' public reports indicate that significant numbers of District children have been institutionalized or are at serious risk of institutionalization in recent years.  *See* Cohen Reply Decl., Ex. G (60 unique children treated in PRTFs in FY 2021), Friedman Decl., ¶¶ 56 (in FY 2020, over 260 youth in DYRS custody), 60 (505 unique children hospitalized for inpatient behavioral health treatment in FY 2020).[4]  Plaintiffs' experts relied on this data and other information in concluding that hundreds of District children need ICBS and are at risk of institutionalization.  *See, e.g.,* Pls.' Br. at 5-6, 14-16, 20-21, 25-30; Kamradt Reply Decl., ¶¶3, 6 (concluding "at least hundreds of District children" need and have not received ICBS).

Defendants' critique of Plaintiffs' experts' clinical review of a sample of 29 Medicaid-eligible District children with mental health disabilities—which found that most of the children

---

[3] *See* Pls.' Br. at 14 (between September 2016 and September 2019, at least 98 unique children were admitted to psychiatric residential treatment facilities (PRTFs), over 200 unique children were admitted for psychiatric hospitalization, and hundreds of additional children were institutionalized by the Department of Youth Rehabilitation Services (DYRS)); *cf. Kenneth R.*, 293 F.R.D. at 265 (multiple hospitalizations and "criminal justice involvement" were "objective and relevant" factors indicating whether individual is at serious risk of institutionalization).

[4] Notably, Plaintiffs' evidence for fiscal years 2021 through the present is based on publicly available sources; class discovery in this action closed on December 3, 2021.  Pls.' Br. at 9.

needed ICBS and were at risk of institutionalization—is similarly unfounded.  Defendants argue the clinical review is insufficient because it included fewer than the 66 children that Plaintiffs initially sought.  *See* Opp. at 13.  But Dr. Rogers, who designed the study, has opined that its conclusions were based on comprehensive information gathered for a randomly-selected group of children under a standardized process, thus the results of the study can be generalized to the population of 1,900 children and youth identified by Defendants.  *See* Rogers Decl., ¶¶ 18-41.[5] Numerosity is satisfied where plaintiffs supply "estimates of putative class members, '[s]o long as there is a reasonable basis for the estimate provided.'"  *See Huisha-Huisha*, 560 F. Supp. 3d at 164 (citations omitted).  The experts' "painstaking analyses" (Opp. at 17), their conclusions, and the study's sample size provide a reasonable basis for the estimated class size.

### B.    Plaintiffs Have Identified Sufficient "Common Questions."

Defendants contend that Plaintiffs have "failed to identify any common questions."  Opp. at 14.  Not so.  As Defendants concede (*id.* at 19 n.10), Plaintiffs identified a question common to all their claims, *i.e.*, "whether Defendants systematically fail to provide medically necessary ICBS to the Plaintiff Children in violation of the ADA, Section 504, and the EPSDT provision of the Medicaid Act."  Pls.' Br. at 20-21.[6]  This question distills elements of similar questions approved by other courts.  *See id.* at 21-22 & n.21.

---

[5] Even if the study's results were modified to account for constraints related to the COVID-19 pandemic and the high percentage of unusable contact information provided by Defendants, the results indicate that nearly 1,000 District children need ICBS and are at risk of institutionalization. *See* Rogers Reply Decl., ¶ 15 (even modifying study results, "we can be reasonably confident" that over 950 children need ICBS and are at risk of institutionalization).

[6] Defendants also reference another version of this question, "whether all class members who need ICBS—which under the Medicaid Act must be provided to all child enrollees for whom it is 'medically necessary'—have received it."  Opp. at 14 (citing Pls.' Br. at 20).  Plaintiffs do not mean to signal a distinction between class members "who need ICBS" and those who do not; all class members need ICBS.

Plaintiffs' definition of "ICBS" does not "preclud[e] the possibility of any common questions," as Defendants contend. Opp. at 15. Defendants either intentionally misunderstand the meaning of ICBS, or concede that they do not offer ICBS by saying there is no "feasible method for identifying what services are at issue or which children need which services." *Id.*. To bolster their purported confusion, Defendants rely on the Fifth Circuit's unpublished opinion in *A.A. v. Phillips*, which did ***not*** find any defects concerning commonality,[7] but did vacate a class's certification based on ascertainability because it was "not clear which services are included in the term 'IHCBS' and which are not."[8] No. 21-30580, 2023 U.S. App. LEXIS 1518, at *6 (5th Cir. Jan. 20, 2023). Plaintiffs' definition of ICBS is easily distinguishable. Plaintiffs' Complaint sets forth a clear definition of ICBS, which mirrors guidance from the Centers for Medicare & Medicaid Services ("CMS"), other state behavioral health agencies, and longstanding legal authority, and identifies a set of Medicaid billable services.[9] SAC, ¶ 41 & n. 6 (collecting

---

[7] Indeed, the lower court found a host of common questions capable of classwide resolution sufficient to certify the class. *A.A. v. Phillips*, 339 F.R.D. 232, 245 (M.D. La. 2021), *rev'd on other grounds*, 2023 U.S. App. LEXIS 1518 (Jan. 20, 2023); *see also, e.g.*, *N.B. v. Hamos*, 26 F. Supp. 3d 756, 772-73 (N.D. Ill. 2014) (rejecting argument that a need for individualized medical necessity determinations defeated commonality); *S.R., by & through Rosenbauer v. Pa. Dep't of Hum. Servs.*, 325 F.R.D. 103, 109 (M.D. Pa. 2018) (same); *M. H. v. Berry*, No. 1:15-CV-1427-TWT, 2017 U.S. Dist. LEXIS 90999, at *5 (N.D. Ga. June 14, 2017) (same)).

[8] Notably, the plaintiffs in *A.A.* did not engage in discovery before filing their first or Renewed Motion for Class Certification. On remand, the *A.A.* plaintiffs have offered a revised definition of "IHCBS," which more closely tracks Plaintiffs' current definition of ICBS and, therefore, 2013 CMS Guidance. *See* Pls. Opening Br. on Class Certification Remand, *A.A. v. Phillips*, No. 3:19-770 (M.D. La. Mar. 17, 2023), ECF No. 156, at 3-8. Further, the District Court in *A.A.* has now allowed discovery "aimed to define the term 'intensive behavioral services,'" finding that the Defendants have "now concede[d]" the "meaning of the terms 'intensive care coordination' and 'crisis services . . . .'" *See* Ruling and Order, *A.A. v. Phillips*, No. 3:19-770 (M.D. La. June 14, 2023), ECF No. 177, at 1.

[9] Plaintiffs' definition references California's delivery of ICBS and its Medicaid program manual, which outlines claims and reimbursement codes for ICBS *See* SAC, ¶ 41, n. 6 (citing, *e.g.*, CAL. DEP'T OF HEALTHCARE SERVS. & CAL. DEP'T OF SOC. SERVS., MEDI-CAL MANUAL: FOR INTENSIVE CARE COORDINATION (ICC), INTENSIVE HOME-BASED SERVICES (IHBS), AND THERAPEUTIC

authorities).  Unlike in *A.A.*, where the complaint defined "IHCBS" by adopting some, but not all, service definitions from the state's Medicaid plan, here Plaintiffs' definition of ICBS is shared by experts in children's mental health, including Plaintiffs' experts.[10]

Moreover, the phrase "medically necessary" ICBS does not require the Court to make individualized findings about Defendants' liability to each class member or to "weigh the evidence for each putative class member."  *See* Opp. at 16.  Because Defendants do not provide ICBS, it is necessarily true that every youth who needs ICBS is not receiving them.  Put differently, this case raises common questions about Defendants' policies and practices that have resulted in its across-the-board failure to provide ICBS.  Plaintiffs seek a remedy that will ensure Defendants can and will systemically provide ICBS to Medicaid-eligible children and youth who need them.  Plaintiffs have provided ample evidence of this need, *see* Pls.' Br. at 20-23, which should end the inquiry at this pre-merits phase.  Defendants' argument—that variables among the Plaintiff Children's need for services defeat commonality because "[d]etermining need or receipt of services . . . would []require weighing the evidence for each individual child" (Opp. at 18)—has been rejected by numerous courts certifying *Olmstead* and Medicaid class actions.[11]  For those reasons, and because

---

FOSTER CARE (TFC) SERVICES FOR MEDI-CAL BENEFICIARIES 15 (3rd. ed. 2018) https://tinyurl.com/2p8wbd4x).

[10] *See*, *e.g.*, Friedman Decl. ¶¶ 8-9, 12, 13-25 (defining and describing "ICBS"), 26-28 (same for "intensive care coordination), 35-38 (same for "intensive behavior support services"); 39-41 (same for "mobile crisis services"); Kamradt Decl. ¶ 5 (same for "ICBS" provided by Wraparound Milwaukee), 11 (describing CMS Guidance), 17 (explaining application of "a definition based on the standard understanding of which intensive community-based services are needed by children and youth with serious emotional disturbance"), 44-45 (explaining how CBI differs from ICBS).

[11] *See* Pls.' Br. at 19-23 & n.22 (collecting cases); *see also*, *e.g.*, *Koss v. Norwood*, 305 F. Supp. 3d 897, 918 (N.D. Ill. 2018) (finding commonality despite defendants' "concerns about member-specific inquiries . . . [that] will dwarf, or predominate over, the common questions"); *Murphy v. Piper*, No. 16-2623 (DWF/BRT), 2017 U.S. Dist. LEXIS 1604555, at **19-33 (D. Minn. Sep. 29, 2017) (finding commonality despite "numerous differences among the proposed Class Members"); *Kenneth R.*, 293 F.R.D. at 268 (finding commonality over defendants' objection that

Plaintiffs seek a system in which stakeholders in the system—and not this court—make accurate and timely determinations about the need for ICBS,[12] Rule 23(a)(2) is satisfied.[13]

Defendants also contend that Plaintiffs' proposed question is not "keyed to the existence or non-existence of government policies and practices . . ." Opp. at 18. Plaintiffs' question may easily be rephrased to ask "whether Defendants' policies and practices discriminate against the Plaintiff Children by failing to provide medically necessary ICBS in the most integrated setting appropriate to meet their needs,"[14] or "whether Defendants' policies and practices that fail to provide medically necessary ICBS to the Plaintiff Children violate the EPSDT mandate."[15]

Plaintiffs have identified a common question that expressly references their Medicaid claim. "[E]ven a single common question will do" to satisfy Rule 23(a)(2). *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011) (alterations and citations omitted). That said, the Court may also consider whether other questions identified by Plaintiffs (*see* SAC, ¶ 26), and similar to those

---

"dissimilarities in class member needs and preferences for community-based services, and dissimilarities in their current preferences and future needs" made class certification improper).

[12] *See* Pls.' Mem. at 41-42; *cf.* Kamradt Reply Decl., ¶¶ 27-36 (describing systems for screening and referral in Milwaukee and Massachusetts).

[13] Defendants also repeat that Plaintiffs "have offered no evidence that any Medicaid-eligible child in the District has received a provider recommendation for ICBS as they define it." Opp. at 16-17. But this Court has already opined that Plaintiffs "need not allege that a treatment provider has explicitly recommended that community-based treatment is appropriate," especially where, as here, Plaintiffs allege "that the state failed to provide required community-based treatment programs. This is because a plaintiff would not have an occasion to be assessed for programs that should, but do not, exist." MTD Op. at 21-22.

[14] *Cf. S.R*, 325 F.R.D. at 108 (commonality satisfied by questions including "whether [state agency's] policies and/or practices discriminate against dependent youth with mental health disabilities by failing to provide them with mental health services through the Child Welfare and/or Medicaid systems in the most integrated settings appropriate to meet their needs"). A similar question appears in Paragraph 26 of the SAC.

[15] *Cf. N.B.*, 26 F. Supp. 3d at 772 (certifying class where common questions included "[w]hether the Defendants' failure to provide medically necessary home and community-based services to children with behavioral and emotional disorders violates the EPSDT mandate" of the Medicaid Act). A similar question also appears in Paragraph 26 of the SAC.

endorsed by other courts (*see, e.g., N.B. v. Hamos*, 26 F. Supp. 3d 756, 771-72 (N.D. Ill. 2014)),

meet the commonality requirement, including:

- Whether Defendants' failure to provide services to the Plaintiff Children in the most integrated setting violates the ADA and the Rehabilitation Act;

- Whether Defendants' failure to provide ICBS to the Plaintiff Children violates the EPSDT provision of the Medicaid Act;

- Whether the existing services available in Defendants' children's mental health system are inadequate to meet the needs of the Plaintiff Children;

- Whether deficiencies in Defendants' existing services for the Plaintiff Children— including, but not limited to, the alleged deficiencies regarding HFW, CBI, ACT, and ChAMPS programs[16]—cause the Plaintiff Children to be placed in institutional settings;

- Whether, due to the lack of ICBS to meet the Plaintiff Children's needs, the children cycle in and out of institutions, including psychiatric hospitals, psychiatric and other residential treatment facilities, detention centers, and group homes;

- Whether Defendants' system for providing services to the Plaintiff Children fails to effectively connect them to ICBS following their discharge from institutions; and

- Whether Defendants' failure to provide ICBS to the Plaintiff Children places those children who are not currently institutionalized at serious risk of institutionalization.[17]

Each of these questions can be resolved on a class-wide basis because each turns on a "uniform

policy or practice that affects all class members," rather than on any individual's circumstances.

*DL v. District of Columbia,* 713 F.3d 120, 128 (D.C. Cir. 2013).  "True or false, resolution of these

common contentions will generate common answers for the entire class" resolving issues central

to "each plaintiff's claim and the claims of the class as a whole."  *Thorpe*, 303 F.R.D. at 146-47.[18]

---

[16] *See* SAC, ¶¶ 43-45; Pls.' Opp. to MTD at 2-6.

[17] *See N.B.*, 26 F. Supp. 3d at 772 (certifying class after considering and approving six questions identified by plaintiffs, reasoning that, read in tandem, "they ask whether home and community-based treatment found to be 'medically necessary,' and therefore mandatory for the state to provide, is nevertheless unavailable").

[18] *See also DL v. District of Columbia* ("*DL II*"), 860 F.3d 713, 725 (D.C. Cir. 2017) (certifying subclasses and stating that plaintiffs alleging Individuals with Disabilities Education Act ("IDEA") violations "need only show that the District in fact failed to identify them, failed to provide them with timely eligibility determinations, or failed to ensure a smooth transition to preschool").

With respect to Plaintiffs' ADA and Section 504 *Olmstead* claims, the common questions identified by the D.C. Circuit in *Brown v. District of Columbia* are applicable here.  In *Brown*, the D.C. Circuit analyzed common questions raised by the District's "fundamental alteration" defense regarding whether the modifications that plaintiffs (nursing home residents) sought were unreasonable.  928 F.3d 1070, 1081-82 (D.C. Cir. 2019).  Here, Defendants argue that "none of these questions will arise at all" unless Plaintiffs "can first meet their burden to show" other elements of their *Olmstead* claims.  Opp. at 20.  But Defendants again attempt to proceed to the merits and misstate Plaintiffs' burden on class certification, which is merely to identify common questions capable of generating "common answers apt to drive the resolution of the litigation." *Coleman through Bunn v. District of Columbia*, 306 F.R.D. 68, 82 (D.D.C. 2015).  Plaintiffs understand that they "will be required to provide evidence to back up their claims that community-based treatment was appropriate" in the next phase of this litigation, where Plaintiffs will be required (after merits discovery) to demonstrate class-wide liability.  *See* MTD Op. at 22 (citing *Boyd v. Steckel*, 753 F. Supp. 2d 1163, 1174 (M.D. Ala. 2010) (dispute regarding plaintiff's eligibility for community-based services should be resolved "at summary judgment or trial")).  However, Plaintiffs' burden at the class certification stage is to satisfy Rule 23, including by identifying questions common to the class.  The *Brown* questions, as applied here and in addition to those identified elsewhere in Plaintiffs' memoranda, are common to the class.

Finally, Defendants argue that "Plaintiffs['] attempt to combine into one class those children who are (or are at risk of being) institutionalized" in different types of institutions defeats commonality.  Opp. at 21.  The proposed class definition does not identify these institutions, but Plaintiffs have alleged that "the Plaintiff children cycle unnecessarily in and out of institutions— including psychiatric hospitals, psychiatric and other residential treatment facilities, the District's

detention centers, and group homes—to their detriment."  SAC, ¶ 3.  Courts deciding *Olmstead*

claims involving children and youth have included juvenile detention facilities among other

institutions in which such youth are inappropriately segregated.[19]  Defendants' own public-facing

documents assert that the District's juvenile detention facilities are intended to serve as "treatment"

centers.[20]  Recent placement in such settings has been found by other courts to be a risk factor for

future institutionalization,[21] and courts hearing *Olmstead* claims have included both individuals

---

[19] *See S.R.*, 325 F.R.D. at 105-06 (describing children in need of mental health care "waiting for
months or years in inappropriate settings, such as psychiatric hospitals, juvenile detention
facilities, and residential treatment facilities"); *J.T. ex rel. A.F. v. Hamos*, No. 12-cv-03203, 2012
WL 4760645, at *1 (C.D. Ill. Oct. 5, 2012) (describing child with disability being alternatively
institutionalized in psychiatric facilities and juvenile detention facilities); c*f. Ill. League of Advocs.
for the Developmentally Disabled v. Ill. Dep't of Hum. Servs.*, 803 F.3d 872, 875 (7th Cir. 2015)
("To be 'institutionalized,' whether in a prison, a madhouse, or a 'state-operated developmental
center,' is to be frozen out of society—a situation that even a severely developmentally disabled
person can experience as deprivation.") (citing *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581,
600-01 (1999).  Notably, the U.S. Department of Justice considers juvenile detention facilities to
be segregated settings under Title II for children whose behavioral and mental health needs could
otherwise be supported in the community.  *See* U.S. DEP'T OF JUSTICE, INVESTIGATION OF
NEVADA'S USE OF INSTS. TO SERVE CHILDREN WITH BEHAV. HEALTH DISABILITIES ("DOJ Nevada
Letter") 14 (2022), https://tinyurl.com/2s3by9m8; U.S. DEP'T OF JUSTICE, UNITED STATES'
INVESTIGATION OF MAINE'S BEHAV. HEALTH SYS. FOR CHILDREN UNDER TITLE II OF THE
AMERICANS WITH DISABILITIES ACT ("DOJ Maine Letter") 9 (2022), https://tinyurl.com/mr39drrz.
[20] *See, e.g., Council of the District of Columbia Performance Oversight Hearing Pre-Hearing
Questions and Answers*, DYRS, https://tinyurl.com/4n2pauta (last visited June 14, 2023)
(describing treatment offerings in DYRS placements: "[i]t is the policy of [DYRS] to ensure that
all contracted vendors with which court-involved youth are placed for treatment and supervision
provide an integrated system of care, custody, and treatment services in the least restrictive, most
home-like environment, consistent with public safety."); *New Beginnings Youth Development
Center: Fact Sheet*, DYRS, https://tinyurl.com/e2tjhvvc (last visited June 14, 2023) (describing
the behavioral health care model: "New Beginnings applies a comprehensive, trauma-based
approach to its mental and behavioral health services. . . .  New Beginnings also provides
individual psychological counseling, group counseling, and substance abuse programs.").
[21] *See, e.g., note 1, supra.*

currently institutionalized and those at serious risk of institutionalization in the same certified class.[22]

### C.     The Named Plaintiff Children's Claims Are Typical of the Class.

#### 1.     Defendants' attempt to litigate the merits is inappropriate.

Defendants argue that the named Plaintiffs cannot establish typicality because they have either received or never needed the mental health services that Defendants fail to provide, and therefore have not been deprived of needed ICBS.  Opp. at 22-29.  This argument impermissibly goes to the merits of the case.  "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage . . . ."  *DL*, 713 F.3d at 125-26 (quoting *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013)).  Although Plaintiffs must "affirmatively demonstrate [their] compliance with [Rule 23 by] demonstrating compliance in fact," and "the Court may inquire into the merits of the plaintiffs' claims," *Coleman*, 306 F.R.D. at 75 (quoting *Wal-Mart Stores, Inc.* 564 U.S. at 350), the Court should do so only "to the extent . . . relevant 'to determin[e] whether the Rule 23 prerequisites for class certification are satisfied.'"  *DL*, 713 F.3d at 126 (quoting *Amgen*, 568 U.S. at 466).

As a result of Defendants' system that provides services to Plaintiffs in institutional settings, instead of providing them with ICBS, the named Plaintiff children and absent class members have all been harmed in the same manner—unnecessary institutionalization and serious risk of the same—in violation of the ADA, Section 504, and the Medicaid Act.  *See* Pls.' Br. at 24-

---

[22] *See, e.g., Thorpe*, 303 F.R.D. at 125-26; *Kenneth R.*, 293 F.R.D. at 271-72; *cf.* U.S. Dep't of Just., *Statement of the Department of Justice on Enforcement of the Integration Mandate of Title II of the Americans with Disabilities Act and* Olmstead v. L.C., question 6 (last updated Feb. 25, 2020), https://tinyurl.com/y3d5pejj ("[T]he ADA and the *Olmstead* decision extend to persons at serious risk of institutionalization or segregation and are not limited to individuals currently in institutional  . . .settings;" "[S]ufficient risk of institutionalization" can "make out an *Olmstead* violation.").

31.  Defendants ask the Court to adjudicate the ultimate issue of the case:  whether the named Plaintiffs have received ICBS in satisfaction of Defendants' legal obligations.  This puts "the cart before the horse," as "the point of Rule 23 'is not to adjudicate the case; rather, it is to select the method best suited to adjudication of the controversy fairly and efficiently.'"  *Coleman*, 306 F.R.D. at 77-78 (quoting *Amgen*, 568 U.S. at 460).  In assessing typicality, it is not necessary to find whether I.C., L.R., B.T., and M.W. have received ICBS, although there is ample evidence they have not.  *See, e.g.*, Campbell Decl., ¶¶ 50, 141; Campbell Reply Decl., ¶¶ 5, 18; Boyd Decl., Ex. A, ¶¶ 136, 138; Boyd Reply Decl., ¶ 4; Boyd Supp. Decl., ¶¶ 53-57; Boyd Supp. Reply Decl., ¶¶ 6-12; *see also* Cohen Reply Decl., Ex. A.  Rather, it is sufficient that all named and putative class members' claims are "based on the same legal theory" and their injuries "arise from the same course of conduct . . . ," which occurs when their "claims all arise from a common statutory background and raise identical legal questions." *Coleman*, 306 F.R.D at 83 (quoting *Bynum v. District of Columbia*, 214 F.R.D. 27, 35 (D.D.C. 2003)).

### 2.   The class representatives' circumstances do not destroy typicality.

The individual circumstances of the four named Plaintiff children do not negate typicality. *See* Opp. at 23-29.  Typicality is established if "[a] plaintiff's claim . . .  arises from the same event or practice or course of conduct that gives rise to a claim of another class member's where his or her claims are based on the same legal theory." *Afghan & Iraqi Allies v. Pompeo*, 334 F.R.D. 449, 461 (D.D.C. 2020).  "[C]ourts regularly certify classes where individual members have different factual circumstances."  *Id*. at 459.[23]  "[T]o destroy typicality, a distinction must differentiate the 'claims or defenses' of the representatives from those of the class." *J.D.*, 925 F.3d at 1322.

---

[23] *See also, e.g., Thorpe*, 303 F.R.D. at 124, 148-49 (typicality requirement met even though plaintiffs had differing transition needs); *S.R.*, 325 F.R.D. at 110 (finding typicality satisfied because both "Plaintiffs and the purported class allege that the violations are due to systemic, rather than individual, failures of the DHS"); *Steward v. Janek,* 315 F.R.D. 472, 490 (W.D. Tex. 2016).

I.C., L.R., B.T., and M.W.'s individual circumstances do not destroy typicality.  *See Hoyte v. District of Columbia*, 325 F.R.D. 485, 490 (D.D.C. 2017) (each class member's claims "do not have to be identical to support a finding of typicality; rather, typicality refers to the nature of the claims of the representative, not the individual characteristics of the plaintiff").  The named Plaintiff children's and absent class members' claims each turn on the same series of questions.  *See Brown*, 928 F.3d at 1081-82.  Do Defendants provide ICBS?  Have the named Plaintiffs needed ICBS to avoid unnecessary institutionalization?  Each of their claims raises "identical legal questions," *Coleman*, 306 F.R.D. at 83—that the Defendants violated the ADA, Section 504, and the Medicaid Act by failing to provide medically necessary ICBS, resulting in their unnecessary institutionalization and serious risk of same.  This failure is the same for each named Plaintiff: because Defendants do not provide ICBS, it has been unavailable to all of them.  It has impacted the named Plaintiffs and the putative class in the same way:  because all the Plaintiff Children have needed ICBS to avoid institutionalization, but have not received it, they are all either unnecessarily institutionalized or at serious risk of institutionalization.

> i.        I.C.

Defendants incorrectly argue that I.C.'s receipt of certain services from the District renders him atypical.  Opp. at 27.  But I.C.'s medical records confirm he, like the putative class, has ***never*** received ICBS, let alone services tailored to "his identified needs" (*id.*)—community-based or otherwise—nor services provided with the requisite intensiveness and coordination.  *See* Boyd Supp. Rep. Decl., ¶ 12.[24]  I.C.'s purported diagnostic intakes and subsequent treatment planning

---

[24] Defendants' assertion that Dr. Boyd "focused almost exclusively on I.C.'s educational records" and did not "include a review of the mental health services he has received in the community" is disingenuous and misleading.  Opp. at 29.  Defendants ***did not*** timely produce those purported services records to Plaintiffs prior to Dr. Boyd's June 2022 Supplemental Declaration and Report, despite being in their possession and clearly responsive to Plaintiffs' document requests in

at every agency failed to coordinate and incorporate input from I.C. and his mother, school, and other community supports, and failed to address I.C.'s documented mood symptoms, cognitive impairments, and exposure to negative peer influence. *See id.* at ¶¶ 13-46, 49-54. Nor did I.C.'s service providers create or provide I.C. with meaningful crisis planning despite documented incidents of suicidality and emotional dysregulation. *See id.* at ¶¶ 7, 12, 14, 22, 34, 42, 55; I.C. Decl., ¶ 19. And, like other named Plaintiffs and members of the putative class, I.C. had neither consistency nor stability among his service providers. *See* Boyd Supp. Rep. Decl. ¶¶ 33, 35-36.

Defendants' arguments and supporting declarations overrely on the statutory definitions and titles of services I.C. allegedly received, rather than describing how these services were actually delivered to I.C. The District's provision of services it labels "community," to I.C. or to any other child, does not make them ICBS.[25] The "Community Support" and CBI services

---

connection with class discovery. And even without access to these records, Dr. Boyd's report was based, among other things, on her interviews of both I.C. and his mother about his diagnoses, treatment provision history, and case management services. *See* Boyd Supp. Decl., Ex. A, ¶16.

[25] Following requests from Plaintiffs to obtain the agency records on which Defendants' declarant, Ms. Anderson, relied in her August 3, 2022 supplemental Declaration, Defendants produced a set of medical records from these agencies on August 22, 2022. However, Defendants did not produce a set of medical records for I.C.'s services with the agency Better Morning from September 2020 to the present, providing instead, on September 28, 2022, an undated, two-page summary of I.C.'s services for the past two years from a clinical manager who is not identified as having met or otherwise coordinated services for I.C. Defendants have represented that this two-page summary is the only document regarding services I.C. received from Better Morning from September 2020 to the present that is in its possession and which Ms. Anderson reviewed. Plaintiffs object to Defendants' use of this summary as a substitute for two years of treatment provider records, which are plainly referenced in this summary document. Plaintiffs further object to Ms. Anderson's use of statements taken from the summary and any other medical records to prove the truth contained therein as she is a fact witness and these statements contain multiple layers of inadmissible hearsay. Ms. Anderson, who has not been proffered as an expert, also offers improper opinion testimony regarding matters not based on her own perception and requiring specialized knowledge. *See* Fed. R. Evid. 602, 701, 801(c), 802; Anderson Supp. Decl. at ¶ 3 (stating I.C. received "medically necessary and appropriate community based behavioral health services"), ¶ 15 (stating I.C. has never "sought and been denied a medically necessary behavioral health service in the District").

purportedly provided to I.C. are devoid of the hallmarks of ICBS.  They were not individualized to I.C.'s needs, did not meaningfully incorporate input from I.C., his mother, or other supports, were not "intensive or provided frequently and consistently," and failed to address "material and concrete barriers preventing I.C. from being able to consistently participate in psychiatry treatment."  Boyd Supp. Rep. Decl. ¶¶ 15-19; 27.[26]  Regardless of what the District calls these services, they were not ICBS.  *See generally* Boyd Supp. Rep. Decl. ¶¶ 6-9, 12.

Defendants' other attempts to portray I.C. as atypical are misguided.  Among other things, Defendants inappropriately shift the blame for their failure to provide ICBS to I.C.'s mother for allegedly declining further CBI services, which are not ICBS and were not effective for I.C.  *See* Opp. at 28.  Regardless, I.C.'s provider agency records demonstrated no material difference in his treatment after I.C.'s mother allegedly declined CBI services.  *See* Boyd Supp. Rep. Decl., ¶ 38.

I.C.'s "many interactions with the juvenile justice system" also are not atypical.  Opp. at 29.  Rather, such interactions are markedly common among members of the putative class.  Several federal courts have recognized the applicability of *Olmstead* to carceral settings as institutions, as noted above.  Plaintiffs' institutionalization includes juvenile detention facilities and juvenile justice placements.  SAC, ¶¶ 55, 62, 70, 78.  Furthermore, "most juvenile justice placements are intended to serve therapeutic and rehabilitative purposes . . . ."  Boyd Reply Decl., ¶ 17.[27]  The

---

[26] *See also* SAC, ¶ 44 ("CBI is not designed or supervised by a child and family team, is time-limited, and does not include sufficiently intensive behavior support services."); Kamradt Decl., ¶¶ 38-51 (describing how CBI services provided by the District are not ICBS).

[27] Defendants also ignore well documented, and federally recognized, recidivism rates of youth exposed to juvenile justice systems, and the efficacy of community-based treatment in reducing such exposure to adolescents.  *See* Boyd Supp. Rep. Decl. ¶48 (discussing connection of juvenile justice system interactions and the putative class); *see also* DOJ Nevada Letter at 13 (noting "over 75% [of youth records] included evidence of current or past involvement in the child welfare and/or juvenile justice systems"); DOJ Maine Letter at 7 (citing study showing that "nearly 70% of young people committed or sentenced to [a Youth Development Center] in 2018-19 had received [insufficient] behavioral health services . . . within the year prior to their incarceration").

District's failure to provide I.C. with adequate treatment despite recognized mood symptoms, documented concerns from I.C.'s mother about his peer group influences, and documented use of ineffective and harmful interventions (like restraint and seclusion), all led predictably to his exposure to the juvenile justice system.  *See* Boyd Supp. Rep. Decl., ¶¶ 45-48.

ii.       L.R.

Defendants contend that "[t]he record contains no evidence that any provider determined L.R. has a need for any other services that she did not receive . . . ."  Opp. at 23-24.  The Court has already acknowledged that it would be illogical to consider the absence of a provider's recommendation for non-existent services.  MTD Op. at 21-22.[28]

Defendants next argue that L.R.'s claims are atypical, citing her "complicated treatment history," including her father's alleged disruption of her services and her own dissatisfaction with them.  Opp. at 24.  But these facets of L.R.'s experience do not preclude her role as a class representative.  Like I.C., the services provided to L.R. do not constitute ICBS,[29] so any disruption of those services is irrelevant.[30]  L.R. maintains that she needs but has not received ICBS.  *See* L.R. Decl., ¶¶ 52-73; *see also* Campbell Decl., ¶ 50; Campbell Reply Decl., ¶ 5.  Due to Defendants' failure to provide her with ICBS, L.R. remains at high risk of future institutionalization.  *See* Campbell Decl., ¶ 57; L.R. Decl., ¶¶ 20, 25, 27, 32-35, 39-40.

---

[28] Defendants recycle a version of this argument for I.C., B.T., and M.W., *see* Opp. at 28, 25, 27, and it fails as to each of them for the same reason.

[29] Defendants state that Plaintiffs' "proffered expert describes [ACT services] as 'a form of ICBS.'"  Opp. at 23 (citing Campbell Decl., ¶¶ 49, 54).  Defendants misrepresent Ms. Campbell's expert testimony.  While ACT services are a functional equivalent to TACT services, and Ms. Campbell agrees that "TACT is a form of ICBS," she asserts that what L.R. received did not constitute TACT.  Campbell Decl., ¶ 54; Campbell Reply Decl., ¶¶ 5, 12.

[30] In their motion to dismiss, Defendants attempted a similar argument against the previous named plaintiff, M.J.  This Court rejected that argument, stating that "because M.J. has alleged that High Fidelity Wrap Around services and CBI are short-term backstops which fall outside the category of ICBS, defendants' argument that M.J.'s refusal of these services precludes an injury in fact in this case is unpersuasive."  MTD Op. at 12.

iii.     B.T.

Defendants argue that B.T. is atypical because Plaintiffs' expert has opined that the District's inadequate evaluations and inappropriate placements would prevent him from receiving ICBS even if ICBS were available.  Opp. at 25 (citing Boyd Decl., Ex. A, ¶ 139).  Defendants assert that B.T. has suffered a different purported injury—inadequate psychological evaluations—than the rest of the class.  Defendants are wrong for two reasons.  First, B.T.'s inadequate evaluations do not undermine his claim that Defendants do not provide ICBS.  Boyd Reply Decl., ¶ 25.  Second, proper evaluations and diagnostic assessments to identify strengths and address varying needs are requisite first steps in a functioning system that provides ICBS.  *Id.*  Defendants' argument that "[t]he record contains no evidence that any provider determined B.T. has a need for [HFW or] any other services that he did not receive" (Opp. at 25) actually bolsters Plaintiffs' argument that Defendants do not provide ICBS.  *See* Boyd Reply Decl., ¶¶ 14 (detailing B.T.'s eligibility for HFW services), 25 ("Without proper evaluations and diagnostics, ICBS cannot be provided.").  Therefore, B.T.'s legal claim and purported injury is typical of the class:  B.T. needs ICBS, did not receive it, and continues to be at serious risk of institutionalization without it.

Defendants also attempt to distinguish B.T. by his juvenile justice placements.  Opp. at 26.  But B.T.'s placement in juvenile custody "was the result of a lack of access to appropriate mental health treatment in the community," Boyd Reply Decl., ¶ 18, and does not distinguish him from other class members placed with DYRS to receive "treatment."  Like the putative class, B.T. needs but has not received ICBS, *see* Boyd Decl., Ex. A, ¶ 136; Boyd Reply Decl., ¶ 4, and remains at serious risk of institutionalization, *see* Boyd Decl., Ex. A, ¶ 141; B.T. Decl., ¶¶ 15-28, 30-31.

iv.     M.W.

In addition to reiterating the same arguments above., Defendants contend that M.W. is atypical based on his need "to live in a supervised independent living setting" because "[n]owhere

do plaintiffs suggest that a supervised independent living setting would fall within the services they call ICBS." Opp. at 27 (citing Campbell Decl., ¶ 143). Whether M.W. requires a supervised independent living setting is irrelevant to his typicality, though it is nevertheless true that "[s]table housing is essential to avoid the risk of institutionalization." Campbell Reply Decl., ¶ 24. The Plaintiff Children can have varying specific needs, such as a place to live, that go beyond ICBS while still needing ICBS. Moreover, an expert can recommend services outside of ICBS while still opining that the youth they evaluated needs ICBS. M.W. needs but has not received ICBS. *See id.*, ¶ 18; Campbell Decl., ¶¶ 141-43. He remains at serious risk of institutionalization. *See* Campbell Decl., ¶ 148; M.W. Decl., ¶¶ 25, 30-31.

The named Plaintiffs' claims contain "sufficient factual and legal similarity" such that "the representative's interests are in fact aligned with those of the absent class members." *Garnett v. Zeilinger*, 301 F. Supp. 3d 199, 209 (D.D.C. 2018). Accordingly, they are sufficiently "typical."

### D.      Plaintiffs Will Adequately Represent the Class.

Defendants recycle their argument that the named Plaintiff children have already received ICBS to assert that, because they lack any incentive to seek an injunction requiring Defendants to provide ICBS, they are therefore inadequate representatives. Opp. at 29-30. Again, the named Plaintiff children have not received ICBS, Pls.' Br. at 25, and continue to face significant hardships, including unstable housing, barriers to employment, and the potential for re-institutionalization. *See, e.g.*, I.C. Decl., ¶¶ 28-32; L.R. Decl., ¶¶ 73-74; B.T. Decl., ¶¶ 29-32, M.W. Decl., ¶¶ 36-40. All have expressed their desire to receive ICBS, *id.*, and none have conflicting interests with the unnamed members of the class because they all share the same interest in receiving medically necessary ICBS in the most integrated setting appropriate, which would benefit all putative class members. Pls.' Br. at 31-32. Therefore, I.C., L.R., B.T., and M.W. are all adequate class representatives.

Defendants argue that L.R., B.T., and M.W. cannot adequately represent the proposed class because they are now over 21 years of age and their individual claims are moot. Opp. at 30. Defendants cannot and do not make this argument as to I.C., who is under 21 years old. Moreover, any mootness of the older plaintiffs' individual claims does not defeat their ability to serve as class representatives (nor their typicality). Where litigants challenge an action that is "capable of repetition, yet evading review," it falls within the "inherently transitory" exception to the mootness doctrine for purposes of class certification. *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 398-99 (1980).[31] This case falls squarely within the "inherently transitory" exception because the services to which plaintiffs are entitled under Medicaid are time-limited by their ages, and childhood is inherently transitory. During the Court's consideration of Plaintiffs' motion, putative class members will continuously become eligible and lose eligibility for services based on their ages and disabilities while Defendants fail to provide ICBS. *See* SAC, ¶¶ 40-50; Pls.' Br. at 5-7, 13-17. Without the inherently transitory exception, Defendants' failure to provide ICBS could evade review.[32]

---

[31] The doctrine applies when "the constant existence of a class of persons suffering the deprivation is certain," yet the individual claims by their very nature may expire before the court certifies a class. *See Gerstein v. Pugh*, 420 U.S. 103, 110 n.11 (1975).

[32] When named plaintiffs' claims become moot due to the logistics of litigation, courts "relate [a] certification motion back to a date when the individual claims were live." *Hinton v. District of Columbia*, 567 F. Supp. 3d 30, 47 (D.D.C. 2021) (internal citations omitted) (denying certification on other grounds); *see also*, *Swisher v. Brady*, 438 U.S. 204, 213 n.11 (1978); *DL v. District of Columbia*, 302 F.R.D. 1, 20 (D.D.C. 2013), *aff'd*, 860 F.3d 713 (D.C. Cir. 2017) (applying relation back doctrine to certify class of children asserting claims under the IDEA's Child Find obligations despite named plaintiffs having aged out of the class where "litigation ha[d] meandered since 2005" and delays in class certification decisions were "not due to any undue delay by the plaintiffs"). That some of the named Plaintiff children have aged out through no fault of their own during this litigation has no bearing on whether they can adequately represent the class, because all named Plaintiffs were eligible for the services sought when the case was initiated in 2018 and when Plaintiffs initially moved for class certification in 2021. *See* Pls. Br. at 8-10.

It is settled law that a plaintiff with a moot individual claim may adequately represent a class. *J.D. v. Azar*, 925 F.3d 1291, 1313 (D.C. Cir. 2019) ("[T]he very existence of the inherently-transitory exception disproves any suggestion that the mootness of a plaintiff's claims necessarily demonstrates her inadequacy as a representative"). So long as the named plaintiffs' interests do not conflict with the class members' interests and the named plaintiffs "appear able to vigorously prosecute the interests of the class through qualified counsel," adequacy is met. *Id.* at 1312. Defendants have not argued and cannot establish that the aged-out plaintiffs fail to meet this standard. Thus, they remain adequate class representatives, as does I.C.

### E.   Certification is Proper Under Rule 23(b)(2) Because Injunctive Relief is Appropriate Concerning the Class as a Whole.

This civil rights class action fits squarely within Rule 23(b)(2). A single injunction will provide relief to each class member, such that later piecemeal Medicaid and *Olmstead* litigation may be avoided. *See DL v. District of Columbia*, 860 F.3d 713, 726 (D.C. Cir. 2017) ("*DL II*") ("The Rule 23(b)(2) class action . . . [is] designed for exactly this sort of suit.").

Defendants contend that, *prior to* class certification, Rule 23(b)(2) requires Plaintiffs to provide the Court with an ironclad injunction that meets the specificity requirement for injunctive orders set forth in Rule 65(d), citing the Tenth Circuit's decision in *Shook v. Board of County Commissioners of County of El Paso*, 543 F.3d 597 (10th Cir. 2008). Opp. at 31-32. The D.C. Circuit has not adopted such reasoning with respect to class certification. *See, e.g.*, *Brown*, 928 F.3d at 1079, 1082 (affirming certification of Rule 23(b)(2) class without reference to Rule 65(d)); *DL II*, 860 F.3d at 726 (same); *Thorpe*, 303 F.R.D. at 151-52 (same).[33]  Further, even if *Shook*

---

[33] Nor have other courts adopted such reasoning in certifying Rule 23(b)(2) classes over "*Shook*" objections. *See B.K. ex rel. Tinsley v. Snyder*, 922 F.3d 957, 972 (9th Cir. 2019) (rejecting the requirements of *Shook* as having "no basis in existing law, whether in the text of the Federal Rules or in our precedent . . . . Plaintiffs do not need to specify the precise injunctive relief they will

were applicable, it does not require that "every jot and tittle of injunctive relief be spelled out at the class certification stage . . . ." *Yates v. Collier*, 868 F.3d 354, 368 (5th Cir. 2017). *Shook* itself rejected Defendants' position: "[P]laintiffs are [not] required to come forward with an injunction that satisfies Rule 65(d) with exacting precision at the class certification stage." 543 F.3d at 605 n.4. Instead, "the class certification motion must be . . . sufficient to allow the district court to see how it might satisfy Rule 65(d)'s constraints . . . and the motion for relief or proposed injunction must of course itself be specific enough to comport with Rule 65(d)." *Id.*

In any event, the injunctions requested by the plaintiffs in *Shook* and other cases cited by Defendants differ from Plaintiffs' request for relief. Plaintiffs have requested a single injunction "requiring that Defendants provide medically necessary ICBS to the Plaintiff Children" as required by the Medicaid EPSDT mandate, and as required to comply with the ADA and *Olmstead*. *See, e.g.,* Pls.' Br. at 32. Through their filings, Plaintiffs have provided the Court and Defendants with substantial information about ICBS—including evidence-based research, agency recommendations, model implementations, and expert analyses—that explain how Defendants can implement ICBS and monitor those services for fidelity. This is not a request to the Court to mandate "a mere order to follow the law." *See* Opp at 34.[34] Plaintiffs have not "eschewed any

---

ultimately seek at the class certification stage"); *Parsons v. Ryan*, 754 F.3d 657, 689 n.35 (9th Cir. 2014) ("[W]e seriously doubt that the degree of specificity suggested in [*Shook's*] wide-ranging dicta is properly required at the class certification stage for a Rule 23(b)(2) class.").

[34] Moreover, this action differs sharply from *Parent/Professional Advocacy League v. City of Springfield*, 934 F.3d 13, 31 (1st Cir. 2019), cited by Defendants, Opp. at 34. *Parent/Professional Advocacy League* involved "school-based behavior services (SBBS)," which was a term that the First Circuit panel believed to be created for the litigation that did not refer to a single program that had been formally studied. 934 F.3d at 31. ICBS, by contrast, refers to a single comprehensive group of services that has been extensively studied and found to reduce the risk of unnecessary institutionalization. *See N.B.,* 26 F. Supp. 3d at 774 (certifying class where "[t]he named plaintiffs . . . are alleged to have been denied access to intensive community-based services"); SAC, ¶ 4, n.2 (noting the U.S. Department of Justice's findings that ICBS "effectively address[es]

effort to give content to what it would mean to provide adequate mental health staff, adequate screening, or an adequate system . . . ." *See Shook*, 543 F.3d at 606.  Rather, Plaintiffs have clearly described their requested injunction, and explained how the Court may craft final injunctive relief that is sufficiently specific and detailed such that any eventual remedial order can comport with Rule 65(d).[35]

Defendants also wrongly claim that Plaintiffs have "superficially structured their case around a claim for class-wide injunctive and declaratory relief" that "would merely initiate a process through which highly individualized determinations of liability and remedy are made." *See* Opp. at 35 (quoting *Jamie S. v. Milwaukee Pub. Schs.,* 668 F.3d 481, 498-99 (7th Cir. 2012)). As discussed above, Plaintiffs' injunction addresses a systemic deficiency and would not require the Court to make any determinations of individual liability or remedy.  *See* Section III.B., *supra*. Just as courts hearing similar Medicaid and *Olmstead* claims have rejected this contention with respect to Rule 23(a)(2) commonality, it has been rejected in finding Rule 23(b)(2) compliance.[36]

---

the needs of children with mental illness while maintaining their connection to their families and communities" thereby "greatly reduc[ing] the rate of institutionalization and related costs while producing positive outcomes for children"); Friedman Decl. ,¶¶ 19, 21-32; Kamradt Decl., ¶ 32.

[35] *See* Pls.' Br. at 3; *see also DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, n. 5 (10th Cir. 2010) ("Plaintiffs [gave] specific content" so "the court could at least conceive of an injunction that would satisfy . . . both Rule 23(b)(2) and Rule 65(d).").

[36] *Brown*, 928 F.3d at 1083 (explaining that "a 'single injunction' requiring 'District to meet its statutory deadline 95 percent of the time and to improve its performance by 10 percent . . . is sufficiently specific request for remedy . . .'"); *O.B. v. Norwood*, 170 F. Supp. 3d 1186, 1200 (N.D. Ill. 2016) ("[T]he class includes only plaintiffs who . . . seek to enforce their rights under the Medicaid Act to the services not provided . . . these are issues of 'systemic failure,' not 'individual violations of the same law' prohibited under *Wal-Mart* . . . and *Jamie S.*"); *N.B.*, 26 F. Supp. 3d at 774 ("[S]uccess on the plaintiffs' claims will require policy modifications to properly implement EPSDT and the integration mandate; by their very nature such policy changes are generally applicable, and therefore would benefit all class members"); *Braggs v. Dunn*, 317 F.R.D. 634, 668 (M.D. Ala. 2016) (unlike *Jamie S.*, "[p]laintiffs are not seeking adjudication of demands for particular individualized treatment, and the challenges they are actually bringing—to systemic deficiencies that create a substantial risk of serious harm—are well recognized").

Similar to *DL II*, Plaintiffs challenge a *systemic deficiency* in the District's Medicaid service array—its failure to provide ICBS—that harms all children and youth with mental health disabilities for whom ICBS is medically necessary, and places them at serious risk of institutionalization.  *See* 860 F.3d at 731 (finding that "systemic defects in the District's identification and eligibility determination policies . . . harm all [class members] and can only be remedied by a comprehensive injunction designed to bring the District into compliance").  Defendants' failure may be remedied by an injunction that requires Defendants to provide ICBS.

Finally, Defendants repeat that because the need for services like ICBS requires individual *clinical* determinations for class members, "[n]o injunction, therefore, could remedy [Plaintiffs' class members'] injuries without accounting for each child's individual needs."  Opp at 35.  Defendants ignore the common harm that all class members experience here:  Defendants do not provide ICBS to anyone, let alone to those for whom ICBS is deemed medically necessary.  *See* Section III.B., *supra*.  Moreover, in the system Plaintiffs seek, the District's providers, not the Court, will make these individualized determinations—as the District is already required to do under the EPSDT framework.  Plaintiffs and their experts have provided workable criteria for determining which Plaintiff Children need ICBS.  *See, e.g.*, Pls.' Br. at 20-21; Kamradt Reply Decl., ¶¶ 27-36; *cf. Rosie D. ex rel. John D. v. Romney,* 474 F. Supp. 2d 238, 240-241 (D. Mass. 2007) (adopting remedial order requiring a "service delivery network" and clarifying "[a]ny child satisfying the SED criteria . . . in the IDEA or by SAMHSA . . .  will be eligible for services" and "Defendants will be free to make clinical decisions based on the needs of the individual children").

Plaintiffs have described an injunctive remedy that is both "legally mandated" and "provides each member of the class an increased opportunity to achieve" a positive outcome.  *Brown,* 928 F.3d at 1082–83.  Thus, "Rule 23(b)(2) is satisfied."  *Id.* at 1082.

Respectfully submitted this 28th day of June, 2023.


*/s/ Jason T. Mitchell*

Sandra J. Bernstein (D.C. Bar No. 455355)
Mary Nell Clark (D.C. Bar No. 419732)
Eva I. Richardson (D.C. Bar No. 1724670)
DISABILITY RIGHTS DC AT UNIVERSITY LEGAL SERVICES
220 I Street NE, Suite 130
Washington, D.C. 20002
202-547-0198

Ira A. Burnim (D.C. Bar No. 406154)
Lewis L. Bossing (D.C. Bar No. 984609)
Brittany Vanneman (D.C. Bar No. 1736194)
JUDGE DAVID L. BAZELON CENTER FOR MENTAL HEALTH LAW
1090 Vermont Avenue, NW, Suite 220
Washington, D.C. 20005
202-467-5730


Poonam Juneja (appearing *pro hac vice*)
Brenda Star Adams (appearing *pro hac vice*)
NATIONAL CENTER FOR YOUTH LAW
1212 Broadway, Suite 600
Oakland, CA 94612
510-835-8098

Howard Schiffman (D.C. Bar No. 358814)
Jason T. Mitchell (D.C. Bar No. 1005757)
Laurent M. Abergel (D.C. Bar No. 1718921)
SCHULTE ROTH & ZABEL LLP
555 13th Street, NW, Suite 6W
Washington, D.C. 20004
202-729-7470


*Attorneys for Plaintiffs*