UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| M.J., et al., | ) |
|     Plaintiffs, | ) |
| v. | ) Civil Action No. 1:18-cv-1901 (ACR) |
| THE DISTRICT OF COLUMBIA, et al., | ) **ORAL HEARING REQUESTED** |
|     Defendants. | ) |

**PLAINTIFFS' SUPPLEMENTAL MEMORANDUM AND POINTS OF AUTHORITIES
IN FURTHER SUPPORT OF THEIR MOTION FOR
CLASS CERTIFICATION AND APPOINTMENT OF CLASS COUNSEL**


JUDGE DAVID L. BAZELON CENTER
FOR MENTAL HEALTH LAW
1090 Vermont Avenue, NW, Suite 220
Washington, D.C. 20005
Tel.: (202) 467-5730

DISABILITY RIGHTS DC AT
UNIVERSITY LEGAL SERVICES
220 I Street NE, Suite 130
Washington, D.C. 20002
Tel: (202) 547-0198

NATIONAL CENTER FOR YOUTH LAW
1212 Broadway, Suite 600
Oakland, CA 94612
Tel.: (510) 835-8098

SCHULTE ROTH + ZABEL LLP
555 13th Street, NW, Suite 6W
Washington, D.C. 20004
Tel.: (202) 729-7470

*Counsel for Plaintiffs*

**TABLE OF CONTENTS**

                                                                            **Page**

I.     INTRODUCTION ..................................................................................................1

II.    UPDATED PROPOSED CLASS DEFINITION ................................................1

III.   COMMON QUESTIONS, ANSWERS, AND PROOF UNDER *WAL-MART*...................2

        A.     Common Question One.................................................................................3

        B.     Common Question Two................................................................................5

        C.     Common Question Three..............................................................................9

IV.   INJUNCTIVE RELIEF TO ADDRESS COMMON HARM.............................10

# **TABLE OF AUTHORITIES**

**Cases**                                                                                                            **Page(s)**

*Brown v. District of Columbia*,
  928 F.3d 1070 (D.C. Cir. 2019) ............................................................................................ *passim*

*Day v. District of Columbia*,
  894 F. Supp. 2d 1 (D.D.C. 2012) ..................................................................................................6

*Disability Advocs., Inc. v. Paterson*,
  653 F. Supp. 2d 184 (E.D.N.Y. 2009),
  *vacated on other grounds sub nom., Disability Advocs., Inc. v. N.Y. Coal. for
  Quality Assisted Living, Inc.,* 675 F.3d 149 (2d Cir. 2012) .........................................................8

*Guggenberger v. Minnesota*,
  198 F. Supp. 3d 973 (D. Minn. 2016) ..........................................................................................6

*Jackson v. Los Lunas Ctr. for Pers. with Developmental Disabilities*,
  Civ. No. 87-0839,
  2012 WL 13076262 (D.N.M. Oct. 12, 2012) ..............................................................................5

*Kenneth R. ex rel. Tri-Cnty. CAP, Inc./GS v. Hassan*,
  293 F.R.D. 254 (D.N.H. 2013) ....................................................................................................2

*Olmstead v. L.C. ex rel. Zimring*,
  527 U.S. 581 (1999) ..........................................................................................................5, 6, 7, 8

*Rolland v. Patrick*,
  483 F. Supp. 2d 107 (D. Mass. 2007) ..........................................................................................5

*Rosie D. v. Romney,*
  410 F. Supp. 2d 18 (D. Mass. 2006) ...............................................................................3, 4, 5, 8

*Shook v. Bd. of Cnty. Comm'rs of Cnty. of El Paso*,
  543 F.3d 597 (10th Cir. 2008) ...................................................................................................10

*Steward v. Janek*,
  315 F.R.D. 472 (W.D. Tex. 2016) ...............................................................................................5

*Thorpe v. District of Columbia*,
  303 F.R.D. 120 (D.D.C. 2014) ....................................................................................................6

*United States v. Florida*,
  Mem. Op. & Order, Case No. 0:12-cv-60460-DMM (S.D. Fl. Jul. 14, 2023) .......................7, 8

*United States v. Georgia,*
 Settlement Agreement , No. 1:10-CV-249-CAP (N.D. Ga. Oct. 19, 2010),
 *available at* https://tinyurl.com/2urr7f7a, ................................................................................2

*Wal-Mart Stores, Inc. v. Dukes*,
 564 U.S. 338 (2011) ............................................................................................................1, 2

**Statutes**

AMERICANS WITH DISABILITIES ACT OF 1990 (ADA),
 42 U.S.C. § 12101 *et seq.* ..................................................................................................5, 9

MEDICAID ACT,
 EPSDT, 42 U.S.C. § 1396a ................................................................................................3, 4

REHABILITATION ACT OF 1973,
 29 U.S.C. § 701 *et seq.* .....................................................................................................5, 9

**Rules**

FED. R. CIV. P. 23 .............................................................................................................................1

FED. R. CIV. P. 23(a)(2) ..........................................................................................................2, 5, 9

**I.   INTRODUCTION**

As directed by the Court at the July 10, 2023 hearing (the "Hearing"), Plaintiffs respectfully submit this Supplemental Memorandum in further support of their Motion for Class Certification addressing the following topics: (1) an updated proposed class definition reflecting the discussion during the Hearing; (2) common questions presented by the proposed Plaintiff class and the common answers to those questions and common proof, consistent with the Supreme Court's opinion in *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ("*Wal-Mart*"); and (3) the remedies the Court may order in the form of permanent injunctive relief.

**II.   UPDATED PROPOSED CLASS DEFINITION**

Plaintiffs propose certification of the following class:

All Medicaid-eligible District of Columbia children who now or in the future are under the age of 21, have a mental health disability, and who would not be institutionalized or at serious risk of institutionalization if the District provided them with intensive community-based services consisting of intensive care coordination, intensive behavior support services, and mobile crisis services.

"At serious risk of institutionalization" refers to persons who, within the prior three years, have:
1.   Been admitted to a psychiatric residential treatment facility;
2.   Experienced more than one hospital admission for psychiatric services;
3.   Utilized the Child & Adolescent Mobile Psychiatric Service or a Community Response Team more than once;
4.   Utilized any of the following mental health services:
    a.   High Fidelity Wraparound,
    b.   Transition to Independence,
    c.   Community-Based Intervention, or
    d.   Assertive Community Treatment Services;
5.   Been under the custody of the Department of Youth Rehabilitation Services; or
6.   Been in a group home, foster care, or a placement through the Child and Family Services Agency.

Plaintiffs submit that this revised definition complies with Federal Rule of Civil Procedure 23. The class is defined by reference to objectively defined terms. Among other things, the term

"at serious risk of institutionalization" has been defined by reference to objective terms, which Defendants agreed were sufficiently "ascertainable" during the Hearing.  *See* ECF No. 117 (Hearing Tr.) at 54:20-24 (Jul. 10, 2013)); *see also Kenneth R. ex rel. Tri-Cnty. CAP, Inc./GS v. Hassan*, 293 F.R.D. 254, 264-65 (D.N.H. 2013) (finding class definition, including reference to "at risk of institutionalization" defined using similar terms, to be "sufficiently definite"); Settlement Agreement at III. B.1.a, *United States v. Georgia*, No. 1:10-CV-249-CAP (N.D. Ga. Oct. 19, 2010), *available at* https://tinyurl.com/2urr7f7a (identifying target population for *Olmstead* settlement agreement to include persons currently served in hospitals, frequently readmitted to hospitals, frequently seen in emergency rooms, and those chronically homeless or who are being released from jails or prisons).  The terms "intensive care coordination," "intensive behavior support services," and "mobile crisis services" have been defined by reference to definitions used by other jurisdictions that provide those services to children and youth with mental health disabilities.  *See* SAC,[1] ¶¶ 41-42 & n.6.

### III.   COMMON QUESTIONS, ANSWERS, AND PROOF UNDER *WAL-MART*

In *Wal-Mart*, the Supreme Court interpreted Rule 23(a)(2)'s commonality requirement and held that what matters for class certification "is not the raising of common 'questions' . . . but rather, the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation."  564 U.S. at 350 & n.6; *see also Brown v. District of Columbia*, 928 F.3d 1070, 1080 (D.C. Cir. 2019) ("*Wal-Mart* . . . is satisfied if *resolution of each plaintiff's claim* turns on a common *question* (or questions) and if common *proof* leads to a common *answer* (or

---

[1] Capitalized terms not defined herein shall have the same meaning as set forth in Plaintiffs' Memorandum and Points of Authorities in Support of Their Motion for Class Certification (ECF No. 112-1) or Plaintiffs' Reply Memorandum and Points of Authorities in Further Support of Their Motion for Class Certification and Appointment of Class Counsel (ECF No. 114) ("Reply").

answers) to that question for each plaintiff.") (emphases in original).  Plaintiffs submit that the following common questions, among others, meet this standard.

### A. Common Question One

*Common Question:*  Whether Defendants have failed to provide to the members of the plaintiff class intensive community-based services, consisting of intensive care coordination, intensive in-home behavior supports, and mobile crisis services?

*Common Proof*:  Plaintiffs alleging classwide violations of the Medicaid Act's EPSDT mandate through the failure to provide ICBS have relied on numerous types of evidence to prove their claims.  As the court in *Rosie D. v. Romney* explained:

> [T]he comprehensiveness of Plaintiff's evidence is prodigious. Plaintiffs offered evidence in seven different categories: (a) testimony of parents or custodial relatives of several of the named plaintiffs; (b) testimony of clinicians who have served or are serving specific class members; (c) testimony of agency personnel who provide, or attempt to provide, services to seriously emotionally disturbed children within the Commonwealth generally; (d) reports and testimony of expert clinicians who studied the Commonwealth's overall system for delivering services to these children; (e) analysis of the services received by a sample of thirty-five randomly selected seriously emotionally disturbed children who are class members but not named plaintiffs; (f) documents containing data submitted to the Massachusetts legislature by Defendants on the actual utilization of existing services; and (g) testimony from directors of programs that currently are providing, for a very limited number of class members, medical services that, in fact, fully comply with Medicaid requirements.

410 F. Supp. 2d 18, 29 (D. Mass. 2006).  Plaintiffs will provide similar evidence proving that Defendants do not provide ICBS to the Plaintiff class, in addition to evidence already submitted. Consistent with the Court's remarks at the Hearing, during merits discovery Plaintiffs will request additional evidence concerning Defendants' policies, including practice guidance and training materials indicating which services the District currently provides to Medicaid-eligible children. Plaintiffs will also obtain data collected by Defendants regarding service authorization, provision, utilization, and reauthorization, child outcomes, and any other data collected by Defendants

relating to services that the District currently provides to putative class members. Plaintiffs also will request contractual documents and guidance between the District and service providers indicating the services the District requires from its care providers. Plaintiffs envision that, as discovery proceeds, they will identify further sources of common proof that support their claim.

Plaintiffs anticipate that depositions will provide another essential category of common proof. Plaintiffs will depose the District officials responsible for ensuring that Medicaid-eligible children and youth receive mental health services, as well as representatives of the agencies with contracts to provide those services, to obtain proof concerning the services provided by Defendants and how those services are provided. Expert testimony analyzing the District's services and systems for delivering them will also support Plaintiff's claims.

Courts also examine whether a Medicaid program "in fact provides the sought-after services." *Rosie D.*, 410 F. Supp. 2d at 28. "Even if the state offers the service or treatment on paper, courts will examine whether children can, in practice, actually access these services." *Id.* at 29.[2] To that end, Plaintiffs have submitted significant evidence based on a study of 32 representative Medicaid-eligible District children, including 29 randomly selected youth from a population of 1,900 children who met the "at risk" criteria identified in Plaintiffs' revised class definition. The study was designed and implemented by nationally recognized experts; findings from the study indicated that at minimum, more than half of the 1,900 children needed but have not received ICBS. Rogers Reply Decl., ¶¶ 6-7, 15; *cf.* Kamradt Decl., ¶ 37 (estimating that "at least 1,000" District children need ICBS). Courts have found similar studies to be "vividly

---

[2] *See also Rosie D.*, 410 F. Supp. 2d at 26-27 (not only must states provide ICBS, they must also "inform eligible children of [these] EPSDT services, to "ensure that effective notice, in fact, reaches children and their families," "set standards for the timely provision of EPSDT services," and "employ processes to ensure timely initiation of treatment").

probative" of classwide violations. *Rosie D.*, 410 F. Supp. 2d at 30; *see also Steward v. Janek*, 315 F.R.D. 472, 486-87 (W.D. Tex. 2016) (finding that commonality showing was "reinforced" by expert reviews based on sample of individuals with disabilities in nursing homes concluding, among other things, that 70% of total population of individuals in nursing homes did not receive needed services); *Jackson v. Los Lunas Ctr. for Pers. with Developmental Disabilities*, Civ. No. 87-0839 JP/KBM, 2012 WL 13076262, **13, 17 (D.N.M. Oct. 12, 2012) (crediting expert's "troubling" findings, based on audit of sample of individuals with disabilities, that defendants lacked mechanism for providing services with measurable outcomes); *Rolland v. Patrick*, 483 F. Supp. 2d 107, 114-15, 118 (D. Mass. 2007) (concluding that "the services provided by Defendants have too often failed to provide . . . treatment to class members" based on expert's survey of 20 randomly chosen class members).

During the merits phase, Plaintiffs intend to provide additional evidence based on reviews of a sample of class members and the services they were provided, to demonstrate that, consistent with the evidence of the District's policies showing it does not offer ICBS at all, the class members are not receiving ICBS. Such evidence is part of the common proof that will aid the Court in determining whether Defendants have violated the rights of the Plaintiff Class.

*Common Answer:*   Based on the common proof described above, the common question stated above can be answered "yes"—Defendants have failed to provide ICBS to the class—or "no"—Defendants have not failed to provide ICBS to the class.

### B. Common Question Two

*Common Question:*  Is the District's *Olmstead* Plan comprehensive and effectively working to ensure that members of the class are not unnecessarily institutionalized?

*Common Proof:*  This question addresses a prong of Defendants' "fundamental alteration" defense to liability under the ADA and the Rehabilitation Act. In its decision in *Brown*, the D.C.

Circuit found this question to be sufficient for plaintiffs' Rule 23(a)(2) showing. 928 F.3d at 1081-82. The court in *Brown* stated that the District can establish with common proof that it has an adequate *Olmstead* Plan if it can show that it has a "comprehensive, effectively working plan" for transitioning individuals to the community and a "waiting list [for transition to the community] that move[s] at a reasonable pace." *Id.* at 1084 (internal quotations omitted) (citing *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581, 605-06 (1999)). This Court has previously held that the District has failed to show that its *Olmstead* Plan was adequate. *Thorpe v. District of Columbia*, 303 F.R.D. 120, 138 (D.D.C. 2014); *Day v. District of Columbia*, 894 F. Supp. 2d 1, 30 (D.D.C. 2012). In doing so, the Court noted several facts supporting its conclusion that the District did not have an "effectively working" plan indicating a "measurable commitment to deinstitutionalization." *Day*, 894 F. Supp. 2d at 26-32. Among them, the Court considered the rates at which individuals avoided admission to or lengthy periods of institutionalization in District facilities, and the District's balance of expenditures between institutional care and community-based services. *Id.* at 32; *Thorpe*, 303 F.R.D. at 138; *see also Guggenberger v. Minnesota*, 198 F. Supp. 3d 973, 1031 (D. Minn. 2016) (where plaintiffs alleged state failed to provide needed services, stating that "the mere existence of a state plan may not defeat an integration mandate claim if the court is 'not persuaded that [the state's efforts] have been sufficient,'" following consideration of whether the state has "responsibly spent its budgetary allocations . . . .") (internal citations omitted).

      Plaintiffs assume that Defendants will offer the latest version of the District's *Olmstead* Plan as proof that the policy modification Plaintiffs seek—that Defendants provide ICBS to the class members—fundamentally alters its program for providing mental health services to Medicaid-eligible children in the District. Plaintiffs will rebut that defense with service records as well as fact and expert testimony regarding the class members' experiences cycling through

institutions, or experiencing other factors that place them at risk of future institutionalization, to show that Defendants' *Olmstead* Plan is not comprehensive or working effectively.

Defendants argue that this common question does not "arise at all unless Plaintiffs can first meet their burden to show the first two *Olmstead* elements . . . that the community-based services are appropriate for and unopposed by those requesting them." Opp. at 20 (citing *Brown*, 953 F.3d at 1077, 1083-84). To be clear, Plaintiffs will submit evidence meeting their burden to prove Defendants' liability under *Olmstead*. Plaintiffs will show that with ICBS community placement is appropriate for the Plaintiff Children, by providing documentary evidence such as reports regarding the need for ICBS among District children who can live in the community with ICBS,[3] deposition testimony of District officials and providers, and utilization rates for ICBS from jurisdictions where the services are provided.

*Olmstead* plaintiffs also typically provide expert testimony indicating that individuals with disabilities may be served in the most integrated setting appropriate to their needs—in most cases, in their own homes and communities. *See, e.g.*, Mem. Op. & Order at *49, 54-55, *United States v. Florida*, Case No. 0:12-cv-60460-DMM (S.D. Fl. Jul. 14, 2023), ECF No. 1170 (following review of medical records, facility tours, and staff interviews, expert testified that population of institutionalized children with serious medical needs could be served in a home- or community-based setting, with appropriate accommodations; family testimony indicated that at-risk children were already living in the community even if "precariously," and therefore appropriate for community living).[4] Courts credit expert testimony derived from the study of a sample of

---

[3] *See, e.g.*, Mitchell Aff., Ex. 1 (District's consultants' report on District's children's mental health system; recommending that District expand ICBS through Medicaid).
[4] *See also id.* at 55 ("In *Olmstead* cases, plaintiffs can demonstrate that they are appropriate for community living if they show that there is 'nothing about their disabilities that necessitates living

individuals as highly probative. *See, e.g.*, *Rosie D.*, 410 F. Supp. 2d at 29-30 ("credible" evidence that "vast majority" of sample of randomly chosen Medicaid-eligible children needed but did not receive ICBS was "vividly probative"). Here, to clarify that the Plaintiff class members are eligible for ICBS, Plaintiffs will similarly supplement evidence obtained through their review of 32 District children indicating that over 80 percent of children in the sample needed (and in the views of Plaintiffs' experts, were eligible for) ICBS. Such findings can be extended to the universe of children with similar service and placement histories in the District to show that community treatment is appropriate with ICBS. *See* Rogers Reply Decl., ¶¶ 12-15.

As for class members' lack of opposition to receiving ICBS, *Olmstead* plaintiffs typically prove this element through the direct testimony of class members, including the class representatives, and their caregivers, and through studies in which expert witnesses interview individuals with disabilities to determine whether they do not oppose receiving services in the community. *See, e.g.*, Mem. Op. & Order at *57-60, *United States v. Florida*, Case No. 0:12-cv-60460-DMM (S.D. Fl. Jul. 14, 2023), ECF No. 1170 (experts testified that, based on analysis of interviews, children's families "overwhelmingly" do not oppose receiving community-based services); *Disability Advocs., Inc. v. Paterson*, 653 F. Supp. 2d 184, 263 (E.D.N.Y. 2009) (plaintiffs' expert testified that 91% of institutionalized individuals interviewed "'want[ed] to live somewhere else,' and would choose to do so if given the opportunity to make an informed choice").

In addition to evidence of non-opposition submitted with their class certification motion, Plaintiffs will prove this element of their *Olmstead* claim with similar expert testimony based on interviews with class member families. This common proof will show not only that class members

---

in' institutions, as there are services that could meet their needs in the community.") (internal citations omitted).

do not oppose receiving ICBS in the community, but that because Defendants do not provide ICBS, class members were never provided this option.

*Common Answer:* Based on the common proof described above, the common question stated above can be answered "yes"—Defendants have a comprehensive and effectively working *Olmstead* Plan—or "no"—Defendants do not have a comprehensive and effectively working *Olmstead* Plan.

### C. Common Question Three

*Common Question:* How costly would it be for Defendants to provide intensive community-based services to all class members, and would it be unreasonable to require Defendants to transfer their limited resources from other disabled individuals to pay that cost?

*Common Proof:* This question addresses the second prong of Defendants" "fundamental alteration" defense to liability under the ADA and the Rehabilitation Act. In its decision in *Brown*, the D.C. Circuit found this question to be sufficient for plaintiffs' Rule 23(a)(2) showing in that case. 928 F.3d at 1081-82. The court in *Brown* explained that "common proof will establish both how costly it would be for the District to implement each provision of Plaintiffs' requested injunction and whether it would be unreasonable to require the District to pay that cost, considering the District's limited resources and its obligations to other disabled individuals." *Id.* at 1082. The court then provided a helpful example:

> Consider, for example, the first provision of the proposed injunction. This provision would require the District to provide all class members with information regarding community-based long-term care options, determine whether they prefer to transition to the community and, if they do, plan their transition and assist them in accessing available resources to help them transition. Common proof will establish, first, *how costly* it would be to provide all class members with these services and, second, whether it is *reasonable* to require the District to use its limited resources to pay this cost, considering the District's obligations to other disabled individuals.

*Id.* (internal citations omitted).  Plaintiffs assume that Defendants will submit similar evidence about the cost of providing ICBS to all class members, and whether it is reasonable to provide ICBS to the class members given the District's limited resources and obligations to other disabled individuals.  Plaintiffs will submit evidence to the contrary, including that Defendants may receive federal support through Medicaid for ICBS, but not for care provided to class members in various institutional settings, which for the most part is paid for from District funds.

*Common Answer:*  Based on the common proof described above, the common question stated above can be answered "yes"—it would be unreasonable to require Defendants to provide ICBS to all class members, given the needs of other disabled individuals Defendants serve—or "no"—it would not be unreasonable to require Defendants to provide ICBS to all class members.[5]

## IV.    INJUNCTIVE RELIEF TO ADDRESS COMMON HARM

Although Plaintiffs are not required to describe an injunction "with exacting precision at the class certification stage," *Shook v. Bd. of Cnty. Comm'rs of Cnty. of El Paso*, 543 F.3d 597, 605 (10th Cir. 2008), Plaintiffs are requesting an injunction that requires Defendants to provide medically necessary ICBS to the Plaintiff Class.  Reply at 23.  This is not a mere injunction to follow the law; Plaintiffs expect any injunction would require that Defendants, among other things:

- Identify the scope of need for ICBS, including all component services, that the District must provide to the class members;

- Provide all the components of ICBS to the class members; and

- Identify benchmark targets for the District's provision of each component of ICBS to the class members, along with timeframes for meeting those targets.

Plaintiffs submit that these and other steps are quantifiable and will be further delineated through litigation of Defendants' "fundamental alteration" defense and the remedies phase of the litigation.

---

[5] Plaintiffs have identified additional common questions of law or fact to which common answers may be adduced based on common proof, beyond those discussed herein.  *See* Reply at 10.

Respectfully submitted this 18th day of August, 2023.

*/s/ Jason T. Mitchell*

Sandra J. Bernstein (D.C. Bar No. 455355)
Mary Nell Clark (D.C. Bar No. 419732)
Eva I. Richardson (D.C. Bar No. 1724670)
DISABILITY RIGHTS DC AT UNIVERSITY LEGAL SERVICES
220 I Street NE, Suite 130
Washington, D.C. 20002
202-547-0198

Ira A. Burnim (D.C. Bar No. 406154)
Lewis L. Bossing (D.C. Bar No. 984609)
Brittany Vanneman (D.C. Bar No. 1736194)
JUDGE DAVID L. BAZELON CENTER FOR MENTAL HEALTH LAW
1090 Vermont Avenue, NW, Suite 220
Washington, D.C. 20005
202-467-5730

Poonam Juneja (appearing *pro hac vice*)
Brenda Star Adams (appearing *pro hac vice*)
NATIONAL CENTER FOR YOUTH LAW
1212 Broadway, Suite 600
Oakland, CA 94612
510-835-8098

Howard Schiffman (D.C. Bar No. 358814)
Jason T. Mitchell (D.C. Bar No. 1005757)
Laurent M. Abergel (D.C. Bar No. 1718921)
SCHULTE ROTH + ZABEL LLP
555 13th Street, NW, Suite 6W
Washington, D.C. 20004
202-729-7470

*Attorneys for Plaintiffs*

11