UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **M.J.**, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> **DISTRICT OF COLUMBIA**, *et al.*, <br><br> Defendants. | **Civil Action No. 18-cv-01901-ACR** |

**DEFENDANTS' SUPPLEMENTAL OPPOSITION
TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

As directed by the Court, Defendants District of Columbia (the District), Mayor Muriel Bowser, Director of the Department of Behavioral Health (DBH) Dr. Barbara Bazron, and Director of the Department of Health Care Finance (DHCF) Wayne Turnage file this response to Plaintiffs' Supplemental Memorandum and Points of Authority in Further Support of Their Motion for Class Certification and Appointment of Class Counsel [119] (Pls.' Supp. Mem.). For the reasons discussed below, Plaintiffs' modified proposed class definition fails to satisfy the requirements of Rule 23 and this Court should deny Plaintiffs' motion for class certification.

**ARGUMENT**

Plaintiffs challenge the District's provision of intensive community-based services (ICBS) to Medicaid-eligible children and youth and seek to certify a single class to advance both their Medicaid claim under the Early and Periodic Screening, Diagnostic and Treatment (EPSDT) provision and their *Olmstead* claim. Plaintiffs cannot demonstrate commonality because they challenge the individualization, delivery, and sufficiency of the community-based services the District provides—not whether the services are provided at all. These amorphous

challenges to many, disparate aspects of the District's provision of community mental health services do not satisfy the requirements of Rule 23, or comport with the requirements of *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011).

## I.      **Plaintiffs' Modified Proposed Class Definition**

Plaintiffs propose a modified class definition, but the problems Defendants discussed in their opposition to Plaintiffs' motion for class certification [113] persist. Plaintiffs' revised class definition includes all Medicaid-eligible District of Columbia children and youth with a mental health disability "who would not be institutionalized or at serious risk of institutionalization if the District provided them with intensive community-based services consisting of intensive care coordination, intensive behavior support services, and mobile crisis services." Pls.' Supp. Mem. at 1.[1] Put another way, the putative class includes all, and only, those children whose institutionalization, or risk of that, is caused by the District's failure to provide certain services. Because Plaintiffs tether membership in the proposed class to whether children and youth would not be institutionalized, or would not be at risk thereof, if they had received certain services, Plaintiffs have provided no objective criteria for determining who is in the class. Instead, the class is defined by the merits of each individual putative class member's *Olmstead* claim.

In *In re White*, the Circuit rejected a separate bar to fail-safe classes or any extra-textual ascertainably requirement but advised that "Rule 23 provides strong protection against circular or indeterminate class definitions." 64 F.4th 302, 313 (D.C. Cir. 2023). Specifically, the Circuit noted that "a class that could be defined to have zero members if the plaintiffs lose is not numerous at all." *Id.* at 314. "Similarly, a circular class definition could reveal the lack of a

---

[1]      For convenience, Defendants will refer to children and youth under the age of 21 as "children" in the remainder of this supplemental filing.

genuinely common issue of law or fact." *Id.* And "[t]ypicality should be a hard hill to climb if the named plaintiffs might not be members of the class come final judgment." *Id.* The same analysis applies to adequacy. *See id.* Applying the terms of Rule 23 as written "should eliminate most, if not all, genuinely fail-safe class definitions." *Id.* Despite additional opportunities to do so, Plaintiffs here have not proposed a class definition that satisfies the requirements of Rule 23.

As discussed at the hearing, Defendants acknowledge that Plaintiffs have proposed ascertainable criteria for their definition of "at risk of institutionalization." *See* Pls.' Supp. Mem. at 2. But their class is not simply defined by whether a child is "at risk of institutionalization"; rather, membership in the class hinges on whether the child would not be institutionalized or at risk of institutionalization *if* they had received ICBS. Plaintiffs provide no objective way to make such a determination, or any objective criteria to determine whether any individual child needs any specific service they did not receive. Further, Plaintiffs' declarants do not conclude that children they surveyed definitively would neither be institutionalized nor meet Plaintiffs' definition of at risk of institutionalization—which includes receiving the District's community-based services, being in DYRS custody, or being in foster care—if the children had received ICBS; Plaintiffs' declarants largely opine about the services the children received and whether those children are at risk of institutionalization. *See*, *e.g.*, Campbell Reply Declaration [114-4] ¶ 16 (stating that ICBS and a strong child and family team "could have helped L.R. remain in the community and avoid repeated institutionalization").

Plaintiffs have thus not offered any way for this Court to determine who, or how many individuals, are in the class, nor can Plaintiffs demonstrate that the named Plaintiffs are typical or adequate class representatives. If the named Plaintiffs might not be class members depending on the outcome of their claims, which necessarily hinge on their individual needs and the individual

services they received, the named Plaintiffs cannot be typical or adequate representatives. *See White*, 64 F.4th at 314. And, as discussed in Defendants' opposition, the Parties dispute whether the named Plaintiffs received medically necessary community-based services. Defs.' Opp'n at 22–29.

## II. Plaintiffs Have Not Demonstrated Commonality.

### A. Plaintiffs' Medicaid Claim

Plaintiffs offer "Whether Defendants have failed to provide to the members of the plaintiff class intensive community-based services, consisting of intensive care coordination, intensive in-home behavior supports, and mobile crisis services?" as a common question on their Medicaid claim. Pls.' Supp. Mem. at 3. But ICBS is not a discrete service. ICBS looks different for each child; it is therefore entirely possible that some children received services that Plaintiffs would consider ICBS and some did not. Plaintiffs frame this question as whether or not, yes or no, the District provides "ICBS," but it is clear from Plaintiffs' supplemental memorandum and Plaintiffs' revised interrogatories that Plaintiffs challenge the individualization and intensity of multiple services the District provides, the District's delivery of community-based services, the availability of services, and the service referral process. *See* Pls.' Supp. Mem. at 3–5, Ex. A at 11–25. These disparate issues cannot be resolved in one fell swoop with a "yes" or "no" answer.

Plaintiffs point to *Rosie D. v. Romney*, 410 F. Supp. 2d 18 (D. Mass. 2009), a pre-*Wal-Mart* decision, to outline the type of proof they intend to provide. Pls.' Supp. Mem. at 3. The listed types of evidence include testimony of parents or custodians of named plaintiffs, testimony of clinicians who worked or were working with specific class members, and analysis of the services received by randomly selected children. *Id.* (quoting *Rosie D.*, 410 F. Supp. 2d at 29).

4

These types of evidence, in addition to the evidence about a sample of class members Plaintiffs indicate they will introduce, *see id.* at 5, speak to the quality of services provided, not to an overarching policy about whether ICBS is provided, yes or no.  Further, in their revised interrogatories, Plaintiffs contend that the services the District provides fall short of the components of ICBS because, for example, "the District's provision of High Fidelity Wraparound lacks fidelity to the nationally-recognized models," "the services provided by the District are not intensive behavior support services because they have not been identified and developed by the child and family team, and hence are not sufficiently individualized to the child's needs," and ChAMPS "only respond[s] to limited types of crises" and "do[es] not include sufficient support services to stabilize children during a crisis." Ex. A at 15, 17, 23.  Each of these contentions relates to whether the District *adequately* provides ICBS and whether, in particular, the component services are sufficiently individualized, provided with fidelity to a model, and sufficiently "intensive."

Plaintiffs also state that they will present proof about whether children and youth can actually access services.  Pls.' Supp. Mem. at 4.  In their interrogatories, Plaintiffs point to various issues such as (a) the number of children who receive High Fidelity Wraparound (a discrete service); (b) a "failure to provide effective outpatient or transition services"; (c) "untimely and/or long-delayed services"; (d) the limited provision of assertive community treatment to children; and (e) availability of ChAMPS services.  Ex. A at 14, 18, 22, 23.  These contentions about capacity and transition services implicate different issues than whether or not the District offers the component services of ICBS.

*D.L. v. District of Columbia*, 713 F.3d 120 (D.C. Cir. 2013), is instructive on this point.  The Circuit in *D.L.* found that "defining the class by reference to the District's pattern and

practice of failing to provide [free and appropriate public educations] speaks too broadly because it constitutes only an allegation that the class members 'have all suffered a violation of the same provision of law.'" *D.L.*, 713 F.3d at 126 (quoting *Wal-Mart*, 564 U.S. at 350).  A finding that "all members of the class are harmed as a result of systemic deficiencies due to the District's failure to establish the required Child Find program and FAPE practices and policies" was insufficient to establish commonality as there was no common true or false question that cut across the plaintiffs' claims.  *Id.* at 128.  The *D.L.* plaintiffs alleged various deficiencies such as the failure to have an effective intake and referral process, failure to offer adequate and timely education placements, and the absence of a smooth and effective transition.  *Id.*  If Plaintiffs contend that some putative class members did not receive the appropriate services because of varying aspects of the District's provision of community-based services to children—such as the District's capacity to provide services, the intensity of those services, the individualization of those services, the referral process, or a delay in receiving services—those are distinct issues that cannot be resolved in one fell swoop.  *Cf. White*, 64 F.4th at 314 (discussing that commonality does not allow a class defined "as all those discriminated against illegally").  Plaintiffs cannot create a common question that pulls in all aspects of the District's system of providing community-based services to children with mental health disabilities by framing all aspects of the provision of these services as going to whether the District—yes or no—provides "ICBS."

      Given the individualized determinations inherent in Plaintiffs' proposed class definition, Plaintiffs cannot demonstrate commonality on their Medicaid claim.  If Plaintiffs were to propose a class that meets the requirements of Rule 23, Defendants acknowledge that whether or not the District provides a specific service could potentially give rise to a common question.  But importantly, even if this Court determines that class certification is appropriate to determine

whether the District provides a specific service, "if discovery reveals that the [P]laintiffs' assertion of a systemic policy not to cover intensive home and community-based care is untenable, then decertification of the class would be required if liability turns on individual assessments of whether the services provided by the state fall within the category of 'home or community-based services.'" *N.B. v. Hamos*, 26 F. Supp. 3d 756, 768 n.9 (E.D. Ill. 2014).

### B. Plaintiffs' *Olmstead* Claim

Plaintiffs offer two common questions on their *Olmstead* claim: (1) whether the District's *Olmstead* Plan is comprehensively and effectively working to ensure members of the class are not unnecessarily institutionalized, and (2) how costly it would be for Defendants to provide ICBS to all class members and whether that cost would be reasonable. Pls.' Supp. Mem. at 5, 9. As discussed above, Plaintiffs have not identified any way to determine who is in the class without making individualized determination about whether children who are institutionalized or at risk of institutionalization would not be if they had received ICBS. On that basis alone, Plaintiff's proposed common questions on their *Olmstead* claims cannot give rise to common answers that would drive resolution. *See Wal-Mart*, 564 U.S. at 350.

As Defendants argued in their opposition, these proposed common questions both go to Defendants' potential affirmative defense. Defs.' Opp' at 19–22. To show entitlement to community-based services under *Olmstead*, individuals must show that these services are appropriate, the individuals do not oppose the community-based services, and the individuals' placement in a community-based setting can be reasonably accommodated given the available resources and the needs of others who receive services. *Brown v. District of Columbia*, 928 F.3d 1070, 1077 (D.C. Cir. 2019). Therefore, to reach the purported common question, the Court would need to make determinations about what services are appropriate for each putative class

7

member and whether individuals want to receive those services in the community.  Plaintiffs have not offered any common questions related to these fundamental issues.

Instead, Plaintiffs rely on the Circuit's decision in *Brown*, which found that the adequacy of the *Olmstead* Plan and the reasonableness of the requested accommodations satisfied commonality.  But, in *Brown*, the certified class consisted of persons with physical disabilities who "(1) receive DC Medicaid-funded long-term care services in a nursing facility for 90 or more consecutive days; (2) are eligible for Medicaid-covered home and community-based services that would enable them to live in the community; and (3) would prefer to live in the community instead of a nursing facility but need the District of Columbia to provide transition assistance to facilitate their access to long-term care services in the community." 928 F.3d at 1074.  The class in *Brown* was therefore limited to individuals in a nursing facility who were already determined to be eligible for community-based services and wanted to live in the community.  The District's affirmative defense was the only remaining issue at that point in the litigation and could be resolved on a classwide basis.  Here, on the other hand, Plaintiffs have defined the class as children who are institutionalized or at risk of institutionalization who would not be at risk if they received ICBS; questions about any affirmative defense will only come after determination of the services available, the appropriateness of services that Plaintiffs are seeking, and whether putative class members want those services in the community.  These individualized determinations cannot be made on a classwide basis.  *Cf. Parent/Professional Advocacy League v. City of Springfield*, 934 F.3d 13 (1st Cir. 2019) ("Absent . . . a common driver, answering the plaintiffs' suggested question—does the failure to provide [school-based behavior services] result in violations of the ADA?—requires individualized determinations which defeat commonality.").

Plaintiffs' proposed common question about the cost of services and whether that cost would be reasonable given the competing needs of other individuals also cannot be resolved on a classwide basis. Plaintiffs have not explained how this Court could make determinations about the reasonableness of the cost of providing ICBS writ large when a key component of ICBS is the individualization of the services provided. For example, as Defendants pointed out in their opposition, Plaintiffs' declarants identify various intensive behavior support services that some but not all of the putative class members needed including peer support services, group therapy, mentoring and skill-building supports, trauma-focused therapy, individualized therapy, grief counseling, therapy and instruction about sexual and emotional intimacy, anger management training, family therapy, medication management and other coping mechanisms, a Transition to Independence Process, and vocational assessment. Defs.' Opp'n at 33–34 (citing Plaintiffs' declarants). Plainly, even if Plaintiffs meet their burden to show that these services were appropriate and not provided, the cost and the reasonableness of providing such individualized services could not be decided on a class-wide basis.

Plaintiffs' reliance on *Brown* here is also misplaced. Pls.' Opp'n at 9 (quoting *Brown*, 928 F.3d at 1081–82). As demonstrated by the example Plaintiffs cite, the proposed accommodations in *Brown* were specific and identifiable. *Id.* Rather than determining the cost of providing individuals in long-term nursing facilities with information about community-based options, transition planning, and transition assistance, Plaintiffs here contend that this Court could consider the cost of the individualized services each putative class member needs and determine the reasonableness of that cost on a classwide basis. *See* Pls.' Supp. Mem. at 9–10. But because of the individualized nature of these services, the cost of ICBS and the reasonableness of that cost cannot be determined on a classwide basis.

### III.     Proposed Injunctive Relief

Plaintiffs "are requesting an injunction that requires Defendants to provide medically necessary ICBS to the Plaintiff Class." Pls.' Supp. Mem. at 10. Plaintiffs contend this is not an injunction merely to follow the law because they "expect" an injunction would require Defendants to identify the scope of need for ICBS, including all component services, "[p]rovide all the components of ICBS to all class members," and identify benchmark targets for the District's provision of each component of ICBS to class members. *Id.*

As discussed in Defendants' opposition, a proposed injunction directing the District to provide ICBS to all class members would not provide the District specific guidance and would require individualized determinations of the medical needs of putative class members. Defs.' Opp'n at 33–36. Plaintiffs have repeatedly stated that ICBS requires services that are sufficiently individualized and intensive, *see*, *e.g.*, Ex. A at 5–8, but have not explained in their supplemental memorandum how this Court could craft an injunction directing the provision of such individualized services without individualized determinations. Plaintiffs suggest that this Court could issue an injunction imposing benchmark targets on the District to provide the component services, but Plaintiffs' explanation of why the District's current slate of community-based services are insufficient depends on the quality of the services currently being provided, not whether they are provided at all. *See* Ex. A at 11–25. Plaintiffs have not explained how the creation of benchmark targets would address this. Because Plaintiffs have not shown how a classwide injunction could resolve their claims without individualized determinations regarding the adequacy of services delivered to individual children, they have not demonstrated that class certification is appropriate.

10

Dated: September 18, 2023.　　　　　　　　Respectfully Submitted,

　　　　　　　　　　　　　　　　　　　　BRIAN L. SCHWALB
　　　　　　　　　　　　　　　　　　　　Attorney General for the District of Columbia

　　　　　　　　　　　　　　　　　　　　STEPHANIE E. LITOS
　　　　　　　　　　　　　　　　　　　　Deputy Attorney General
　　　　　　　　　　　　　　　　　　　　Civil Litigation Division

　　　　　　　　　　　　　　　　　　　　*/s/ Matthew R. Blecher*
　　　　　　　　　　　　　　　　　　　　MATTHEW R. BLECHER [1012957]
　　　　　　　　　　　　　　　　　　　　Chief, Civil Litigation Division, Equity Section

　　　　　　　　　　　　　　　　　　　　*/s/ Honey Morton*
　　　　　　　　　　　　　　　　　　　　HONEY MORTON [1019878]
　　　　　　　　　　　　　　　　　　　　Assistant Section Chief, Civil Litigation
　　　　　　　　　　　　　　　　　　　　Division, Equity Section

　　　　　　　　　　　　　　　　　　　　*/s/ Helen M. Rave*
　　　　　　　　　　　　　　　　　　　　MATEYA B. KELLEY [888219451]
　　　　　　　　　　　　　　　　　　　　HELEN M. RAVE [90003876]
　　　　　　　　　　　　　　　　　　　　Assistant Attorneys General
　　　　　　　　　　　　　　　　　　　　400 6th Street, NW
　　　　　　　　　　　　　　　　　　　　Washington, D.C. 20001
　　　　　　　　　　　　　　　　　　　　Phone: (202) 735-7520
　　　　　　　　　　　　　　　　　　　　Email: helen.rave@dc.gov

　　　　　　　　　　　　　　　　　　　　*Counsel for Defendants*