UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| M.J., et al., | ) |
|     Plaintiffs, | ) ) ) |
| v. | ) Civil Action No. 1:18-cv-1901 (ACR) |
| THE DISTRICT OF COLUMBIA, et al., | ) **ORAL HEARING REQUESTED** |
|     Defendants. | ) ) ) |

**PLAINTIFFS' SUPPLEMENTAL REPLY MEMORANDUM AND POINTS OF AUTHORITIES IN FURTHER SUPPORT OF THEIR MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF CLASS COUNSEL**

JUDGE DAVID L. BAZELON CENTER FOR MENTAL HEALTH LAW
1090 Vermont Avenue, NW, Suite 220
Washington, D.C. 20005
Tel.: (202) 467-5730

NATIONAL CENTER FOR YOUTH LAW
1212 Broadway, Suite 600
Oakland, CA 94612
Tel.: (510) 835-8098

DISABILITY RIGHTS DC AT UNIVERSITY LEGAL SERVICES
220 I Street NE, Suite 130
Washington, D.C. 20002
Tel: (202) 547-0198

SCHULTE ROTH + ZABEL LLP
555 13th Street, NW, Suite 6W
Washington, D.C. 20004
Tel.: (202) 729-7470

*Counsel for Plaintiffs*

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ..............................................................................................................1

II. ARGUMENT ......................................................................................................................2

    A. Plaintiffs' Updated Class Definition Satisfies Rule 23. ..........................................2

    B. Plaintiffs Have Identified Common Questions That Do Not Require Individualized Inquiries. .........................................................................................4

        1. Medicaid Act Claim ....................................................................................4

        2. *Olmstead* Claim .........................................................................................7

    C. This Action Is Susceptible to Injunctive Relief. ......................................................9

    D. Certification of Subclasses for Each Claim Is Possible, if Necessary. ....................9

# **TABLE OF AUTHORITIES**

**Cases**                                                                                                          **Page(s)**

*Brown v. District of Columbia*,
   928 F.3d 1070 (D.C. Cir. 2019) ...................................................................................1, 8

*Clark v. Richman*,
   339 F. Supp. 2d 631 (M.D. Pa. 2004) ................................................................................5

*DL v. District of Columbia*,
   302 F.R.D. 1 (D.D.C. 2013),
   *aff'd,* 860 F.3d 713 (D.C. Cir. 2017) ..................................................................................6

*D.L. v. District of Columbia*,
   713 F.3d 120 (D.C. Cir. 2013) .........................................................................................5, 6

*D.L. v. District of Columbia*,
   860 F.3d 713 (D.C. Cir. 2017) ...................................................................................2, 7, 9

*Huisha-Huisha v. Mayorkas*,
   560 F. Supp. 3d 146 (D.D.C. 2021),
   *aff'd in part, rev'd in part and remanded by,* 27 F.4th 718 (D.C. Cir. 2022) ...........................3

*In re White*,
   64 F.4th 302 (D.C. Cir. 2023) ........................................................................................1, 3

*Katie A. ex rel. Ludin v. Los Angeles Cnty.*,
   481 F.3d 1150 (9th Cir. 2007) ...........................................................................................5

*Kenneth R. ex rel. Tri-Cnty. CAP, Inc./GS v. Hassan*,
   293 F.R.D. 254 (D.N.H. 2013) ..........................................................................................6

*Marsters v. Healey*,
   Statement of Interest, No. 1:22-cv-11715-NMG (D. Mass. Sep. 20, 2023),
   *available at* https://tinyurl.com/y8kdpf8n ...........................................................................7

*O.B. v. Norwood*,
   838 F.3d 837 (7th Cir. 2016) .............................................................................................5

*Olmstead v. L.C. ex rel. Zimring*,
   527 U.S. 581 (1999) ................................................................................................. *passim*

*Parent/Pro. Advoc. League v. City of Springfield*,
   934 F. 3d 13 (1st Cir. 2019) ...............................................................................................8

*Rosie D. v. Romney*,
   410 F. Supp. 2d 18 (D. Mass. 2006) ..................................................................................4

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011)............................................................................................... *passim*

**Statutes**

AMERICANS WITH DISABILITIES ACT OF 1990 (ADA),
   42 U.S.C. § 12101 *et seq.*............................................................................................10

MEDICAID ACT,
   42 U.S.C. § 1396 *et seq.*..........................................................................................4, 5

**Rules**

FED. R. CIV. P. 23 ...........................................................................................................1, 2, 3, 7

FED. R. CIV. P. 23(a)(2)..............................................................................................................8

FED. R. CIV. P. 23(b)(2) .........................................................................................................2, 9

I.       INTRODUCTION

In their Supplemental Opposition to Plaintiffs' Motion for Class Certification ("Supp. Opp."), Defendants seek to move backwards from the discussion at the July 10, 2023 hearing (the "Hearing") that narrowed the issues in dispute. Consistent with the D.C. Circuit's recent decision in *In re White*, the Court should reject Defendants' efforts to overcomplicate the Court's analysis under Rule 23. The Court also should reject Defendants' efforts to distort Plaintiffs' claims as concerning "the individualization, delivery, and sufficiency of the community-based services the District provides—not whether the services are provided at all." Supp. Opp. at 1. Plaintiffs' overarching allegation in this action is unchanged: Defendants violate their legal obligations because they do not provide ICBS to the named Plaintiffs or the members of the proposed class. In an effort to argue that Plaintiffs' claims are inappropriate for class action treatment, Defendants contend that any use of evidence based on the experiences of individual children betrays that Plaintiffs' claims are too "individualized" and challenge only the adequacy of the services that Defendants currently offer to each individual child. But as with any class action case of this nature, the named Plaintiffs and individual class members' experiences contribute to common evidence proving their claims. The Court should reject Defendants' efforts to twist Plaintiffs' claims concerning the overarching and systemic failures in the service system that they have created, just as the D.C. Circuit and this court have rejected similar arguments by the District in *Brown* and the *DL* cases, among others.

Defendants' vision of Rule 23, post-*Wal-Mart* and *White*, would preclude the use of class actions to challenge systemic failures in Defendants' policies and practices for delivering mental health services to Medicaid-eligible children. Defendants' position cannot be reconciled with the numerous decisions identified by Plaintiffs that have certified classes with similar allegations

1

under similar circumstances and ignores that this is precisely the sort of civil rights class action that Rule 23(b)(2) was meant to embrace.

## II.   ARGUMENT

### A.   Plaintiffs' Updated Class Definition Satisfies Rule 23.

Plaintiffs have met their burden to show that certification of the updated proposed class definition is appropriate because it satisfies each of the elements of Rule 23(a) and Rule 23(b)(2). Defendants concede that the proposed class is numerous and that Plaintiffs' updated proposed class definition resolved their objections as to definiteness as to which children are "at risk of institutionalization." *See* ECF No. 117 ("Hearing Tr.") at 14:5-15:15, 54:17-55:24 (July 10, 2013); Supp. Opp. at 3. Plaintiffs have identified specific common questions concerning their Medicaid and *Olmstead* claims and Defendants' policies and practices that deny all class members ICBS, each of which is capable of resolution "yes or no" by common proof, as discussed in Plaintiffs' prior briefing (*see* Pls.' Br. at 18-23; Reply at 6-13; ECF No. 119 ("Supp. Br.") at 2-10) and further below. Each of the named individual Plaintiff's claims is typical of the class since there is a sufficient nexus between their claims and those of the absent class members. Pls.' Br. at 24-31; Reply at 14. Defendants' insistence that the Court decide now whether each individual named Plaintiff needed ICBS to avoid unnecessary institutionalization or the risk of same is inappropriate at this stage. Their individual circumstances do not destroy typicality. *See* Reply at 14-20. The individual named Plaintiffs will be adequate class representatives (*see id.* at 20), and Defendants have conceded their objection on the grounds of mootness (Hearing Tr. 66:11-13) and do not object to the adequacy of class counsel (*id.* at 5:16-18). Finally, this civil rights class action fits squarely within Rule 23(b)(2), which, in the words of the D.C. Circuit, was "designed for exactly this sort of suit," in which a single injunction can provide relief to each class member. Reply at 22-25 (quoting *D.L. v. District of Columbia*, 860 F.3d 713, 726 (D.C. Cir. 2017) ("*DL II*")).

Nevertheless, Defendants still contend that, based on the D.C. Circuit's decision in *In re White*, 64 F.4th 302 (D.C. Cir. 2023), Plaintiffs' updated proposed class definition should be rejected on the grounds that it is circular or indeterminate (in other words, not ascertainable) for lack of objective identifying criteria. *See* Supp. Opp. at 2. Specifically, Defendants now insist that Plaintiffs' "counterfactual" framing of the updated class definition is inappropriate because "the putative class includes all, and only, those children whose institutionalization, or risk of that, is caused by the District's failure to provide certain services" and that thus "the class is defined by the merits of each individual putative class member's *Olmstead* claim." *Id.* at 2. Defendants' argument urges that, notwithstanding their concession that the class is sufficiently numerous, the Court should deny certification based on this theoretical concern that it may not be so should Plaintiffs lose at the merits' phase of the litigation. *See id*.

The Court should reject Defendants' efforts to distort the D.C. Circuit's decision in *White*—which, in Defendants' own words, "rejected a separate bar to fail-safe classes or any extra-textual ascertainability requirement." Supp. Opp. at 2; *see also* 64 F.4th at 314. Indeed, Plaintiffs proposed the "counterfactual" framing of the updated class definition in response to Defendants' arguments that Plaintiffs' original class definition lacked numerosity under *White*. *See* Reply at 4 n.2. *White* specifically endorsed such "counterfactual" framing as a technique to address class definitions that satisfied Rule 23 but were arguably fail-safe. 64 F.4th at 314. Plaintiffs' definition is numerous and sufficiently definite, in that it "articulates 'the general demarcations' of the class of individuals who are being harmed by the alleged deficiencies." *Huisha-Huisha v. Mayorkas*, 560 F. Supp. 3d 146, 162 (D.D.C. 2021). So long as Plaintiffs demonstrate commonality, typicality, adequacy, and show that the class's injuries can be addressed through injunctive relief—and Plaintiffs have done so—nothing more is required under Rule 23 or the law of this Circuit.

3

### B. Plaintiffs Have Identified Common Questions That Do Not Require Individualized Inquiries.

1. Medicaid Act Claim

Defendants' primary argument against commonality is that this action—and the nature of ICBS in general—is inherently too individualized to proceed on a classwide basis. *See* Supp. Opp. at 4. That argument proceeds from the false premise that because ICBS components can be individualized depending on a child's needs, "it is therefore entirely possible that some children received services that Plaintiffs would consider ICBS and some did not." *Id.* Not so. Plaintiffs have repeatedly made clear that they allege Defendants' system of service provision does not provide the three component services that together comprise ICBS. For this reason, Plaintiffs identified "[w]hether Defendants have failed to provide [ICBS] to the members of the class" as a common question that satisfies *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) because it is capable of being answered by common proof, yes or no. *See, e.g.*, Supp. Br. at 3.

As directed by the Court, Plaintiffs have identified specific examples of the types of common proof they will provide concerning Defendants' systemic failure to provide ICBS, including seven different categories of evidence approved by the court in *Rosie D. v. Romney*, 410 F. Supp. 2d 18, 29 (D. Mass. 2006), in addition to (i) evidence concerning Defendants' policies, practice guidance, training materials, data regarding service authorization and outcomes, and contracts; (ii) deposition testimony; (iii) expert testimony; and (iv) the study of randomly-selected Medicaid-eligible District children performed by certain of Plaintiffs' experts. *See* Supp. Br. at 3-4. Defendants miss the point when they argue that Plaintiffs' identified common proof speaks to the "quality" and "adequa[cy]" of services rather than the District's systemic failure to provide ICBS. Supp. Opp. at 4-5. At the merits stage, Plaintiffs' evidence will demonstrate that Defendants do not provide ICBS to the Plaintiff Children. The fact that *Defendants* contend they

4

provide ICBS through deficient services does not negate the commonality of Plaintiffs' claim or the fact that Courts have accepted common proof in the forms Plaintiffs will advance, pre- and post-*Wal-Mart*, including evidence based on sampling reviews of representative groups of individuals similar to that conducted by Plaintiffs' experts. *See* Supp. Br. at 5 (collecting cases).

Furthermore, evidence concerning whether "children and youth can actually access services," Supp. Opp. at 5, is relevant, common proof as to whether Defendants fail to provide ICBS in violation of their obligations under the Medicaid Act. *See, e.g.*, *O.B. v. Norwood*, 838 F.3d 837, 843 (7th Cir. 2016) ("[T]he Medicaid Act requires the state to provide the required services with reasonable promptness"); *Katie A. ex rel. Ludin v. Los Angeles Cnty.*, 481 F.3d 1150, 1158 (9th Cir. 2007) (States "have an obligation to see that [EPSDT] services are provided" and states are obligated to "actively arrange" for corrective treatment); *Clark v. Richman*, 339 F. Supp. 2d 631, 646-47 (M.D. Pa. 2004) ("[The state's] obligations with respect to EPSDT services require [] proactive steps, such as actual provision of services.")  To the extent that Defendants assert that proof concerning actual delivery of services is irrelevant to Plaintiffs' common question, or that Plaintiff's claim is limited only to whether Defendants "offer" ICBS and not whether the offered services are actually provided on a systemic level, they are wrong. *See* Supp. Opp. at 5.

The parties agree that the D.C. Circuit's decision in *D.L. v. District of Columbia*, 713 F.3d 120 (D.C. Cir. 2013) ("*DL I*") is "instructive" (*see* Supp. Opp. at 5-6).  In *DL I*, the Circuit vacated the certification of a class asserting violations under the IDEA that was defined "by reference to the District's pattern and practice of failing to provide [a free and appropriate public education]," which "[spoke] too broadly because it constitutes only an allegation that the class members 'have all suffered a violation of the same provision of law.'"  713 F.3d at 126 (quoting *Wal-Mart*, 564 U.S. at 350).  Specifically, the class in *DL I* was defined as children who had experienced four

5

separate failures of administrative functions involving "different policies and practices at different stages of the District's Child Find and FAPE process." *See* 713 F.3d at 126-27. What the *DL I* court found lacking under *Wal-Mart* was the "glue" holding the claims together, in the form of a "uniform policy or practice that affects all class members." *Id.* at 128.

Here, Plaintiffs' proposed class is focused on Defendants' uniform policies and practices that fail to provide ICBS, a specific set of Medicaid-billable services widely recognized in guidance by the Centers for Medicare and Medicaid Services, the U.S. Department of Justice, other state behavioral health agencies, and experts in Children's mental health. *See, e.g.*, Reply at 7-8, n.9, n.10.[1] The failure to provide ICBS, not a generalized violation of the Medicaid Act, is the "glue" holding the Plaintiff Children's claims together.

Instead, Plaintiffs proposed class is aligned with the subclasses ultimately certified in the *DL* litigation that were based on the District's failure to provide specific services required by respective statutory provisions of the IDEA. *DL v. District of Columbia*, 302 F.R.D. 1, 18 (D.D.C. 2013). In doing so, the court explained that "[w]here there is a statutory obligation to act, there is a significant difference between challenging the inadequacy or complete failure to enact policies and procedures and alleging an erroneous application of a policy to individuals." *Id.* at 13. Following the district court's determination of liability and implementation of injunctive relief, the D.C. Circuit affirmed certification of the subclasses, each of which was defined by reference to

---

[1] To the extent that Defendants contend commonality cannot be satisfied because ICBS "is not a discrete service" (Supp. Opp. at 4), that argument should be rejected as it has been by courts certifying classes in similar cases. *See, e.g., Kenneth R. ex rel. Tri-Cnty. CAP, Inc./GS v. Hassan*, 293 F.R.D. 254, 268 (D.N.H. 2013) (stating that "in disability cases both pre- and post-*Wal-Mart*, the commonality requirement has been held to be met where, as here, plaintiffs challenge more than a single service deficiency and seek more than one service enhancement as part of the remedy," and collecting cases).

6

the plaintiffs' non-receipt of services required under the IDEA. *Id.* at 18; *DL II* at 724.[2] In doing so, the D.C. Circuit specifically rejected the District's arguments—repeated by Defendants here—that the inquiries were too individualized to proceed on a classwide basis. *See DL II* at 725. Indeed, numerous courts have rejected arguments similar to Defendants'—that failure to provide ICBS is an individualized inquiry requiring a court to weigh evidence for each individual child—and have accordingly certified *Olmstead* and Medicaid classes. *See, e.g.,* Pls.' Br. at 19-23 & ns. 21-22 (collecting cases); Reply at 8 n.11 (same).

    2. *Olmstead* Claim

As with Plaintiffs' Medicaid Act claim, Defendants argue that commonality is lacking for Plaintiffs' *Olmstead* claim because the determination of who would be institutionalized or at risk of institutionalization if they had been provided with ICBS is too individualized. *See* Supp. Opp. at 7. Again, similar arguments have been rejected by other courts certifying *Olmstead* classes and should not serve as a barrier to certification here. *See, e.g.,* Pls.' Br. at 19-23 & n.21 (collecting cases); Reply at 8 n.11 (same).[3]

Defendants' argument that the common questions identified by Plaintiffs are insufficient because they concern Defendants' affirmative defenses to *Olmstead* liability is unsupported by any authority. *See* Supp. Opp. at 7-8. Plaintiffs identified these two common questions because

---

[2] As discussed at the Hearing, each of the subclasses whose certification was affirmed by *DL II* could be susceptible to an argument, similar to that advanced by Defendants here, that if the District prevailed on the question of liability, the subclass would not have any members. *See* Hearing Tr. at 49:20-50:23. Such a theoretical concern should not preclude the certification of a class that satisfies each of the relevant factors under Rule 23.

[3] Notably, the U.S. Department of Justice, which is responsible for enforcing *Olmstead*, recently explained that class certification is regularly granted in *Olmstead* cases because such cases raise common questions concerning the defendant's systemic policies and practices, and single injunctive relief is appropriate to remedy the unnecessary segregation of a large group of people. *See*, *e.g*., Statement of Interest at 2, 4-9, *Marsters v. Healey*, No. 1:22-cv-11715-NMG (D. Mass. Sep. 20, 2023), Dkt. No. 129, *available at* https://tinyurl.com/y8kdpf8n.

7

the D.C. Circuit found them sufficient under *Wal-Mart* in *Brown v. District of Columbia*, 928 F.3d 1070, 1081-82, 1084 (D.C. Cir. 2019). As the Supreme Court held in *Wal-Mart*, "even a single common question will do" to satisfy Rule 23(a)(2). 564 U.S. at 359. Defendants' reliance on *Parent/Professional Advocacy League v. City of Springfield*, 934 F. 3d 13 (1st Cir. 2019) is misplaced. *See* Supp. Opp. at 8. Plaintiffs here have alleged the "common driver" found lacking in that case, as well as that all class members require access to a specific set of services—ICBS, which have been formally studied and found effective—to avoid unnecessary institutionalization or serious risk of same. The District does not provide the three components of ICBS to the class. In addition, Plaintiffs already have explained the specific types of proof they will submit to satisfy their burden to prove Defendants' threshold liability under *Olmstead*, including as to whether the Plaintiff Children are eligible to receive services in the community and whether they do not oppose community-based services. *See* Supp. Br. at 7-9.

Defendants' argument that there is no common question about the cost of providing ICBS because its components will be individualized based on a child's needs is likewise nonsensical. The three components of ICBS are defined services in the jurisdictions that provide them, which regularly estimate their cost and seek needed funding. Defendants regularly estimate the costs of providing services to District children who rely on them when seeking appropriations during annual budget cycles. They do so when budgeting for school-based services and supports, chronic disease prevention and treatment, and any other service where there is necessarily variation in treatment, based on average or predicted ranges of need and service costs. They have likely already done so in their current Medicaid budget planning notwithstanding the individualized nature of needed medical and mental health interventions. During the merits' phase, Plaintiffs will submit proof concerning the cost of ICBS by looking to analogous service models around the country and

providing evidence including analysis by experts familiar with systems that provide children's mental health services. This evidence will address factors that are regularly considered by public health agencies in budgeting for providing ICBS to children with mental health disabilities.

## C. This Action Is Susceptible to Injunctive Relief.

This class action is appropriate under Rule 23(b)(2) because it can be resolved on a classwide basis through injunctive relief requiring Defendants to provide ICBS. Plaintiffs' requested injunction is sufficiently specific at this stage of the litigation. *See, e.g.*, Reply at 22-23.

Defendants argue that injunctive relief would be impossible in this action because it would not provide "specific guidance and would require individualized determinations of the medical needs of the putative class members." Supp. Opp. at 10. Again, Plaintiffs do not seek an injunction requiring individualized determinations to be made by the Court; rather, the District's providers will make those determinations, as required under the EPSDT mandate. *See* Reply at 25. Similar requests for injunctive relief to provide ICBS have been found sufficient in other class actions. *See, e.g.*, Reply at 24 ns. 35-36 (collecting cases). The next phases of this action will further inform the parties' and the Court's understanding of what specific form an injunction should take.

*DL II* is instructive. There, the D.C. Circuit rejected the District's arguments that injunctive relief was inappropriate because the IDEA violations at issue required individualized relief. The court held that the plaintiffs' challenge was to systemic defects in the District's policies that harmed all of the unidentified children at issue and could only be remedied by a comprehensive injunction that would bring the District into compliance with the IDEA. *See DL II* at 731. Indeed, the D.C. Circuit stated that "the District's argument would eviscerate the very purpose of IDEA," which was enacted "in respon[se] to the 'pervasive and tragic' failure to serve all children with disabilities." *Id.* at 731. The same logic and policy considerations apply here.

## D. Certification of Subclasses for Each Claim Is Possible, if Necessary.

The Court can and should certify Plaintiffs' updated proposed class definition for the reasons set forth above and in Plaintiffs' prior submissions. However, if the Court has concerns about certifying one class to address both Plaintiffs' Medicaid Act and *Olmstead* claims, including based on Defendants' theoretical concern that there could be no members of the class if Defendants prevail on the merits, it is possible to certify subclasses concerning each claim to eliminate any such potential concerns. For Plaintiffs' Medicaid Act claim, such a definition could read:

> All Medicaid-eligible children in the District of Columbia who now or in the future are under the age of 21, have a mental health disability, and who have not been provided with ICBS, consisting of intensive care coordination, intensive behavior support services, and mobile crisis services.

Notably, Defendants' counsel agreed at the Hearing that a similar class definition would "address the fail-safe issue." *See* Hearing Tr. at 11:8-18.

As for Plaintiff's ADA/*Olmstead* claim, such a definition could read:

> All District of Columbia children who now or in the future are under the age of 21, have a mental health disability, and who are currently institutionalized or at serious risk of institutionalization.
>
> "At serious risk of institutionalization" refers to persons who, within the prior three years, have:
> 1. Been admitted to a psychiatric residential treatment facility;
> 2. Experienced more than one hospital admission for psychiatric services;
> 3. Utilized the Child & Adolescent Mobile Psychiatric Service or a Community Response Team more than once;
> 4. Utilized any of the following mental health services:
>     a. High Fidelity Wraparound,
>     b. Transition to Independence,
>     c. Community-Based Intervention, or
>     d. Assertive Community Treatment Services;
> 5. Been under the custody of the Department of Youth Rehabilitation Services; or
> 6. Been in a group home, foster care, or a placement through the Child and Family Services Agency.

Again, while Plaintiffs do not believe the use of this subclass definition is necessary, it would eliminate Defendants' objection that the class definition incorporates the merits of each individual class member's *Olmstead* claim.

10

Respectfully submitted this 2nd day of October, 2023.

*/s/ Jason T. Mitchell*

Sandra J. Bernstein (D.C. Bar No. 455355)
Mary Nell Clark (D.C. Bar No. 419732)
Eva I. Richardson (D.C. Bar No. 1724670)
DISABILITY RIGHTS DC AT UNIVERSITY LEGAL SERVICES
220 I Street NE, Suite 130
Washington, D.C. 20002
202-547-0198

Ira A. Burnim (D.C. Bar No. 406154)
Lewis L. Bossing (D.C. Bar No. 984609)
Brittany Vanneman (D.C. Bar No. 1736194)
JUDGE DAVID L. BAZELON CENTER FOR MENTAL HEALTH LAW
1090 Vermont Avenue, NW, Suite 220
Washington, D.C. 20005
202-467-5730

Poonam Juneja (appearing *pro hac vice*)
Brenda Star Adams (appearing *pro hac vice*)
NATIONAL CENTER FOR YOUTH LAW
1212 Broadway, Suite 600
Oakland, CA 94612
510-835-8098

Howard Schiffman (D.C. Bar No. 358814)
Jason T. Mitchell (D.C. Bar No. 1005757)
Laurent M. Abergel (D.C. Bar No. 1718921)
SCHULTE ROTH + ZABEL LLP
555 13th Street, NW, Suite 6W
Washington, D.C. 20004
202-729-7470

*Attorneys for Plaintiffs*