UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| M.J., et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civ. No. 1:18-cv-1901 (ACR) |
| ) | |
| The District of Columbia, et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |

**PLAINTIFFS' REPLY IN FURTHER SUPPORT OF THEIR
MOTION FOR STATUS CONFERENCE**

Plaintiffs submit this reply in further support of their Motion for Status Conference ("Motion," ECF 137) to address arguments raised by Defendants in their Response ("Response," ECF 138) concerning Plaintiffs' new alternative proposed class definition submitted as part of the Motion for the Court's consideration (the "Second Alternative Class Definition"). Defendants repeat many of their flawed arguments concerning Plaintiffs' prior proposed class definitions, including that (1) the Second Alternative Class Definition is "circular," a rebranding of their prior "fail safe" argument, despite agreeing with the Court at the July 10, 2023 class certification motion hearing (the "Hearing") that a very similar definition would "address the fail-safe issue;" and (2) "commonality" under Rule 23 is supposedly impossible for Plaintiffs' claims due to the alleged need for individualized assessments. Defendants also wrongly assert that they have not been provided "fair notice" of which named plaintiff represents the proposed *Olmstead* subclass (the "Subclass") and the scope of Plaintiffs' well-pled claims regarding Medicaid-eligible youth with a Serious Emotional Disturbance ("SED"). None of Defendants' arguments should give the Court pause in certifying a plaintiff class in this action based on the Second Alternative Class Definition, for the reasons set forth below.

First, neither the Second Alternative Class Definition nor Plaintiffs' other currently proposed class definitions (Motion, Exs. A & B) are "circular" or otherwise indeterminate in violation of Rule 23. Defendants' "circularity" argument is little more than an effort to recast their prior failed argument that the proposed class definition was impermissibly "fail safe"—that is, determining membership in the class requires final resolution on the merits and/or the named plaintiffs might not be members of the class by the time of final judgment. (*See* Response at 2-3.) The Court already correctly found there is no rule against "fail safe" class definitions in the D.C. Circuit, and that Rule 23 provides all the necessary requirements to certify a class. (*See* Class Cert. Oral Argument Tr. ("Hearing Tr.," ECF 117) at 5:19-6:6; *see also* Plaintiffs' Reply in Further Support of its Motion for Class Certification ("Reply", ECF 114) at 4-5.)

Nor is the Second Alternative Class Definition "circular" under the D.C. Circuit's guidance in *In re White*, 64 F.4th 302 (D.C. Cir. 2023). The Second Alternative Class Definition uses the objective fact of whether or not a youth is receiving Intensive Community-Based Services ("ICBS") as one criterion for class membership. That is a question that can be answered, yes or no (and on a common basis due to Defendants' systemic violations, as noted below), to determine potential membership in the class. Unlike the class definition exemplars that *In re White* identified as potentially "circular" or indeterminate, the Second Alternative Class Definition does not incorporate or reference questions of law that theoretically could result in a class with no members. *See id.* at 313-15. The proposed class is further limited by additional objective criteria: age, residence in the District, whether the youth has an SED, and the additional listed attributes regarding certain interactions between the youth and Defendants' mental health service system in the prior three years. (*See* Motion at 4-5.) Plaintiffs intend to prove at the liability phase that, on a systemic basis, these children are not receiving ICBS due to Defendants' failure to provide them

and that Defendants' failure to provide ICBS violates Defendants' federal legal obligations. The possibility that a plaintiff may ultimately fail to prove an alleged material fact included in a proposed class definition or that the defendant may challenge that fact does not render that class definition "circular" or otherwise violate Rule 23.[1]  Indeed, Defendants' counsel conceded at the Hearing that a definition framed like the Second Alternative Class Definition—one that focuses on "Medicaid eligible children in the District of Columbia with a mental health disability who have not been provided Intensive Community Based Services"—"would address the fail-safe issue[.]" (Hearing Tr. at 11:8-14.)

Regardless, to safeguard against any potential "circularity" concerns, the Second Alternative Class Definition eliminates references to the "risk of institutionalization" or any questions as to whether Defendants' failure to provide necessary services in the most integrated settings appropriate is the cause of any such risk to the Plaintiffs. While Plaintiffs continue to believe that neither aspect of their prior proposed class definitions were in fact "circular," Plaintiffs respectfully submit that the Second Alternative Class Definition is preferable because it avoids those questions and issues.

Second, Defendants' commonality arguments against the Second Alternative Class Definition—*i.e.*, that it requires the Court to make individualized determinations (*see* Response at

---

[1] For example, the D.C. Circuit used "all workers of Company X employed in its Washington, D.C. and New York City offices between 2021 and 2023 who were unlawfully denied promotion to clerical supervisor due to enforcement of the Company X Skills Test" as an example of a class definition that would "lose any fail-safe character and might otherwise pass all of Rule 23's requirements" if the word "unlawfully" were deleted. *In re White*, 64 F.4th at 314. But, under Defendants' reasoning, such a class would still be circular and violate Rule 23 because the plaintiffs might fail to prove that any workers of Company X were denied promotion to clerical supervisor due to enforcement of the Company Skills Test. Such a reading of *In re White* turns the D.C. Circuit's holding and reasoning on its head.

3

3-5)—are also without merit. The Second Alternative Class Definition raises sufficiently common questions for both Plaintiffs' Medicaid Act and *Olmstead* claims.

Plaintiffs' claims (and the Second Alternative Class Definition) address Defendants' ***systemic failure*** to provide ICBS—which is a sufficient basis to certify a class "even if the services recommended for each patient vary among the class members." *O.B. v. Norwood*, No. 15 C 10463, 2016 WL 2866132, at *4 (N.D. Ill. May 17, 2016) (certifying class of Medicaid-eligible children with disabilities seeking in-home nursing services); *see also N.B. v. Hamos*, 26 F. Supp. 3d 756, 771-73, 776 (N.D. Ill. 2014) (rejecting defendants' similar argument that needs of Medicaid-eligible children with mental health disabilities seeking ICBS were too individualized as being based "primarily on the misplaced notion that class relief will require individualized, judicially monitored, mental health assessments of all children eligible for EPSDT services," and finding allegations of systemic failure to provide ICBS were "the 'glue' that unites otherwise individualized claims" to establish commonality); *S.R. v. Pa. Dep't of Human Servs.*, 325 F.R.D. 103, 109 (M.D. Pa. 2018) (certifying class in case challenging failure to provide medically necessary children's mental heath services, despite need to individualize such services for each class member). Such systemic failures give rise to common questions that satisfy Rule 23.[2] (S*ee* Reply at 9-12; Plaintiffs' Supplemental Memorandum and Points of Authorities in Further Support of their Motion for Class Certification and Appointment of Class Counsel (ECF 119) at 2-10.)

Regarding Plaintiffs' *Olmstead* claim and proposed Subclass, the Subclass is in fact limited to youth in the broader class who are currently institutionalized. This Subclass definition

---

[2] Defendants' counsel even appeared to agree with this argument during the Hearing. (*See* Hearing Tr. at 59:17-21 ("[I]f it were limited to the District-wide policies, and those are administered, that -- that would be -- likely resolve many of the District's commonality concerns here, especially with regards to the Medicaid claim about the provision of services.").)

eliminates any possible issues arising from using the phrase "at risk of institutionalization" to determine Subclass membership, although Defendants already agreed that Plaintiffs' reference to objective criteria to define "at risk of institutionalization" resolved their objection on that ground. (Hearing Tr. at 52:23-54:22.)

Third, Defendants wrongly question (in a single sentence) who among the named individual plaintiffs "would be an adequate and typical representative of a purported subclass of currently institutionalized children and youth." (Response at 5.) All of the individual named plaintiffs have histories of repeatedly cycling in and out of institutions due to their mental health disabilities and Defendants' failure to provide ICBS. (*See, e.g.,* Second Amended Complaint (ECF 99) at ¶¶ 54-56, 62-63, 70, 78-79.) In fact, named plaintiff M.W. is currently institutionalized as of the date of this filing. Moreover, there is no reason why any of the individual named plaintiffs cannot also be adequate or typical class representatives for the Subclass even if they were not institutionalized at the moment this action or Plaintiffs' Class Certification Motion were filed. As Plaintiffs have shown and the Court has recognized, the individual named plaintiffs' repeated cycling in and out of institutions—even if each period of institutionalization is "transitory"—makes it appropriate for them to be representatives of a Subclass challenging unnecessary institutionalization under the ADA. (*See* Pls.' Class Reply at 21 (summarizing "inherently transitory" case law and addressing the issue that each institutionalization necessarily becomes "moot" after a limited period of time); *see also* Hearing Tr. at 65:24-66:3 ("On mootness, I think . . . the Circuit has been pretty clear on mootness in the *D.L.* case in particular, that just because the lead plaintiff's claims are moot does not make the lead plaintiff not typical or not adequately able to serve the class.").) Further, organizational plaintiff Disability Rights DC would adequately represent the interests of the plaintiff children, all of whom are its constituents. (*See* Plaintiffs'

5

Memorandum and Points of Authorities in Support of Their Motion for Class Certification and Appointment of Class Counsel (ECF 112-1) at 32 n. 29.)

Finally, Defendants' complaints about Plaintiffs' discovery requests are unfounded. (*See* Response at 3-4.) While the details of the parties' discovery disputes are beyond the scope of this Motion, the information that Plaintiffs have sought in discovery is unquestionably relevant to Plaintiffs' claims that Defendants fail to provide ICBS to youth that need them and that such failure violates the Early and Periodic Screening, Diagnostic, and Treatment obligations under the Medicaid Act.

Accordingly, Plaintiffs respectfully submit that Defendants' arguments in their Response concerning the Second Alternative Class Definition should be rejected. Plaintiffs also respectfully request that this Court grant Plaintiffs' unopposed request for a Status Conference at its convenience.

Dated: June 11, 2025

Respectfully Submitted,

*/s/ Jason T. Mitchell*

Sandra J. Bernstein (D.C. Bar No. 455355)
Mary Nell McGarity Clark (D.C. Bar No. 419732)
Eva I. Richardson (D.C. Bar No. 1724670)
DISABILITY RIGHTS DC AT UNIVERSITY
LEGAL SERVICES
220 I Street NE, Suite 130
Washington, D.C. 20002
202-547-0198

Ira A. Burnim (D.C. Bar No. 406154)
Megan E. Schuller (D.C. Bar No. 90023318)
JUDGE DAVID L. BAZELON CENTER FOR
MENTAL HEALTH LAW
1101 15th Street NW, Suite 205
Washington, D.C. 20005
202-467-5730

Johnathan Smith (D.C. Bar No. 1029373)
NATIONAL CENTER FOR YOUTH LAW
818 Connecticut Avenue, Suite 425
Washington, DC 20006
510-835-8098

Howard Schiffman (D.C. Bar No. 358814)
Jason T. Mitchell (D.C. Bar No. 1005757)
Laurent M. Abergel (D.C. Bar No. 1718921)
SCHULTE ROTH + ZABEL LLP
555 13th Street, NW, Suite 6W
Washington, D.C. 20004
202-729-7470

*Counsel for Plaintiffs*