# UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | |
|---|---|
| M.J., *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Civil Action No. 1:18-cv-01901 (ACR) |
| | ) |
| THE DISTRICT OF COLUMBIA, *et al.*, | ) **ORAL HEARING REQUESTED** |
| | ) |
| | ) |
| Defendants. | ) |

## PLAINTIFFS' MEMORANDUM AND POINTS OF AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS

JUDGE DAVID L. BAZELON CENTER FOR
MENTAL HEALTH LAW
1090 Vermont Avenue, NW, Suite 220
Washington, D.C. 20005
Tel.:  (202) 467-5730

DISABILITY RIGHTS DC AT
UNIVERSITY LEGAL SERVICES
220 I Street NE, Suite 130
Washington, D.C.  20002
Tel:  (202) 547-0198

NATIONAL CENTER FOR YOUTH LAW
818 Connecticut Avenue NW, Suite 425
Washington, D.C. 20006
Tel.:  (510) 835-8098

MCDERMOTT WILL & SCHULTE LLP
500 North Capitol Street NW
Washington, D.C. 20001
Tel.:  (202) 756-8000

*Counsel for Plaintiffs*

## **TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................1

BACKGROUND ..................................................................................................4

      A.     The Medicaid Act and EPSDT Provisions..................................4

      B.     Factual Background ..................................................................6

STANDARD OF DECISION ...............................................................................7

ARGUMENT .......................................................................................................7

    I.     THE EPSDT PROVISIONS ARE PRIVATELY ENFORCEABLE
          THROUGH SECTION 1983 ...........................................................7

      A.     The Parties Agree that *Medina* Simply Applies the *Gonzaga* Test ............8

      B.     The EPSDT Provisions Unambiguously Confer Rights Upon
            Medicaid-Eligible Children ......................................................9

      C.     The Statutory Language and History Confirm Congressional Intent to
            Confer Individual Rights...........................................................12

      D.     The EPSDT Provisions are not Comparable to the "Any Qualified
            Provider" Provision in *Medina* .................................................13

    II.    EVERY FEDERAL COURT TO REVIEW THE EPSDT PROVISIONS
          HAS FOUND THEM PRIVATELY ENFORCEABLE .......................15

      A.     This District Court Found the EPSDT Provisions to "Unambiguously
            Confer a Private Right of Action as Required by *Gonzaga*".....................15

      B.     Federal Courts Have Found the EPSDT Provisions Privately
            Enforceable Post-*Gonzaga* for Decades .....................................16

      C.     Post-*Talevski* Decisions Confirm *Medina* Does Not Warrant
            Dismissal of Plaintiffs' Medicaid Claim.....................................18

    III.   *MEDINA* DOES NOT WARRANT DISMISSAL OF PLAINTIFFS'
          MEDICAID ACT CLAIM...............................................................19

      A.     *Medina* Did Not, and Could Not, Dramatically Alter the *Gonzaga*
            Test *Sub Silentio* ..................................................................19

      B.     The Supreme Court Has Never Applied the *Gonzaga* Test to Require
            the Presence of a Specific Term...............................................22

i

      C.      Defendants' Counterarguments are not Compelling...................................25

IV.    DEFENDANTS ASK THIS COURT TO DRAMATICALLY ALTER THE LANDSCAPE OF MEDICAID PRIVATE ENFORCEABILITY .......................28

V.    DEFENDANTS HAVE WAIVED THEIR RIGHT TO CHALLENGE THE PRIVATE ENFORCEABILITY OF PLAINTIFFS' MEDICAID ACT CLAIM.........................................................................................................29

CONCLUSION...........................................................................................................30

# TABLE OF AUTHORITIES<sup>*</sup>

**Cases**                                                                    **Page(s)**

*Al-Tamimi v. Adelson,*
   916 F.3d 1 (D.C. Cir. 2019) .................................................................20

*Biewald v. State,*
   451 A.2d 98 (Me. 1982) .....................................................................29

*Bragdon v. Abbott,*
   524 U.S. 624 (1998) ...........................................................................13

*Cannon v. Univ. of Chi.,*
   441 U.S. 677 (1979) ...........................................................................21

*Cruz v. Zucker,*
   116 F. Supp. 3d 334 (S.D.N.Y. 2015) ................................................17

*Dist. No. 1, Pac. Coast Dist., Marine Eng'rs Beneficial Ass'n,*
   933 F.3d 751 (D.C. Cir. 2019) ...............................................................7

*Doe v. U.S. Dep't of Just.,*
   753 F.2d 1092 (D.C. Cir. 1985) .............................................................7

*Gatlin v. Contra Costa Cnty.,*
   796 F. Supp. 3d 622 (N.D. Cal. 2025) ................................................19

*Gonzaga Univ. v. Doe,*
   536 U.S. 273 (2002) .....................................................................*passim*

*Hammon v. Barry,*
   826 F.2d 73 (D.C. Cir. 1987) ..............................................................20

*Health and Hosp. Corp. v. Talevski,*
   599 U.S. 166 (2023) .....................................................................*passim*

*Henderson ex rel. Henderson v. Shinseki,*
   562 U.S. 428 (2011) ...........................................................................23

*Isaac A. v. Carlson,*
   775 F. Supp. 3d 1296 (N.D. Ga. 2025) ...............................................18

*John B. v. Goetz,*
   626 F.3d 356 (6th Cir. 2010) ..............................................................16

---

<sup>*</sup> Authorities marked with an asterisk are those on which Plaintiffs chiefly rely.

*Lorillard v. Pons*,
    434 U.S. 575 (1978) .................................................................................13

*Medina v. Planned Parenthood S. Atl.*,
    606 U.S. 357 (2025) ........................................................................ *passim*

*Mitchell v. Johnston*,
    701 F.2d 337 (5th Cir. 1983) .................................................................29

*N.B. v. Hamos*,
    No. 11 C 06866, 2013 WL 6354152 (N.D. Ill. Dec. 5, 2013) ................17

*Nw. Ill. Area Agency on Aging v. Basta*
    145 F.4th 695 (7th Cir. 2025) ...............................................................22

*O.B. v. Norwood*,
    838 F.3d 837 (7th Cir. 2016) .................................................................29

*Parents League for Effective Autism Servs. v. Jones-Kelley*,
    565 F. Supp. 2d 895 (S.D. Ohio 2008) .................................................17

*Pennhurst State Sch. & Hosp. v. Halderman*,
    451 U.S. 1 (1981) ...................................................................................26

*Sabree v. Richman*,
    367 F.3d 180 (3d Cir. 2004) ..................................................................28

*Salazar v. District of Columbia*,
    729 F. Supp. 2d 257 (D.D.C. 2010) ...........................................15, 16, 28

*Sanders v. District of Columbia*,
    601 F. Supp. 2d 97 (D.D.C. 2009) .........................................................29

*Schuler v. PricewaterhouseCoopers, LLP*,
    514 F.3d 1365 (D.C. Cir. 2008) ...............................................................7

*S.D. ex rel. Dickson v. Hood*,
    391 F.3d 581 (5th Cir. 2004) ............................................................ *passim*

*Shalala v. Ill. Council on Long Term Care*,
    529 U.S. 1 (2000) ...............................................................................3, 20

*Soto v. United States*,
    605 U.S. 360 (2025) ...............................................................................23

*S.R. v. Pa. Dep't of Hum. Servs.*,
    309 F. Supp. 3d 250 (M.D. Pa. 2018) ...................................................17

iv

*Timken v. S. Denver Cardiology Assocs., P.C.,*
  155 F.4th 1227 (10th Cir. 2025) ................................................................21, 22

*Westside Mothers v. Olszewski,*
  454 F.3d 532 (6th Cir. 2006) ..............................................................................16

*Wilkins v. United States,*
  598 U.S. 152 (2023)..............................................................................................20

*Williams v. Cheltenham Sch. Dist.,*
  No. 25-3395, 2025 WL 2712217 (E.D. Pa. Sep. 23, 2025) ...............................19

**Statutes**

42 U.S.C. § 1320a-2 ...................................................................................................27

42 U.S.C. § 1396-1 .......................................................................................................4

42 U.S.C. § 1396a(a)(10) ....................................................................................11, 18

42 U.S.C. § 1396a(a)(23) ..........................................................................................14

42 U.S.C. § 1396a(a)(28) ..........................................................................................11

*42 U.S.C. § 1396a(a)(43) ................................................................................ *passim*

42 U.S.C. § 1396d(a) ...................................................................................................6

*42 U.S.C. § 1396d(a)(4)(B) ...........................................................................6, 10, 18

*42 U.S.C. § 1396d(r) ..........................................................................................6, 11

*42 U.S.C. § 1396d(r)(5) .................................................................................. *passim*

42 U.S.C. § 1396r(c)(1)(A)(ii) ..................................................................................24

42 U.S.C. § 1396r(c)(2)(A) ..................................................................................11, 24

42 U.S.C. § 1396r(h)(4) .............................................................................................26

42 U.S.C. § 1983 .......................................................................................................1, 7

42 U.S.C. § 10801 ........................................................................................................6

42 U.S.C. § 15041 ........................................................................................................6

Pub. L. No. 90–248, tit. IIII § 302, 81 Stat. 821 (1968) ........................................5, 12

**Regulations**

42 C.F.R. § 441.57 ............................................................................................................5

**Other Authorities**

90 Cong. Rec. 2883 (Feb. 8, 1967) ..................................................................................5

Letter from Ctrs. for Medicare & Medicaid Servs. to State Health Off., at 1 (Sept. 26, 2024) (SHO #24-005) .............................................................................................5

Plaintiffs L.R., B.T., M.W., I.C. ("Named Plaintiffs"), and University Legal Services, Inc. (doing business as "Disability Rights D.C.") (collectively, "Plaintiffs"), by and through their attorneys, respectfully submit this Memorandum of Law in Opposition to Defendants' Motion for Partial Judgment on the Pleadings on Count II of Plaintiffs' Second Amended Complaint ("Defs.' Mot.," ECF 150).

## INTRODUCTION

Defendants ask this Court to repudiate the rights not only of children who need mental health services, but also the child who needs a wheelchair, the child who needs a feeding tube, and the child who needs cancer treatment. Since 1989, these children have enjoyed a federal right to access early and periodic screening, diagnostic, and treatment services ("EPSDT") through the Medicaid program. In the decades since Congress reinvigorated these rights, every federal court to have considered the question has held that these EPSDT provisions unambiguously confer federal rights on eligible children to access these services.

Misinterpreting the U.S. Supreme Court's decision in *Medina v. Planned Parenthood South Atlantic*, 606 U.S. 357 (2025), Defendants argue that the Medicaid Act's EPSDT provisions cannot be privately enforced through 42 U.S.C. § 1983 ("Section 1983" or "§ 1983") because they do not explicitly contain the specific word "right" or "rights" (or a synonym), even as Defendants concede that no magic words are required. (Defs.' Mot. 8, 12-13.) In so doing, Defendants ask this Court to read requirements into *Medina* that simply are not there and upend decades of circuit and district court consensus that the EPSDT provisions are unambiguously individually focused, privately enforceable rights that meet the test laid out in *Gonzaga University v. Doe*, 536 U.S. 273 (2002), for private enforcement through Section 1983. The result Defendants seek could effectively end *any* Medicaid beneficiary's ability to enforce *any* rights Congress afforded them to

receive medically necessary services—outside of the narrow nursing home resident rights in *Health and Hospital Corporation v. Talevski*, 599 U.S. 166 (2023). That is not what the Supreme Court held.

Through *Medina v. Planned Parenthood*, the Supreme Court declined yet another opportunity—the second such opportunity in the last three years—to establish a new rule or otherwise dramatically alter the criteria for private enforceability of Spending Clause legislation. Rather, *Medina* plainly and repeatedly acknowledges that it "simply applies the same test" it applied in *Gonzaga*, a case from two decades ago that tasked courts with using traditional tools of statutory construction to identify whether a statute clearly and unambiguously uses rights-creating language. *See Medina*, 606 U.S. at 385 n.9. *Medina* explicitly disclaimed that it was effectuating a fundamental change in the law, requiring only that courts constrain their analysis to the standard laid out in *Gonzaga*. *Id*.

Under the *Gonzaga* test, federal circuit and district courts across the country, including this district court, have uniformly found unambiguous rights-creating language in the EPSDT provisions of the Medicaid Act sufficient to grant private enforceability under Section 1983. As articulated in these decisions, the EPSDT provisions require States to "inform[]," "provid[e]," and "arrang[e] for" medically "necessary" EPSDT services to Medicaid-eligible children "***whether or not***" a State has chosen to cover them as part of its Medicaid plan. 42 U.S.C. §§ 1396a(a)(43)(A)-(C), 1396d(r)(5) (emphasis added). In this way, the EPSDT provisions can be distinguished from most other requirements that Medicaid imposes on participating States, including with respect to their State Medicaid plans. They are written with a clear focus on the individual Medicaid-eligible child and remove all discretion by unambiguously requiring a State provide all covered medically necessary services to Medicaid-eligible children.

Defendants' Motion offers no sound basis for this Court to find otherwise. Defendants have expressly accepted that *Medina* was not a "sea-change," does not require any "magic words," and merely "clarified" its prior decisions to the extent not consistent with *Gonzaga*. (Defs.' Mot. 12-13.) Despite that, Defendants ignore their own reading of *Medina* and instead ask this Court to accept an implied reading of *Medina* as significantly altering the *Gonzaga* test to require that a Spending Clause statute contain "'rights,' 'privileges,' 'immunities,' or any other arguably synonymous term." (Defs.' Mot. 8.)

Defendants are mistaken. The Supreme Court does not "dramatically limit[] earlier authority **sub silentio**," *Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 18 (2000) (emphasis added), and there is no language within *Medina* dramatically altering the *Gonzaga* test. Quite the opposite, *Medina* speaks at length about the importance of reinforcing strict compliance with the longstanding *Gonzaga* test. *Medina*, 606 U.S. at 372-76. Indeed, the *Medina* Court knew exactly how to alter prior case law when it expressly repudiated any reliance on its *Wilder*, *Wright*, or *Blessing* decisions. *Id*. at 376. *Medina* intentionally chose not to do so for *Gonzaga* and for those lower court cases that have relied on *Gonzaga*. Under the *Gonzaga* test, the EPSDT provisions clearly confer a private right of action.

Defendants' efforts to compare the EPSDT provisions to the "any qualified provider" provision in *Medina*[1] are misguided. The Supreme Court has continuously reiterated that every provision must stand alone, as courts must review the actual text of each provision before it to identify rights-creating language. But even comparing the provisions at issue in this case with those reviewed by the Supreme Court in *Medina* and *Talevski*, the EPSDT provisions look very

---

[1] Defendants refer to this as the "Free Choice" provision in their Motion. (Defs.' Mot. 8.)

3

much like the privately enforceable Federal Nursing Home Reform Act ("FNHRA") provisions in *Talevski* and are clearly distinguishable from the "any qualified provider" provision in *Medina*.

In *Medina*, the Supreme Court reasoned that the "any qualified provider" provision did not speak solely to beneficiary rights and allowed States discretion to circumvent the requirements of that provision, and, thus, did not satisfy the *Gonzaga* private enforceability test. Conversely, both the FNHRA provisions at issue in *Talevski* and the EPSDT provisions at issue here share a singular focus on the health care and medical needs of beneficiaries. Both provisions were also defined outside of Medicaid State plan requirements to further alert States that these provisions bestowed rights upon Medicaid beneficiaries. Thus, applying the same test and reasoning as the Supreme Court used in both *Medina* and *Talevski*, the EPSDT provisions confer a private right of action.

Ultimately, Defendants do not, and cannot, provide this Court with a compelling reason to look past decades of uniform case law specifically finding unambiguous rights-creating language in the EPSDT provisions under the *Gonzaga* test. In line with the reasoning laid out in those cases, this Court should similarly find that the EPSDT provisions contain unambiguous rights-creating language and deny Defendants' motion for partial judgment on the pleadings.

## BACKGROUND

### A.     The Medicaid Act and EPSDT Provisions

In 1965, Congress enacted Title XIX of the Social Security Act, 42 U.S.C. §§ 1396-1396v (the "Medicaid Act"), establishing the Medicaid program to enable states to provide medical assistance to people "whose income and resources are insufficient to meet the costs of necessary medical services." *Id.* § 1396-1. Congress amended the Medicaid Act in 1967 to fulfill a longstanding national commitment to address children's health care needs "as early as possible" and to provide treatment "so that those needs do not go unmet"—by creating EPSDT services for

eligible children.  90 CONG. REC. 2883, 2885 (Feb. 8, 1967) (statement of President Lyndon B.

Johnson introducing EPSDT); *see also* Letter from Ctrs. for Medicare & Medicaid Servs. to State

Health Off., at 1 (Sept. 26, 2024) (SHO #24-005) ("The goal of EPSDT is to ensure that individual

eligible children get the health care they need, when they need it, in the most appropriate setting.").

As originally written, the EPSDT provisions entitled Medicaid-eligible children to "such

early and periodic screening and diagnosis . . . to ascertain their physical or mental defects, and

such health care, treatment, and other measures to correct or ameliorate defects and chronic

conditions discovered thereby, as *may be provided in regulations of the Secretary*."  Pub. L. No.

90–248, tit. IIII § 302, 81 Stat. 821, 929 (1968) (codified at 42 U.S.C. § 1396d(a)(4)) (emphasis

added).  But, because the Secretary subsequently promulgated regulations designating EPSDT as

"[d]iscretionary services," many States initially viewed EPSDT services as optional and declined

to provide them under their State plan.  42 C.F.R. § 441.57; *see also S.D. ex rel. Dickson v. Hood*,

391 F.3d 581, 589 (5th Cir. 2004) (describing history).

Concerned that "many states had chosen not to provide EPSDT-eligible children all the

care and services allowable under federal law," Congress amended the EPSDT statutes in 1989 "to

mandate that a state agency ***must*** provide EPSDT-eligible children . . . [with EPSDT] services,

*whether or not such services are covered under the State plan*."  *S.D.*, 391 F.3d at 589 (second

emphasis added) (quoting 42 U.S.C. § 1396d(r)(5)).  The revised (current) language of the statute

made it explicitly clear that entitlement to the EPSDT services was not optional.  *See id*. at 590

(collecting congressional statements demonstrating "that states participating in the Medicaid

program must provide all of the health care and services permitted under § 1396d(a) when

necessary to correct or ameliorate a defect or condition discovered by screening").

Today, under the Medicaid Act, a State must provide "early and periodic screening, diagnostic, and treatment ["EPSDT"] services (as defined in subsection (r)) for individuals who are eligible under the [State] plan and are under the age of 21."  42 U.S.C. § 1396d(a)(4)(B); *see also id.* § 1396a(a)(43) (requiring States to "inform[]," "provid[e]," and "arrang[e] for" the provision of EPSDT services).  Those services are defined as screening, vision, dental, and hearing services, and "[s]uch other necessary health care, diagnostic services, treatment, and other measures . . . to correct or ameliorate defects and physical and mental illnesses and conditions discovered by the screening services, whether or not such services are covered under the State plan."  *Id.* § 1396d(r).  Section 1396d(a) describes a list of services which, if medically necessary, must be provided to EPSDT beneficiaries.

### B. Factual Background

The Named Plaintiffs and all members of the putative class have a mental health disability by virtue of having a serious emotional disturbance.  (Second Amended Complaint ("SAC") ¶¶ 15-16, ECF 99.)   Plaintiff University Legal Services is an independent, nonprofit corporation organized under the laws of the District of Columbia that does business under the name Disability Rights D.C. at University Legal Services.[2]  (*Id.* ¶ 17.)

Relevant to this Motion, Plaintiffs allege in Count II of the Second Amended Complaint that the District of Columbia has failed to provide the plaintiff children all of the required components of intensive community-based services ("ICBS"), which are collectively necessary to meet their mental health needs, as required by the Medicaid Act, 42 U.S.C. § 1396d, enforced

---

[2] Disability Rights D.C. is authorized under the Protection and Advocacy for Individuals with Mental Illness Act, 42 U.S.C. § 10801 *et seq.*, and the Protection and Advocacy for Individuals with Developmental Disabilities Act, *id.* § 15041 *et seq.*, to bring this action on behalf of the named individual plaintiffs and members of the putative class, who are its constituents.  (SAC ¶ 17.)

through 42 U.S.C. § 1983. (*Id.* ¶¶ 40-49.) Children in the District are being deprived of the EPSDT services that they need to improve their conditions and avoid unnecessary institutionalization. (*Id.* ¶ 50.) Defendants are thus violating the Americans with Disabilities Act, Section 504 of the Rehabilitation Act, and the Medicaid Act. (*Id.* ¶¶ 83-90.)

Plaintiffs filed their Complaint in 2018, and Defendants moved to dismiss Plaintiffs' Complaint in 2019, which was denied in full by this Court. (*See* ECF 3, 21, 45.) With leave of Court, Plaintiffs amended their Complaint in 2021 and 2022. (*See* ECF 78, 99.) Plaintiffs have moved for class certification in this case, which is pending. (*See* ECF 74.) Defendants now move, some seven years into this case, for partial judgment on the pleadings on Plaintiffs' Medicaid Act EPSDT claim, Count II in the operative Complaint. Plaintiffs urge this Court to deny Defendants' renewed effort to avoid adjudication of the merits of Plaintiffs' claims.

## STANDARD OF DECISION

On a motion for judgment on the pleadings, "the factual allegations of the complaint must be taken as true, and *any* ambiguities or doubts concerning the sufficiency of the claim must be resolved in favor of the pleader." *Schuler v. PricewaterhouseCoopers, LLP*, 514 F.3d 1365, 1370 (D.C. Cir. 2008) (emphasis in original) (quoting *Doe v. U.S. Dep't of Just.*, 753 F.2d 1092, 1102 (D.C. Cir. 1985)). The "party seeking judgment on the pleadings shoulders a heavy burden of justification." *Dist. No. 1, Pac. Coast Dist., Marine Eng'rs Beneficial Ass'n*, 933 F.3d 751, 760 (D.C. Cir. 2019).

## ARGUMENT

## I. THE EPSDT PROVISIONS ARE PRIVATELY ENFORCEABLE THROUGH SECTION 1983

Private parties—like Plaintiffs here—have a remedy under § 1983 when the District violates a privately enforceable right and Congress has not otherwise foreclosed such a remedy.

*Talevski*, 599 U.S. at 177, 180.  Defendants nowhere contend that Congress has foreclosed a remedy for violating Plaintiffs' right to EPSDT services.[3]  The only point of dispute is thus whether the EPSDT provisions unambiguously confer rights.  Under the applicable *Gonzaga* test, they do.  The EPSDT provisions require States to "inform[]," "provid[e]," and "arrang[e] for" medically "necessary" EPSDT services to Medicaid-eligible children "***whether or not***" a State has chosen to cover them as part of its Medicaid plan.  42 U.S.C. §§ 1396a(a)(43)(A)-(C), 1396d(r)(5) (emphasis added).  These provisions unambiguously confer a federal right to EPSDT services on eligible children, as every court to have considered the question has held.  Because the EPSDT provisions create a privately enforceable right, Defendants' Motion should be denied.

### A.    The Parties Agree that *Medina* Simply Applies the *Gonzaga* Test

Notably, Plaintiffs and Defendants both agree *Medina* does not represent a "sea-change" in the law.  (Defs.' Mot. 12.)  As Plaintiffs have argued, and as Defendants now recognize, *Medina* "simply applies the same test this Court applied in *Gonzaga*."  (*Id.* (citing *Medina*, 606 U.S. at 385 n.9).)  Put simply, *Gonzaga*, which has been applied by federal courts for the last two decades, remains the standard by which courts interpret Spending Clause private enforceability.  *See also Medina*, 606 U.S. at 376 ("*Talevski* reaffirmed that '*Gonzaga* sets forth our established method' for determining whether a spending-power statute confers individual rights.") (quoting *Talevski*, 599 U.S. at 183).

Further, the parties also share the view that *Medina* simply "clarified" that courts should not circumvent the *Gonzaga* test with considerations elicited from a series of prior Supreme Court

---

[3] This is for good reason because the Medicaid Act does not include any such implicit preclusion. *See, e.g.*, *Talevski*, 599 U.S. at 186-91.

cases.  (Defs.' Mot. 4-5); *see Medina*, 606 U.S. at 376.  *Medina* reinforced that lower courts must identify rights-creating language under *Gonzaga*.  *See Medina*, 606 U.S. at 376.[4]

Under the prevailing *Gonzaga* test, a statute must unambiguously be "phrased in terms of the persons benefitted . . . with an unmistakable focus on the benefited class."  *Gonzaga*, 536 U.S. at 284 (emphasis omitted) (citation omitted).  Tellingly, the parties both agree that *Medina* does not require magic words for a statute to bestow private enforceability under *Gonzaga*.  (*See* Defs.' Mot. 15 ("[T]hat no particular term or phrase is independently necessary *or* sufficient all but confirms that *Medina* does not require magic words.") (emphasis in original).)[5]  As a result, this Court need only identify rights-creating language in the EPSDT provisions under *Gonzaga* to find private enforceability—as circuit and district courts nationwide have unanimously done over the last two decades.  *See infra* Section II.

**B.**     **The EPSDT Provisions Unambiguously Confer Rights Upon Medicaid-Eligible Children**

The EPSDT provisions plainly satisfy the *Gonzaga* test.  The EPSDT provisions provide that States "***must***" "inform[] all persons in the State who are under the age of 21 and who have

---

[4] Justice Jackson's dissent in *Medina* does not alter this conclusion.  In her dissent, Justice Jackson, who also wrote the majority decision in *Talevski*, cautions against requiring literal adherence to the "rights" language used in the FNHRA statutes at issue in *Talevski*.  *Medina*, 606 U.S. at 411 (Jackson, J., dissenting).  As the majority opinion makes explicit in response, its decision "simply applies the same test this Court applied in *Gonzaga*" and reaches the "unsurprising conclusion" that the "any qualified provider" provision was not an atypical statute under the *Gonzaga* test.  *Id.* at 385 n.9.  As a result, there is no basis to assert that *Medina* tasks this Court with doing anything other than reviewing a Spending Clause statute under the same *Gonzaga* test that other courts in this District and around the country already have done.

[5] Defendants' discussion of the clear-statement rule in this context is immaterial.  (Defs.' Mot. 15-16.)  Defendants admit that *Medina* is not a clear-statement rule case.  (*Id.* at 16).  Nor, practically, does *Medina* contain any discussion implying courts should not find private enforceability unless Congress has made a clear statement for private enforceability.  *Medina* simply, and only, requires that a Spending Clause statute must contain "rights-creating language."  *Medina*, 606 U.S. at 379.

been determined to be eligible for medical assistance . . . of the availability of [EPSDT] services" and "arrang[e] for" the provision of these medically "necessary" EPSDT services to "correct or ameliorate defects and physical and mental illnesses and conditions discovered by the screening services, **whether or not** such services are covered under the State plan." 42 U.S.C. §§ 1396a(a)(43)(A)-(C), 1396d(r)(5) (emphasis added). In other words, while the State plan is the instrument by which States exercise discretion over their Medicaid services, the EPSDT provisions stand apart in that Congress' directive that States provide all covered services for all Medicaid-eligible children for whom they are medically necessary, as well as its explicit use of the "whether or not" phrasing, completely remove the States' discretion regarding EPSDT services and signals a clear intent to provide rights to these beneficiaries. *See also id.* § 1396d(a)(4)(B) (requiring States cover the cost of "[EPSDT] services (as defined in subsection (r)) for individuals who are eligible under the plan and are under the age of 21"). The EPSDT mandate thus contains "rights-creating" language commanding States to provide medically necessary services to Medicaid-eligible children even if the State does not currently offer them under the State plan.

Defendants create a straw man of Plaintiffs' argument that ignores the actual text of the EPSDT provisions. Plaintiffs do not argue that the EPSDT provisions satisfy the *Gonzaga* test solely because they are mandatory in nature and reflect an individual-centric focus, though they are and do. (*See* Defs.' Mot. 5.) Plaintiffs also point to the provisions' specific, action-oriented textual focus on States "informing" of, "providing," and "arranging for" Medicaid-listed treatments and services that Medicaid-eligible children need "whether or not" they are in the State's plan as the "rights-creating language" under *Gonzaga*. 42 U.S.C. §§ 1396a(a)(43)(A)-(C), 1396d(r)(5). These are not merely "general duties imposed on states;" they are specific rights given to Medicaid-eligible children under the plain text of the provisions. (Defs.' Mot. 8.) Their

10

focus is unambiguously on the bestowal of services to children, and there is no discretion given to the States not to provide them.

The predischarge and notice provisions of the FNHRA statutes approved in *Talevski* are strikingly similar to the EPSDT provisions, and those similar aspects were critical to the Supreme Court's determination that they too are rights-creating and privately enforceable.[6]  Much as the FNHRA provisions focused on a "resident's urgent medical needs" and transfers "necessary to meet the resident's welfare," *Talevski*, 599 U.S. at 185 (internal emphasis omitted), the EPSDT provisions repeatedly focus on the mandatory provision of "medically necessary" services and "necessary health care" to each eligible child.  42 U.S.C. § 1396d(r)(1)-(5).  Further, using the FNHRA provisions in *Talevski* as an example, *Medina* recognized the importance of the fact that Congress "set its rights-creating provisions apart from others" to "help[] alert grantees that accepting federal funds comes with a duty to answer private suits."  *Medina*, 606 U.S. at 380.  The EPSDT provisions do the same.  Whereas both the FNHRA mandates and EPSDT mandates are required contents of a State's Medicaid plan, *see* 42 U.S.C. §§ 1396a(a)(28), (43), they are both further defined outside of the contents of what a State plan must offer.  *See id.* § 1396r(c)(2)(A) (FNHRA provisions establishing transfer-and-discharge protections); *id.* § 1396d(r)(5) (EPSDT provisions requiring that Medicaid-eligible children under age 21 receive services "to correct or ameliorate defects and physical and mental illnesses and conditions discovered by the screening services, **whether or not** such services are covered under the State plan") (emphasis added); *see also id.* § 1396a(a)(10) (noting States "must . . . mak[e] medical assistance available" including services listed under "section 1396d(a)," which specifically includes the "[EPSDT] services (as

---

[6] Whereas the header of these FNHRA provisions did mention the term "right," *Medina* specifically noted that statutory title headers do not "suffice to prove" a provision "unenforceable under Section 1983."  *Medina*, 606 U.S. at 379-80.

defined in subsection (r))" under § 1396d(a)(4)(B)).  The EPSDT provisions thus are distinct within Section 1396a and contain precisely the focus on "rights-creating" language that the Court approved in *Talevski*, consistent with its later reasoning in *Medina*.

**C.**    **The Statutory Language and History Confirm Congressional Intent to Confer Individual Rights**

Contrary to Defendants' selective recounting, the statutory history of the EPSDT provisions, as described above (*see supra* Background, Section A), further confirms Congress' explicit focus on providing Medicaid-eligible children with a ***right*** to the services listed.

As originally written, the EPSDT provisions entitled Medicaid-eligible children to "such early and periodic screening and diagnosis . . . to ascertain their physical or mental defects, and such health care, treatment, and other measures to correct or ameliorate defects and chronic conditions discovered thereby, as *may be provided in regulations of the Secretary*."  Pub. L. No. 90–248, tit. IIII § 302, 81 Stat. 821, 929 (1968) (codified at § 1396d(a)(4)) (emphasis added).  When the Secretary's resulting regulations suggested that EPSDT was optional or discretionary, Congress reacted by amending the EPSDT statutes "to mandate that a state agency ***must*** provide EPSDT-eligible children . . . [with EPSDT] services, ***whether or not*** *such services are covered under the State plan*."  *S.D.*, 391 F.3d at 589 (second emphasis added) (quoting 42 U.S.C. § 1396d(r)(5)).  The revised (current) language made express that EPSDT beneficiaries are entitled to the entire array of services identified in the Medicaid Act—and that it is not optional.  *See id*. at 590 (collecting congressional statements demonstrating "that states participating in the Medicaid program must provide all of the health care and services permitted under § 1396d(a) when necessary to correct or ameliorate a defect or condition discovered by screening").  This history is strong evidence that Plaintiffs' reading of the statutory language is the right one.  Congress

specifically eliminated any ability of States to evade or limit the provision of EPSDT services and conferred on eligible individuals the right to access these services.

Defendants' observation that Congress amended the EPSDT provision "more than 40 times since *Gonzaga*" without inserting the word "right" or a synonym in any of these amendments does not signal that the provision did not already have "rights-creating language" before and after *Gonzaga* was decided. (Defs.' Mot. 17.) To the contrary, since *Gonzaga*, courts have uniformly and properly found the EPSDT provisions to confer a private right of action. In that context, Congress repeatedly ratified the rights-creating EPSDT language more than 40 times, thus demonstrating its intent to confer a private right of action to enforce the EPSDT provisions in federal court. *See Lorillard v. Pons*, 434 U.S. 575, 581 (1978) ("[W]here, as here, Congress adopts a new law incorporating sections of a prior law, Congress normally can be presumed to have had knowledge of the interpretation given to the incorporated law, at least insofar as it affects the new statute."); *Bragdon v. Abbott*, 524 U.S. 624, 645 (1998) ("When administrative and judicial interpretations have settled the meaning of an existing statutory provision, repetition of the same language in a new statute indicates, as a general matter, the intent to incorporate its administrative and judicial interpretations as well."). Accordingly, the statutory language and history of the EPSDT mandate show an ongoing commitment to entitle children to a right to necessary health services and ensure that the provision of these services is mandatory and privately enforceable against the States.

### D.  The EPSDT Provisions are not Comparable to the "Any Qualified Provider" Provision in *Medina*

Contrary to Defendants' position, the EPSDT provisions are nowhere near "materially indistinguishable" from the "any qualified provider" (referred to by Defendants as the "Free Choice") provision that *Medina* found not privately enforceable. (Defs.' Mot. 8-9.) The plain

language of the "any qualified provider" provision allowed Medicaid-eligible beneficiaries to obtain medical assistance from providers "qualified to perform the service or services required." 42 U.S.C. § 1396a(a)(23).  However, in applying the *Gonzaga* test to the provision, the *Medina* Court took specific issue with the fact that the provision (1) allowed States to "control its scope" by excluding providers from the provision of medical assistance and (2) contained a dual focus that would "benefit both providers and patients" rather than solely beneficiaries.  *Medina*, 606 U.S. at 377-79.  Those issues do not apply to the EPSDT provisions.

To the contrary, the EPSDT provisions not only mandate the provision of specified EPSDT services as needed by Medicaid-eligible children, they prohibit States from using their discretion to limit their scope.  Indeed, the EPSDT provisions require such services "***whether or not***" the State has decided to include them in their Medicaid State plan.  42 U.S.C. § 1396d(r)(5) (emphasis added).  As discussed, mandatory provision of EPSDT services was the clear congressional intent behind amending these statutes.  *See S.D.*, 391 F.3d at 593 ("[T]he federal Circuits that have analyzed the 1989 EPSDT amendment agree that Congress did not grant or allow states the discretion to define what types of health care and services would be provided to EPSDT children . . . .").  And while *Medina* emphasizes that the "any qualified provider" provision speaks both to Medicaid beneficiaries and providers, *Medina*, 606 U.S. at 377, the EPSDT provisions have no such dual focus.  They exclusively establish a State's affirmative obligations to inform, arrange for, and provide medically necessary services to beneficiaries comprising "all persons in the State who are under the age of 21."  42 U.S.C. § 1396a(a)(43).

In short, *Medina* determined there was State discretion under the "any qualified provider" provision, whereas the statutory text, legislative history, and case law make clear that the EPSDT provisions are not discretionary and designed to provide unambiguous rights to Medicaid-eligible

children.  *Cf. Talevski*, 599 U.S. at 186 (recognizing a statute can "satisfy *Gonzaga*'s stringent standard" if it uses "clear rights-creating language, speak[s] in terms of the persons benefited, and ha[s] an unmistakable focus on the benefited class") (internal quotations and citations omitted).

## II.    EVERY FEDERAL COURT TO REVIEW THE EPSDT PROVISIONS HAS FOUND THEM PRIVATELY ENFORCEABLE

Glaringly absent from Defendants' Motion is discussion of the decades of federal circuit court and district court opinions that have reviewed the text of the EPSDT provisions under *Gonzaga* and found them to unambiguously confer rights-creating language.  These opinions, including this District Court's own *Salazar v. District of Columbia* opinion, engaged substantively with the text under the same test reinforced by *Medina* and identified the portions of the EPSDT provisions that contained rights-creating language.

Defendants brush aside these cases by asserting that they may have also applied "the *Blessing* test." (Defs.' Mot. 10.)  Defendants are mistaken.  As discussed below, these cases applied the *Gonzaga* test, analyzing whether statutes unambiguously conferred rights-creating language plainly and clearly under the same decades-old standard.

### A.    This District Court Found the EPSDT Provisions to "Unambiguously Confer a Private Right of Action as Required by *Gonzaga*"

This District Court's opinion in *Salazar* squarely affirmed the private enforceability of the EPSDT provisions under *Gonzaga*.  729 F. Supp. 2d 257 (D.D.C. 2010).  In *Salazar*, the District of Columbia challenged the private enforceability of § 1396a(a)(43), the same provision at issue in this litigation, concerning whether the District was required to inform all persons of the availability of EPSDT services guaranteed under the Medicaid Act.  From the outset of its discussion on the private enforceability of § 1396a(a)(43), Judge Kessler's decision in *Salazar* was unambiguously clear that it was applying the *Gonzaga* test: "*Gonzaga* requires that, in order to find a federal right enforceable under § 1983, that right must have been 'unambiguously'

15

conferred."[7]  *Id.* at 268-69 ("To guide analysis in this area, *Gonzaga* instructs us to examine whether Congress used 'rights-creating' language.").   "Beginning with the text," *Salazar* specifically reviewed the actual language of the EPSDT provisions and identified "'rights-creating' language **under** *Gonzaga*" in the statute's requirement that a State plan "must provide for . . . informing all persons . . . of the availability of [EPSDT services]."  *Id.* at 269 (quoting § 1396a(a)(43)).   As a result, *Salazar* "conclude[d] that § 1396a(a)(43) does **'unambiguously' confer a private right of action** *as required by Gonzaga*."  *Id.* at 270 (emphasis added).

## B.   Federal Courts Have Found the EPSDT Provisions Privately Enforceable Post-*Gonzaga* for Decades

Although the D.C. Circuit has not considered the private enforceability of the EPSDT provisions, *every* federal circuit court to have reviewed them has found them privately enforceable. *See, e.g.*, *John B. v. Goetz*, 626 F.3d 356, 362 (6th Cir. 2010); *Westside Mothers v. Olszewski*, 454 F.3d 532, 543-44 (6th Cir. 2006)[8]; *S.D.*, 391 F.3d at 603-04.  These courts applied the *Gonzaga* framework, determining first that the EPSDT provisions contained "rights-creating language" as required by *Gonzaga*.  *See, e.g.*, *S.D.*, 391 F.3d at 602-04 (holding that the EPSDT provisions contain "precisely the sort of rights-creating language identified in *Gonzaga* as critical to

---

[7] While *Salazar* recognized that the EPSDT provisions "imposed a binding obligation on [the District] to provide EPSDT services" and were individually-focused, Judge Kessler discussed these factors after expressly acknowledging that she could consider them only "[i]f there is an unambiguously conferred right" under *Gonzaga*—which she did find.  *Salazar*, 729 F. Supp. 2d at 259.

[8] Notably, Defendants state that because *Westside Mothers* applied the *Blessing* test, the court "eschewed the need for rights-creating language."  (Defs.' Mot. 10-11.)  However, this is belied by the Sixth Circuit's express language:  "Critical to this inquiry is whether the pertinent statute contains 'rights-creating' language that reveals congressional intent to create an individually enforceable right."  *Westside Mothers*, 454 F.3d at 542 (citing *Gonzaga*, 536 U.S. at 287).

demonstrating a congressional intent to establish a new right") (quoting *Gonzaga*, 536 U.S. at 287)).

Further, *every* federal district court that has reviewed the EPSDT provisions has also found them privately enforceable.[9]  For example, in *S.R. v. Pennsylvania Department of Human Services*, the Middle District of Pennsylvania considered the specific text of the EPSDT provisions under the *Gonzaga* test.  309 F. Supp. 3d 250 (M.D. Pa. 2018).  The court held that the EPSDT mandate "demonstrates Congress' intent to confer private rights of action to individuals."  *Id.* at 261 (noting additionally that defendants were unable to "offer any case law where a court held that 1396a(a)(43)(C) does not create a private right of action").  Similarly, in *Parents League for Effective Autism Services v. Jones-Kelley*, the Southern District of Ohio found § 1396a(a)(43) to "confer an unambiguous right on Plaintiffs that is enforceable through a § 1983 claim" under the *Gonzaga* test.  565 F. Supp. 2d 895, 904 (S.D. Ohio 2008).  The court specifically noted that Medicaid-eligible children "were entitled to screening and treatment services" because the plain statutory text dictated that States "must provide such screening services in all cases where they are requested[] and must arrange for corrective treatment the need for which is disclosed by such child health screening services."  *Id.*

---

[9] *See, e.g.*, *Cruz v. Zucker*, 116 F. Supp. 3d 334, 346 (S.D.N.Y. 2015) ("As numerous courts have held, the EPSDT Requirement [] is unmistakably focused on the rights of Medicaid-eligible youth to receive the enumerated services."); *Parents League for Effective Autism Servs. v. Jones-Kelley*, 565 F. Supp. 2d 895, 904 (S.D. Ohio 2008) ("[The EPSDT provisions] confer an unambiguous right on Plaintiffs that is enforceable through a § 1983 claim."); *N.B. v. Hamos*, No. 11 C 06866, 2013 WL 6354152, at *3 (N.D. Ill. Dec. 5, 2013) (holding Section 1396a(a)(43) privately enforceable and supported by an "unambiguously conferred right" under *Gonzaga*).

### C.    Post-*Talevski* Decisions Confirm *Medina* Does Not Warrant Dismissal of Plaintiffs' Medicaid Claim

Plaintiffs have been able to identify only one post-*Talevski* EPSDT case, and it found the provisions that incorporate and make necessary the provision of EPSDT services to both be "rights-creating provisions" under the *Gonzaga* test.  *See Isaac A. v. Carlson*, 775 F. Supp. 3d 1296, 1334-35, 1336 n.17 (N.D. Ga. 2025).[10]  The court declined to apply the *Blessing* test, examining instead solely "whether the 'text and structure' of the statute[s] unambiguously confer federal rights" under *Gonzaga*.  *Id*. at 1334, 1336 n.17.  The court determined that the "must provide" language in the 1396d(r)(5) definition of the EPSDT provisions, which is also mandated and incorporated under Section 1396a(a)(43), was "explicit rights-creating language comparable to the 'no person shall' in Titles VI and IX of the Civil Rights Act."  *Id*. at 1335.  The decision also noted specifically that the EPSDT provisions' requirement on States to "arrang[e]" for "necessary corrective treatment," when taken together with Section 1396d(r)(5), had the effect of ensuring that Medicaid-eligible children necessarily had to be provided EPSDT services and was thus clear rights-creating language.  *See id*. ("[T]aking these provisions together, eligible individuals under 21 'must' be provided with health care and treatments necessary to correct or ameliorate their conditions, as arranged for by the state and regardless of whether the service is included in the state's Medicaid plan.") (emphasis omitted).  No post-*Talevski* court has held otherwise.

---

[10] Section 1396a(a)(10)(A) requires that States must make "medical assistance available" to "section 1396d(a)," which, under § 1396d(a)(4)(B), include the "[EPSDT] services (as defined in subsection (r))."  Section 1396a(a)(8) mandates that States must address all applications for "medical assistance," which include EPSDT services, "with reasonable promptness to all eligible individuals."

Relatedly, multiple courts post-*Medina* have *reaffirmed* that *Gonzaga* is the proper framework for analyzing whether a plaintiff may assert a private cause of action related to a federal statute. *See, e.g.*, *Gatlin v. Contra Costa Cnty.*, 796 F. Supp. 3d 622, 626 (N.D. Cal. 2025) (denying motion to reconsider decision allowing Social Security Act provision to be enforced, finding *Medina* did not overrule previous decision that "integrat[ed] *Gonzaga* into its analysis"); *Williams v. Cheltenham Sch. Dist.*, No. 25-3395, 2025 WL 2712217, at *3 (E.D. Pa. Sept. 23, 2025) ("*Medina* did not announce a new rule but rather reaffirmed the analytical framework it earlier defined in *Gonzaga* and applied in *Talevski*."). No post-*Medina* court has denied private enforceability to the EPSDT provisions.

## III.    *MEDINA* DOES NOT WARRANT DISMISSAL OF PLAINTIFFS' MEDICAID ACT CLAIM

### A.    *Medina* Did Not, and Could Not, Dramatically Alter the *Gonzaga* Test *Sub Silentio*

Even though Defendants acknowledge, as they must, that *Medina* did not work a sea change in the law, Defendants nonetheless argue that *Medina* offered a radically different reading of what the Court had said in *Gonzaga* without *Medina* ever acknowledging that it was doing so— indeed, while explicitly rejecting the notion that it was doing so. *Medina*, 606 U.S. at 385 n.9. Defendants argue that *Medina* warrants a re-review of the EPSDT provisions because *Medina* has implicitly created a new bright-line rule requiring that Spending Clause statutes mention "'***rights***,' '***privileges***,' '***immunities***,' or any other ***arguably synonymous term***" to be privately enforceable. (Defs.' Mot. 8 (emphasis added) (citations omitted).) In so doing, Defendants impermissibly stretch language from *Medina* requiring that a statute "secure[] an enforceable right, privilege, or immunity" to mean that a statute actually contain those words. *Medina*, 606 U.S. at 368. As a result, Defendants have manufactured a non-existent requirement out of *Medina* to alter the Supreme Court's *Gonzaga* test *sub silentio*.

*Medina* does not *sub silentio* overrule or dramatically alter the *Gonzaga* test, nor could it. Supreme Court jurisprudence is clear that the Court "does not normally overturn, or so dramatically limit, earlier authority **sub silentio**."  *Shalala*, 529 U.S. at 18 (emphasis added); *see also id*. at 15, 17-18 (refusing to hold its *Michigan Academy* case "significantly affected" or "overturned" the Court's earlier case law on Medicare redressability *sub silentio*); *Wilkins v. United States*, 598 U.S. 152, 163-64 (2023) (declining to find the Court "*sub silentio* raised, considered, and rejected an argument" and maintaining that the "Court looks for definitive interpretations, not holdings in hiding").  The D.C. Circuit is also "reluctant, wisely so, . . . not to discover *sub silentio* overrulings in the more cloistered environs of the Article III branch, especially in matters of such moment to the law."  *Hammon v. Barry*, 826 F.2d 73, 80 (D.C. Cir. 1987) (finding that a Supreme Court ruling on affirmative action programs did not require a rehearing of the court's prior decision because the Supreme Court case did not "sweep so broadly as to eviscerate the carefully crafted body of existing law"); *see also Al-Tamimi v. Adelson*, 916 F.3d 1, 12 (D.C. Cir. 2019) (citing *Shalala*, 529 U.S. at 18) (finding that the Supreme Court's failure to discuss the prudential factors of the political question doctrine did not *sub silentio* eliminate the prudential factors as part of the political question doctrine).

Had the Supreme Court wanted to modify the *Gonzaga* test, it would have explicitly done so.  In fact, *Medina* proved that the Court was perfectly capable of explicitly overruling its prior decisions when it expressly repudiated any reliance on the factors laid out by three of its prior cases.  *Medina*, 606 U.S. at 376 ("Some lower court judges . . . still consult *Wilder*, *Wright*, and *Blessing* when asking whether a spending-power statutes creates an enforceable individual right. They should not.") (internal citations omitted); (*see also* Defs.' Mot. 4 ("The Court responded to

'confusion in the lower courts' by expressly repudiating the reasoning of four[11] prior

opinions . . . .".).)  The Court's failure to modify the language of *Gonzaga* and *Talevski* was not a

mistake.  Rather, as the majority replied to Justice Jackson's dissent, it was an intentional decision

*not to* modify those cases or their reasoning and to "simply appl[y] the same test" the Court has

"applied in *Gonzaga* and again in *Talevski*."  *Medina*, 606 U.S. at 385 n.9.  While Defendants

recognize that the Court actually used its ability to "expressly repudiat[e] the reasoning of . . . prior

opinions," Defendants ignore that the Court expressly affirmed the reasoning of *Gonzaga*.  (Defs.'

Mot. 4-5.)

To the extent Defendants rely on post-*Medina* decisions for the proposition that *Medina*

altered the *Gonzaga* test to require explicit use of terms like "rights, privileges, or immunities,"

they are mistaken.  (*See* Defs.' Mot. 8.)  Defendants' reliance on *Timken v. South Denver*

*Cardiology Associates, P.C.*, 155 F.4th 1227 (10th Cir. 2025), for example, is misplaced.  *Timken*

found numerous provisions of the Emergency Use Authorization Act, the Public Readiness and

Emergency Preparedness Act, and 10 U.S.C. § 980, not to be privately enforceable.  155 F.4th at

1234-37.  But *Timken* did not begin and end its discussion of these statutes with the presence of a

specific word.  Rather, as directed by *Medina*, *Timken* "'employ[ed] traditional tools of statutory

construction to assess' whether a statute unambiguously confer[red] an enforceable right."  *Id*. at

1234 (citing *Medina*, 606 U.S. at 375).  *Timken* recognized that *Medina* spoke about the burden of

"showing 'that [the] statute secures an enforceable right, privilege, or immunity,'" but correctly

did not suggest that such words must be present in the statutory text to do so.  *Id.* at 1237 (citing

*Medina*, 606 U.S. at 368).

---

[11] Defendants include *Cannon v. Univ. of Chi.*, 441 U.S. 677 (1979), as part of the four opinions
with the *Wilder*, *Wright*, and *Blessing*.  (Defs.' Mot. 4-5.)

Similarly, *Northwestern Illinois Area Agency on Aging v. Basta* did not condition its finding of no private enforceability for provisions of the Older Americans Act ("OAA") on the presence of a specific word.  145 F.4th 695 (7th Cir. 2025).  Again, as was the case in *Timken*, *Basta* began its "first step" by "employ[ing] traditional tools of statutory construction" to the OAA provisions at issue.  *Id*. at 703.  *Basta* then reviewed the provisions for their aggregate focus on regulating federal funding, noting, for example, the fact that a provision spoke "only in terms of the states."  *Id*. at 704.  Importantly, while *Basta* acknowledged that the provisions before it had no mention of terms like "'rights,' 'privileges,' [or] 'immunities'" like the FNHRA statutes in *Talevski*, that point was not determinative of the outcome.  *Id*.

In sum, the cases Defendants rely upon merely noted the absence of words like "rights, privileges, or immunities," but did not find the absence of such terms dispositive.  Indeed, Defendants properly acknowledge that "no particular term or phrase is independently necessary *or* sufficient" to confer private enforceability.  (Defs.' Mot. 15 (emphasis in original).)  Instead, these cases applied the long-standing *Gonzaga* test, as they must.  By the same analysis and reasoning used in those cases, the EPSDT provisions clearly establish a private right of action, not because of any magic words but because they are unambiguously focused on conferring individual rights.

## B.    The Supreme Court Has Never Applied the *Gonzaga* Test to Require the Presence of a Specific Term

Defendants' interpretation of *Medina* also conflicts with how the Supreme Court has consistently applied the *Gonzaga* test.  As the Supreme Court has reiterated, the *Gonzaga* test requires courts to "employ **traditional tools of statutory construction** to assess whether Congress has 'unambiguously conferred' 'individual rights upon a class of beneficiaries.'"  *Talevski*, 599 U.S. at 183 (emphasis added); *see also Gonzaga*, 536 U.S. at 285 ("A court's role in discerning whether personal rights exist in the § 1983 context should therefore not differ from its role in

discerning whether personal rights exist in the implied right of action context."). Courts must examine whether "the law in question 'clear[ly] and unambiguous[ly]' uses '***rights-creating terms***,'" not whether the law actually has the word "right" or some "arguably synonymous term." *Medina*, 606 U.S. at 368 (citing *Talevski*, 599 U.S. at 180) (emphasis added); (Defs.' Mot. 8.)

If the presence of a specific word was what the Court meant by "rights-creating language," the lengthy *Gonzaga*, *Talevski*, and *Medina* opinions would have been much shorter. But, as is the case here, the Supreme Court has "never required that Congress use magic words."[12] *Soto v. United States*, 605 U.S. 360, 371 (2025) (citation omitted); *see also Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 436 (2011) ("Congress, of course, need not use magic words in order to speak clearly.").

Indeed, the Supreme Court has specifically found provisions that do ***not*** include the words "right," "privileges," or "immunities" to confer individual legal rights. For example, in *Gonzaga*, the Court reviewed the nondisclosure provisions of the Family Educational Rights and Privacy Act ("FERPA") for "rights-creating" language. *Gonzaga*, 536 U.S. at 287-88. The Court's analysis did not turn on the absence of the term "right" from these provisions. Instead, the Court proceeded, at length, to analyze the text of each provision to determine "whether or not Congress intended to confer individual rights upon a class of beneficiaries." *Id*. at 285. *Gonzaga* specifically clarified that even "explicit rights-creating terms" in a statute could not by themselves manifest the requisite intent. *Id*. at 284. And, notably, while the Court did not find the FERPA provisions at issue

---

[12] Defendants' discussion of "magic words" misses the mark. (*See* Defs.' Mot. 14-15.) Plaintiffs do not assert that any specific term can satisfy *Gonzaga*'s strict test. Plaintiffs have consistently argued that the EPSDT provisions satisfy the *Gonzaga* test because they are unambiguously focused on conferring individual rights, and, in fact, Plaintiffs agree with Defendants that "no particular term or phrase is independently necessary *or* sufficient" to confer private enforceability. (*Id*. at 15.)

privately enforceable, the Court referenced the text of Titles VI and IX of the Civil Rights Act of 1964—which ***do not*** contain the words "right" or "rights" in the statutory text—as "rights-creating . . . individually focused terminology." *Id.* ("We have recognized, for example, that Title VI of the Civil Rights Act of 1964 and Title IX of the Education Amendments of 1972 create individual rights because those statutes are phrased with ***an unmistakable focus*** on the benefited class.") (internal citation omitted) (emphasis added).

In *Talevski*, the Court similarly went provision-by-provision looking at the specific text of both the "unnecessary-restraint provision" and the "transfer and discharge provision" of FNHRA. 599 U.S. at 181-82. Whereas the unnecessary-restraint provision contains explicit reference to the "rights" of residents, 42 U.S.C. § 1396r(c)(1)(A)(ii), the statutory text of the transfer-and-discharge provision notably ***does not*** contain the term "right" or "rights." *See* 42 U.S.C. § 1396r(c)(2)(A) (noting that "[a] nursing facility must permit each resident to remain in the facility and must not transfer or discharge the resident from the facility" unless the transfer satisfies one of six exceptions). In other words, the Court did not merely rubberstamp the FNHRA provisions because one provision contained the word "right." Instead, the Court specifically approved the private enforceability of the transfer-and-discharge provision because it contained rights-creating language centered around "resident's health" and "resident's urgent medical needs," as well as language referencing their operability as "necessary to meet the resident's welfare." *See Talevski*, 599 U.S. at 185 (discussing § 1396r(c)(2)).[13]

---

[13] Notably, it did not matter in *Talevski* that the header of the transfer-and-discharge provision used the word "rights." Justice Jackson still did a provision-by-provision review to identify language such as "necessary to meet the resident's welfare" and "resident's urgent medical needs" as rights-creating terms. *Talevski*, 599 U.S. at 185. The Court even stated affirmatively that the title or heading of a provision was not determinative of whether it was rights-creating. *Medina*, 606 U.S. at 382.

Likewise, *Medina* reviewed the "any qualified provider" provision of the Medicaid Act under the longstanding *Gonzaga* test to ask whether the provision "clear[ly] and unambiguous[ly]" bestowed "individual federal rights." *Medina*, 606 U.S. at 376. *Medina* included a thorough examination of the "any qualified provider" provision, not a short inquiry into whether the provision used the words "right" or "rights." *See id*. at 377-80 (examining the plain language of the provision, the placement of the provision within the statute, and statutory header). Of course, none of this analysis would have been necessary had *Medina* held that the only thing that mattered was the presence of the word "right" or other magic words.

## C.    Defendants' Counterarguments are not Compelling

Defendants have asserted a series of reasons why, contrary to above, the EPSDT provisions fail the *Gonzaga* test. None of these are convincing.

***First***, Defendants suggest that the EPSDT provisions must be materially identical to the FNHRA provisions at issue in *Talevski*, referencing specifically the "only reliable yardstick" language from *Medina* as a basis for comparison. (Defs.' Mot. 5-6 (citing *Medina,* 606 U.S. at 377).) In repudiating a portion of its prior Spending Clause jurisprudence that departed from *Gonzaga*, *Medina* simply observed that the FNHRA statutes from *Talevski* were explicitly examined by the Supreme Court and concluded to confer private enforceability through § 1983. *See* 606 U.S. at 377 ("But given this Court's longstanding repudiation of *Wright* and *Wilder*'s reasoning, the statutes at issue in *Talevski* supply the only reliable yardstick against which to measure whether spending-power legislation confers a privately enforceable right.").

*Medina* thus did not create a new bright-line rule for Spending Clause private enforceability nor overturn decades of jurisprudence interpreting *Gonzaga*. Rather, as explained above, *Medina* found provisions in the FNHRA that did not include the words "right" or "rights" to

unambiguously confer a private right of action through § 1983 for reasons that are also true of the EPSDT provisions. *See supra* Argument III.B.  Both the FNHRA provisions at issue in *Talevski* and the EPSDT provisions at issue here share a singular focus on the health care and medical needs of beneficiaries, and both were further explicated outside of Medicaid State plan requirements to further alert States that their provisions bestowed rights upon Medicaid beneficiaries.  Thus, measuring the EPSDT provisions against the "yardstick" of provisions addressed in *Talevski*, the EPSDT provisions unambiguously confer a private right of action.

*Second*, Defendants' passing remark on the statutory headers (*i.e.*, the placement of the EPSDT provisions under a "contents" header) is misguided.  (Defs.' Mot. 8-9.)  *Medina* specifically noted that the "contents" header and placement of the "any qualified provider" provision did not "suffice to prove that the any-qualified provider provision is unenforceable under Section 1983." 606 U.S. at 379-80.  Indeed, as Defendants recognize, the Supreme Court has **twice** found a Spending Clause statute not privately enforceable even where a statutory header contained explicit reference to "rights."  *See Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 18-22 (1981) (rejecting private enforceability of provisions of the "Bill of Rights" section of the "Developmentally Disabled Assistance and Bill of Rights Act"); *Gonzaga*, 536 U.S. at 290-91 (rejecting private enforceability of a provision of the "Family Education Rights and Privacy Act").

*Third*, Defendants argue that the EPSDT provisions are not privately enforceable because they are focused on "the States' obligations" and require "only 'substantial' or 'aggregate' compliance from the States."  (Defs.' Mot. 9.)  But as the Supreme Court stated in *Medina*, this is not determinative. 606 U.S. at 379.  Indeed, the Medicaid Act provisions upheld as privately enforceable in *Talevski* also contain a "substantial compliance" standard.  *See* 42 U.S.C. § 1396r(h)(4); *Medina*, 606 U.S. at 379 ("In *Talevski*, after all, the Court found two FNHRA

provisions to confer individual rights even though that statute also speaks of 'substantial compliance.'")  While discussing this language in *Medina*, the Court reiterated that what matters is whether the provisions at issue use "explicit and unmistakable 'rights-creating language.'"  *Id.* at 379 (citing *Talevski*, 599 U.S. at 186).  The EPSDT provisions at issue here, like the FNHRA provisions at issue in *Talevski*, do precisely that.  They create an entitlement for children that does not exist for other Medicaid-eligible individuals—a right to receive all medically necessary services whether or not a state decides to include those services in its federally approved Medicaid State plan.

**Fourth**, Defendants incorrectly argue that if the EPSDT provisions were privately enforceable then that would open the "floodgates" to allowing private enforceability of other Medicaid plan requirements.  (Defs.' Mot. 9-10.)  However, only a "tiny handful of the nearly 90 provisions contained in the Medicaid Act's list of state-plan requirements" have ever been found privately enforceable under the *Gonzaga* test.  *Medina*, 606 U.S. at 414-15 (Jackson, J., dissenting).  The EPSDT provisions are among them.  Affirming the substantial case law regarding the EPSDT provisions would not alter that fact or, in any way, open the floodgates to other Medicaid State plan requirements.[14]  Rather, it would maintain steady waters and not, as Defendants seek to do, upend decades of legal precedent.  Moreover, as this Court held in *Salazar*,

---

[14] Indeed, Congress clearly contemplated that some of the Medicaid State plan provisions were privately enforceable.  If it did not intend to create privately enforceable rights for any of those provisions, the so-called "*Suter* fix" that it enacted at 42 U.S.C. § 1320a-2 would be mere surplusage.  That provision states that "a provision is not to be deemed unenforceable because of its inclusion in a section of this chapter requiring a State plan or specifying the required contents of a State plan."  42 U.S.C. § 1320a-2.  Thus, this provision "explicitly 'overturn[ed]' any suggestion in *Suter* that state-plan requirements cannot be enforced under § 1983[.]"  *Medina*, 606 U.S. at 404 (Jackson, J., dissenting).

"[w]hile the inquiry into the statute's structure is indeed important, it cannot ignore the actual language Congress used in the statute."  729 F. Supp. 2d at 270 n.12.

Likewise, *Medina* addressed the scope of enforceability for other Medicaid State plan requirements only after its fulsome discussion of the actual text of the "any qualified provider" provision.  *Medina*, 606 U.S. at 377-78.  Multiple courts have held that the text of the EPSDT provisions clearly confer a private right of action, regardless of where they are located in the statute structurally, and even acknowledge that other portions of the Medicaid State plan requirements would not create rights under the *Gonzaga* test.  *See Sabree v. Richman*, 367 F.3d 180, 192 (3d Cir. 2004) ("[I]t is evident, at least to us, that the statutory language, despite countervailing structural elements of the statute, unambiguously confers rights which plaintiffs can enforce."); *Salazar*, 729 F. Supp. 2d at 270 n.12 (same).  To hold otherwise, would, in fact, create a greater risk of opening the floodgates to revisiting decades of well-established, well-reasoned case law.

## IV.    DEFENDANTS ASK THIS COURT TO DRAMATICALLY ALTER THE LANDSCAPE OF MEDICAID PRIVATE ENFORCEABILITY

Defendants ask this Court to be the first to apply an unduly restrictive reading of *Medina*, one unsupported by the plain language of the opinion, to deny private enforceability to ***any*** Spending Clause statute that does not explicitly include the term "'rights,' 'privileges,' 'immunities,' or any other arguably synonymous term." (Defs.' Mot. 8.)  But Congress would have had no reason to use those magic words when drafting the law decades before the *Medina* decision in order to confer privately enforceable rights.  This is also undoubtedly true for other critical Spending Clause statutes, as Defendants do not restrain their argument in any manner to the specific EPSDT provisions alleged by Plaintiffs.

The scope of relief Defendants are seeking cannot be overstated.  Beyond the array of mental health services that Plaintiffs have sought under the EPSDT provisions, plaintiffs across

the country have used the EPSDT mandate to challenge State failures to provide a host of critical medical services to children. *See, e.g.*, *O.B. v. Norwood*, 838 F.3d 837 (7th Cir. 2016) (failure to provide in-home shift nursing services for children in very poor health); *Mitchell v. Johnston*, 701 F.2d 337 (5th Cir. 1983) (failure to provide children's dental services); *S.D.*, 391 F.3d 581 (failure to provide incontinence supplies for child with spina bifida); *Biewald v. State*, 451 A.2d 98 (Me. 1982) (failure to provide urine testing materials for diabetic children).

## V.   DEFENDANTS HAVE WAIVED THEIR RIGHT TO CHALLENGE THE PRIVATE ENFORCEABILITY OF PLAINTIFFS' MEDICAID ACT CLAIM

Defendants' arguments fail for all the reasons set forth above. Moreover, Defendants lose on procedural grounds as they waived the argument they now raise in their Motion. In admitting that *Medina* did not cause a "sea-change" in the law and that *Gonzaga* remained the correct test over the last two decades since it was decided, Defendants have admitted that they have always had the ability to challenge the private enforceability of the EPSDT provisions as inconsistent with the *Gonzaga* test, but chose not to. (Defs.' Mot. 12.) Defendants even admitted at the pre-motion conference their long-held belief that this Court's *Salazar* opinion was wrongly decided, yet Defendants declined to challenge the decision or the private enforceability of Plaintiffs' Medicaid Act claim in their pre-answer motion to dismiss or at any other point since this case was filed seven years ago. (*See* Hearing Tr., 22:15-23, Oct. 10, 2025.) Accordingly, Defendants waived their right to challenge the private enforceability of the EPSDT provisions. *See Sanders v. District of Columbia*, 601 F. Supp. 2d 97, 100 (D.D.C. 2009) (denying defendants' motion for judgment on the pleadings for failure to provide the Court with "sufficient basis to adopt their new reasoning" not made in a prior motion to dismiss).

## **CONCLUSION**

For the reasons set forth above, Plaintiffs respectfully request that the Court deny Defendants' Motion for Judgment on the Pleadings in its entirety.

Respectfully submitted this 22nd day of December, 2025.

*/s/ Laurent M. Abergel*

Sandra J. Bernstein (D.C. Bar No. 455355)
Mary Nell McGarity Clark (D.C. Bar No. 419732)
Eva I. Richardson (D.C. Bar No. 1724670)
DISABILITY RIGHTS DC AT UNIVERSITY LEGAL SERVICES
220 I Street NE, Suite 130
Washington, D.C. 20002
202-547-0198

Ira A. Burnim (D.C. Bar No. 406154)
Megan E. Schuller (D.C. Bar No. 90023318)
Jennifer E. Mathis (D.C. Bar No. 444510)
Anne Raish (appearing *pro hac vice*)
Claire Shennan (D.C. Bar No. 90031066)
JUDGE DAVID L. BAZELON CENTER FOR MENTAL HEALTH LAW
1101 15th Street NW, Suite 205
Washington, D.C. 20005
202-467-5730

Johnathan Smith (D.C. Bar No. 1029373)
Nina Monfredo (appearing *pro hac vice*)
NATIONAL CENTER FOR YOUTH LAW
818 Connecticut Avenue, Suite 425
Washington, DC 20006
510-835-8098

Howard Schiffman (D.C. Bar No. 358814)
Jason T. Mitchell (D.C. Bar No. 1005757)
Laurent M. Abergel (D.C. Bar No. 1718921)
MCDERMOTT WILL & SCHULTE LLP
500 North Capitol Street NW
Washington, DC 20001
202-729-7470

*Counsel for Plaintiffs*