UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **M.J.** *et al.*,<br><br>    **Plaintiff,**<br><br>    v.<br><br>**DISTRICT OF COLUMBIA,** *et al.*,<br><br>    **Defendants.** | **Civil Action No. 1:18-cv-1901-ACR** |

<u>**DEFENDANTS' REPLY IN SUPPORT OF THEIR**</u>
<u>**MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS**</u>

**Table of Contents**

INTRODUCTION ........................................................................................................................ 1

ARGUMENT ................................................................................................................................ 1

    I.      The EPSDT Provision Does Not Contain Rights-Creating Language. ........................... 1

          A.    Most of Plaintiffs' Arguments Are Immaterial. ................................................... 2

          B.    Plaintiffs' Analysis of the Statute Considered in *Talevski* Is Misleading. ........ 6

          C.    Plaintiffs Identify No Rights-Creating Language in the EPSDT Provision. .... 10

    II.     *Medina* Abrogates Lower Court Precedents to the Contrary. ....................................... 10

    III.    Defendants Have Not Waived Any Arguments for Failure To State a Claim. ............... 14

CONCLUSION ........................................................................................................................... 15

## Table of Authorities

**Cases**                                                                                           **Pages(s)**

*31 Foster Children v. Bush*,
  329 F.3d 1255 (11th Cir. 2003) ........................................................................................... 7
*\*Alexander v. Sandoval*,
  532 U.S. 275 (2001) ............................................................................................................ 5
*Att'y Gen. of United States v. Wynn*,
  636 F. Supp. 3d 96 (D.D.C. 2022)....................................................................................... 5
*Blessing v. Freestone*,
  520 U.S. 329 (1997) ....................................................................................................Passim
*Cannon v. Univ. of Chicago*,
  441 U.S. 677 (1979) .......................................................................................................... 12
*Chambers v. District of Columbia*,
  35 F.4th 870 (D.C. Cir. 2022)............................................................................................ 10
*City v. Tuttle*,
  471 U.S. 808 (1985) .......................................................................................................... 11
*Cruz v. Zucker*,
  116 F. Supp. 3d 334 (S.D.N.Y. 2015) ............................................................................... 13
*Curtis v. Inslee*,
  154 F.4th 678 (9th Cir. 2025) .............................................................................................. 2
*\*Gonzaga University v. Doe*,
  536 U.S. 273 (2002) ....................................................................................................Passim
*\*Health and Hosp. Corp. v. Talevski*,
  599 U.S. 166 (2023) .................................................................................................... 1, 2, 7
*In re Grand Jury Investigation*,
  916 F.3d 1047 (D.C. Cir. 2019).......................................................................................... 11
*Isaac v. Carlson*,
  775 F. Supp. 3d 1296 (N.D. Ga. 2025).............................................................................. 14
*\*Medina v. Planned Parenthood*,
  606 U.S. 357 (2025) ....................................................................................................Passim
*Midwest Foster Care & Adoption Ass'n v. Kincade*,
  712 F.3d 1190 (8th Cir. 2013) ......................................................................................... 7, 8
*N.B. v. Hamos*,
  Case No. 11 C 06866, 2013 WL 6354152 (N.D. Ill. Dec. 5, 2013) .................................. 13
*Parents League for Effective Autism Servs. v. Jones-Kelley*,
  565 F. Supp. 2d 895 (S.D. Ohio 2008) ............................................................................. 13
*\*Pennhurst v. Halderman*,
  451 U.S. 1 (1981) ........................................................................................................Passim
*Riccio v. Sentry Credit, Inc.*,
  954 F.3d 582 (3d Cir. 2020) ........................................................................................ 10, 11
*S.D. v. Hood*,
  391 F.3d 581 (5th Cir. 2004) ........................................................................................ 11, 12
*S.R. v. Pennsylvania Department of Human Services*,
  309 F. Supp. 3d 250 (M.D. Pa. 2018)................................................................................ 13

*Sabree v. Richman*,
  367 F.3d 180 (3d Cir. 2004) .................................................................................................. 12
*Salazar v. District of Columbia*,
  729 F. Supp. 2d 257 (D.D.C. 2010) ................................................................................. 10, 11
*Sanders v. District of Columbia*,
  601 F. Supp. 2d 97 (D.D.C. 2009) ................................................................................... 14, 15
*United States v. Duvall*,
  740 F.3d 604 (D.C. Cir. 2013) ............................................................................................... 14

**Statutes**

42 U.S.C. § 1320a-2 ........................................................................................................................ 5
42 U.S.C. § 1396a ......................................................................................................................... 10
42 U.S.C. § 1396a(23) .................................................................................................................... 7
42 U.S.C. § 1396a(28) .................................................................................................................... 7
42 U.S.C. § 1396a(43) (EPSDT) .................................................................................................... 7
42 U.S.C. § 1396a(a)(10)(A)(i) .................................................................................................... 12
42 U.S.C. § 1396d ...................................................................................................................... 6, 7
42 U.S.C. § 1396r ........................................................................................................................... 7
42 U.S.C. § 1396r(c)(2)(A) ............................................................................................................ 8

## INTRODUCTION

Plaintiffs make a valiant effort to save their claims for violation of the Early and Periodic Screening, Diagnosis, and Testing (EPSDT) provision of the Social Security (or Medicaid) Act. *See* Pls.' Mem. of Points and Authorities in Opp'n to Defs.' Mot. for Partial J. on the Pleadings [155] (Opp'n); Defs.' Mot. for Partial J. on the Pleadings [150] (Motion or Mot.). Their best argument is that the EPSDT provision creates a binding obligation that is indisputably intended to benefit a clearly defined group, including Plaintiffs. But that is simply not enough. Congress can create a duty and a benefit without *also* intending to create a privately enforceable right, of the sort that would subject States and cities to expensive litigation, and that necessarily "divert[s] money and attention away from social services" and other priorities. *Medina v. Planned Parenthood*, 606 U.S. 357, 368–69, 384–85 (2025). If Congress intends to create a federal right with a private remedy, it must do so "unambiguously," using unmistakably clear statements of its intention. *See* Mot. at 7–8 (citations to ECF pagination); *id.* at 19–20. The EPSDT provision does not contain such rights-creating language, it only creates a benefit.

## ARGUMENT

**I.     The EPSDT Provision Does Not Contain Rights-Creating Language.**

Across many pages and in many ways, Plaintiffs' opposition raises only possibly necessary, but not sufficient, indications of statutory intent to create an enforceable right, and misrepresents the differences between the statute at issue here and the one considered in *Health and Hosp. Corp. v. Talevski*, 599 U.S. 166 (2023). At bottom, Plaintiffs still have not identified any "rights-creating" language in the text of the EPSDT provisions themselves and thus cannot show they are privately enforceable.

To recap, *Gonzaga* and *Medina* made crystal clear that even if a statute would pass the test developed by *Wright*, *Wilder*, and *Blessing*, that does not mean a court should find the statute

creates a privately enforceable federal right. *See* Mot. at 8–9; *Medina*, 606 U.S. at 369 n.1, 375–76 (2025). The three-factor *Blessing* test is as follows: "First, Congress must have intended that the provision benefit the plaintiff." *Blessing v. Freestone*, 520 U.S. 329, 340 (1997). "Second, the plaintiff must demonstrate that the right assertedly protected . . . is not so vague and amorphous that its enforcement would strain judicial competence." *Id*. at 340–41 (internal quotation marks omitted). "Third, the statute must unambiguously impose a binding obligation on the States." *Id*. at 341. "In other words, the provision giving rise to the asserted right must be couched in mandatory, rather than precatory, terms." *Id*.

As explained in *Gonzaga University v. Doe*, even if a statute appears to satisfy each of the *Blessing* factors, something more is required to show Congressional intent to create an enforceable right: the statute itself must indicate such intent in "clear and unambiguous terms." 536 U.S. 273, 290 (2002). An intent only to *benefit* the plaintiffs is not enough. *Id*. at 282–83. And as explained in *Medina*, the statute considered by the Court in *Talevski* now provides "the only reliable yardstick against which to measure whether spending-power legislation confers a privately enforceable right." *Medina*, 606 U.S. at 377.

A.  **Most of Plaintiffs' Arguments Are Immaterial.**

Plaintiffs' opposition argues over and over again that the EPSDT provision is privately enforceable because it creates a mandatory duty. *See* Opp'n at 17, 18, 19, 21, 25. But the existence of a mandatory duty is necessary, not sufficient, to show the existence of a federal right. *See*, *e.g.*, *Curtis v. Inslee*, 154 F.4th 678, 686–87 (9th Cir. 2025) (reiterating that statues lacking mandatory duties "do not create enforceable rights"); *Pennhurst v. Halderman*, 451 U.S. 1, 13–27 (1981). In *Pennhurst*, for example, the Court considered whether the following language created a substantive federal right:

2

> Congress makes the following findings respecting the rights of persons with developmental disabilities:
> (1) Persons with developmental disabilities have a right to appropriate treatment, services, and habilitation for such disabilities.
> (2) The treatment, services, and habilitation for a person with developmental disabilities should be designed to maximize the developmental potential of the person and should be provided in the setting that is least restrictive of the person's personal liberty.
> (3) The Federal Government and the States both have an obligation to assure that public funds are not provided to any institutio[n] ... that—(A) does not provide treatment, services, and habilitation which is appropriate to the needs of such person; or (B) does not meet the following minimum standards . . . .

*Pennhurst*, 451 U.S. at 13 (quoting the Developmentally Disabled Assistance and Bill of Rights Act, P.L. 94-103, sec. 111, 89 Stat. 486, 502 (1975), *available at* https://tinyurl.com/yzrax3un). Although the language expressly stated that specified persons have a "right to appropriate treatment, services, and habilitation," the Court found this language did *not* create any substantive right because nothing suggested the creation of a mandatory duty on the government. 451 U.S. at 13–14, 18–19. The law did *not* require the government to ensure appropriate treatment, services, and habilitation as a "condition" of receiving the federal funding on offer. *Id*. at 13–14. Put another way, the law declared that such right existed, generally speaking, but did not require the government to fulfill it. *Id*. at 15, 27. At best, the language did "no more than express a congressional preference for certain kinds of treatment." *Id*. at 19. Thus, it seems for a statute to create a federal right, it must at least create a mandatory duty.

Language creating a duty may be necessary, but it is not sufficient, because Congress might create a duty with clear intent to *benefit* a class of persons without *also* creating an enforceable right. *Medina*, 606 U.S. at 368–69 (explaining that choice of remedy is a delicate policy question); *id*. at 377–78. In *Medina*, for example, the Court was faced with statutory language that *did* create an obligation on states to provide a benefit as a condition of receiving

3

the federal funding on offer. *Id*. at 377–78. It stated: "Doubtless, this language speaks to what a State must do to participate in Medicaid, and a State that fails to fulfill its duty might lose federal funding." *Id*. at 377. "Doubtless, too, this provision seeks to benefit both providers and patients." *Id.* at 377–78. Still, the language did *not* create an enforceable right because it lacked the "clear and unambiguous rights-creating language" showing the intent to create more than a benefit. *Id*. (internal quotation marks omitted).

Plaintiffs' repetition of the simple point that the EPSDT provision creates a "mandatory" and "not discretionary" obligation therefore gets them in the ballpark but cannot win the day. *See* Opp'n at 17 (arguing that language that "completely remove[s] the States' discretion . . . signals a clear intent to provide rights to . . . beneficiaries"); *id*. at 18 (arguing that "the EPSDT provisions repeatedly focus on the mandatory provision of 'medically necessary' services"); *id*. at 19 (arguing that a statutory revision "made express that EPSDT beneficiaries are entitled to the entire array of services . . . and that it is not optional"); *id*. at 21 ("In short, *Medina* determined there was State discretion under the 'any qualified provider' provision, whereas . . . the EPSDT provisions are not discretionary . . . .");[1] *id*. at 25 (describing holding of recent district court case as relying upon finding that the EPSDT provisions created mandatory obligations).

Plaintiffs raise various other arguments that run afoul of relevance. They point to the fact that the EPSDT provision contains "specific, action-oriented" language. Opp'n at 17. But they do not explain why, even if true, that would matter. *Id*. They point to legislative history, *id*. at 19–20, but *Medina* itself reiterated that "speculation about what Congress may have intended matters far less than what Congress actually intended," and what it actually said in the form of

---

[1] *But see Medina*, 606 U.S. at 377–78 (describing language as creating mandatory duty).

4

the law, 606 U.S. at 381.  Indeed, as a general rule of statutory construction, legislative history may be employed only to clarify an ambiguous statute.  *E.g.*, *Att'y Gen. of United States v. Wynn*, 636 F. Supp. 3d 96, 105 (D.D.C. 2022) (Boasberg, J.) (collecting Supreme Court cases), *aff'd*, 104 F.4th 348 (D.C. Cir. 2024).  Here, if the statute only ambiguously indicates an intent to create a federal right, Plaintiffs have already lost.  *Medina*, 606 U.S. at 385.  Similarly, any "expectations" Congress may have "formed in light of the contemporary legal context" about how the language of the EPSDT provision would be interpreted cannot make up for the lack of unambiguous statutory text:  the Supreme Court has "never accorded dispositive weight to context shorn of text."  *Alexander v. Sandoval*, 532 U.S. 275, 288 (2001).  *But see* Opp'n at 20.

Plaintiffs also argue that *Medina* "took specific issue with the fact that the provision" considered there "contained a dual focus that would 'benefit both providers and patients' rather than solely beneficiaries."  Opp'n at 21.  It is true *Medina* said the provision would benefit both providers and patients, but nothing in the case suggests that was an "issue" or somehow showed the provision there did *not* create an enforceable right.  *See generally* 606 U.S. at 377–79 (Plaintiffs' cited pages).  It thus creates no basis to distinguish the EPSDT provision.

Plaintiffs also point to statutory language enacted at 42 U.S.C. § 1320a-2, commonly known as the "*Suter* fix," which states that "a provision is not to be deemed unenforceable because of its inclusion in a section of this chapter requiring a State plan or specifying the required contents of a State plan."  Opp'n at 34 n.14.  They argue this proves that Congress "clearly contemplated that some of the Medicaid State plan provisions were privately enforceable."  *Id*.  That too may be true, but it does not show Congress meant for *this* provision—the EPSDT provision—to be privately enforceable.  *See Medina*, 606 U.S. at 379–80 (citing *Suter* fix to show that inclusion in a State plan does not make a provision *un*enforceable).

5

The Court can set aside all these considerations because they are immaterial.

### B.    Plaintiffs' Analysis of the Statute Considered in *Talevski* Is Misleading.

As stated above, the *Medina* Court said that the statute at issue in *Talevski* supplies the "only reliable yardstick" by which to measure whether statutory words create enforceable rights. *Medina*, 606 U.S. at 377.[2]  Plaintiffs therefore understandably strain to match the language of the EPSDT provision with the language of the law considered there, the Federal Nursing Home Reform Act, or FNHRA for short.  But this effort is a swing and a miss.

Plaintiffs argue that, like the FNHRA, and unlike the free-choice-of-provider language considered in *Medina*, Congress "set . . . apart" the EPSDT provisions from the Medicaid State plan requirements by "further defin[ing]" both obligations outside the State plan requirements. Opp'n at 18.  That is true, but the Supreme Court did not identify "further definition" outside the State plan requirements as significant; rather, it highlighted that the key FNHRA requirements were "set . . . apart *from others*." *See* Opp'n at 18 (quoting *Medina*, 606 U.S. at 380) (emphasis added).  Unlike the FNHRA, the EPSDT provision is not set "apart from othe[r]" requirements.

Section 1396a of Title 42 establishes a long list of things that a Medicaid State plan must include.  It is titled "State plans for medical assistance" and begins "(a) Contents."  Plaintiffs rely in part on subsection (43) of that Section to show an enforceable right, and in part on a separate Code section, 42 U.S.C. § 1396d. *See* Opp'n at 9.  More specifically, Plaintiffs rely upon the

---

[2]    Plaintiffs' reliance on language in *Gonzaga* describing the reasoning of *Cannon* is therefore inapposite. *See* Opp'n at 30–31.  It is true the Supreme Court has found language that did not include the words "right" or "rights" in the statutory text to be privately enforceable. *Id*. But the *Medina* Court expressly rejected the case that reached that conclusion, *Cannon*, and identified the language considered in *Talevski* as "the *only*" valid comparator.  606 U.S. at 369 n.1, 377. *This* Supreme Court has never found enforceable rights in a statute that does not contain the words "right" or "rights." *Id*.  It seems it would therefore be error to rely on any comparison to the language of Title VI to find the EPSDT provisions enforceable.

6

definition of the term "Early and period screening, diagnostic, and treatment services" in subsection (r). A quick glance at the full text of Section 1396d shows that the EPSDT provision is *not* set apart "from others." Section 1396d is titled "Definitions," and it defines *dozens* of terms that appear across the Social Security (or Medicaid) Act. *See id*. (stretching from subsection (a) to subsection (kk)). The FNRHA language that the Supreme Court found enforceable, in contrast, *is* set apart in a totally different Code section, 42 U.S.C. § 1396r. Section 1396r is titled "Requirements for nursing facilities," and it pertains to nothing else.

What is more, statutory definitions alone, such as the one found in Section 1396d(r), cannot create enforceable rights. *Midwest Foster Care & Adoption Ass'n v. Kincade*, 712 F.3d 1190, 1197 (8th Cir. 2013) ("Finding an enforceable right solely within a purely definitional section is antithetical to requiring unambiguous congressional intent."); *31 Foster Children v. Bush*, 329 F.3d 1255, 1271 (11th Cir. 2003) (finding statutory language that is "definitional in nature" "cannot" "alone" "supply a basis for conferring rights enforceable under Section 1983"). The operative, rights-creating language must therefore be found in the other section Plaintiffs rely upon, Section 1396a. And *that* language is a part of the "Contents" for the requirements of a State plan, *just like* the free-choice-of-provider language considered in *Medina*. *Compare* 42 U.S.C. § 1396a(43) (EPSDT) *with Medina*, 606 U.S. at 363 (identifying 42 U.S.C. § 1396a(23) as provision at issue). Although the FNHRA requirements are also cross-referenced in that same Section, *see* 42 U.S.C. § 1396a(28), the *Talevski* Court did not rely on the words found in that Section. 599 U.S. at 184. Rather, *Talevski* expressly found that it was the set-apart provisions in Section 1396r that passed the *Gonzaga* test. *Id.*; *see also Medina*, 606 U.S. at 378 (quoting only FNHRA language from Section 1396r, not language from Section 1396a(a)(28)).

7

Plaintiffs also misrepresent the FNHRA language approved in *Talevski*. *See* Opp'n at 31. Plaintiffs claim that one of the subsections *Talevski* found enforceable "***does not*** contain the term 'right' or 'rights,'" citing 42 U.S.C. § 1396r(c)(2)(A). *Id*. (emphasis in original). Plaintiffs are incorrect. That provision states as follows:

> (c) Requirements relating to residents' **rights** . . .
>
> > (2) Transfer and discharge **rights**
> >
> > > (A) In general
> >
> > A nursing facility must permit each resident to remain in the facility and must not transfer or discharge the resident from the facility unless . . . .

42 U.S.C. § 1396r(c)(2)(A) (emphasis added). Plaintiffs completely dismiss the *two* appearances of the word "rights" in this provision, apparently because they consider the words part of a "header." Opp'n at 31. They also suggest that *Medina* avoided consideration of "the title or heading of a provision." *Id*. at n.13. Again, incorrect. The language above is not merely a "title" or inoperative heading; it is a part of the U.S. Code, and a part of the law at issue. *See*, *e.g.*, 42 U.S.C. § 1396r(c)(2)(A); *Medina*, 606 U.S. at 378 (quoting an FNHRA provision with all such "headings" as part of the text of the law); *id*. at 406–07 (Jackson, J., dissenting) (emphasizing that "the predischarge-notice provision referred to 'transfer and discharge *rights*' and stated that nursing homes 'must not transfer or discharge [a] *resident*' without notice").

Congress sometimes includes titles or headings in the text of an act that it does not *also* make part of the law—*Medina* discussed an example of this. 606 U.S. at 382–83. Responding to the dissent, the majority explains:

> [W]hile a title may underscore that the statutory text creates a right, "[i]t has long been established that the title of an Act cannot enlarge or confer powers" by itself. *Pennhurst*, 451 U.S. at 19, n.14 (internal quotation marks omitted); *see* A. Scalia & B. Garner, Reading Law:

8

> The Interpretation of Legal Texts 221–224 (2012). That must be especially so where, as here, Congress chose *not* to enact into the U.S. Code the very title on which the dissent relies. *See* 81 Stat. 903 (enacting the title of a different section, but not "free choice by individuals eligible for medical assistance," into the U. S. Code (capitalization omitted)).

*Medina*, 606 U.S. at 382–83 (emphasis in original). An image of the act may help:



81 Stat. 903–04, *available at* https://tinyurl.com/4wsn5zx6. The text of the act shows a free-floating title above Sec. 227, "Free Choice By Individuals Eligible for Medical Assistance." *Id.* In *Medina*, the dissent points to this as evidence of Congressional intent to create a privately enforceable right. 606 U.S. at 408. The majority agrees it might suggest intent but emphasized that this language was *not* enacted as part of the law. 606

9

U.S. at 382–83; *see also* 42 U.S.C. § 1396a (having no such heading). The FNHRA headings Plaintiffs discount, in contrast, *are* part of the statutory text itself. *Supra*.

In short, Plaintiffs' analysis of the FNHRA's text is misleading and supplies no basis for this Court to favorably compare the FNHRA and EPSDT provisions.

### C. Plaintiffs Identify No Rights-Creating Language in the EPSDT Provision.

Ultimately, Plaintiffs still cannot point to any rights-creating language in the EPSDT provisions because under the *Medina* test, there is none. It is true the Parties agree that *Medina* "simply applies the *Gonzaga* test," Opp'n at 15, but Plaintiffs miss the crucial point that *Medina* exists because the Supreme Court believes the lower courts misunderstood and misapplied *Gonzaga*. *See* Mot. at 16–18. Individual-centric language is not enough. *Id.* at 9. Mandatory language is not enough. *Id.* No clear-statement rule is needed; we are all textualists now, in *every* case. *Cf. Chambers v. District of Columbia*, 35 F.4th 870, 879–80 (D.C. Cir. 2022) (en banc) (overruling prior Circuit precedent because it "failed to comport with the Supreme Court's command to enforce plain and unambiguous statutory language" and was "grounded in a mode of statutory construction that has been foreclosed by the Supreme Court") (internal quotation marks omitted); *Riccio v. Sentry Credit, Inc.*, 954 F.3d 582, 592–93 (3d Cir. 2020) (en banc) (same, overruling prior precedent in light of changed approach to statutory interpretation). Congress must use language unambiguously showing its intent to create a privately enforceable substantive federal right, and it has not done so here. Mot. at 9–14.

### II. *Medina* Abrogates Lower Court Precedents to the Contrary.

For similar reasons, Plaintiffs' reliance on pre-*Medina* cases is misplaced. Plaintiffs first point to the decision in *Salazar v. District of Columbia*, 729 F. Supp. 2d 257 (D.D.C. 2010), Opp'n at 15–16, but the court in that case concluded that the Supreme Court had not abandoned *Blessing* in *Gonzaga*, and applied *Blessing* and *Wilder* in its consideration of whether a private

right of action existed under the EPSDT provisions, *Salazar*, 729 F. Supp. 2d at 267, 269–71. *Medina* rejected this reading of *Gonzaga*, noting that although "[s]ome lower court judges . . . still consult *Wilder*, *Wright*, and *Blessing* when asking whether a spending-power statute creates an enforceable individual right[, t]hey should not." 606 U.S. at 378 (internal citation omitted).

Plaintiffs note that "**every**" circuit court that has reviewed the enforceability of the EPSDT provisions has found them to be privately enforceable. Opp'n at 23 (emphasis in original). Though true, this statement elides that they cite only *one* circuit—the Sixth—that has directly ruled on this issue. And, as the District argued in its Motion, the Sixth Circuit decisions also relied upon the reasoning of pre-*Medina* cases that *Medina* repudiated. Mot. at 14. Plaintiffs also point to the Fifth Circuit's decision in *S.D. v. Hood*, 391 F.3d 581 (5th Cir. 2004), Opp'n at 23–24, but the quoted analysis was mere dicta, not a "holding." *Contra* Opp'n at 23.[3]

Regardless, this Court is of course not bound by any Fifth Circuit decision (holding or dicta), and *S.D.* is not persuasive because it too relies upon repudiated reasoning. To start, the panel cited *Blessing* and *Wilder* as setting forth the relevant test. *S.D.*, 391 F.3d at 602. The panel acknowledged *Gonzaga*'s emphasis on the need to find "'rights-creating' language." *Id*.

---

[3]     Statements that are "not necessary to" a court's holding are dicta. *In re Grand Jury Investigation*, 916 F.3d 1047, 1053 (D.C. Cir. 2019) (citing, *e.g.*, *Okla. City v. Tuttle*, 471 U.S. 808, 642 (1985) (Stevens, J., dissenting)). In *S.D.*, the Fifth Circuit clearly stated that the parties did "*not* dispute that S.D.'s right to receive services under the EPSDT program is enforceable in an action brought under [Section] 1983." 391 F.3d at 606 (emphasis added). Rather, the disputed issue was whether the plaintiff had an enforceable right to specific medical supplies at issue based upon the relevant agency's "construction of the statute" by rule "rather than on the statutory text itself." *Id*. The panel's analysis of "the statutory text itself" is therefore dicta. *E.g.*, *In re Grand Jury Investigation*, 916 F.3d at 1053. And the court's actual "holding," in contrast, is that "the regulations implementing the statute . . . are authoritative interpretations of the statute and are enforceable by [Section] 1983" and that "medically necessary incontinence supplies fall within the natural and plain meaning of the term 'medical supplies' and [the relevant agency] has interpreted the 'home health care services' category as specifically including such supplies." *Id*. at 607.

11

(quoting *Gonzaga*, 546 U.S. at 284). And the panel found some language— "A State Plan must provide"—that it believed to be indistinguishable "from the 'No person shall' language of Titles VI and IX which was held up in *Gonzaga* as the prototypical rights-creating language." *Id*. (quoting 42 U.S.C. § 1396a(a)(10)(A)(i) and then *Sabree v. Richman*, 367 F.3d 180, 190 (3d Cir. 2004) (quoting Titles VI and IX)). The plain meaning of "must provide," however, indicates only that the EPSDT benefits are mandatory, or binding, obligations; and, as discussed above, that is not enough to find Congress *also* intended to make the benefits into enforceable *rights*. Section I, *supra*. Indeed, that exact question is *also* the third factor in the *Blessing* test. *See Blessing*, 520 U.S. at 341 (establishing third factor as whether the provision "unambiguously impose[s] a binding obligation on the States"). If it were enough to find that a statute creates a binding obligation, there would be no need to further identify "rights-creating" language, as required by *Gonzaga* and *Medina*, or to repudiate *Blessing* at all. Finally, *Medina* also expressly stated that the Court "has retreated from" another prior Supreme Court case, *Cannon v. Univ. of Chicago*, 441 U.S. 677 (1979), that found same language in Title VI to be dispositive. 606 U.S. at 369 n.1. *Cannon* "exemplified an expansive rights-creating approach that later decisions abandoned," and, per *Medina*, *Cannon*'s "language no longer controls." *Id*. It is therefore hard to imagine that the current Supreme Court would agree with the reasoning of the Fifth Circuit in *S.D.* and hard to see how its logic survives *Medina*. *See also* n.2 *supra*.

Plaintiffs further rely on five district court cases that have found the EPSDT provision to be privately enforceable. Opp'n at 23–24. However, a close reading of these cases demonstrates that each of these courts found the EPSDT provision enforceable because it is clearly intended to benefit children and, most of all, because it uses mandatory language. Those considerations are both *Blessing* factors. *Blessing*, 520 U.S. at 341.

- In *Cruz v. Zucker*, 116 F. Supp. 3d 334 (S.D.N.Y. 2015), the defendant did not contest the enforceability of the EPSDT provisions and the court *sua sponte* determined that the provisions at issue were enforceable because the provisions are "focused on the rights of Medicaid-eligible youth to receive the enumerated services"; provide "detailed, objective, and manageable standards"; and are binding on the states. *Id.* at 338.

- In *Parents League for Effective Autism Servs. v. Jones-Kelley*, 565 F. Supp. 2d 895 (S.D. Ohio 2008) the court applied the *Blessing* test, identifying the mandatory nature of the EPSDT provisions and that "eligible children are entitled to screening and treatment services" as dispositve. *Id.* at 903–04.

- In *N.B. v. Hamos*, Case No. 11 C 06866, 2013 WL 6354152 (N.D. Ill. Dec. 5, 2013), the court found that the EPSDT provision satisfies the *Blessing* test because the plaintiffs were the intended beneficiaries of the program, the EPSDT program was not too vague and amorphous, and the statute uses mandatory terms. *Id.* at *4.

- In *S.R. v. Pennsylvania Department of Human Services*, 309 F. Supp. 3d 250 (M.D. Pa. 2018), the court relied on the relevant section beginning with "A State plan must provide" and certain words having an "individual focus." *Id.* at 261.

In effect, then, each of these courts relied on *Blessing* factors to find that the statute used "rights-creating" language. But *Medina* makes clear that the *Blessing* test is not a sufficient basis for finding that a statutory provision contains rights-creating language: mandatory, specific language might create a duty and benefit, but it is not enough to show Congress has created an enforceable right. *Supra*.

13

Plaintiffs' fifth cited district court case—*Isaac v. Carlson*, 775 F. Supp. 3d 1296 (N.D. Ga. 2025)—was decided after *Talevski* and frames its inquiry with different words. *See* Opp'n at 25. But this case, too, boils down to a finding that the EPSDT provision is rights-creating because it is clearly intended to benefit children and creates a mandatory duty. *See id.* at 1335. Such language is not sufficient under *Medina*. *See* 606 U.S. at 377–78. The *Isaac* court also analogized the EPSDT provision to the Boren Amendment that the Supreme Court found to create enforceable rights in *Wilder*. 775 F. Supp. 3d at 1336. But the Supreme Court has since expressly repudiated the analysis in *Wilder*, *Medina*, 606 U.S. at 378, and the *Isaac* court's reliance on *Wilder* weighs against any possible persuasive force of its analysis.

In sum, none of the cases Plaintiffs cite bind this Court, except *Medina*. *See United States v. Duvall*, 740 F.3d 604, 609 (D.C. Cir. 2013) (Kavanaugh, J., concurring) ("Vertical stare decisis is absolute and requires lower courts to follow applicable Supreme Court rulings in every case."). And even if they did, none are persuasive because *Medina* rejected their reasoning.

### III.     Defendants Have Not Waived Any Arguments for Failure To State a Claim.

Finally, Plaintiffs' waiver argument is contradicted by the plain text of the Federal Rules of Civil Procedure. *See* Opp'n at 36. Rule 12(c) provides that a party may move for judgment on the pleadings "[a]fter the pleadings are closed" as long as it is "early enough not to delay trial." And Rule 12(h)(2) further provides that a party may raise the defense of failure to state a claim upon which relief can be granted in a pleading, by motion under Rule 12(c), or at trial. Plaintiffs point to *Sanders v. District of Columbia*, 601 F. Supp. 2d 97 (D.D.C. 2009), Opp'n at 36, but this case does not support their argument. Rather than relying on any finding of waiver, the *Sanders* court carefully considered the legal arguments presented for judgment on the pleadings, including considering an intervening district court decision. *See Sanders*, 601 F.

14

Supp. 2d at 100–01. The only discussion of waiver involved a potential affirmative defense. *See id.* at 100 (discussing the plaintiffs' waiver argument and noting that "[w]hether this theory of liability, or lack thereof, is an affirmative defense that must be raised or be forever waived, defendants have not given the Court sufficient basis to adopt their new reasoning"). Plaintiffs seemingly contend that a defendant waives the right to raise arguments for judgment on the pleadings based on decisions issued after a motion to dismiss; Plaintiffs cite no case for any such contention, and it is plainly contrary to the Federal Rules. The Court should disregard their waiver argument.

## CONCLUSION

For the foregoing reasons, the Court should grant Defendants' Partial Motion for Judgment on the Pleadings.

Dated: January 16, 2026.                    Respectfully submitted,

                                                          BRIAN L. SCHWALB
                                                          Attorney General for the District of Columbia

                                                          CHAD COPELAND
                                                          Deputy Attorney General
                                                          Civil Litigation Division

                                                          */s/ Matthew R. Blecher*
                                                          MATTHEW R. BLECHER [1012957]
                                                          Chief, Equity Section, Civil Litigation Division

                                                          */s/ Honey Morton*
                                                          HONEY MORTON [1019878]
                                                          Assistant Chief, Equity Section

                                                          */s/ Mateya B. Kelley*
                                                          MATEYA B. KELLEY [888219451]
                                                          HELEN M. RAVE [90003876]
                                                          Assistant Attorneys General
                                                          400 6th Street, NW
                                                          Washington, D.C. 20001
                                                          Phone: (202) 724-7854

Email: mateya.kelley@dc.gov

*Counsel for Defendants*