UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| M.J., et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| - against - | ) |
| | ) Civ. No. 1:18-cv-1901 (ACR) |
| The District of Columbia, et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |

### PLAINTIFFS' POST-*MEDINA* HEARING SUBMISSION

Plaintiffs I.C., B.T., L.R., and M.W., on behalf of themselves and all others similarly situated, and University Legal Services, Inc. (doing business as "Disability Rights D.C.") (collectively, "Plaintiffs"), respectfully make this submission in response to questions posed and a request for supplemental information made by the Court during the March 9, 2026 hearing on Defendants' Motion for Partial Judgment on the Pleadings (the "*Medina* Hearing"). Specifically, Plaintiffs submit the following responses to the Court's questions and requests for: (1) a comparison chart of the Early and Periodic Screening, Diagnostic, and Treatment ("EPSDT") provisions of the Medicaid Act to the provisions at issue in *Medina v. Planned Parenthood S. Atl.*, 606 U.S. 357 (2025) ("*Medina*") and *Health and Hosp. Corp. v. Talevski*, 599 U.S. 166 (2023) ("*Talevski*"); (2) any briefs by the federal government regarding the private enforceability of the EPSDT provisions; and (3) an example of unambiguously rights-creating language that does not use the terms "rights," "privileges," or "immunities."

### I.      EPSDT-*MEDINA-TALEVSKI* COMPARISON CHART

Your Honor requested that Plaintiffs provide a "comparison chart" reflecting "[Plaintiffs'] views as to how EPSDT is similar to *Talevski* and not similar to *Medina*." Transcript of Oral

Argument at 54:17-20, ECF 166 ("*Medina* Hearing Transcript").  Attached as **Exhibit A** is a copy of Plaintiffs' comparison chart.

## II.     FEDERAL GOVERNMENT POSITIONS ON PRIVATE ENFORCEABILITY OF EPSDT PROVISIONS

Your Honor requested that Plaintiffs research whether the Supreme Court has considered any petitions for writ of certiorari regarding the private enforceability of the EPSDT provisions of the Medicaid Act and "whether the government was ever asked for its views and whether the government ever gave its views on the specific provision."  *Medina* Hearing Transcript, at 46:9-13.  Plaintiffs provided responsive information on petitions for writ of certiorari and accompanying U.S. Solicitor General briefs in the joint submission with Defendants. Joint Post-*Medina* Hearing Submission, ECF 169.  In addition, the federal government has filed several additional briefs across administrations addressing this question, all of which take the position that there exists a private right of action under Section 1983 to enforce the EPSDT provisions.

The United States has filed Statements of Interest in several cases concerning the private enforceability of the EPSDT provisions. *See*, *e.g.*, Statement of Interest of the United States of America, *Isaac A. v. Carlson*, No. 1:24-cv-00037-AT (N.D. Ga., April 22, 2024), ECF No. 41; Statement of Interest of the United States of America, *Troupe v. Barbour*, No. 3:10-cv-00153-HTW-LRA (S.D. Miss., April 8, 2011), ECF No. 41; Statement of Interest of the United States of America, *John B. v. Emkes*, No. 3:98-cv-00168 (M.D. Tenn., Feb. 18, 2011), ECF No. 1443.  In each of these cases – including one post-*Talevski* – the United States argued plaintiffs have a private right of action under Section 1983 to enforce the EPSDT provisions.  *Isaac A.* at 2 ("[T]here is a private right of action under 42 U.S.C. § 1983 for Medicaid beneficiaries to sue for violations of the Medicaid [EPSDT] rights at issue here."); *Troupe* at 2 ("[P]laintiffs' Medicaid Act claim is

privately enforceable under 42 U.S.C. § 1983."); *John B.* at 2 ("[I]t is well-settled that plaintiffs have a private right of action under 42 U.S.C. § 1983 to enforce the EPSDT provisions.").

In 2024, the United States noted that "Defendants' assertion that Plaintiffs do not have a private right of action under 42 U.S.C. § 1983 to enforce provisions of the Medicaid Act is foreclosed by decades of precedent, as described in the Supreme Court's recent decision in *Health and Hosp. Corp. of Marion Cty. v. Talevski*, 599 U.S. 166 (2023)." *Isaac A.* at 16.  In analyzing the EPSDT provisions in particular, the United States explained:

> These individually focused treatment rights for children "are precisely the sort of 'rights-creating' language identified in *Gonzaga* as critical to demonstrating a congressional intent to establish a new right." *S.D.*, 391 F.3d at 603; *see also Sabree*, 367 F.3d at 190 (explaining that it is "difficult, if not impossible, as a linguistic matter, to distinguish" this language from the federal statutory language that the Court's opinion in *Gonzaga* explains is enforceable).

*Isaac A.* at 19 (quoting *S.D. v. Hood*, 391 F.3d 581, 603 (5th Cir. 2024) and citing *Sabree v. Richman*, 367 F.3d 180, 190 (3d Cir. 2004)).

Similarly, in 2011, the United States filed briefs in two district court cases where plaintiff Medicaid-eligible children alleged that they experienced serious harms as a result of defendants' failure to provide or arrange for medically necessary health services required under the EPSDT provisions of the Medicaid Act. *See* Statement of Interest of the United States of America, *John B. v. Emkes*, No. 3:98-cv-00168 (M.D. Tenn., Feb. 18, 2011), ECF No. 1443; Statement of Interest of the United States of America, *Troupe v. Barbour*, No. 3:10-cv-00153-HTW-LRA (S.D. Miss., April 8, 2011), ECF No. 41.  In both cases, the United States explained its strong interest in the legal questions presented because "[t]he denial of EPSDT services results in significant harm to children," including, for children with behavioral or emotional disorders, "exacerbation of their conditions, deterioration to the point of crisis, and unnecessary institutionalization." *Troupe* at 2. *See also John B.* at 2 ("The denial of adequate EPSDT services results in significant harm to

children with disabilities, including lack of access to necessary services and supports, as well as unnecessary institutionalization."). These legal questions included whether the EPSDT provisions of the Medicaid Act are privately enforceable under Section 1983, to which the United States unequivocally and consistently answered yes, supported by a detailed explanation of the statutory language and history, as well as the caselaw. *See Troupe* at 2 (affirmative answer), 4-8 (statutory and regulatory background), 15-17 (analysis and caselaw); *John B.* at 2 (affirmative answer), 4-6 (statutory and regulatory background), 6-9 (analysis and caselaw).

The briefs explain that the EPSDT provisions "use rights-creating language that demonstrates Congress' clear intent to confer individual rights." *John B.* at 7. The United States notes: "Subsections (B) and (C) of § 1396a(a)(43) require states to provide screening services to all children addressed in Subsection (A) who request such services and to arrange for (either directly or through other agencies) treatment, the need for which is discovered by the screening." *Id.* "Thus, they focus on the children protected by the EPSDT provisions and evince a clear intent to confer rights on a particular class of persons." *Id.*; *see also Troupe* at 15-17.

Plaintiffs were not able to find any briefs where the federal government has taken a contrary position on this question.

III.    **EXAMPLE OF RIGHTS-CREATING LANGUAGE WITHOUT THE TERMS "RIGHTS," "PRIVILEGES," OR "IMMUNITIES"**

At several points in the *Medina* Hearing, Your Honor asked what a provision with rights-creating language, but without the words "rights," "privileges," or "immunities," might look like. *See Medina* Hearing Transcript, at 4:17-19, 30:4-7, 37:15-22, 39:9-11. Relevant to this question, Plaintiffs respectfully direct the Court to an Opinion issued on March 27, 2026, by the United States District Court for the District of Maryland captioned *PHI Health, LLC v. Optimum Choice, Inc.*, No. 25-cv-2320-ABA, 2026 WL 850453 (D. Md. Mar. 27, 2026) ("*PHI*"), which construed

*Talevski* and *Gonzaga* as applied to the No Surprises Act.  Despite the absence of the words "rights," "privileges," or "immunities" in the Act, the court wrote that "Congress conveyed its intent to confer federal rights on [healthcare providers] even more clearly than in *Talevski*."  *Id.* at 5.  Though the case is about a different statute and an implied right of action rather than enforcement through Section 1983, the rights-creating language inquiry is the same, and the Opinion offers an illustration of rights-creating language in a statute without the word "rights" itself or a synonym.  *See Gonzaga*, 536 U.S. at 284-85 ("But the initial inquiry—determining whether a statute confers any right at all—is no different from the initial inquiry in an implied right of action case, the express purpose of which is to determine whether or not a statute 'confer[s] rights on a particular class of persons.'") (internal citations omitted).


Dated:  May 8, 2026

Respectfully Submitted,

*/s/ Anthony Ferrara*

Howard Schiffman (D.C. Bar No. 358814)
Anthony Ferrara (D.C. Bar No. 1657588)
Laurent M. Abergel (D.C. Bar No. 1718921)
MCDERMOTT WILL & SCHULTE LLP
500 North Capitol Street NW
Washington, DC 20001
202-729-7470

Sandra J. Bernstein (D.C. Bar No. 455355)
Mary Nell McGarity Clark (D.C. Bar No. 419732)
Eva I. Richardson (D.C. Bar No. 1724670)
DISABILITY RIGHTS DC AT UNIVERSITY LEGAL SERVICES
220 I Street NE, Suite 130
Washington, D.C. 20002
202-547-0198

Megan E. Schuller (D.C. Bar No. 90023318)
Jennifer E. Mathis (D.C. Bar No. 444510)

Ira A. Burnim (D.C. Bar No. 406154)
Anne Raish (appearing *pro hac vice*)
Claire Shennan (D.C. Bar No. 90031066)
JUDGE DAVID L. BAZELON CENTER FOR MENTAL HEALTH LAW
1101 15th Street NW, Suite 205
Washington, D.C. 20005
202-467-5730

Johnathan Smith (D.C. Bar No. 1029373)
Nina Monfredo (D.C. Bar No. 90041337)
NATIONAL CENTER FOR YOUTH LAW
818 Connecticut Avenue, Suite 425
Washington, DC 20006
510-835-8098


*Counsel for Plaintiffs*

# EXHIBIT A

**Chart Comparing the EPSDT Provisions at Issue in *MJ v. DC*
with the Medicaid Act Provisions at Issue in *Talevski* and *Medina***

| Question 1: Are the provisions unmistakably and singularly focused on individuals benefited? | | |
|---|---|---|
| **Provisions** | **Analysis** | **Relevant Statutory Language** |
| **EPSDT** (*MJ v. DC*) | **YES.** The EPSDT provisions:<br><br>• Are only focused on "informing," "providing," and "arranging" for the availability and provision of all EPSDT services "in ***all cases*** where they are requested" for "***all persons*** in the State who are under the age of 21 and who have been determined to be eligible for medical assistance" without limitation.<br><br>• Require these services to be provided where indicated as "medically necessary" for Medicaid-eligible children, as well as all other "necessary health care, diagnostic services, treatment, and other measures … to correct or ameliorate defects and physical and mental illnesses and conditions…, whether or not such services are covered under the State plan"— which are all individual-centric terms focused solely on the persons benefited and which give states no discretion to limit coverage of medically necessary services. | <u>42 U.S.C. §1396a(a)(43)(A)-(C)</u><br>A State plan for medical assistance must—<br>(43) provide for—<br>    (A) ***informing all persons in the State who are under the age of 21 and who have been determined to be eligible for medical assistance*** including services described in section 1396d(a)(4)(B) of this title, of the availability of early and periodic screening, diagnostic, and treatment services as described in section 1396d(r) of this title and the need for age-appropriate immunizations against vaccine-preventable diseases,<br>    (B) providing or arranging for the provision of such screening services ***in all cases where they are requested***,<br>    (C) ***arranging for*** (directly or through referral to appropriate agencies, organizations, or individuals) ***corrective treatment*** the need for which is disclosed by such child health screening services[.]<br><br><u>42 U.S.C. §1396d(r)</u><br>(r) Early and periodic screening, diagnostic, and treatment services—The term "early and periodic screening, diagnostic, and treatment services" means the following items and services:<br>    (1) Screening services—(A) which are provided—(ii) at such other intervals, indicated as ***medically necessary***, to determine the existence of certain physical or mental illnesses or conditions<br>    (2) Vision services—(A) which are provided—(ii) at such other intervals, indicated as ***medically necessary***, to determine the existence of a suspected illness or condition<br>    (3) Dental services—(A) which are provided—(ii) at such other intervals, indicated as ***medically necessary***, to determine the existence of a suspected illness or condition; and<br>    (4) Hearing services—(A) which are provided—(ii) at such other intervals, indicated as ***medically necessary***, to determine the existence of a suspected illness or condition<br>    **(5)** Such other ***necessary*** health care, diagnostic services, treatment, and other measures described in subsection (a) to correct or ameliorate defects and physical and mental illnesses and conditions discovered by the screening services, ***<u>whether or not</u> such services are covered under the State plan***. |

8

| Any Qualified Provider (*Medina*) | **NO.** The Court found the Any Qualified Provider provision contains a dual focus on "eligible" individuals and providers "qualified to perform the service or services required."<br><br>• The provision also discusses a State's discretion over the scope of the benefit by limiting who can provide services. The Court noted this language would be problematic if creating individual rights, because "Congress would grant rights in one breath while letting states control their scope in the next." | **42 U.S.C. §1396a(a)(23)**<br>A State plan for medical assistance must—<br>(23) provide that—<br>(A) any *individual eligible* for medical assistance (including drugs) may obtain such assistance *from any institution, agency, community pharmacy, or person, qualified to perform the service or services required* (including an organization which provides such services, or arranges for their availability, on a prepayment basis), who undertakes to provide him such services . . . *except that nothing in this paragraph shall be construed as requiring a State to provide medical assistance for such services furnished by a person or entity* convicted of a felony under Federal or State law for an offense *which the State agency determines* is inconsistent with the best interests of beneficiaries under the State plan *or by a provider or supplier to which* a moratorium under subsection (kk)(4) is applied during the period of such moratorium[.]" |
|---|---|---|
| Predischarge -Notice (*Talevski*) | **YES.** The Predischarge-Notice provision focuses on permitting "each resident" to remain in nursing facilities unless "necessary to meet the resident's welfare" or where the "resident's health has improved sufficiently so the resident no longer needs the services[.]"<br><br>• Even the exceptions to the notice requirement focus on the "resident's health" and the "resident's urgent medical needs." | **42 U.S.C. §§ 1396r(c)(2)(A)-(B)**<br>(A) In general—A nursing facility must permit *each resident* to remain in the facility and must not transfer or discharge *the resident* from the facility unless—<br>(i) the transfer or discharge *is necessary to meet the resident's welfare and the resident's welfare* cannot be met in the facility;<br>(ii) the transfer or discharge is appropriate because *the resident's health has improved sufficiently so the resident no longer needs* the services provided by the facility[.]<br>(B) Pre-transfer and pre-discharge notice—<br>…(ii) Timing of notice—The notice under clause (i)(I) must be made at least 30 days in advance of the resident's transfer or discharge except—<br>(I) in a case described in clause (iii) or (iv) of subparagraph (A);<br>(II) in a case described in clause (ii) of subparagraph (A), *where the resident's health improves sufficiently to allow* a more immediate transfer or discharge;<br>(III) in a case described in clause (i) of subparagraph (A), *where a more immediate transfer or discharge is necessitated by the resident's urgent medical needs*[.] |
| Unnecessary-Restraint (*Talevski*) | **YES.** The Unnecessary-Restraint provision is focused on the rights of "each resident." | **42 U.S.C. §1396r(c)(1)(A)(ii)**<br>(A) Specified rights—A nursing facility must protect and promote the rights of *each resident*, including each of the following rights: … |

| Question 2: Do the provisions contain clear and unambiguous rights-creating language? | | |
|---|---|---|
| **Provisions** | **Analysis** | **Relevant Language** |
| **EPSDT** (*MJ v. DC*) | **YES.** The EPSDT provisions create a right for all Medicaid-eligible children to be informed of and provided with medically necessary EPSDT services "in ***all cases*** where they are requested" or needed, "***whether or not*** such services are covered under the State plan."<br><br>• The specific use of "whether or not" in the EPSDT provisions reinforces that a State must provide these medically necessary services regardless of whether the State has chosen to include them in the State plan. Unlike the *Medina* provisions, the state has no discretion to limit them.<br><br>• As in *Talevski,* the provision contains rights-creating language because it is phrased in terms of the persons benefited and contains mandatory, individual-centric language with an unmistakable focus on the benefited class that conveys a clear intent to confer an individual right. The children do not merely fall in a general zone of interest the statute is intended to protect; they have an individual right to all medically necessary services and the State has no ability to limit the scope of their right. | **42 U.S.C. §1396a(a)(43)(A)-(C)**<br>A State plan for medical assistance ***must***—<br>(43) ***provide for***—<br>   (A) ***informing all persons in the State who are under the age of 21 and who have been determined to be eligible for medical assistance*** including services described in section 1396d(a)(4)(B) of this title***, of the availability of early and periodic screening, diagnostic, and treatment services as described in section 1396d(r) of this title*** and the need for age-appropriate immunizations against vaccine-preventable diseases,<br>   (B) ***providing or arranging for the provision of such screening services in all cases where they are requested***,<br>   (C) ***arranging for*** (directly or through referral to appropriate agencies, organizations, or individuals) ***corrective treatment*** the need for which is disclosed by such child health screening services[.]<br><br>**42 U.S.C. §1396d(r)**<br>(r) Early and periodic screening, diagnostic, and treatment services—The term "early and periodic screening, diagnostic, and treatment services" means the following items and services:<br>   (1) Screening services—<br>   (2) Vision services—<br>   (3) Dental services—<br>   (4) Hearing services—<br>   (5) Such other necessary health care, diagnostic services, treatment, and other measures described in subsection (a) ***to correct or ameliorate defects and physical and mental illnesses and conditions discovered by the screening services, <u>whether or not</u> such services are covered under the State plan.*** |

| Any Qualified Provider (*Medina*) | **NO.** The provision permissively says an individual "may" obtain assistance from providers who themselves must be qualified and not otherwise excluded by the State, and lets states control the scope of the benefit by controlling who can provide services.<br><br>• The Court reasoned that Congress would not "grant rights in one breath while letting states control their scope in the next." | **42 U.S.C. §1396a(a)(23)**<br>A State plan for medical assistance must—<br>(23) provide that—<br>(A) *any individual eligible* for medical assistance (including drugs) *may obtain such assistance from any institution*, agency, community pharmacy, or person, *qualified to perform the service or services required* (including an organization which provides such services, or arranges for their availability, on a prepayment basis), who undertakes to provide him such services, . . . *except that nothing in this paragraph shall be construed as requiring a State to provide medical assistance for such services furnished by a person or entity convicted of a felony under Federal or State law for an offense which the State agency determines is inconsistent with the best interests of beneficiaries under the State plan or by a provider or supplier to which a moratorium under subsection (kk)(4) is applied* during the period of such moratorium[.] |
| Predischarge-Notice (*Talevski*) | **YES.** The Predischarge-Notice provision is phrased in terms of the persons benefited and contains mandatory, individual-centric language with an unmistakable focus on the benefited class that conveys a clear intent to confer an individual right. | **42 U.S.C. §§ 1396r(c)(2)(A)**<br>(A) In general—*A nursing facility must permit each resident to remain in the facility and must not transfer or discharge the resident from the facility unless*—<br>(i) the transfer or discharge *is necessary to meet the resident's welfare and the resident's welfare* cannot be met in the facility;<br>(ii) the transfer or discharge is appropriate because *the resident's health has improved sufficiently so the resident no longer needs the services* provided by the facility[.] |
| Unnecessary-Restraint (*Talevski*) | **YES.** The Unnecessary-Restraint provision is phrased in terms of the persons benefited and contains mandatory, individual-centric language with an unmistakable focus on the benefited class that conveys a clear intent to confer an individual right. | **42 U.S.C. §1396r(c)(1)(A)(ii)**<br>(A) Specified rights<br>A nursing facility must protect and promote the rights of each resident, including each of the following rights:<br>…<br>…(ii) Free from restraints—*The right to be free from physical or mental abuse, corporal punishment, involuntary seclusion, and any physical or chemical restraints* imposed for purposes of discipline or convenience and *not required to treat the resident's medical symptoms*. . . . |

11

| Question 3: Do states have discretion to determine the scope of the right or services provided? | | |
|---|---|---|
| **Provisions** | **Analysis** | **Relevant Language** |
| **EPSDT** (*MJ v. DC*) | **NO.** The EPSDT provisions:<br><br>• Give states no discretion to determine the scope of the children's rights or the services to be provided to Medicaid-eligible children.<br><br>• Unambiguously require screening services "in all cases where they are requested" and the provision of all "necessary health care, diagnostic services, treatment, and other measures described in subsection (a) to correct or ameliorate defects and physical and mental illnesses and conditions discovered by the screening services" to all Medicaid-eligible children without exceptions.<br><br>• Contain a specific "whether or not" clause—set apart from and in addition to the Medicaid state plan requirements—to mandate that EPSDT services be provided to all Medicaid-eligible children regardless of the State's wishes or State plan. Indeed, Congress added this language when amending the statute in order to make clear that states have no discretion when it comes to children's right to medically necessary services, unlike for adults. | **42 U.S.C. §1396a(a)(43)(A)-(C)**<br>A State plan for medical assistance *must*—<br>(43) *provide for*—<br>   (A) informing *all persons in the State who are under the age of 21 and who have been determined to be eligible for medical assistance* including services described in section 1396d(a)(4)(B) of this title, of the availability of early and periodic screening, diagnostic, and treatment services as described in section 1396d(r) of this title and the need for age-appropriate immunizations against vaccine-preventable diseases,<br>   (B) providing or arranging for the provision of such screening services *in all cases where they are requested*,<br>   (C) arranging for (directly or through referral to appropriate agencies, organizations, or individuals) corrective treatment the need for which is disclosed by such child health screening services[.]<br><br>**42 U.S.C. §1396d(r)**<br>(r) Early and periodic screening, diagnostic, and treatment services—The term "early and periodic screening, diagnostic, and treatment services" means the following items and services:<br>   (1) Screening services—<br>   (2) Vision services—<br>   (3) Dental services—<br>   (4) Hearing services—<br>   (5) Such other *necessary health care, diagnostic services, treatment, and other measures described in subsection (a) to correct or ameliorate defects and physical and mental illnesses and conditions discovered by the screening services, <u>whether or not</u> such services are covered under the State plan*. |

12

| | | |
|---|---|---|
| **Any Qualified Provider** (*Medina*) | **YES.**  The Court found the Any Qualified Provider provision itself gives beneficiaries a choice but also gives States discretion to control the scope of the choice by limiting who provides the services. | **42 U.S.C. §1396a(a)(23)**<br>A State plan for medical assistance must—<br>(23) provide that—<br>    (A) any individual eligible for medical assistance (including drugs) may obtain such assistance from any institution, agency, community pharmacy, or person, qualified to perform the service or services required (including an organization which provides such services, or arranges for their availability, on a prepayment basis), who undertakes to provide him such services, . . . *except that nothing in this paragraph shall be construed as requiring a State to provide medical assistance for such services furnished by a person or entity convicted of a felony under Federal or State law for an offense which the State agency determines is inconsistent with the best interests of beneficiaries under the State plan or by a provider or supplier to which a moratorium under subsection (kk)(4) is applied* during the period of such moratorium[.] |
| **Predischarge-Notice** (*Talevski*) | **NO.**  The Predischarge-Notice provision:<br><br>• Does not give discretion to comply with the provisions.<br><br>Imposes preconditions that a nursing facility must meet to "transfer or discharge [a] resident," and the narrow exceptions are based on the resident's health needs, not the State's wishes or discretion. | **42 U.S.C. §§ 1396r(c)(2)(A)-(B)**<br>(A)  In general—A nursing facility *must permit* each resident to remain in the facility and *must not transfer or discharge* the resident from the facility unless—<br>    (i) the transfer or discharge is necessary to meet the resident's welfare and the resident's welfare cannot be met in the facility;<br>    (ii) the transfer or discharge is appropriate because the resident's health has improved sufficiently so the resident no longer needs the services provided by the facility[.]<br>(B) Pre-transfer and pre-discharge notice—<br>    …(ii) Timing of notice—The notice under clause (i)(I) *must be made* at least 30 days in advance of the resident's transfer or discharge except—<br>        (I) in a case described in clause (iii) or (iv) of subparagraph (A);<br>        (II) in a case described in clause (ii) of subparagraph (A), *where the resident's health improves sufficiently to allow a more immediate transfer or discharge*;<br>(III) in a case described in clause (i) of subparagraph (A), *where a more immediate transfer or discharge is necessitated by the resident's urgent medical needs*[.] |
| **Unnecessary-Restraint** (*Talevski*) | **NO.**  The Unnecessary-Restraint provision does not give discretion. | **42 U.S.C. §1396r(c)(1)(A)(ii)**<br>(A) Specified rights—A nursing facility *must protect and promote* the rights of each resident, including each of the following rights:… |

| Question 4: Are the provisions set apart from others in the statute to help alert grantees that accepting federal funds comes with a duty to answer private suits? | | |
|---|---|---|
| **Provisions** | **Analysis** | **Cross-Referenced Provisions in the Medicaid Act** |
| **EPSDT** (*MJ v. DC*) | **YES.** The EPSDT provisions appear across the Medicaid Act to give unmistakable notice they must be provided.<br><br>• Like in *Talevski*. Congress set its rights-creating provisions apart from others and, in doing so, helped alert grantees that accepting federal funds comes with a duty to answer private suits.<br><br>• In addition to multiple EPSDT requirements in the state plan requirements codified in 1396a(a), the EPSDT provisions are also set out in two additional places (1396d(a) and 1396(r)) that are separate and apart from the Medicaid state plan requirements. | **42 U.S.C. §1396a(a)(43)(A)-(C)**<br>A State plan for medical assistance must—<br>(43) provide for—<br>   (A) informing all persons in the State who are under the age of 21 and who have been determined to be eligible for medical assistance including services described in section 1396d(a)(4)(B) of this title, of the availability of early and periodic screening, diagnostic, and treatment services *as described in section 1396d(r) of this title* and the need for age-appropriate immunizations against vaccine-preventable diseases…<br><br>**42 U.S.C. §1396a(a)(10)(A)**<br>"A State plan for medical assistance must . . . Provide—for making medical assistance available, *including at least the care and services listed in [the EPSDT Provisions]."*<br><br>**42 U.S.C. §1396a(a)(84)(D)(i)**<br>A State plan for medical assistance must . . . Provide—in the 30 days prior to the release of such eligible juvenile from such public institution . . . and in coordination with such institution, any screening or diagnostic service which meets reasonable standards of medical and dental practice, as determined by the State, or as indicated as medically necessary, *in accordance with paragraphs (1)(A) and (5) of section 1396d(r)[.]*<br><br>**42 U.S.C. §1396d(a)(4)(B)**<br>The term 'medical assistance' means payment of part or all of the cost of the following care and services or the care and services themselves . . . for individuals . . . who are . . . Under the age of 21 . . . but whose income and resources are insufficient to meet all of such cost . . . *early and periodic screening, diagnostic, and treatment services (as defined in subsection (r)) for individuals who are eligible under the plan and are under the age of 21.*<br><br>**42 U.S.C. §1396d(r)**<br>The term "early and periodic screening, diagnostic, and treatment services" means the following items and services: … (5) Such other necessary health care, diagnostic services, treatment, and other measures described in subsection (a) to correct or ameliorate defects and physical and mental illnesses and conditions discovered by the screening services, whether or not such services are covered under the State plan. |

14

| | | |
|---|---|---|
| **Any Qualified Provider (*Medina*)** | **NO.**  The requirements of the Any Qualified Provider provision appear only in 42 U.S.C. §1396a(a)(23). | N/A |
| **Unnecessary-Restraint and Predischarge-Notice (*Talevski*)** | **YES.**  The Unnecessary-Restraint and Predischarge Notice provision at 42 U.S.C. §§ 1396r(c)(2)(A)-(B) is set apart from the Medicaid state plan provisions, but is also cross-referenced in the Medicaid Act state plan provisions at 42 U.S.C. §1396a(a)(28). | **<u>42 U.S.C. §1396a(a)(28)(A)</u>**<br>A State plan for medical assistance must . . . Provide—that any nursing facility receiving payments under ***such plan must satisfy all the requirements of subsections (b) through (d) of section 1396r of this title*** as they apply to such facilities…. |